**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


SAUNDRA S. RUSSELL                      CIVIL ACTION

KEITH SADOWSKI

WILLIAM CAMPBELL                        NO.:

       Plaintiffs

v.

                        **JURY  TRIAL DEMANDED**

CITY OF PHILADELPHIA

COMMISSIONER CHARLES S. RAMSEY
PHILADELPHIA POLICE DEPARTMENT
and

DEPUTY COMMISSIONER KEVIN BETHEL
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

DEPUTY COMISSIONER WILLIAM BLACKBURN
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and


CAPTAIN WILLIAM  BROADBENT, (RETIRED)
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity.
and

INSPECTOR JAMES KELLY
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity.
and

CAPTAIN MELVIN SINGLETON,
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

LIEUTENANT THOMAS HYERS, (RETIRED)
PHILAELPHIA POLICE DEPARTMENT
In his individual and official capacity.
and

LIEUTENANT JACK FEINMAN, (RETIRED)
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity.
and


LIEUTENANT EDWARD SPANGLER, (RETIRED)
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

LIEUTENANT CHARLES GREEN
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

LIEUTENANT LAVERNE VANN
LIEUTENANT, PHILADELPHIA POLICE DEPARTMENT
In her individual and official capacity
and


INSPECTOR AARON HORNE
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

CARROLL MADDEN
OCCUPATIONAL SAFETY ADMINISTRATOR
PHILADELPHIA POLICE DEPARTMENT
In her individual and official capacity


Defendants

## **COMPLAINT**


## **PRELIMINARY STATEMENT**

1. This action is brought against the City of Philadelphia and all named Defendants under

Title VII of the Civil Rights Act ( hereinafter Title VII), 42 U.S.C. Section 1981, 42 U.S.C.

Section 1983, as amended, 42 U.S.C. section 2000 et seq., The Fourteenth Amendment to the

Constitution of the United States of America, The Pennsylvania Human Relations Act, 43 P.S.

Sections 951-963 , The Pennsylvania Constitution (Art 1 Sections 1, 26, and 28) and pursuant to

Pennsylvania common law,  for affirmative and declaratory relief, back pay, front pay,

compensatory damages, punitive damages and other relief deemed just by this Honorable Court.

The injuries suffered by Plaintiffs are the result of intentional discrimination in the form of

disparate treatment based on race, gender and unlawful retaliation.

## JURISDICTION

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343 (4).

3.  This Court has supplemental jurisdiction over the state law claims pursuant to 28

U.S.C Section 1367.

4. The amount in controversy exclusive of interest and costs exceeds the sum of One

Hundred and Fifty Thousand  ($150,000.00) Dollars.

## VENUE

5.  Venue is proper under 28 U.S.C. Section 1391 (b) and (e). Defendants conduct occurred

in the City of Philadelphia which is in the federal jurisdiction of the Eastern District of

Pennsylvania. All the claims herein arose within the jurisdiction of the United States

District Court for the Eastern District of Pennsylvania and involve Defendants who reside

or are employed within its jurisdictional limits.

# INTRODUCTION

6. Plaintiffs seek damages for the malicious, intentional discrimination inflicted upon them by Defendants in the form of disparate treatment based on race, sex and retaliation.

7. Plaintiffs made timely dual filings with the Equal Opportunity Employment Commission ( E.E.O.C) and the Pennsylvania Human Relations Commission (P.H.R.C.).

8. The E.E.O.C. made determinations in favor of all three Plaintiffs. The E.E.O.C found that Russell encountered various forms of discrimination when she was assigned to each unit/district. Her superiors effectively stripped her of the ability to adequately supervise police officers under command by preventing her from disciplining those who were insubordinate or disrespectful. Her superiors allowed subordinates and peers to refer to her as 'bitch' 'cunt' ' Shaenae Nae and other derogatory names. Her superiors retaliated against her for trying to discipline a subordinate officer, denied her medical benefits after she was injured in the line of duty and reported false information that ultimately led to her termination. The E.E.O.C. found that Plaintiffs Sadowski and Campbell were unlawfully retaliated against for telling the truth it an investigation about an officer calling Russell a 'bitch and a 'fucking cunt' Both received a threatening note posted on the door of Campbell's locker; were denied access to medical care for acute, serious illnesses suffered while in a 'on-duty' status; were denied access to employee counseling services; were harassed while out sick, and were threatened with the loss of their jobs. In addition, both have had their opportunities to earn overtime cut in a way that is disproportionate to their peers. A copy of Plaintiff's 'Determination Letters' are at Exhibit A and are incorporated by reference.

9. Plaintiffs were issued 'Right to Sue' letters on March 11, 2013.

## <u>PARTIES</u>:

10. Plaintiff Saundra S. Russell is a Black female. She is a resident of the City of Philadelphia Pennsylvania. Until her firing, she was a Lieutenant on the Philadelphia Police Department. She was wrongfully terminated on July 6, 2009 effective May 12, 2009.

11. Plaintiff Keith Sadowski is a Caucasian male. He is a resident of the City of Philadelphia, Pennsylvania. He is presently employed as a police officer for the City of Philadelphia. He has suffered long-term retaliation for his participation in activities protected by Title VII and by other Pennsylvania legislative and common law provisions barring retaliation.

12. Plaintiff William Campbell is a Caucasian male. He is a resident of the City of Philadelphia, Pennsylvania. He is presently employed as a police officer for the City of Philadelphia. He has suffered long-term retaliation for his participation in activities protected by Title VII and by other Pennsylvania legislative and common law provisions barring retaliation.

13. Defendant City of Philadelphia is a City of the First Class, a municipality created under the laws of the Commonwealth of Pennsylvania subject to its own Home Rule Charter.

14. Charles S. Ramsey has been at all relevant times, the Commissioner for the City of Philadelphia Police Department. He is responsible for supervising and training the Police Department.

15. Defendant, Deputy Commissioner Kevin Bethel was at all relevant times, the Deputy the Commissioner for the City of Philadelphia Police Department. He is shares responsibility for supervising and training the Police Department.

16. Defendant, Deputy Commissioner William Blackburn is a Caucasian male and was, at all relevant times, an employee of the City of Philadelphia who held a supervisory position in the Philadelphia Police Department as Police Chief of the Narcotics Bureau. He is being sued in his individual and official capacity. This officer tolerated, condoned or took no effective action to stop the intentional discrimination or retaliation set forth in this Complaint. Further, he failed to supervise and or train his subordinates on the requirement not to discriminate on the basis of race, sex or retaliation.

17. Inspector Aaron Horne is a black male and was, at all relevant times, an employee of the Philadelphia Police Department who held a supervisory position as the Inspector of the Narcotics Bureau. He is being sued in his individual and official capacity. This officer tolerated, condoned or took no effective action to stop the intentional discrimination or retaliation set forth in this Complaint. Further, he failed to supervise and or train his subordinates on the requirement not to discriminate on the basis of race, sex or retaliation.

18. Defendant, Captain William Broadbent (retired), is a Caucasian male and was, at all relevant times, an employee of the City of Philadelphia who held a supervisory position in the Philadelphia Police Department as a commander the Narcotics Strike Force. He is being sued in his individual and official capacity. He fostered and participated in the hostile environment by discriminating and condoning discriminatory conduct towards

Plaintiffs Russell, Sadowski and Campbell. He failed to train and supervise his subordinate police officers not to discriminate on the basis of race or sex or retaliation.

19.  Defendant, Inspector James Kelly is a Caucasian male who, at all relevant times, held a supervisory position in the Philadelphia Police Department as a commander of the Narcotics Strike Force.  He is being sued in his individual and official capacity. He fostered and participated in the hostile environment by discriminating and condoning discriminatory conduct towards Russell. He failed to train and supervise his subordinate police officers not to discriminate on the basis of race or sex or retaliation. He was a Captain during the most of the time relevant to this Complaint.

20. Captain Melvin Singleton is a black male who at all relevant times held a supervisory position in the Philadelphia Police Department as the officer in charge of the 19th Police District. He is being sued in his individual and official capacity. He actively undermined Russell's authority as a supervisor by not allowing her to discipline her subordinates, fostered and encouraged an atmosphere of disrespect towards Russell, made unwanted sexual advances toward her, wrongfully accused her of faking injuries, made an unprofessional diagnosis of the cause of Russell's head injury, (e.g. attributing causation to pending disciplinary action when the record clearly showed she was injured while in an on duty status on June 16, 2008) and subjected her to an excessive scrutiny not given similarly situated subordinates. His false statements contributed to her being terminated.

21.  Defendant, Lieutenant Thomas Hyers is a Caucasian male who, at all relevant times, held a supervisory position in the Philadelphia Police Department as officer in charge of the 5th Platoon of the 23rd Police District. He is being sued in his individual and official

capacity. He disseminated false rumors about Russell to Captain Broadbent before she was transferred to Broadbent's command in the Narcotics Strike Force.

22. Defendant, Lieutenant Jack Feinman (retired) is a Caucasian male who, at all relevant times, held a supervisory position in the Philadelphia Police Department's Narcotics Strike Force. He is being sued in his individual and official capacity. He discriminated against Russell by stripping her of supervisory authority, accused her of having an affair with a subordinate to embarrass her in front of subordinates, made and tolerated racist comments about her from her subordinates, accused her of making false statements about Officer Eric Dial calling her a 'bitch' and a 'fucking cunt', encouraged an atmosphere of retaliation towards Sadowski and Campbell by; not properly investigating a threatening note placed on Campbell's locker, talking and laughing with other officers and supervisor's about the correctness of terminating Sadowski and Campbell for being truthful at an interview with Captain Kelly on November 16, 2006 regarding Eric Dial's statements to Russell on May 14, 2005, denying Sadowski access to the Employment Assistance Program (EAP) and delaying medical care when he had severe chest pains, denying Campbell access EAP and to medical care when he was in his office complaining of chest pains, excessively sick checking Sadowski and Campbell, causing them to be frequently be 'written up ' for discipline when no real transgression occurred and denying both of them overtime opportunities.

23. Lieutenant Edward Spangler is a Caucasian male who, at all relevant times, held a supervisory position in the Philadelphia Police Department's Narcotics Strike Force. He is being sued in his individual and official capacity. He fostered and participated in the hostile environment by discriminating and condoning discriminatory conduct towards

Russell. He failed to train and supervise his subordinate police officers not to discriminate on the basis of race or sex or retaliation.

24. Lieutenant Laverne Vann is a black female who, at all relevant times, held a supervisory position in the Philadelphia Police Department's Narcotics Strike Force. She was a peer to Plaintiff Russell. She is being sued in her individual and official capacity. She played a role in the discriminatory scheme against Russell. She referred to Russell as a 'bitch' to third parties when they both were Sergeants.

25. Lieutenant Charles Green is a Caucasian male who at all relevant times held a supervisory position in the Philadelphia Police Department as the commander of the City-wide Vice Unit. He was Russell's commander during her tenure in that unit. He is being sued in his individual and official capacity. Russell believes and avers that he received and acted on unfounded rumors transmitted to him from Lieutenant Doris of the Narcotics Strike Force as Russell transferred from that unit into City Wide Vice.

26. Carol Madden is a female who at all relevant times was a non-uniformed 'civilian' employee of the City of Philadelphia as an Occupational Safety Administrator for the Philadelphia Police Department. She is being sued in her individual and official capacity. She gave false information regarding procedures and processes during Plaintiff's Russell's medical status change hearing in a way that contributed to the denial of 'Heart and Lung' benefits for Russell.

27. At all relevant times, Defendants, individually and in concert; intentionally, maliciously or with deliberate indifference, discriminated in a manner that violated Plaintiffs rights under Title VII, 42 U.S.C. sections 1981 and 1983, The 1st and Fourteenth Amendments to the Constitution of the United States of America, provisions of the Pennsylvania

Constitution, the Pennsylvania Human Relations Act, 43 P.S. sections 951- 963 and in violation of Pennsylvania law and Philadelphia Police Department Directives.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

28. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

29. Plaintiff Russell was hired as a Philadelphia Police officer on April 5, 1999. She was promoted to Sergeant on March 8, 2004 and to Lieutenant on November 2, 2007.

30. From February of 2005 to July of 2009, Plaintiff Russell was subjected to a series of deliberate, malicious, mean spirited acts of discrimination, harassment and retaliation based on her race ( Black) and sex ( Female). These acts were calculated by the perpetrators to demean and undermine her authority in the workplace. They increased in intensity and frequency through the aforementioned time period and culminated in her wrongful termination on July 6, 2009.

31. Throughout the aforementioned period, Defendants referred to and either encouraged or allowed peers and officers under Plaintiff Russell's command to refer her as "bitch" "cunt" "black bitch" "Shanea Nea" and Shaneequa" and other derogatory terms. The terms 'bitch' and 'cunt' are demeaning, sexist terms used to denigrate females. The latter two names are offensive and derogatory terms denoting a caricature of an inner city uncultured African American female. Plaintiff Russell's supervisors deliberately fostered maintained and condoned a hostile and illegal working environment that not only discriminated against her, but undermined her ability to function effectively as a supervisor by not allowing her to discipline her subordinates who disobeyed lawful

commands, caused safety risks to prisoners and other personnel, were insubordinate, and consumed alcohol while in an 'on duty' status. As a result, police personnel under Plaintiff Russell's command were allowed be insubordinate without fear of consequences.

32. The above named Defendants were at some point in time relevant to this Complaint, a part of Plaintiffs' chain of command or in supervisory positions that enabled them to make decisions that affected Plaintiffs' employment conditions. In addition, Plaintiff Russell avers that Defendants Blackburn, Horne, Broadbent, Kelly, Singleton, Green, Feinman, all served together in the Narcotics Bureau and that their time in that command helped forge a professional and personal bond that facilitated the easy 'backchannel' transfer of false information about Russell amongst themselves.

33. During the relevant period, Plaintiff Russell's supervisors would pass adverse along information to personnel in the gaining command in such a manner that a hostile working environment was in effect upon her arrival at her new assignment. With each transfer, Russell walked into a work situation where the deck was stacked against her. She never had a fair chance to demonstrate her leadership, technical proficiency and policing skills for an impartial group of supervisors. In each successive assignment during the relevant period, Plaintiff Russell received disparate treatment upon arrival that damaged her ability effectively supervise. More significantly, both Russell and her subordinates were informed, by both language and conduct of supervisors, that she did not have the full authority to supervise her subordinates commensurate with her rank and position. For example; during her tenure at the Narcotics Strike Force, Lieutenant Feinman, Russell's immediate while supervisor regularly bypassed her and communicated directly with her

subordinates and colleagues on various operational matters including the overtime schedule and caused Russell to have an anxiety induced asthma attack when he accused her of lying about officer Dial's conduct. Plaintiff Russell believes this conduct was deliberately done to undermine her authority and erode her effectiveness as a supervisor. She avers that it was a blatant form of intentional discrimination based on sex.

34. Plaintiff Russell was subjected to sex discrimination in its rudest forms. For example, she was, without justification, falsely accused by Lieutenant Feinman of having a sexual affair with a subordinate officer while other subordinate officers were within earshot. Plaintiff Russell believes and avers that this form of sex based discrimination was designed to attack Russell's character and further diminish her authority. Another example is the series of unsolicited and unwanted sexual advances Captain Singleton made towards Plaintiff Russell while she was under his command at the 19th Police District. Captain Singleton made numerous suggestive comments that insinuated his interest in a sexual relationship (e.g. " are you married" "what kind of man do you like" and "you may have heard about me, I used to do my thang"). Plaintiff Russell tried to ignore his advances, but was personally affected and offended.

35. Several of the most egregious examples of discrimination and retaliation inflicted upon Plaintiff Russell, and later upon Plaintiffs Sadowski and Campbell's hostile work environment arose from a series of incidents that included Russell being called a "bitch' and a "fucking cunt". A synopsis of those events follows.

36. In February of 2005, Plaintiff Russell was transferred from her supervisory position in the 23rd Police District to a position in the Narcotics Strike Force upon the recommendation of then Philadelphia Police Commissioner Sylvester Johnson. Russell was transferred

because she impressed then Police Commissioner Sylvester Johnson with her hard work and exemplary duty performance.

37. Prior to her departure from the 23rd District her supervisor, Lieutenant Hyers, who had previously called her 'girl' and actively undermined her authority with her subordinates based on her status as black female, told her "So you're being transferred huh? You got outta here in the nick of time. I just want you to know "Spanky" (Captain Broadbent, the head of The Narcotics Strike Force) is one of my good friends and I will be giving him a call" Lieutenant Hyers also told Russell "I personally don't think you have enough time to be here" Plaintiff Russell believes Hyers made this comment because he did not like the fact of Russell's transfer to an elite unit with her amount of time in service. Russell believes Hyer's comments were a form of discrimination based on Plaintiff's sex.

38. Plaintiff Russell believes and therefore avers that Lieutenant Hyers helped establish the hostile work environment she encountered at the Narcotics Strike Force by passing on false, adverse and derogatory information about her to Captain Broadbent.

39. Upon arrival at the Narcotics Strike Force, Plaintiff Russell overheard Sergeant Hayes tell another police officer that Captain Broadbent said she (Russell) would have a hard time in the Narcotics Strike Force because he was putting her in Lieutenant Spangler's squad. Upon information and belief, she was being set up to fail.

40. On March 11, 2005 Plaintiff Russell discharged her weapon at a suspect who was digging in his pants and refused to show his hands. The suspect suffered a graze wound and was transported to the hospital. Police officer Bachmayer, then one of Plaintiff's Russell's subordinates told Lieutenant Spangler that traces of marijuana were found in the suspect's pants. Bachmayer later told Russell that Lt. Spangler instructed him to discard

the marijuana. Much later, during a disciplinary hearing for Officer Dial, one of Russell's subordinates, the hearing board gave short shrift to Officer Dial's conduct and instead turned its attention on Plaintiff Russell; accused her of shooting an unarmed man and made probing inquiries into Russell's medical history. Russell believes this was a form of intentional discrimination and retaliation for trying to discipline a subordinate.

41. On March 14, 2005, while questioning Officer Dial, about his failure to comply with her instructions to conduct a bicycle patrol, Officer Dial called Russell a 'bitch' and a 'fucking cunt'.

42. Later, Officer Dial admitted calling Plaintiff Russell a 'bitch' and a "fucking cunt" to Plaintiffs Sadowski and Campbell.

43. On May 17, 2005, Officer Dial again admitted to calling Russell a 'bitch and a 'fucking cunt' in the presence of Lt. Spangler.

44. Plaintiff Russell immediately submitted documents requesting that Officer Dial be disciplined.

45. Captain Broadbent refused to punish Officer Dial. Plaintiff Russell quotes Captain Broadbent as saying that Officer Dial's comments "were not that bad".

46. Captain Kelly, Broadbent's replacement, also refused to punish officer Dial. He said he could not investigate or discipline an officer for a violation that did not occur under his command. Plaintiff Russell believes and therefore avers that this is not true.

47. On July 12, 2006, Plaintiff Russell submitted a memorandum through the chain of command to the Inspector Horne and the Chief Blackburn of the Narcotics Bureau to inform them of the treatment she was receiving and the lack of discipline and support at her assignment. They took no action.

48. Plaintiff Russell then informed Chief Kimberly Byrd about the incident when Byrd encountered Russell and asked how things were going. Chief Byrd directed Captain Kelly to interview all personnel on duty during the time of the name calling incident of May 14, 2005 where Dial called her 'bitch' and 'fucking cunt'.

49. Captain Kelly did not comply with the directive to interview all personnel on duty at the time of the incident.

50. Despite the foregoing, Plaintiffs Sadowski and Campbell were scheduled to be interviewed by Captain Kelly and Lieutenant Haag on November 16th, 2006 about the insubordination of Officer Dial that occurred on May 14,2005. Almost immediately, fellow officers in the Narcotics Strike Force began to ask them what they were going to say when questioned and advised them to say they did not recall what happened. Sadowski and Campbell both expressed fear to Captain Kelly that they would be retaliated against if they told what they knew. They were assured by Captain Kelly that the content of their statement would remain confidential and would not be disclosed.

51. Contrary to the advice to "not recall", Plaintiffs Sadowski and Campbell complied with 1.11 and 1.12 of the Philadelphia Police Department disciplinary code and honestly stated Officer Dial told them that he called Plaintiff Russell a 'bitch' and a 'fucking cunt'.

52. On November 17th , the day following the interview with Captain Kelly, it was obvious from the reactions of fellow officers that the interview between Sadowski, Campbell, Haag and Kelly was not confidential and that all or some of it had been leaked. Co-workers shunned them in a manner that made it apparent their interview statements had been disclosed. Sadowski and Campbell believe this was the beginning of their hostile work environment.

53. On January 22, 2007, Sadowski placed a note on Campbell's locker with a message from Campbell's wife. Campbell's wife had asked Sadowski to tell Campbell to call her at home. Sadowski wrote the note and taped it to Campbell's locker.

54. When Sadowski and Campbell returned to work on January 27, 2007, the note on Campbell's locker had been altered to read "RAT" in two places. A copy is enclosed at Exhibit B and is incorporated by reference.

55. Plaintiffs Sadowski and Campbell felt threatened by the 'Rat' note and out of concern for their safety asked Lieutenant Feinman to investigate the matter.

56. Lieutenant Feinman was aware of the sensitive circumstances surrounding the 'Rat' note. Despite this knowledge, he failed to secure the area, failed to immediately contact a commanding officer and failed to notify the Internal Affairs bureau to get instructions on the appropriate course of action for the matter.

57. Officer Sadowski made copies of the note and secured the original in a clear plastic bag.

58. Lieutenant Feinman took no action on the 'Rat' note until Plaintiffs Sadowski and Campbell informed dispatch by Police Radio that they were enroute to the Internal Affairs Division to initiate an investigation.

59. After learning of Sadowski's intent to go to Internal Affairs, Lt. Feinman told Officer Sadowski via telephone to take the note directly to Captain Kelly who was off-duty and visiting his mother at her house. This instruction violated the chain of custody and evidence for this document, because Kelly was in an off-duty status and no property receipt was issued for the evidence.

60. Plaintiff Sadowski delivered the note to Captain Kelly.

61. Plaintiffs were later informed that the note did not test positive for fingerprints or any other identifying evidence.

62. The 'Rat' note was never returned to Plaintiff Sadowski or Plaintiff Campbell.

63. Plaintiffs Sadowski and Campbell contend that the failure to properly investigate the 'Rat' note incident was a form of retaliation for their truthful statements in the interview with Captain Kelly on November 16, 2006.

64. On February 22, 2007, Plaintiff Sadowski overheard a conversation between Lieutenant Feinman, Lieutenant Smith, Corporal Nowakowski and Officer Cuddahy discussing his and Campbell's forthcoming testimony at Officer Dial's PBI.  Plaintiff Sadowski heard Lieutenant Smith say " Sadowski and Campbell should be immediately dismissed after the hearing" or words to that effect.

65. Plaintiff Sadowski immediately felt anxious after hearing the aforementioned comments; he became fearful, experienced dizziness, chest pains and shortness of breath.

66. Sadowski went to Lieutenant Feinman's office, to discuss what he overheard when Feinman and others were talking and laughing about Sadowski and Campbell being "dismissed after the hearing".  Sadowski told Feinman he was tired of being harassed at work for telling the truth and wanted to contact EAP about his work situation. Access to EAP is a Department practice and custom commonly afforded similarly situated police officers.  Feinman refused to let him go to EAP and demanded that Sadowski discuss the situation with him first. Sadowski refused and told Feinman that he (Feinman) was part of the reason EAP assistance was needed. He also told Feinman that he felt sick and needed to talk to someone. Despite this, Feinman told Sadowski that if he left his office he would be carried AWOL.  Sadowski left Feinman's office to go to the locker room.

67. After Sadowski entered the locker room, Lieutenant Feinman blocked the locker room exit with his body to prevent Sadowski from leaving the room and 'chest bumped' him as his as he tried to get by. Again he threatened to list him AWOL if he left the building.

68. Sadowski left via another door went outside to get some air as he was having difficulty breathing. He used his telephone to get contact information for EAP as he left the building.

69. Once outside, Sadowski's condition worsened as the pain intensified. Fineman confronted him and ordered him to get off the phone. Sadowski repeatedly said that his chest hurt. Feinman ignored his statements about his chest hurting and continued to berate him and order him off the phone.

70. Fire rescue was summoned after the EAP representative on the phone told Sadowski to tell Lieutenants Hagg and Feinman to contact the medics for emergency medical assistance.

71. Fire and Rescue arrived. Sadowski was transported to the hospital where he was treated and diagnosed with Anxiety Induced Hypertension.

72. Sadowski was denied the 'Heart Lung' benefits normally allowed for police officers who are injured while on the job. As a result, he was forced to use his accrued time in order to be paid while recovering from the illness he incurred while in an 'on-duty' status on February 22, 2007. He believes and avers that this denial was a form of retaliation for his truthful cooperation in the investigation of the incident that occurred on May 14, 2005 when Officer Dial called Russell names as set forth in the preceding paragraphs of this Complaint.

73. On March 10, 2007, Plaintiff Campbell was in Lieutenant Feinman's office discussing a sick note. During the discussion, Feinman began to intimidate Campbell about Sadowski's statements in the Dial investigation. Feinman told Campbell "You tell Sadowski that I am not taking this sitting down" At this point in the discussion, Campbell complained of chest pains and said asked to go to the hospital. Feinman refused permission, and denied Campbell access to emergency medical attention. Campbell had to drive himself to the hospital for medical care while experiencing chest pains. Plaintiff Campbell believes this denial of medical attention by Lieutenant Feinman was a form of intentional unlawful retaliation for Campbell's truthful statements about officer Dial calling Russell a "bitch" and a "fucking cunt".

74. Further, after providing truthful statements regarding Officer Dial, Plaintiffs Sadowski and Campbell were 'sick checked' on orders from Lieutenant Fitzgerald, Feinman's replacement, in a manner that was inconsistent with Fitzgerald's sick check policy. Plaintiff's believe and therefore aver that no other officers were ever sick checked by Fitzgerald. Plaintiffs Sadowski and Campbell believe and therefore aver that this practice was done in retaliation for their truthful testimony at Officer Dial calling Russell a "bitch" and a "fucking cunt" .

75. Subsequent to the filing of the complaint with the E.E.O.C. and the PHRC, Sadowski's wife was harassed in public by Lieutenant Feinman on two occasions in such a manner that she felt extremely uncomfortable and afraid.

76. All Plaintiffs believe and aver that they were treated as 'pariahs' in the workplace and have experienced a 'Serpico' affect as a result of the aforementioned facts. On at least four occasions, Plaintiffs were in life threatening confrontations with combative suspects

or hostile crowds and fellow Narcotics Strike Force officers who were in a position to help refused to do so despite radio calls for assistance. Plaintiffs believe and aver that these situations were a direct result of the discriminatory and retaliatory environment fostered and encouraged by the Defendant Supervisors.

77. As a direct result of the foregoing, Saundra Russell has lost a lucrative and promising career, suffered severe financial difficulties, has been diagnosed with Clinical Depression, still suffers symptoms from the head injury suffered while on-duty, and suffers emotional distress. Keith Sadowski, suffers from Anxiety Induced Hypertension, anxiety and fear for his physical safety and loss of overtime income. He was in good health and needed no medications of any kind before he gave a statement to Captain Kelly during Kelly's investigation if Eric Dial as set forth in preceding paragraphs of this Complaint. William Campbell has suffered an exacerbation of an existing heart condition, anxiety, fear for his physical safety and a substantial loss of overtime income. .

### COUNT I TITLE VII--- DISCRIMINATION
### SAUNDRA RUSSELL v ALL DEFENDANTS RACE AND SEX

78. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

79. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendant. Specifically, Plaintiff Russell complains of Defendants' violation of Title VII's prohibition against discrimination based, in whole or in part, upon her race.

80. Plaintiff Russell is a black female and during her employment with Defendant City of
    Philadelphia was a member of a class protected under Title VII against race and sex
    based discrimination by her employer and its supervisory personnel.

81. At all relevant times, Plaintiff Russell, adequately and completely performed all of the
    functions, duties and responsibilities of her employment with the City of Philadelphia as
    demonstrated by her rapid rise through the ranks from police recruit to Lieutenant in a
    just over 7 years.

82. Intentional race and sex based discrimination against Plaintiff Russell by her superiors
    and supervisors began in earnest in 2005 as set forth herein supra.

83. To reiterate, Plaintiff Russell was intentionally and regularly subjected to disparate
    treatment by her supervisors on the basis of her status as a black female.

84. Plaintiff Russell also believes that the 'Serpico' treatment discussed herein above was a
    form of retaliation by the rank and file police officers that was condoned or tolerated by
    Narcotics Strike Force supervisors.

85. Plaintiff Russell believes and therefore avers that she was denied medical benefits and
    terminated as part of  an intentional and prolonged campaign of disparate treatment
    inflicted upon her and in large part as retaliation for trying to have Officer Dial, an officer
    under her command, disciplined for calling her a 'bitch' and a 'fucking cunt'.

86. As a result of Defendants' policies and practices, Plaintiff Russell was unjustly and
    discriminatorily subjected to disparate treatment, a hostile work environment, unlawful
    retaliation and ultimately terminated from her job.

87. As a further result of Defendants' above stated actions, Plaintiff Russell has been and
    will be deprived of income in the form of future wages and prospective retirement.

## COUNT II- TITLE VII RETALIATION
## SAUNDRA RUSSELL V. ALL DEFENDANTS

88.  Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

89. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendant. Specifically, Plaintiff Russell complains of Defendants' violation of Title VII's prohibition against retaliation in employment based, in whole or in part, upon participation in a protected activity.

90.  Plaintiff Russell believes that the aforementioned discriminatory comments and acts by her supervisors were done in part to retaliate against her for trying to have officer Eric Dial disciplined for calling her a 'bitch' and a 'fucking cunt'.

91.  Plaintiff Russell also believes that the 'Serpico' treatment described herein above was a form of retaliation by the rank and file police officers that was condoned or tolerated by Narcotics Strike Force supervisors.

92. Plaintiff Russell believes and therefore avers that she was denied medical benefits and terminated as part of an intentional and prolonged campaign of disparate treatment inflicted upon her and in large part as retaliation for reasons that include trying to have Eric Dial, a police officer under her supervision, disciplined for calling her a 'bitch' and a 'fucking cunt' and for rejecting the sexual advances of Captain Singleton.

93. As a result of Defendants' policies and practices, Plaintiff Russell was unjustly and discriminatorily subjected to unlawful retaliation.

## COUNT III TITLE VII RETALIATION
## KEITH SADOWSKI AND WILLIAM CAMPBELL v ALL DEFENDANTS

94. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

95. Plaintiffs Keith Sadowski and William Campbell participated in activities protected by Title VII when they spoke truthfully at the investigation for Officer Dial's statements to Plaintiff Russell as set forth herein above.

96. Both were assured of the complete confidentiality of their statements by Captain Kelly.

97. Retaliation against Sadowski and Campbell started immediately as described herein. Their statements were leaked.

98. Plaintiffs Sadowski and Campbell aver that the retaliation was intentional, malicious and took the form of; the lack of a proper investigation into the 'Rat' note incident, denial of access to medical care, denial of access to EAP, unwarranted sick checks, unfounded disciplinary write-ups and the denial of overtime opportunities.

99. The 'Serpico' treatment by colleagues as previously described herein was done to unlawfully retaliate against Sadowski and Campbelll. The intentional actions of Plaintiffs' supervisors created the hostile environment that led rank and file police officers to believe this conduct to be acceptable. Plaintiffs believe and therefore aver that this conduct was condoned or knowingly tolerated by supervisors in the Narcotics Strike Force.

## COUNT IV 42 U.S.C. 1981

## SAUNDRA RUSSELL v. ALL DEFENDANTS
## DISPARATE TREATMENT, HOSTILE WORK ENVIRONMENT

100.  Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

101.  Plaintiff  Russell, a black female, is a member of the protected class envisioned by 42 U.S.C. section 1981.

102. Defendants, without justification and under color of law vested in them by virtue of their positions of authority within the Philadelphia Police Department, worked individually and in concert to establish an extreme and hostile work environment by intentionally conducting a campaign of race based discrimination against Plaintiff Russell in manner that undermined Russell's authority and encouraged conduct prejudicial to good order and discipline among her subordinate police officers.

103. Examples of this race based discrimination included but was not limited to the following:

   a. Encouraging or condoning the practice of Russell's subordinates referring to her as ' bitch, 'black bitch' 'cunt', 'fucking cunt' 'Shanae Nae',' Shaneequa' and other and demeaning names while in an 'on –duty status.

   b. Not allowing Plaintiff Russell to discipline her subordinates thereby encouraging insubordination.

   c. Refusing to take disciplinary action against police officers under Russell's command who refused to follow orders or who violated Police Directives.

   d. Denying her 'Heart Lung' medical benefits and willfully misrepresenting the cause of injuries she sustained in an 'on-duty' status in the manner described herein that caused her to eventually  lose her job.

104. Similarly situated Caucasian and male police officers were not subjected to this kind of

treatment.

105. Defendants' conduct resulted in a hostile work environment for reasons based

on Plaintiff Russell's race and sex and for purposes of unlawful retaliation.


**COUNT V 42 U.S.C 1983**
**SAUNDRA RUSSELL V ALL DEFENDANTS**
**EQUAL PROTECTION**

106. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

107. Defendant's conduct directed against Plaintiff Russell as described herein above

was intentional racially motivated discrimination that deprived Plaintiff Russell

of equal protection under the law.

108. Defendants retaliated against Plaintiff Russell for seeking redress for the

discrimination and hostile working conditions inflicted upon her based on her race and

gender.

109. Plaintiff Russell was wrongfully terminated from her employment as a police officer

for the City of Philadelphia without due process by supervisory personnel acting under

the color of law based on the false testimony of her superior officer as set forth herein

above. Her termination of employment was a form of intentional racial discrimination,

sex discrimination and retaliation for requesting and participating in lawful police

investigatory proceedings.

110. As a result of the foregoing, Plaintiff Russell has been deprived of civil rights afforded

fellow citizens and property interests in the form of salary, medical benefits and

retirement benefits pursuant to her employment as a police officer with the City of

Philadelphia.


## COUNT VI 42 U.S.C. 1983
## KEITH SADOWSKI AND WILLIAM CAMPBELL
## EQUAL PROTECTION


111.  Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

112.  Plaintiffs Sadowski and Campbell continue to be subjected to retaliatory actions for their lawful and truthful participation in a police investigation and their petition for redress complaining of retaliation by peers and supervisors as described herein above.

113.  Plaintiff's conduct that precipitated the aforesaid retaliation is protected by the 1st Amendment of the Constitution of the United States of America.

114. The retaliation directed against them took the form of intentional discriminatory actions that continue to deprive them of equal treatment and property interests regularly afforded  their co-workers.

115.  Plaintiffs Sadowski and Campbell have been denied overtime opportunities that were readily available before they testified truthfully about  Officer Dial's conduct.

116.  Plaintiffs Sadowski and Campbell continue to suffer the physical effects, mental duress and fear for their personal safety as previously described herein.


## COUNT VII- PHRA P.S 42 SECTIONS 951-963
## SAUNDRA RUSSELL, KEITH SADOWSKI,

**WILLIAM CAMPBELL v ALL DEFENDANTS**
**DISCRIMINATION, HOSTILE ENVIRONMENT, AND RETALIATION**

117. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

118. Plaintiff Russell avers that Defendants discriminated against her on the basis of her race, sex, and unlawful retaliation in the manner described herein above in violation of The Pennsylvania Human Relations Act.

119. Plaintiffs Sadowski and Campbell aver that Defendants violated the Pennsylvania Human Relations Act by retaliating against them for participating in Officer Dial's investigation and testifying truthfully.

120. As a result of the foregoing, all Plaintiffs have suffered severe financial losses, physical illnesses and emotional distress. Plaintiff Russell has lost her job. Plaintiffs Sadowski and Campbell continue to experience a hostile work environment and retaliation.

**VIII VIOLATION OF PENNSYLVANIA CONSTITUTION**
**AND PENNSYLVANIA COMMONLAW**
**SAUNDRA RUSSELL, KEITH SADOWSKI**
**AND WILLIAM CAMPBELLv. ALL DEFENDANTS**

121. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

122. The Constitution of the Commonwealth of Pennsylvania, Article I, Sections 1, 26 and 28, provide for the rights of mankind, equal protection under the law for all citizens and outlaws discrimination on the basis of race, sex and unlawful retaliation.

123. As set forth in preceding paragraphs, Plaintiffs have experienced intentional and pervasive discrimination based on race sex and unlawful retaliation.

124. As a direct result of the discrimination and retaliation described in this Complaint, Plaintiffs have suffered physical illnesses, emotional distress and loss of income. Plaintiff Russell has lost a career. Plaintiffs Sadowski and Campbell continue to endure unlawful retaliation in the workplace.

## IX, FIRING CONTRARY TO PUBLIC POLICY
## SAUNDRA RUSSELL v. ALL DEFENDANTS

125. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

126. While The Commonwealth of Pennsylvania is an 'at will' state, that allows for the termination of an employee for any reason absent a contract, there is an exception for terminating an employee for reasons that violate public policy.

127. A police officer is charged with the responsibility of protecting the public and acting in the best interests of public safety.

128. As more fully set forth in the preceding paragraphs, Plaintiff Russell was terminated from employment as a police officer for exercising her responsibilities to protect the public safety and welfare.

129. As a result of her wrongful termination, Plaintiff Russell has suffered significant and substantial financial losses, severe emotional distress, humiliation and embarrassment.

## X FAILURE TO TRAIN
## SAUNDRA RUSSELL, KEITH SADOWSKI,

## WILLIAM CAMPBELL v ALL DEFENDANTS

130. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

131. All uniformed Defendants have a duty commensurate with their rank, title, duty position and span of control over subordinate personnel to train and supervise subordinates on the mandate not to discriminate on the basis of race and sex and not to unlawfully retaliate for activity in the workplace that is protected.

132. Discrimination on the basis of race sex and unlawful retaliation for protected conduct is unlawful and violates public policy and Philadelphia Police Department Directives.

133. The discrimination and retaliation exercised against Plaintiffs as described herein above by police supervisors represents a failure to train police personnel to prevent or stop such discriminatory activities.

134. Plaintiff aver that many of the Defendants either participated, condoned, tolerated or were willfully blind to the discriminatory actions taken against the Plaintiffs.

135. Plaintiffs further aver that similar retaliatory and discriminatory activity has occurred in the past with such frequency that supervisors at all levels were, are or should be aware of it as an informal custom in the Philadelphia Police Department.

136. Plaintiffs have suffered significant and irreparable harm as a result of Defendants failure to train and supervise subordinates on the requirement not to discriminate or unlawfully retaliate against fellow police officers.

## XI DAMAGES
## SAUNDRA RUSSELL, KEITH SADOWSKI
## AND WILLIAM CAMPBELL

137. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.


138. As a direct and proximate result of the above-described intentional discrimination,

retaliation, failure to train and failure to supervise or willful blindness of Defendants, Plaintiffs have and will continue to suffer irreparable damages including; physical injury, illness, anxiety, humiliation, emotional distress, physical manifestations of emotional distress, and devastating financial losses.

**WHEREFORE**:   Plaintiffs seek judgment against Defendants jointly and severally as follows:

a.  That the Court and Jury enter a declaratory judgment and find that the Defendant's conduct violated of Plaintiffs' rights pursuant to Title VII,  U.S.C. sections 1981, 1983 and 2000e *et.seq*., The 14th Amendment to the United States Constitution, The Constitution of the Commonwealth of Pennsylvania. The Pennsylvania Human Relations Act and Pennsylvania Common Law, as well as Philadelphia Police Department Directives.

b.  That the Court and jury find the Defendant's conduct so egregious, willful, intentional, outrageous, abusive and was accompanied by a wanton and willful disregard for the foreseeable harm it caused as to necessitate punitive damages;

c.  That the Court and jury award such compensatory, declaratory, actual and nominal damages as are allowable by law;

d.  That the Court award such attorney fees, costs and expenses, pre and post judgment interest and delay damages as are allowable by law;

e.  Other and further relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED

BY:

/S/HERBERT MCDUFFY, JR.,_____
HERBERT MCDUFFY, JR.ESQUIRE

ATTORNEY FOR PLAINTIFFS
HERBERT MCDUFFY, JR., ESQUIRE
200 CAMPBELL DRIVE,SUITE 103E
WILLINGORO, NEW JERSEY 08046
856-505- 8706 (OFFICE)
610-453-4015 ( CELL)
866-610-4503 ( FAX)
hmcduffy@aol.com