# EXHIBIT A



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Philadelphia District Office

801 Market Street, Penthouse, Suite 1300
Philadelphia, PA 19107-3127
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604

Charge Number 530-2007-00051

Ms. Saundra S. Russell
727 Hagner Street
Philadelphia, PA 19128

Charging Party

v.

Philadelphia Police Department
5301 Tacony Street, Building 202
Philadelphia, PA 19135

Respondent

## DETERMINATION

Under the authority vested in me by the Procedural Regulations of the Equal Employment Opportunity Commission (EEOC), I issue on behalf of the EEOC the following determination as to the merits of the subject charge filed under the Civil Rights Act of 1964, as amended (Title VII).

The timeliness and all other jurisdictional requirements have been met. Charging Party alleged that she has been subjected to various forms of discriminatory and retaliatory actions by eight male Supervisors because of her sex (female) and race (black) because one of her Supervisors allowed some of subordinates to respond to her in racially stereotypical terms, such as "Shanea Nea" and "Shaneequa" (implying that Charging Party is a black female from the ghetto). Charging Party further alleged that the various acts of discrimination took place when she was assigned to three different units/districts, the Narcotics Strike Force (NSF) from February 2005 - February 2007, City Wide Vice (CWV) from February 2007- November 2007 and the 19th District from November 2007- May 12, 2009. Charging Party further alleged that she complained about the various forms of discrimination initially when she was assigned to the NSF and this led to her being retaliated against because she was ultimately denied Heart & Lung (medical benefits for Officers injured on the job) due to her current Captain (19th District Commanding Officer) having misinformed the Respondent's Safety Office implying that Charging Party's medical symptoms were not due to an on the job injury but that it was maybe "due to her facing so many disciplinary charges." Charging Party finally alleged that the retaliatory acts which led to her termination started occurring after she made a formal internal complaint, "Formal Disciplinary Action Request" memo, dated July 12, 2006, when she was assigned to the NSF, because the Commanding Officers of the NSF, CWV, and the 19th District are friends, and the Captain of the 19th (her final assigned unit/district before her termination) told Charging Party that she has problems (referring to her discrimination complaints everywhere she goes.)

Respondent denies Charging Party's allegations and contends that Charging Party cannot establish that the Respondent took adverse employment action against her, and that Charging Party's charge of discrimination consists of allegations based on false and baseless accusations, supposed second-handed information, innuendo, and gossip.

Charging Party was hired as a Police Officer on April 5, 1999, received a promotion to Sergeant on March 8, 2004, and promotion to a Lieutenant on November 2, 2007. The record shows that as a Supervisor, Charging Party was assigned to three units/districts: the Narcotics Strike Force (NSF) from February 2005 - February 2007, City Wide Vice (CWV) from February 2007 - November 2007, and the 19th District from November 2007 - May 12, 2009, date of Charging Party's termination. The record also shows that Charging Party encountered various forms of discriminatory actions when she was assigned to each unit/district in that her superior Officers effectively stripped her of her ability to effectively supervise her subordinates by preventing her from being able to discipline those who were either insubordinate or disrespectful to her. The record shows that when Charging Party was first assigned to NSF as a Sergeant, the commanding Captain took two weeks before he assigned Charging Party to a squad and this is not normal practice since a squad is immediately assigned to a supervisory Officer upon their arrival to a unit/district. While assigned to NSF, Charging Party encountered various forms of discrimination from five superior Officers all white males (2 Captains, 2 Lieutenants, and the Chief Inspector) who either interfered with Charging Party's ability to discipline subordinate officers who were either disrespectful or insubordinate to direct orders from Charging Party. Two officers referred to Charging Party as a "Bitch" and another referred to her as a "Bitch and Cunt," but the Respondent failed to take disciplinary actions against the Officers despite the fact that one incident involved two witnesses who substantiated Charging Party's position. The Respondent's refusal to address Charging Party's concerns lead to her filing a "Formal Disciplinary Action Request" memo dated July 12, 2006, which was sent directly to the NSF Inspector and Chief Inspector. Charging Party's superiors took no immediate action regarding her complaint and this led to Charging Party complaining to the Commissioner's Executive Assistant (2nd in Command) who became directly involved in questioning the status of the investigation. The Executive Assistant also requested that all personnel related to the incident be interviewed by the investigating Officer, but the record shows that the investigating Officer, a NSF Captain, disobeyed the Executive Assistant's orders because he refused to interview all personnel who would have first hand knowledge of the incidents in question and the internal investigation resulted in Charging Party's allegations as being unsubstantiated despite the fact that two Officers provided favorable statements on Charging Party's behalf. The record also shows that the two Officers who supported Charging Party were both retaliated against by the Respondent and they both filed charges with the EEOC (530-2007-02309 & 530-2007-02310) and a finding of probable cause was issued in both cases. The record also indicates that a black female Sergeant at NSF was also encouraged by her superiors to disrespect Charging Party's authority by also allowing her subordinates to not acknowledge Charging Party's authority as a Sergeant.

The record further shows that Charging Party transferred to City Wide Vice (CWV) during February 2005, and continued to experience the same treatment by the CWV Lieutenant (WM), who also prevented Charging Party from disciplining her subordinate Officers, monitored Charging Party more than the other Sergeants and on at least one occasion came into work on his day off to monitor

Charging Party's performance. The record indicates that Charging Party was subjected to this type of discriminatory treatment from February 2005 - February 2007, and that this was also retaliatory because the NSF Inspector against whom she originally filed the "Formal Disciplinary Action Memo" is one of the Commanding Officers over both the CWV and NSF.

The record also shows that Charging Party was transferred to the 19th District after she received a promotion to a Lieutenant and was subjected to further retaliatory actions by the Captain, who is the Commanding Officer of the 19th, and who is also personal friends with the NSF Inspector. The record indicates that 19th District Captain treated Charging Party differently than the other Supervisors by not introducing her to staff, letting Charging Party and her staff know that he would not allow her to discipline any of her subordinates, and thus, minimized Charging Party's effectiveness as a Supervisor since some of her subordinates openly disobeyed her without fear of being disciplined. The Captain also personally investigated any citizen complaints that he received regarding Charging Party and it is not the normal practice for a Captain to be personally investigating a Lieutenant for routine citizen complaints. The Captain also falsely charged Charging Party with making false statements regarding his investigation of her regarding a citizen's complaint. Finally, the record shows that the Captain blocked Charging Party's attempt to get Heart & Lung benefits (benefits for Officers injured on the job), despite the fact that it was clearly documented by a Sergeant that on June 18, 2008, Charging Party was injured on the job while investigating a homicide crime scene, in that Charging Party accidently hit her head and face against a two-by-four that was hanging out the side of a pickup truck and this resulted in immediate dizziness and other symptoms that is related to a concussion. The record further shows that Charging Party's Doctor, a Neurologist, noted on October 6, 2008, that Charging Party was suffering from various symptoms as a result of the head trauma that she suffered on June 18, 2008 (some of the symptoms are dizziness, unsteady, tingle in her legs, hypersensitivity to light and severe headaches). Despite this medical documentation, the Respondent failed to provide Charging Party with heart and lung benefits and this ultimately led to her termination because Captain Singleton gave false information at Charging Party's "Heart & Lung Hearing" dated March 12, 2009, in that he told the Respondent's Safety Office the following; "I wasn't made aware of this report of dizziness and blurred vision until months later, from June to September 2008. It is possibly because she (Charging Party) was facing so many disciplinary charges." It is reasonable to assume that the Captain gave false information since the record shows that a "Complaint or Incident Report" was filed by the Sergeant on June 18, 2008, regarding Charging Party's on the job accident and that such information would have been seen by the Commanding Officer, the Captain. The Captain's false statement to the Safety Office was ultimately responsible for Charging Party's denial of her "Heart & Lung Benefits" and this resulted in her wrongful termination after Charging Party was forced to exhaust all of her medical leave.

The record contains testimony of numerous witnesses who have provided information which support Charging Party's allegations with regard to the following: Charging Party's various Supervisors prevented her from having appropriate authority over various squads, Charging Party was not allowed to discipline those under her command, white Officers were allowed to disrespect Charging Party by referring to her as a "Bitch", "Cunt", Shanea Nea" and "Shaneequa, "subordinate Officers were allowed to disobey or disrespect Charging Party without fear of being disciplined, Charging Party was assigned to NSF without immediately being given a squad to command, Charging Party

was falsely accused by a Lieutenant of having a sexual affair with a subordinate officer, Charging Party was often singled out and addressed in a harshly condescending manner by various Superiors, Roll Call Sheets were often not left for Charging Party (information regarding the daily activity of her squad), Charging Party was scrutinized more than her peers, the Respondent failed to do a proper investigation with regard to Charging Party's allegations of discrimination, Charging Party was prevented from investigating Officers who might have been violating their terms/conditions of employment, and a Captain personally got involved in investigating citizen complaints regarding Charging Party while she was at the 19th District.

Based on this analysis, I have determined that the evidence establishes a violations of the Civil Rights Act of 1964, as amended (Title VII).

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the EEOC now invites the parties to join with it in a collective effort toward a just resolution of the matter. Please be advised that upon receipt of this finding, any reasonable offer to resolve this matter will be considered. The Commission can seek an amount including full back wages (minus interim earnings) plus an amount inclusive of the applicable cap to your organization for compensatory damages and actual losses and costs incurred by the Charging Party. A Commission representative will prepare a monetary demand to include actual, compensatory damages and, if appropriate, attorney fees and costs which have accrued to date. Again, the Commission is postured to consider any reasonable offer during this period. If an offer has not previously been submitted, Respondent is requested to accept, reject, or submit a counteroffer within fifteen (15) days of its receipt of the conciliation proposal which will be forthcoming shortly on behalf of Charging Party.

The confidentiality provisions of Title VII and the Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission,

8/7/09
Date

Marie M. Tomasso
District Director

cc: Brian M. Puricelli, Esquire (for Charging Party)
Julie Donahue, Esquire (for Respondent)



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Philadelphia District Office

801 Market Street, Penthouse, Suite 1300
Philadelphia, PA 19107-3126
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604

Charge Number 530-2007-02300

Mr. Keith Sadowski
9966 Verree Road
Philadelphia, PA 19115

Charging Party

v.

Philadelphia Police Department
5301 Tacony Street, Building 202
Philadelphia, PA 19135

Respondent

## DETERMINATION

Under the authority vested in me by the Procedural Regulations of the Equal Employment Opportunity Commission (EEOC), I issue on behalf of the EEOC the following determination as to the merits of the subject charge filed under the Civil Rights Act of 1964, as amended (Title VII).

The timeliness and all other jurisdictional requirements have been met. Charging Party, who is a Police Officer, alleged that he was a witness in an EEOC charge, Sandra Russell v. Philadelphia Police (530-2007-00051), and that he provided a favorable statement on behalf of the complainant. Specifically, Charging Party alleged that, during an interview by a Captain of the "Strike Force" on November 16, 2006, Charging Party confirmed that a fellow male Officer referred to their female Sgt. as a "Cunt." Charging Party also informed the Captain that he was concerned that he would be subjected to retaliatory actions because of his statement. As a result of his statement, Charging Party alleged that fellow employees have stopped talking to him and he overheard two Lieutenants, a Corporal and others commenting that Charging Party and his partner should be terminated for their testimony involving Russell's EEOC charge. These incidents caused Charging Party to seek immediate EAP counseling because he was experiencing stress related anxiety, but one of the Lieutenants refused Charging Party's request for EAP counseling unless he first discussed his concerns with him. The Lieutenant also threatened to have Charging Party written up as AWOL, if he went to EAP without his permission. Charging Party further alleged that the Lieutenant's confrontational and harassing behavior caused him to experience chest pains and he was rushed to the hospital by Fire and Rescue. Charging Party also alleged that he suffered lost wages during this episode because the Respondent failed to provide him with "Heart & Lung" Benefits and this resulted in him using his sick time. Charging Party also alleged that he was further retaliated against by being subjected to an unwarranted sick check on a regular day off. Charging Party also alleged

that a note which he left on his partner's locker was altered with the word "Rat" written under his signature and no action was taken by the Respondent concerning this matter until Charging Party and his partner threatened to go to Internal Affairs. Finally, with regard to Charging Party's desire to file an internal complaint, Charging Party alleged that the Lieutenant sent him a verbal threat through Charging Party's partner, informing him that he was not going to "take this sitting down!"

Respondent denies Charging Party's allegations of discrimination and retaliation.

The record shows that Charging Party became a Police Officer on December 15, 1997 and he was assigned to the Narcotics Strike Force (NSF) in December 18, 2002. The record also shows that on November 16, 2006, Charging Party and his partner were interviewed by Respondent's officials concerning an internal complaint made by a black female Sergeant with the Police Board of Inquiry alleging that she was being subjected to various forms of discriminatory actions by her Superiors and that a Lieutenant refused to take appropriate actions against a subordinate Police Officer who referred to her as a "Fucking Cun." The record further shows that Charging Party and his partner both confirmed to the Police Officer in question did admit to them that he did refer to the Sergeant as a "Fucking Cunt." The record indicates that it was common knowledge within the NSF that Charging Party and his partner provided a statement against a fellow Officer, and this immediately resulted in them both being ostracized by other Officers who stopped speaking to them and it was also common knowledge that Charging Party and his partner were favorable witnesses for the Sergeant's EEOC charge.

The record also indicates that on January 22, 2007, Charging Party left a note on his partner's locker and when they returned to work on January 27, 2007, they saw the word "RAT" written across the center of the letter and the word "RAT" written underneath Charging Party's name. The record further indicates that Charging Party and his partner attempted to present the evidence to the Lieutenant, but he told them to wait until the weekend was over, whereupon they threatened to go to Internal Affairs. Charging Party's Captain then initiated an investigation which resulted in him reading a memo to NSF department that "any type of harassment or retaliation of any kind was not to be permitted." The record further indicates that the Respondent failed to conduct a comprehensive investigation in that there is no indication from the records that either Charging Party, his partner, nor his fellow officers were interviewed regarding the "RAT" note.

The record also indicates that on February 22, 2007, Charging Party overheard two Lieutenants laughing and making comments that Charging Party and his partner should be dismissed for providing statements to the Police Board of Inquiry, and this resulted in Charging Party becoming stressed and anxious. The record also indicates that Charging Party informed one of the Lieutenants (also named in the Sergeant's complaint) that he heard this conversation and that he needed to go to EAP because he was feeling sick and stressed concerning their desire to see him terminated. The record further indicates that the Lieutenant attempted to physically block Charging Party from going to EAP by standing in his way, harassed and pressured Charging Party by questioning his reasoning for seeking EAP counseling, and the Lieutenant also told Charging Party that he would be written up as AWOL for visiting the EAP without his permission. The record indicates that the Lieutenant was violating Charging Party's right to EAP confidentiality since Charging Party was seeking "Employee-Initiated Counseling" verses a "Supervisor-Initiated Counseling" referral.

The record further indicates that Charging Party and his partner were singled out for sick checks since both confirm that this was not the usual practice in their department and the timing of the sick check occurred soon after their testimonials.

Charging Party's allegations regarding the Lieutenant's threats that he is not "going to take this sitting down" could not be substantiated and neither could it be determined that Charging Party has suffered loss of benefits as a result of his allegations of retaliatory treatment.

Based on this analysis, I have determined that the evidence establishes a violations of the Civil Rights Act of 1964, as amended (Title VII), in that Charging Party was subjected to retaliatory treatment for opposing practices made illegal by the statute.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter. In this regard, conciliation of this matter has now begun. Please be advised that upon receipt of this finding, any reasonable offer to resolve this matter will be considered. The Commission can seek an amount including full back wages (minus interim earnings) plus an amount inclusive of the applicable cap to your organization for compensatory and/or punitive damages for Charging Party. A Commission representative will prepare a monetary demand to include actual, compensatory and/or punitive damages and, if appropriate, attorney fees and costs which have accrued to date. Again, the Commission is postured to consider any reasonable offer during this period. If an offer has not previously been submitted, Respondent is requested to accept, reject, or submit a counteroffer within fifteen (15) days of its receipt of the conciliation proposal which will be forthcoming shortly on behalf of Charging Party.

The confidentiality provisions of Title VII and the Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission,

1/8/09
Date

/s/ William D. Cook
Marie M. Tomasso
District Director

cc: Gregory N. Filosa, Esquire (for Respondent)
Brian M. Puricelli, Esquire (for Charging Party)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street, Penthouse, Suite 1300
Philadelphia, PA 19107-3127
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604

Charge Number 530-2007-02310

Mr. William Campbell
12708 Medford Road
Philadelphia, PA 19154

v.

Charging Party

Philadelphia Police Department
5301 Tacony Street, Building 202
Philadelphia, PA 19135

Respondent

## DETERMINATION

Under the authority vested in me by the Procedural Regulations of the Equal Employment Opportunity Commission (EEOC), I issue on behalf of the EEOC the following determination as to the merits of the subject charge filed under the Civil Rights Act of 1964, as amended (Title VII).

The timeliness and all other jurisdictional requirements have been met. Charging Party, who is a Police Officer, alleged that he was a witness in an EEOC charge, Sandra Russell v. Philadelphia Police (530-2007-00051), and that he provided a favorable statement on behalf of the complainant. Specifically, Charging Party alleged that, during an interview by a Captain and a Lieutenant of the "Strike Force" on November 16, 2006, Charging Party confirmed that a fellow male Officer referred to their female Sergeant as a "Cunt." Charging Party also informed the Captain that he was concerned that he would be subjected to retaliatory actions because of his statement. As a result of his statement, Charging Party alleged that fellow employees have stopped talking to him and that on January 22, 2007, Charging Party's partner left a note on Charging Party's locker which subsequently was altered with the word "RAT" written twice on the note. Charging Party further alleged that no action was taken by the Respondent concerning this matter until Charging Party and his partner threatened to go to Internal Affairs. Charging Party also alleged that on March 10, 2007, his Lieutenant questioned him suspiciously regarding his Doctor and the documented reason for a sick note. Finally, Charging Party alleged that he was further retaliated against by another Lieutenant who had him sick checked and that this was not the normal practice of his department.

Respondent denies Charging Party's allegations of discrimination and retaliation.

The record shows that Charging Party became a Police Officer on July 15, 1996, and is presently assigned to the Narcotics Strike Force (NSF). The record also shows that on November 16, 2006, Charging Party and his partner were interviewed by Respondent's officials concerning an internal complaint made by a black female Sergeant with the Police Board of Inquiry alleging that she was being subjected to various forms of discriminatory actions by her Superiors and that a Lieutenant refused to take appropriate actions against a subordinate Police Officer who referred to her as a "Fucking Cunt." The record further shows that Charging Party and his partner both confirmed that the Police Officer in question did admit to them that he did refer to the Sergeant as a "Fucking Cunt." The record indicates that it was common knowledge within the NSF that Charging Party and his partner provided a statement against a fellow Officer, and that this immediately resulted in them both being ostracized by other Police Officers who stopped speaking to them and it was also common knowledge that Charging Party and his partner were favorable witnesses for the Sergeant's EEOC charge.

The record also indicates that on January 22, 2007, Charging Party's partner left a note for Charging Party on his locker and when they returned to work on January 27, 2007, they saw the word "RAT" written across the center of the letter and the word "RAT" written underneath the signature of Charging Party's partner. The record further indicates that Charging Party and his partner attempted to present the evidence to the Lieutenant, but he told them to wait until the weekend was over, whereupon they threatened to go to Internal Affairs. Charging Party's Captain then initiated an investigation which resulted in him reading a memo to NSF department that "any type of harassment or retaliation of any kind was not to be permitted." The record further indicates that the Respondent failed to conduct a comprehensive investigation in that there is no indication from the records that either Charging Party, his partner, nor his fellow officers were interviewed regarding the "RAT" note, and thus, it appears that the Respondent did not take effective measures to address the hostile working environment.

The record further indicates that Charging Party and his partner were singled out for sick checks since both confirm that this was not the usual practice in their department and the timing of the sick check occurred soon after their testimonials.

Finally, Charging Party's allegations regarding the Lieutenant harassing him regarding his sick note could not be substantiated.

Based on this analysis, I have determined that the evidence establishes a violations of Title VII in that Charging Party and his partner were both subjected to retaliatory treatment for opposing practices made illegal by the statute.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the unlawful practices by informal methods of conciliation. Therefore, the EEOC now invites the parties to join with it in a collective effort toward a just resolution of this matter. In this regard, conciliation of this matter has now begun. Please be advised that upon receipt of this finding, any reasonable offer to resolve this matter will be considered. The Commission can seek

an amount including full back wages plus an amount inclusive of the applicable cap to your organization for compensatory damages for Charging Party. A Commission representative will prepare a monetary demand to include actual and/or compensatory damages and, if appropriate, attorney fees and costs which have accrued to date. Again, the Commission is postured to consider any reasonable offer during this period. If an offer has not previously been submitted, Respondent is requested to accept, reject, or submit a counteroffer within fifteen (15) days of its receipt of the conciliation proposal which will be forthcoming on behalf of Charging Party.

The confidentiality provisions of Title VII and the Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the Office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

On behalf of the Commission,

1/29/09
Date

Marie M. Tomasso
District Director

cc: Meir Braunstein, Esquire (for Respondent)
    Brian M. Puricelli, Esquire (for Charging Party)