**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


SAUNDRA S. RUSSELL                    CIVIL ACTION

KEITH SADOWSKI

WILLIAM CAMPBELL                      NO.: 3151-cv-13

       Plaintiffs

v.

                           **JURY  TRIAL DEMANDED**

CITY OF PHILADELPHIA

COMMISSIONER CHARLES S. RAMSEY
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

DEPUTY COMMISSIONER KEVIN BETHEL
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

DEPUTY COMISSIONER WILLIAM BLACKBURN
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and


CAPTAIN WILLIAM  BROADBENT, (RETIRED)
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity.
and

INSPECTOR JAMES KELLY
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity.
and

CAPTAIN MELVIN SINGLETON,
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

1

LIEUTENANT THOMAS HYERS, (RETIRED)
PHILAELPHIA POLICE DEPARTMENT
In his individual and official capacity.
and

LIEUTENANT JACK FEINMAN, (RETIRED)
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity.
and

LIEUTENANT EDWARD SPANGLER, (RETIRED)
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

LIEUTENANT CHARLES GREEN
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

LIEUTENANT LAVERNE VANN
LIEUTENANT, PHILADELPHIA POLICE DEPARTMENT
In her individual and official capacity
and

INSPECTOR AARON HORNE
PHILADELPHIA POLICE DEPARTMENT
In his individual and official capacity
and

CARROLL MADDEN
OCCUPATIONAL SAFETY ADMINISTRATOR
PHILADELPHIA POLICE DEPARTMENT
In her individual and official capacity


Defendants

## AMENDED COMPLAINT

**PRELIMINARY STATEMENT**

1.   This action is brought against the City of Philadelphia and all named Defendants under
Title VII of the Civil Rights Act, 42 U.S.C. section 2000 et seq. as amended ( hereinafter Title
VII), 42 U.S.C. Section 1981, 42 U.S.C. Section 1983, The Fourteenth Amendment to the
Constitution of the United States of America, The Pennsylvania Human Relations Act, 43 P.S.
Sections 951-963, and The Pennsylvania Constitution (Art 1 Sections 1, 26, and 28),  for
affirmative and declaratory relief, back pay, front pay, compensatory damages, punitive damages
and other relief deemed just by this Honorable Court.   The injuries suffered by Plaintiffs are the
result of intentional discrimination in the form of disparate treatment based on race, gender and
unlawful retaliation. Reasonable people in the Plaintiffs' position would be similarly injured and
aggrieved.

## JURISDICTION

2.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331 and 1343 (4).

3.   This Court has supplemental jurisdiction over the state law claims pursuant to 28
U.S.C Section 1367.

4. The amount in controversy exclusive of interest and costs exceeds the sum of One
Hundred and Fifty Thousand  ($150,000.00) Dollars.


## VENUE

5.   Venue is proper under 28 U.S.C. Section 1391 (b) and (e). Defendants conduct occurred
in the City of Philadelphia which is in the federal jurisdiction of the Eastern District of

Pennsylvania. All the claims herein arose within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involve Defendants who reside or are employed within its jurisdictional limits.

## **INTRODUCTION**

6.  Plaintiffs seek damages for the malicious, intentional discrimination inflicted upon them by Defendants in the form of disparate treatment based on race, sex and retaliation.

7.  Plaintiffs made timely dual filings with the Equal Opportunity Employment Commission ( E.E.O.C) and the Pennsylvania Human Relations Commission (P.H.R.C.).

8.  The E.E.O.C. made determinations in favor of all three Plaintiffs. The E.E.O.C found that Plaintiff Russell encountered various forms of discrimination when she was assigned to each unit/district. Her superiors effectively stripped her of the ability to adequately supervise police officers under command by preventing her from disciplining those who were insubordinate or disrespectful. Her superiors allowed subordinates and peers to refer to her as 'bitch' 'cunt' ' Shaenae Nae' 'Shaneequa' and other gender and race based derogatory names. Shanae-Nae is a fictional character portrayed on a television comedy show by the male actor/comedian, Martin Lawrence, who appears in 'drag' dressed as a woman and performs by portraying exaggerated, stereotyped, caricatures of inner city, urban, low class, black female behavior.  Ms. Russell's superiors also retaliated against her for trying to discipline insubordinate officers. Twice, Russell was denied medical benefits after she suffered injuries while in an 'on-duty' status. The second denial incorporated materially false information into police records and ultimately led to her termination of employment as a police officer.

9. The E.E.O.C. found that Plaintiffs Sadowski and Campbell suffered retaliation by superiors and peers against for telling the truth in an investigation about police officer Eric Dial calling Russell a 'bitch and a 'fucking cunt' Both received a threatening note posted on the door of Campbell's locker that placed them in fear for their lives and safety; were denied access to medical care by Lieutenant Feinman for acute, serious illnesses suffered while in a 'on-duty' status; were initially denied access to employee counseling services and Heart Lung benefits by Lieutenant Feinman's conduct, were harassed while out on sick leave by their supervisors, and were threatened with the loss of their jobs. In addition, both have had their opportunities to earn overtime reduced in a way that is disproportionate to their peers.

10. A copy of Plaintiff's 'Determination Letters' are at Exhibit A and are incorporated by reference.

11. The acts and omissions that are the subject of this Complaint were made by all Defendant's acting under color of title pursuant to their official duties as police officers, police department supervisors and or employees of the City of Philadelphia.

12. Plaintiffs were issued 'Right to Sue' letters on March 11, 2013. ( Exhibit C)

## PARTIES:

13. Plaintiff Saundra S. Russell is a Black female. She is a resident of the City of Philadelphia Pennsylvania. Until her termination, she was a Lieutenant on the Philadelphia Police Department. She was wrongfully terminated on July 6, 2009 effective May 12, 2009.

14. Plaintiff Keith Sadowski is a Caucasian male. He is a resident of the City of Philadelphia, Pennsylvania. He is presently employed as a police officer for the City of

Philadelphia. He has suffered long-term retaliation for his participation in activities protected by Title VII and by other Pennsylvania legislative and common law provisions barring retaliation.

15. Plaintiff William Campbell is a Caucasian male. He is a resident of the City of Philadelphia, Pennsylvania. He is presently employed as a police officer for the City of Philadelphia. He has suffered long-term retaliation for his participation in activities protected by Title VII and by other Pennsylvania legislative and common law provisions barring retaliation.

16. Defendant City of Philadelphia is a City of the First Class, a municipality created under the laws of the Commonwealth of Pennsylvania subject to its own Home Rule Charter.

17. Charles S. Ramsey has been at all relevant times, the Commissioner for the City of Philadelphia Police Department. He is responsible for supervising and training the Philadelphia Police Department. While acting under color of law, he failed to supervise and train his subordinates on the requirement not to discriminate on the basis of race, sex or retaliate for lawful conduct. He is being sued in his individual and official capacity.

18. Defendant, Deputy Commissioner Kevin Bethel was at all relevant times, the Deputy the Commissioner for the City of Philadelphia Police Department. He is shares responsibility for supervising and training the Police Department. While acting under color of law, he failed to supervise and train subordinate officers on the requirement not to discriminate on the basis of race, gender or retaliate for lawful conduct. He is being sued in his individual and official capacity.

19. Defendant, Deputy Commissioner William Blackburn is a Caucasian male and was, at all relevant times, an employee of the City of Philadelphia who held a supervisory position

in the Philadelphia Police Department as Police Chief of the Narcotics Bureau. He is being sued in his individual and official capacity. This officer, while acting under color of law pursuant to his official duties, tolerated, condoned or took no effective action to prevent the intentional discrimination, retaliation and hostile work environment set forth in this Complaint. Further, he failed to supervise or train his subordinates on the requirement not to discriminate on the basis of race, gender or retaliate for lawful conduct.

20. Inspector Aaron Horne is a black male and was, at all relevant times, an employee of the Philadelphia Police Department who held a supervisory position as the Inspector of the Narcotics Bureau. He is being sued in his individual and official capacity. This officer, while acting under color of law pursuant to his official duties, tolerated, condoned or took no effective action to stop the intentional discrimination or retaliation set forth in this Complaint. Further, he failed to supervise or train his subordinates on the requirement not to discriminate on the basis of race, gender or retaliate for lawful conduct despite an obvious need for such training.

21. Defendant, Captain William Broadbent (retired), is a Caucasian male and was, at all relevant times, an employee of the City of Philadelphia who held a supervisory position in the Philadelphia Police Department as a commander the Narcotics Strike Force. He is being sued in his individual and official capacity. Captain Broadbent, while acting under color of law pursuant to his official duties, fostered and participated in establishing a hostile work environment directed against Plaintiffs by; discriminating and condoning discriminatory conduct towards  Russell, Sadowski and Campbell and intentionally choosing not to discipline Police Officer Eric Dial for calling a Plaintiff Russell a 'bitch

and a fucking cunt'.  Ignoring an obvious need, he failed to train and supervise his subordinate police officers not to discriminate on the basis of race, gender or or retaliate for lawful conduct.

22.  Defendant, Inspector James Kelly is a Caucasian male who, at all relevant times, held a supervisory position in the Philadelphia Police Department as a commander of the Narcotics Strike Force.  He is being sued in his individual and official capacity. Defendant Kelly, while acting under color of law pursuant to his official duties, fostered and participated in establishing a hostile work environment directed against Plaintiffs. He discriminated against Russell by refusing to discipline Police Officer Eric Dial for calling Russell a 'bitch' and a 'fucking cunt'. and refusing to discipline  Police Officer Jeanie Spicer for calling Russell a "Black bitch". These refusals served to inform other police officers that they would not be disciplined for similar conduct towards Russell. Kelly failed to train and supervise his subordinate police officers not to discriminate on the basis of race or gender or retaliate for lawful conduct. He was a Captain during the most of the time relevant to this Complaint.

23. Captain Melvin Singleton is a black male who at all relevant times held a supervisory position in the Philadelphia Police Department as the officer in charge of the 19th Police District. He is being sued in his individual and official capacity. He, while acting under color of law pursuant to his official duties, intentionally discriminated against Russell and participated in establishing a hostile work environment directed against her by; actively undermining her supervisory authority,  not allowing her to discipline subordinates, personally soliciting complaints against Russell from members of the community in the 19th District and by both fostering and encouraging an atmosphere of

disrespect towards Russell by other officers and supervisors in the 19th District. In addition, Singleton made unwanted sexual advances and sexually explicit comments to her about his penis, wrongfully accused her of faking injuries, made an unprofessional diagnosis of the cause of Russell's head injury, (e.g. attributing causation to pending disciplinary action when the record clearly showed she suffered a serious head injury while investigating a homicide on June 16, 2008) and subjected her to an excessive level scrutiny not given similarly situated male subordinates. His false statements in an official police proceeding materially contributed to her being terminated from employment as a police officer. He failed to train and supervise his subordinate police officers not to discriminate on the basis of race or sex or retaliate for lawful conduct.

24. Defendant, Lieutenant Thomas Hyers is a Caucasian male who, at all relevant times, held a supervisory position in the Philadelphia Police Department as officer in charge of the 5th Platoon of the 23rd Police District. He is being sued in his individual and official capacity. While acting under color of law pursuant to his official duties, he fostered and participated in establishing a hostile work environment by calling Plaintiff Russell "little girl', and by disseminating false adverse rumors about Russell to Captain Broadbent before she was transferred into Broadbent's command in the Narcotics Strike Force. In addition Lt. Hyers wrote an adverse evaluation report for Plaintiff Russell and a 'glowing' report for a similarly situated male with a substantially worse duty performance.

25. Defendant, Lieutenant Jack Feinman (retired) is a Caucasian male who, at all relevant times, held a supervisory position in the Philadelphia Police Department's Narcotics Strike Force. He is being sued in his individual and official capacity. While acting under

color of law pursuant to his official duties, he fostered and participated in establishing a hostile work environment directed against Plaintiffs. He discriminated against Russell by undermining and eroding her supervisory authority, accused her of having an affair with a subordinate to embarrass her in front of subordinates, made and condoned racist and sexist comments about her with and from her subordinates, accusing her of making false statements about Officer Eric Dial calling her a 'bitch' and a 'fucking cunt' and Jeanie Spicer calling Russell a "black bitch", encouraged an atmosphere of retaliation towards Sadowski and Campbell by peers and other supervisory personnel for telling the truth in a police investigation, intentionally choose to not properly investigate a threatening note placed on Campbell's locker, talked and laughed with other officers and supervisor's about the correctness of terminating Sadowski and Campbell for being truthful when questioned about Dial's comments, intentionally denied Sadowski access to the Employment Assistance Program (EAP) and delayed medical care while watching him suffer from severe chest pains, denied Campbell access to the EAP and to medical care when Campbell was standing before him complaining of chest pains, excessively sick checked Sadowski and Campbell, caused both to be frequently be 'written up ' for discipline when no real transgression occurred and drastically reducing overtime opportunities for them. He failed to train and supervise his subordinate police officers not to discriminate on the basis of race or sex or retaliate for lawful conduct.

26. Lieutenant Edward Spangler is a Caucasian male who, at all relevant times, held a supervisory position in the Philadelphia Police Department's Narcotics Strike Force. He is being sued in his individual and official capacity. While acting under color of law pursuant to his official duties, Spangler fostered and participated in establishing a hostile

work environment by intentionally discriminating and condoning discriminatory conduct towards Russell. He failed to train and supervise his subordinate police officers not to discriminate on the basis of race or sex or retaliate for lawful conduct.

27. Lieutenant Laverne Vann is a black female who, at all relevant times, held a supervisory position in the Philadelphia Police Department's Narcotics Strike Force. She was a peer to Plaintiff Russell. She is being sued in her individual and official capacity. While acting under color of title pursuant to her official duties, she fostered and participated in establishing a hostile work environment directed against Plaintiff Russell. She openly referred to Russell as a 'bitch' to third parties when they both were Sergeants. Her conduct was intentional.

28. Lieutenant Charles Green is a Caucasian male who at all relevant times held a supervisory position in the Philadelphia Police Department as the commander of the City-wide Vice Unit. He was Russell's commander during her tenure in that unit. He is being sued in his individual and official capacity. Russell believes and avers that while acting under color of law pursuant to his official duties, he fostered and participated in establishing a hostile work environment by receiving and acting on unfounded rumors transmitted to him from Lieutenant Doris of the Narcotics Strike Force as Russell transferred from that unit into City Wide Vice and performing "no notice" spot checks on Russell's duty performance while he was in an of duty status. He wrongly accused Russell of " stealing time" He failed to train and supervise his subordinate police officers not to discriminate on the basis of race or sex or retaliate for lawful conduct.

29. Carol Madden is a female who at all relevant times was a non-uniformed 'civilian' employee of the City of Philadelphia as an Occupational Safety Administrator for the

Philadelphia Police Department. She is being sued in her individual and official capacity. While acting under color of law pursuant to her official duties, she intentionally gave material false information regarding procedures and processes during Plaintiff's Russell's medical status change hearing in a way that contributed to the denial of 'Heart and Lung' benefits for Russell.

30. At all relevant times, all of the above named Defendants, individually and in concert; acting under color of law and in conformance with established customs of the Philadelphia Police Department, intentionally, maliciously or with deliberate indifference, discriminated in a manner that violated Plaintiffs rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. sections 1981 and 1983, The 1st and Fourteenth Amendments to the Constitution of the United States of America, provisions of the Pennsylvania Constitution, the Pennsylvania Human Relations Act, 43 P.S. sections 951-963 and in violation of Pennsylvania law and Philadelphia Police Department Directives. All police department defendants had either actual or constructive knowledge of similar acts of race and gender discrimination and of unlawful retaliation within the Philadelphia Police Department because of the number of lawsuits filed by police officers against the City of Philadelphia alleging discrimination and unlawful retaliation. At least one defendant has been a plaintiff in such a lawsuit.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

31. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein verbatim.

32. Plaintiff Russell was hired as a Philadelphia Police officer on April 5, 1999. She was promoted to Sergeant on March 8, 2004 and to Lieutenant on November 2, 2007.

33. From February of 2005 to July of 2009, Plaintiff Russell was subjected to a series of deliberate, malicious, mean spirited acts of discrimination, harassment and retaliation based on her race (Black) and sex (Female). These acts were meant to demean and undermine her authority in the workplace. They increased in intensity and frequency during the aforementioned time period and culminated in her wrongful termination of employment on July 6, 2009.

34. Throughout the aforementioned period, two or more Defendants referred to and either encouraged or allowed peers and subordinates to refer to Russell as "bitch" "fucking cunt" "black bitch" "Shanea Nea", "Shaneequa" and other derogatory terms. The terms 'bitch' and 'cunt' are demeaning, sexist terms used to denigrate females. "Black bitch is a racially charged permutation of the aforementioned terms. The latter two names are offensive and derogatory terms denoting a caricature of an inner city uncultured African American female. Russell's supervisors deliberately fostered maintained and condoned a hostile and illegal working environment that not only discriminated against her, but undermined her ability to function effectively as a supervisor by not allowing her to discipline subordinates who; disobeyed lawful commands, caused unnecessary safety risks, threatened her, were insubordinate, and consumed alcohol while in an 'on duty' status. As a result, police personnel under Plaintiff Russell's command were allowed be insubordinate and break rules without fear of consequences. For example, the following officers never received discipline for their acts of willful disobedience and insubordination; Eric Dial called Russell a bitch and a fucking cunt, Officer Spicer was drunk on duty and called Russell a "black bitch", Officer Kapusniak threatened to do physical violence to Russell, Officer McCarron told her she "wasn't shit" when he missed

an opportunity for overtime. All of these incidents were reported by Russell to her superiors.  None of the officers were disciplined. All of the officers are Caucasian. Plaintiff Russell avers that white male supervisors were not treated this way and were not openly called the male equivalent of the vile names Russell was called as set forth in preceding and subsequent paragraphs.

35. The above named Defendants were, at some point in time relevant to this Complaint, a part of Plaintiffs' chain of command or in supervisory positions that enabled them to make decisions that affected Plaintiffs' employment conditions. In addition, Plaintiff Russell avers that Defendants Blackburn, Horne, Broadbent, Kelly, Singleton, Green, and Feinman, all served together in the Narcotics Bureau and that their time in that command helped forge a professional " band of brothers" type of personal bond that facilitated the easy 'backchannel' transfer of false information about Russell amongst themselves.

36. During the relevant period, Plaintiff Russell's supervisors would pass adverse information along to personnel in the gaining command in such a manner that a hostile working environment was in effect upon her arrival at her new assignment.  With each transfer, Russell walked into a work situation where the deck was stacked against her. She never had a fair chance to demonstrate her leadership, technical proficiency and policing skills for an impartial group of supervisors and subordinates.  In each successive assignment during the relevant period, Plaintiff Russell received disparate treatment upon arrival that hurt her ability to effectively supervise. More significantly, both Russell and her subordinates were informed, by both language and conduct of her superiors, that she did not have the full authority to supervise her subordinates commensurate with her rank and position.  For example; during her tenure at the Narcotics Strike Force, Lieutenant

Feinman, Russell's immediate supervisor regularly bypassed her and communicated directly with her subordinates and colleagues on various operational matters including the overtime schedule. He openly referred to her as Shanae-Nae and Shaneequa with her peers and subordinates both in the workplace and at a party he hosted at his home in December of 2006 for guests that included Russell's subordinates. He caused Russell to have an anxiety induced asthma attack when he falsely accused her of lying about officer Dial's and Spicer's conduct, as well as his (Feinman's) harassment of her. Plaintiff Russell believes Feinman's conduct was blatant intentional discrimination based on her gender and race.

37. Plaintiff Russell was subjected to gender discrimination in its rudest forms while on duty. For example, she was, without justification, falsely accused by Lieutenant Feinman of having a sexual affair with a subordinate officer while other subordinate officers were within earshot. Plaintiff Russell believes and avers that this done to attack Russell's character and further diminish her authority. In addition, Russell suffered a series of unsolicited and unwanted sexual advances from Captain Singleton while she was under his command in the 19th Police District. Captain Singleton made numerous suggestive comments that insinuated his interest in a sexual relationship (e.g. " are you married" "what kind of man do you like" and "you may have heard about me, I used to do my thang"). Plaintiff Russell tried to ignore his advances, but was personally affected and offended.

38. Several of the most egregious examples of discrimination and retaliation inflicted upon Plaintiff Russell, and later upon Plaintiffs Sadowski and Campbell's hostile work

environment arose from a series of incidents that included Russell being called a "bitch' and a "fucking cunt". A synopsis of those events follows.

39. In February of 2005, Plaintiff Russell was transferred from her supervisory position in the 23rd Police District to a position in the Narcotics Strike Force upon the recommendation of former Police Commissioner Sylvester Johnson. Russell was transferred because she impressed Commissioner Johnson with her hard work and exemplary duty performance.

40. Prior to her departure from the 23rd District her supervisor, Lieutenant Hyers, who had previously addressed her as "little girl" in a demeaning manner, and actively had undermined her authority with her subordinates based on her status as a female, told her "So you're being transferred huh? You got outta here in the nick of time. I just want you to know 'Spanky' (Captain Broadbent, the head of The Narcotics Strike Force) is one of my good friends and I will be giving him a call" Lieutenant Hyers also told Russell "I personally don't think you have enough time to be here" Plaintiff Russell believes Hyers made this comment because he did not like Russell's transfer to an elite unit with her amount of time in service. Russell believes the tone and content of Hyer's comments were an obvious form of discrimination based on Plaintiff's gender.

41. Plaintiff Russell believes and therefore avers that Lieutenant Hyers helped establish the hostile work environment she encountered at the Narcotics Strike Force by passing on false, adverse and derogatory information about her to Captain Broadbent.

42. Upon arrival at the Narcotics Strike Force, Plaintiff Russell, who was a police sergeant at the time, overheard Sergeant Hayes tell another police officer that Captain Broadbent said she (Russell) would have a hard time in the Narcotics Strike Force (NSF) because he was putting her in Lieutenant Spangler's squad. Upon information and belief, she was

being set up to fail. Russell bases this averment on Lt. Hyers comments calling her "little girl' telling her she shouldn't be in her position, informing her of his intention to "talk to" Captain Broadbent", and the hostile, unwelcoming reception by Broadbent upon her arrival at NSF headquarters.

43. On March 11, 2005 Plaintiff Russell discharged her weapon at a suspect who was digging in his pants and refused to show his hands. The suspect suffered a graze wound and was transported to the hospital. Police Officer Bachmayer, then one of Plaintiff's Russell's subordinates, told Lieutenant Spangler that traces of marijuana were found in the suspect's pants. Bachmayer later told Russell that Lt. Spangler instructed him to discard the marijuana. Much later, during a disciplinary hearing for Officer Dial, the hearing board gave short shrift to Officer Dial's conduct and instead turned its attention to Plaintiff Russell; accused her of shooting an unarmed man and made probing inquiries into Russell's medical history. Russell was humiliated by the line of questioning. Russell believes this was a form of intentional discrimination.

44. On March 14, 2005, while questioning Officer Dial, about his failure to comply with her instructions to conduct a bicycle patrol, Officer Dial called Russell a 'bitch' and a 'fucking cunt'.

45. Later, Officer Dial admitted calling Plaintiff Russell a 'bitch' and a "fucking cunt" to Plaintiffs Sadowski and Campbell.

46. On May 17, 2005, Officer Dial again admitted to calling Russell a 'bitch and a 'fucking cunt' in the presence of Lt. Spangler. Both Dial and Spangler later recanted.

47. Plaintiff Russell immediately submitted documents requesting that Officer Dial be disciplined.

48. Captain Broadbent refused to punish Officer Dial. Russell quotes Captain Broadbent as saying that Officer Dial's comments "were not that bad".

49. Captain Kelly, Broadbent's replacement, also refused to punish Officer Dial. He said he could not investigate or discipline an officer for a violation that did not occur under his command. Plaintiff Russell believes and therefore avers that Kelly's excuse for not disciplining Dial was an intentional falsehood.

50. On July 12, 2006 Plaintiff Russell submitted a memorandum through the chain of command to the Inspector Horne and the Chief Blackburn of the Narcotics Bureau to inform them of the treatment she was receiving and the lack of discipline and support at her assignment. They took no action.

51. Plaintiff Russell then informed Chief Kimberly Byrd about the incident during a chance encounter when Byrd asked how things were going. Chief Byrd subsequently directed Captain Kelly to interview all personnel on duty during the time of the name calling incident of May 14, 2005 where Dial called her 'bitch' and 'fucking cunt'.

52. Captain Kelly did not comply with the directive to interview all personnel on duty at the time of the incident.

53. Despite the foregoing, Plaintiffs Sadowski and Campbell were scheduled to be interviewed by Captain Kelly and Lieutenant Haag on November 16th, 2006 about the vile, sexist names Officer Dial called Russell on May 14,2005. Almost immediately, fellow officers in the Narcotics Strike Force began to ask them what they were going to say when questioned and advised them to say they did not recall what happened. Sadowski and Campbell both expressed their fears of retaliation to Captain Kelly if they

were truthful and told what they knew. They were assured by Captain Kelly that the content of their statement would remain confidential and would not be disclosed.

54. Ignoring advice from peers to "not recall", Plaintiffs Sadowski and Campbell complied with 1.11 and 1.12 of the Philadelphia Police Department disciplinary code and honestly stated that Officer Dial told them that he called Plaintiff Russell a 'bitch' and a 'fucking cunt'.

55. On November 17th , the day following the interview with Captain Kelly, it was obvious from the reactions of fellow officers that the interview between Sadowski, Campbell, Haag and Kelly was not confidential. Co-workers shunned them in a manner that made it apparent their interview statements had been disclosed. Sadowski and Campbell believe this was the beginning of their hostile work environment.

56. On January 22, 2007, Sadowski placed a note on Campbell's locker with a message from Campbell's wife. Campbell's wife had asked Sadowski to tell Campbell to call her at home. Sadowski wrote the note and taped it to Campbell's locker.

57. When Sadowski and Campbell returned to work on January 27, 2007, the note on Campbell's locker had been altered to read "RAT" in two places. A copy is enclosed at Exhibit B and is incorporated by reference.

58. Sadowski and Campbell felt threatened by the 'Rat' note and out of concern for their safety asked Lieutenant Feinman to investigate the matter.

59. Lieutenant Feinman was aware of the sensitive circumstances surrounding the 'Rat' note. Despite this knowledge, he failed to secure the area, failed to immediately contact a commanding officer and failed to notify the Internal Affairs bureau to get instructions on the appropriate course of action for the matter.

60. Sadowski made copies of the note and secured the original in a clear plastic bag.

61. Lieutenant Feinman took no action on the 'Rat' note until Sadowski and Campbell informed the dispatcher via police radio that they were enroute to the Internal Affairs Division to initiate an investigation.

62. Immediately upon learning of Sadowski's intent to go to Internal Affairs, Lt. Feinman told Sadowski via telephone to take the note directly to Captain Kelly who was off-duty and visiting his mother at her house. This instruction violated the chain of custody and evidence for this document, because Kelly was in an off-duty status and no property receipt was issued for the evidence.

63. Sadowski delivered the note to Captain Kelly.

64. Sadowski and Campbell were later informed that the note did not test positive for fingerprints or any other identifying evidence.

65. The 'Rat' note was never returned to Plaintiff Sadowski or Plaintiff Campbell. No record of its receipt, retention or transfer has ever been provided.

66. Sadowski and Campbell contend that the failure to properly investigate the 'Rat' note incident was a form of retaliation by Lieutenant Feinman for their truthful statements in the interview with Captain Kelly on November 16, 2006.

67. On February 22, 2007, Plaintiff Sadowski overheard a conversation between Lieutenant Feinman, Lieutenant Smith, Corporal Nowakowski and Officer Cuddahy discussing his and Campbell's forthcoming testimony at Officer Dial's PBI (Police Board of Inquiry). Plaintiff Sadowski heard Lieutenant Smith say " Sadowski and Campbell should be immediately dismissed after the hearing" or words to that effect.

68. Plaintiff Sadowski immediately felt anxious after hearing the aforementioned comments; he became fearful, experienced dizziness, chest pains and shortness of breath.

69. Sadowski went to Lieutenant Feinman's office, to discuss what he overheard when Feinman and others were talking and laughing about Sadowski and Campbell being "dismissed after the hearing". Sadowski told Feinman he was tired of being harassed at work for telling the truth and wanted to contact EAP (the Employee Assistance Program) about his work situation. Access to EAP is a Department resource commonly afforded police officers experiencing work related problems and stress. Feinman refused to let Sadowski go to EAP and demanded that Sadowski discuss the situation with him first. Sadowski refused and told Feinman that he (Feinman) was part of the reason EAP assistance was needed. He also told Feinman that he felt sick and needed to talk to someone. Despite this, Feinman told Sadowski that if he left his office he would be carried AWOL (Absent Without Leave). Sadowski left Feinman's office to go to the locker room.

70. After Sadowski entered the locker room, Lieutenant Feinman blocked the locker room exit with his body to prevent Sadowski from leaving the room. Feinman 'chest bumped' Sadowski as he tried to get by. Again, Feinman threatened to list him AWOL if he left the building.

71. Sadowski left via another door went outside to get some air as he was having difficulty breathing. He used his telephone to get contact information for EAP as he left the building.

72. Once outside, Sadowski's condition worsened as the pain and discomfort intensified. Fineman confronted him and ordered him to get off the phone. Sadowski repeatedly said

that his chest hurt. Feinman ignored his statements about his chest hurting and continued to berate him and order him off the phone.

73. Fire Rescue was summoned after the EAP representative on the phone told Sadowski to tell Lieutenants Hagg and Feinman to contact the medics for emergency medical assistance.

74. Fire Rescue arrived. Sadowski was transported to the hospital where he was treated and diagnosed with Anxiety Induced Hypertension. Later, Sadowski was denied the 'Heart Lung' benefits normally allowed for police officers who are injured while on the job. Heart and Lung benefits, formally known as the "Enforcement Officer Disability Benefits Law " of Jun. 28, 1935, P.L. 477, No. 193 Cl. 44, commonly and hereinafter referred to as 'Heart and Lung' benefits, provides for payment of salary, medical expenses and hospitalization for Pennsylvania law enforcement officers and firefighters who are injured while on duty.

75. As a result of the aforementioned denial, Sadowski was forced to use his accrued time in order to be paid while recovering from the illness he incurred while in an 'on-duty' status on February 22, 2007. He believes and avers that this denial was a form of retaliation by Feinman and others for his truthful statement in the investigation of the incident that occurred on May 14, 2005 when Officer Dial called Russell names as set forth in the preceding paragraphs of this Complaint.

76. On March 10, 2007, Plaintiff Campbell was in Lieutenant Feinman's office discussing a sick note. During the discussion, Feinman began to intimidate Campbell about Sadowski's statements of his prior injury from a previous incident with Feinman.. Feinman told Campbell "You tell Sadowski that I am not taking this sitting down" At

this point in the discussion, Campbell complained of chest pains and said asked to go to the hospital to get medical attention. Feinman denied Campbell's request. Campbell had to drive himself to the hospital for medical care while experiencing chest pains. Plaintiff Campbell believes this denial of medical attention by Lieutenant Feinman was a form of intentional unlawful retaliation for Campbell's truthful statements about officer Dial calling Russell a "bitch" and a "fucking cunt".

77. Further, after providing truthful statements regarding Officer Dial, Plaintiffs Sadowski and Campbell were 'sick checked' on orders from Lieutenant Fitzgerald, Feinman's replacement, in a manner that was inconsistent with Fitzgerald's sick check policy. Sick checking is a practice whereby officers are dispatched to conduct unannounced visits to the residence of a police officer on medical leave to confirm his or her status. Plaintiff's believe and therefore aver that no other officers were ever sick checked by Fitzgerald. Plaintiffs Sadowski and Campbell believe and therefore aver that this practice was done in retaliation for their truthful testimony regarding Officer Dial calling Russell a "bitch" and a "fucking cunt".

78. Subsequent to the filing of a complaint with the E.E.O.C. and the PHRC, Sadowski's wife was harassed in public by Lieutenant Feinman on two occasions (once at a diner and again at a social function) in such a manner that she felt extremely uncomfortable and afraid. Mrs. Sadowski wrote a letter to the Police Commissioner and filed a formal complaint with Internal Affairs. Internal Affairs intentionally mishandled the complaint by focusing the investigation on Mr. Sadowski's conduct in manner that Ms. Sadowski withdrew the complaint for fear of adverse consequences to her husband.

79. All Plaintiffs believe and aver that they were treated as 'pariahs' in the workplace and have experienced a 'Serpico' affect as a result of the aforementioned facts. On at least four occasions, Plaintiffs were in life threatening confrontations with combative suspects or hostile crowds and fellow Narcotics Strike Force officers who were in a position to help refused to do so despite radio calls for assistance. Plaintiffs believe and aver that these situations were a direct result of the discriminatory and retaliatory environment fostered and encouraged by the Defendant Supervisors.

80. As a direct result of Defendants' conduct, Saundra Russell has lost a lucrative and promising career, suffered severe financial difficulties, has been diagnosed with Clinical Depression, still suffers symptoms from the head injury sustained while on-duty, and suffers emotional distress. She remains without medical insurance, suffers from a debilitating illness and requires surgery to alleviate a life threatening condition. Keith Sadowski, suffers from Anxiety Induced Hypertension, anxiety, emotional distress, fear for his physical safety and loss of overtime income. He was in good health and needed no medications of any kind before he gave the statement to Captain Kelly during Kelly's investigation of Eric Dial as set forth in preceding paragraphs of this Complaint. He continues to be harassed in the workplace. William Campbell has suffered an exacerbation of an existing heart condition, anxiety, emotional distress, fear for his physical safety and a substantial loss of overtime income.

81. Defendants had actual or constructive knowledge of the existing internal departmental problems with unlawful discrimination and retaliation along with the need to implement training programs to correct these problems because of the number of; newspaper articles, internal investigations, PHRC and EEOC complaints, Federal

Department of Justice investigations, and lawsuits filed by police officers

against the City of Philadelphia Police Department  in recent years.  Alleging

discrimination and retaliation.  These include the following:

a.  **Debra Frazier v City of Philadelphia, William Blackburn, et al**. 1:12-cv-01543. Causes of action: Discrimination based on race, sex and religion.

b.  **Jamie Miles v City of Philadelphia, et al.,** 2:11-cv-04040. Causes of action: Discrimination based on sex; retaliation

c.  **Sean Stewart v City of Philadelphia, Commissioner Charles H. Ramsey**, et.al, 2:10-cv-03435. Causes: of action: Discrimination based on race, retaliation

d.  **Jasmine Young v City of Philadelphia Police Dpt, Commissioner Charles H. Ramsey**, 2:12-cv-05729. Causes of action: Discrimination based on gender, sex harassment, unlawful retaliation.

e.  **Larry Smart v City of Philadelphia, Commissioner Charles H. Ramsey, et.al**. , 2:12-cv-01096. Causes of action: Discrimination based on race, retaliation, civil rights deprivations

f.  **Edward Spangler and Donna Jaconi v City of Philadelphia**, **Jack Feinman, et.al**. 2:10-cv-03434. Causes of action: Employment discrimination, retaliation.

g.  **Jeffrey Hannan v City of Philadelphia, William Blackburn**, **et.al**., 2:05-cv-02863 Causes of action: Retaliation, Due process violations, civil rights conspiracy

h.  **John Massi v City of Philadelphia, Commissioner Charles H. Ramsey, Kevin Bethel. et.al**. 02-cv-01309 ( J. Pratter). Causes of action: Discrimination based on race and gender, failure to train, retaliation, hostile work environment.

i.  **Randi Davis v City of Philadelphia, Commissioner Charles H. Ramsey, Aaron Horne, et al**., 02:05-cv-04571. **C/A?**

j.  **Robert Lee v City of Philadelphia**, No. 02-862 ( J. Shapiro). Causes of action: Age discrimination, retaliation.

k.  **McKenna, et.al. v City of Philadelphia , et.al** 02-98-cv-05835 and 02-99-cv-01163. Third Circuit Court of Appeals docket No.:  09-3567 and 10-3430 July 11, 2011 and August 17, 2011. Causes of action: Discrimination based on race, retaliation

l.  **Denise Szustowicz v City of Philadelphia et.al**, No.: 02-2054 (J. Buckwalter) . Causes of action: Discrimination based on gender, retaliation.

**m. Kimberly Byrd v. City of Philadelphia, Commissioner Charles H. Ramsey et.al**
No.: 2:10- cv-03551. Causes of Action: Discrimination based on gender and race.

**n. Salvato v City of Philadelphia et.al**, 2:13-cv-02112. Causes of action:Discrimination based on race gender and retaliation.

**o. Kline v City of Philadelphia, Commissioner Charles H. Ramsey, Carol Madden et.al.,** 2:11-cv-04334. Causes of Action, 1st 14th Amendments, retaliation

**p. Smith v City of Philadelphia, Commissioner Charles H. Ramsey, et.al,** 2:12-cv-00045 Causes of Action, Discrimination based on race, sex and disability.

**COUNT I - TITLE VII, HOSTILE WORK ENVIRONMENT, DISPARATE TREATMENT,  RACE AND GENDER
SAUNDRA RUSSELL v BROADBENT,
KELLY, SINGLETON, HYERS, FEINMAN,
SPANGLER, GREEN and VANN**

82. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein verbatim.

83. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Specifically, Plaintiff  Russell complains of Defendants' violation of Title VII's prohibition against  discrimination based, on her race and gender.

84. Plaintiff Russell is a black female and therefore was a member of a class protected under Section 703 of Title VII of the Civil Rights Act against racial and gender discrimination by her employer and its supervisory personnel during her time of employment with Defendant  City of Philadelphia.

85. At all relevant times, Plaintiff Russell, adequately and completely performed all of the functions, duties and responsibilities of her employment with the City of Philadelphia as demonstrated by her rapid rise through the ranks from police recruit to Lieutenant and

special assignments throughout the department in just over 7 years.

86. Acts of intentional race and sex based discrimination against Plaintiff Russell by her supervisors began in earnest in 2005 as set forth herein supra. These acts were repeated by Russell's supervisors from 2005 until Russell's termination and can therefore be characterized as pervasive.

87. To reiterate, Plaintiff Russell was intentionally and regularly subjected to disparate treatment by her supervisors on the basis of her status as a black female. The discrimination took the forms of, intentionally undermining her supervisory authority, disparate performance evaluations, racist and sexist name calling and comments, unfounded adverse rumors being passed between supervisors and Russell moved to subsequent assignments, biased conclusions in Internal Affairs Complaints, unwanted suggestive sexual comments and advances, and denial of 'Heart and Lung' benefits in a manner that violated her due process rights and caused her termination of employment.

88. Defendants had actual or constructive knowledge of the existing internal departmental problems with unlawful discrimination and retaliation along with the need to implement training programs to correct these problems because of the number of; newspaper articles, internal investigations, PHRC and EEOC complaints, Federal Department of Justice investigations, and lawsuits filed by police officer against the City of Philadelphia Police Department in recent years as set forth in the preceding paragraphs.

89. Plaintiff Russell also believes that the 'Serpico' treatment discussed herein above was a form of retaliation by the rank and file police officers that was condoned or tolerated by Narcotics Strike Force supervisors.

90. Plaintiff Russell believes and therefore avers that Captain Broadbent, acting under color of law, intentionally discriminated against her on the basis of gender in violation of Section 703 of Title VII of the Civil Rights Act of 1964 when he:

    a. accepted passed on and acted on the adverse information about Russell passed to him from LT Hyers as described in the preceding paragraphs,

    b. decided not to discipline Officer Dial for calling her a "bitch" and a "fucking cunt",

    c. when he condoned Dial's comments by saying that the names Dial called he called Russell ( e.g. "bitch" and "fucking cunt") weren't "that bad".

91. Plaintiff Russell believes and therefore avers that Inspector Kelly, then a Captain, acting under color of law, intentionally discriminated against her on the basis of gender in violation of Section 703 of Title VII of the Civil Rights Act of 1964, when he:

    (a) refused to discipline Officer Dial for calling her a "bitch and "fucking cunt"

    (b) refused to discipline Officer Spicer for being drunk, AWOL, insubordination, and calling Russell a "black bitch".

    (c) falsely claimed that he could not discipline Dial because he was not the NSF Captain at the time of the incident prevented him disciplining officer Dial.

92. Plaintiff Russell believes and therefore avers that Captain Singleton, acting under color of law intentionally discriminated against her on the basis of gender in violation of Section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et

seq., as amended when he retaliated against her after his sexual advances were rebuffed
by:

    (a)  undermining her authority in the 19th District with subordinate officers (e.g. telling lower ranking personnel they didn't have to listen to her,

    (b) allowing lower ranking police officers to take Russell's specially equipped supervisor's police cruiser without informing her,

    (c ) regularly berating her in a harsh demeaning tone via police radio broadcasts,

    (d) not allowing Russell to discipline Police Officers Diane White and Shawn Hamilton for insubordination,

    (e) personally soliciting and investigating complaints against her from civilian members of the community in the 19th District after releasing Russell from her duty position.

    (f) intentionally making false statements in connection with Russell's Heart and Lung proceedings and encouraging Carol madden to do the same in a manner that resulted in a denial of benefits which in turn caused Russell's termination of employment as a police officer.

93.  Russell believes and therefore avers that this was, in large part, retaliation for rebuffing Singleton's unwanted sexual advances.

94. Plaintiff Russell believes and therefore avers that Lieutenant Hyers, acting under color of law intentionally discriminated against her on the basis of gender in violation Section 703 of Title VII of the Civil Rights Act of 1964, when he disparagingly called her "little girl" and threatened to call her gaining supervisor, Captain Broadbent with adverse information in an attempt to damage her career. Hyers also discriminated

against Russell when he gave a colleague, Sgt. Lamont Adams a better performance evaluation in areas where she outperformed Sgt. Adams.

95. Plaintiff Russell believes and therefore avers that Lieutenant Spangler, acting under color of law, intentionally discriminated against her in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964 on the basis of gender, when he refused to discipline Officer Dial for calling Russell a "bitch" and a "fucking cunt" and reneged on his promise to support Russell's efforts to discipline Officer Dial as described herein supra.

96. Plaintiff Russell believes and therefore avers that Lieutenant Green, acting under color of law intentionally discriminated against her on the basis of gender in violation of Section 704 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended when he received and disseminated unfounded adverse rumors about Russell as more fully set forth herein supra and "spot checked" her performance while he was in an 'off duty' status in a manner not used for her male peers.

97. Plaintiff Russell believes and therefore avers that Lieutenant Vann, acting under color of law intentionally discriminated against her on the basis of gender in violation of Section 703 of Title VII of the Civil Rights Act of 1964, when she referred to Russell as "bitch".

98. The aforementioned types of discrimination and retaliation have previously occurred with such long standing frequency and prevalence; as evidenced by the number of internal complaints, investigations, and lawsuits alleging race and gender discrimination; that they are pervasive and meet the statutory and case law standard for a 'custom' within the Philadelphia Police Department.

99. As a result of Defendants' customs and practices as described herein, Plaintiff Russell was unjustly and discriminatorily subjected to disparate treatment, a hostile work

environment, unlawful retaliation and ultimately terminated from her job.

100. As a further result of Defendants' above stated actions, Plaintiff Russell has been and will be deprived of income in the form of overtime pay, back wages, future wages including promotions consistent with her rate of advancement, health insurance, employment benefits and prospective retirement.

101. Therefore, Defendants have discriminated against Russell in violation of Title VII. The aforesaid conduct adversely altered the working conditions for Russell. A reasonable person in Russell's position would have been similarly affected by the circumstances set forth in this Count.

**COUNT II- TITLE VII**
**RETALIATION**
**SAUNDRA RUSSELL v. FEINMAN and SINGLETON**

102. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein verbatim.

103. This claim is authorized and instituted pursuant to the provisions of Section 704(a) of Title VII of the Civil Rights Act of 1964, for relief based upon the unlawful employment practices of the above-named Defendants. Specifically, Plaintiff Russell complains of Defendants' violation of Title VII's prohibition against retaliation in employment based, in whole or in part, upon participation in a protected activity.

104. Plaintiff Russell believes that the aforementioned discriminatory comments and acts by Lt. Feinman including denial of Heart and Lung benefits for her Anxiety Induced Asthma Attack, were done in part to retaliate against her for the protected activity of ; seeking redress for his acts of discrimination and harassment and for trying to have

subordinate officers  disciplined for misconduct and insubordination while in an 'on

duty'  status,( e.g  Spicer  for calling Russell a "black bitch" and for  being both AWOL

and intoxicated,  Kapusniak for threats, McCarron for telling Russell "you aren't shit"

and Dial for calling her a 'bitch' and a 'fucking cunt')

105. Plaintiff Russell also believes that the 'Serpico' treatment, the willful failure to provide

'back-up' assistance, on several occasions as described herein was a form of retaliation

against all Plaintiffs by the rank and file police officers that was condoned or tolerated by

Narcotics Strike Force supervisors.

106. Russell avers that Singleton retaliated against her for rebuffing his

unwanted sexual advances by; undermining her authority with subordinates,, allowing

subordinates to take her supervisor's vehicle, openly speaking to her in a harsh,

demeaning manner over the police radio,  personally soliciting complaints of misconduct

by Russell from civilian members of the community in the 19th District and providing

false information during Russell's  Heart and Lung investigation such that benefits were

denied and  Russell was ultimately terminated from employment.

107. As a result of Defendants' intentional acts, Plaintiff Russell was unjustly subjected to

 unlawful retaliation and suffered accordingly as stated herein.

108. Therefore, Defendants have discriminated against Russell in violation of Title VII. The

aforesaid conduct adversely altered the working conditions for Russell. A reasonable

person in Russell's position would have been similarly affected by the occurrences set

forth in this Count.

## COUNT III - TITLE VII SEX HARRASSMENT –HOSTILE WORK ENVIRONMENT SAUNDRA RUSSELL v FEINMAN and SINGLETON

109. Plaintiff incorporates all of the preceding paragraphs as if set forth at length herein verbatim.

110. Lt. Feinman falsely accused then Sgt. Russell of sleeping (having sex) with Officer Crawford, one of Russell's subordinate officers in front of the rest of the Officers assigned to her squad.

111. During Russell's tenure in the 19th District, Captain Singleton made a series of unwanted and unwelcomed sexual advances sexually explicit comments towards Russell as described at length herein supra that included him informing her that he was not circumcised.

112. Russell rebuffed Singleton's sexual advances.

113. Singleton retaliated against Russell in the manner described in the preceding paragraphs and elsewhere in this Complaint.

114. As a result of the foregoing, Russell suffered, embarrassment, humiliation and extreme emotional discomfort.

115. Therefore, Defendants have discriminated against Russell in violation of Title VII. The aforesaid conduct adversely altered the working conditions for Russell. A reasonable person in Russell's position would have been similarly affected by the occurrences set forth in this Count.

## COUNT IV- TITLE VII RETALIATION
## PROTECTED ACTIVITY
## KEITH SADOWSKI AND WILLIAM CAMPBELL v
## KELLY, FEINMAN and HORNE

116. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

117. Plaintiffs Keith Sadowski and William Campbell participated in activities protected by Title VII when they spoke truthfully with Captain Kelly about Officer Dial's statements to Plaintiff Russell as set forth herein above.

118. Both were assured of the complete confidentiality of their statements by Captain Kelly.

119. Retaliation by peers and supervisors against Sadowski and Campbell started immediately as described herein. It was apparent that their statements made in the 'closed door' meeting with Captain Kelly were leaked to other police officers.

120. Plaintiffs Sadowski and Campbell aver that the retaliation was intentional, malicious and took the form of;

    a. the lack of a proper investigation into the 'Rat' note incident by Lt. Feinman and Captain Kelly,

    b. denial of access to medical care and access to EAP by Lt. Feinman,

    c. loud laughing and joking between Lt. Feinman and other police supervisors that Sadowski and Campbell should be fired after testifying about Eric Dial's vile, sexist comments to Sergeant Russell,

    d. Lt. Feinman harassing and frightening Sadowski's wife while in public,

    e. the denial of overtime opportunities,

    f. an increase in the number of contrived unfounded counseling memorandae,

    g. threatened disciplinary actions directed to Sadowski and Campbell for contrived and trifling matters.

h. excessive sick checks.

i. A physical assault against Sadowski by Officer McGowan in 2007. McGowan was never disciplined for the assault.

121. The 'Serpico' treatment by colleagues, where calls for assistance were by Sadowski, Campbell and Russell were ignored by members of the NFS as previously described herein, a form of retaliation against Sadowski and Campbell for their truthful testimony about Officer Dial's comments to Russell.

122. Plaintiff's supervisors had actual or constructive knowledge of these incidents because calls for assistance were broadcast over police radio and are or should be a matter of record.

123. Plaintiffs aver that intentional actions of Lt. Feinman and other supervisors created the hostile environment that led rank and file police officers to believe this conduct to be acceptable. Plaintiffs believe and therefore aver that this conduct was encouraged, condoned or tolerated by Feinman and other supervisors in the Narcotics Strike Force.

124. Recently, since Defendant Aaron Horne has assumed supervisory duties at the Forensic Sciences Security Facility where Sadowski works pursuant to his present assignment, incidents of harassment and disparate treatment against Sadowski by Aaron Horne's immediate subordinates (i.e. Sgt. McKenna, Sgt. Lanier, and others) have increased exponentially. Sadowski continues to be 'written up' for contrived and minor offenses while co-workers routinely flout workplace rules with no disciplinary consequences whatsoever. For example; one co-workers openly sleeps on the job for most of the shift every night in plain view of supervisors, another watches television with headphones for most of the shift, others leave the facility early and commit major infractions with no

disciplinary consequences. Sadowski believes and therefore avers that he is being

harassed at work at the direction of Defendant Horne

125. One recent example of disparate treatment involves the denial of funeral leave.

Sadowski's request was submitted pursuant to Department custom, four day after his

relative died and was denied. Defendant Horne's request was approved despite the fact

that it was submitted eight days after his relative died. Department custom denied to

Sadowski but granted for Horne.

126. Sadowski and Campbell have been adversely affected by the conduct of the Defendants.

They have suffered financial losses and extreme emotional distress.

127. Therefore, Defendants have discriminated against Sadowski and Campbell for engaging in

protected activity in violation of Title VII The aforesaid conduct adversely altered the working

conditions for Sadowski and Campbell. Reasonable persons in Sadowski or Campbell's Russell's

position would have been similarly affected by the occurrences set forth in this Complaint.


**COUNT V 42 U.S.C. 1981**
**DISCRIMINATION-RACE**
**SAUNDRA RUSSELL v. FEINMAN**


128. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein

verbatim.

129. Plaintiff Russell, a black female, is a member of the protected class envisioned by

42 U.S.C. section 1981.

130. Plaintiff Russell had the right, as guaranteed by 42 USC 1981 to enjoy' the 'benefits,

privileges, terms and conditions of her employment contract with the

Philadelphia Police Department. According to 42 USC 1981, these rights are protected

against impairment under color of State law.

131. As established by the facts in the preceding paragraphs, Defendants, without

justification and under color of law vested in them by virtue of

their positions of authority within the Philadelphia Police Department, intentionally

discriminated and condoned acts of intentional discrimination against Russell in

violation of her rights under 42 U.S.C 1981 because their conduct denied her full access

to the conditions of her employment agreement with the City of Philadelphia.

132. Defendants had actual or constructive notice of racial discrimination within the

Philadelphia Police Department because of the number of complaints, investigations,

and lawsuits filed by police officers against the City of Philadelphia and police

supervisors as previously set forth in this Complaint.

133. Plaintiff avers that the number of complaints of discrimination and lawsuits for the

same indicate that racial discrimination, practiced as described both herein and as

alleged in the lawsuits cited in the this Complaint is sufficiently pervasive that it is a

custom in the police department.

134. Lt. Feinman and subordinate police officers freely exchanged ethnic slurs about Russell

as stated in preceding paragraphs. These slurs, freely exchanged between Russell's

supervisor and her subordinates on impaired the conditions of Russell's employment

contract with the City of Philadelphia because they undermined Russell's ability to

function effectively as a police supervisor by eroding her authority with her

subordinates. Russell believes and therefore avers that the Feinman party of December

2006 was not the first time or only time the aforementioned derogatory names were

used by Feinman and subordinate police officers. For example, Officer Spicer called

Russell a 'black bitch' while on duty and under the influence of alcohol and received no discipline.

135. The aforementioned erosion of Russell' s authority and the resulting adverse supervisory climate manifested itself in the conduct of lower ranking police officers whose insubordination and disrespect towards Russell became more open and flagrant. For example; Officer Dial, and at least two of Russell's superiors, acted as though was acceptable to call her a "bitch and a "fucking cunt', Officer Spicer was not disciplined for being drunk, AWOL and calling Russell a 'black bitch'. Officer Kapusniak was not disciplined for 'calling out' Russell and threatening her from the parking lot while Russell remained inside the building , McCarron was not disciplined for telling Russell that she wasn't 'shit' when he missed out on an overtime opportunity.

These acts of defiance arose from and are logically connected to the acts of intentional racial name-calling by Lt. Feinman and others as previously described herein.

136. Caucasian police officers were not subjected to this kind discriminatory treatment.

137. For the reasons stated here and elsewhere in this Complaint, the defendants named in this Count impaired Russell's enjoyment of the benefits of her employment contract with the City of Philadelphia Police Department because their intentional discriminatory acts irrevocably interfered with her ability to effectively function as a supervisor in the Philadelphia Police Department. Their conduct was arbitrary, shocking and an abuse of the power vested in them by virtue of their rank and position in the Police Department. A reasonable person in Russell's position would have been similarly injured and offended.

## COUNT VI- 42 U.S.C 1983
## DUE PROCESS
## SAUNDRA RUSSELL v SINGLETON and MADDEN

138. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein verbatim.

139. Plaintiff Russell suffered a serious head injury in the line of duty on June 16, 2008 while participating in a homicide investigation.

140. Plaintiff Russell, based on her status as a police officer, had a constitutional right to a fair and impartial Heart and Lung hearing and to be compensated according to the provisions of the Heart Lung statute in a manner consistent with the laws of the Commonwealth of Pennsylvania.

141. Russell's Heart and Lung benefits were denied because of intentional, material falsehoods and misrepresentations made during the hearing by Captain Singleton and Ms. Madden. A review of the circumstances set forth herein (supra) that precipitated these falsehoods and material misrepresentations by Madden and Singleton, clearly establish that they were arbitrary, shocking and an abuse of the power vested in them by virtue of their duty position and authority as employees of the City of Philadelphia.

142. These falsehood and misrepresentations were made pursuant to gender discrimination by Captain Singleton and arose from his retaliation against Russell for rebuffing his sexual advances as previously set forth in this Complaint.

143. As a result of the aforementioned Heart and Lung denial, Russell had to use all of her accrued sick and vacation days to recover and convalesce.

144. Russell ran out of sick days and vacation days before she was physically able to return

to duty and as a result, was terminated from employment by the Police Department.

145. But for the intentional falsehoods and misrepresentations, Russell would have been granted Heart and Lung benefits (because she was injured on the job) , and would therefore have had enough time to recover from her head injuries and return to work. She would not have been terminated.  Russell still has not been advised of the conclusion of her Heart Lung duty status.

146. Russell's Heart and Lung hearing was not fair and impartial because it was based on lies. Thus, its conduct was a denial of due process for Russell because it directly resulted in  job termination and the corresponding loss of property rights and  interests in the form of  pay, promotions,  health insurance, benefits and prospective retirement. Russell has never been advised of the conclusion of her Heart Lung duty status.

**COUNT VII 42 U.S.C. 1983**
**FIRST AMENDMENT**
**KEITH SADOWSKI AND WILLIAM CAMPBELL**
**v FEINMAN and HORNE,**

147.  Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein verbatim.

148.  Plaintiffs Sadowski and Campbell were and continue to be subjected to retaliatory actions by Defendants and other police department supervisors operating under color of law for their truthful  participation in a police investigation and their complaints of retaliation by peers and supervisors as described herein above.

149. Plaintiff's conduct, in the form of truthful statements that precipitated the aforesaid retaliation is protected by  the 1st Amendment of the Constitution of the United States of America because it involved the employer's treatment of women in the police

department and as such was a matter of public concern.

150. The retaliation directed against them took the form of the intentional discriminatory actions by peers and superiors as previously described herein, that continue to deprive them of equal treatment and property interests regularly afforded their co-workers.

151. Plaintiffs Sadowski and Campbell have been denied overtime opportunities that were readily available before they testified truthfully about Officer Dial's conduct.

152. Plaintiffs Sadowski and Campbell, continue to suffer the physical effects, mental duress that are the effects of the long term harassment they have endured.

153. Recently, since Defendant Aaron Horne has assumed supervisory duties at the Forensic Sciences Security Facility, (Sadowski's current duty station), incidents of harassment and disparate treatment against Sadowski by Aaron Horne's immediate subordinates (i.e. Sgt.McKenna, Sgt. Lanier, and others) have increased exponentially. Sadowski continues to be 'written up' for contrived and minor offenses when his one co-workers openly sleeps on the job for most of her shift every night. Others leave the facility early and commit major infractions with no disciplinary consequences whatsoever.

154. One recent example of disparate treatment involves the recent denial of funeral leave. Sadowski requested funeral leave according to normal practices (funeral leave starts on day of funeral) instead of the first day of death according to Directive 76. Sadowski's request was denied by his superiors which, included Defendant Horne. Horne also requested 'according to the norm' and was approved.

155. Sadowski and Campbell continue to fear for their safety and well-being while on the job. The disparate treatment they suffered by the intentional conduct of the Defendants

represents an arbitrary and shocking abuse of the power vested in their

supervisors by virtue of rank and position in the Philadelphia Police Department.


## COUNT VIII- PHRA P.S 42 SECTIONS 951-963
## DISCRIMINATION, HOSTILE ENVIRONMENT, AND RETALIATION
## SAUNDRA RUSSELL, KEITH SADOWSKI, WILLIAM CAMPBELL v
## HORNE, BROADBENT, KELLY, SINGLETON, HYERS, FEINMAN, SPANGLER,
## GREEN, VANN and MADDEN

156. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

157. Plaintiff Russell avers that Defendants, acting under color of title, intentionally

discriminated against her on the basis of race, sex, and unlawful retaliation in the

manner described herein above in violation of The Pennsylvania Human Relations Act.

158. Plaintiffs Sadowski and Campbell aver that Defendants, acting under color of law

violated the Pennsylvania Human Relations Act by retaliating against them in the

manner described in the preceding paragraphs for participating in Officer Dial's

investigation and testifying truthfully.

159. As a result of the foregoing, all Plaintiffs have suffered severe financial losses,

physical illnesses and emotional distress. Plaintiff Russell has lost her job. Plaintiffs

Sadowski and Campbell continue to experience a hostile work environment and

retaliation.


## IX- FAILURE TO TRAIN& CUSTOM- MONELL SAUNDRA
## RUSSELL, KEITH SADOWSKI, WILLIAM CAMPBELL v
## CITY OF PHILADELPHIA, RAMSEY, BETHEL, BLACKBURN, BROADBENT,
## KELLY, SINGLETON, HYERS, FEINMAN, SPANGLER, GREEN, and HORNE,

160. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein

verbatim.

161. All uniformed Defendants have a duty commensurate with their rank, title, duty position and span of control over personnel to train and supervise subordinates not to discriminate on the basis of race and gender and not to unlawfully retaliate for protected activity in the workplace.

162. Discrimination on the basis of race sex and unlawful retaliation for protected conduct violates federal laws, laws of the Commonwealth of Pennsylvania, public policy and Philadelphia Police Department Directives.

163. The number of complaints, investigations, and lawsuits brought by police officers against the City of Philadelphia, The Police Commissioner, senior police supervisory personnel and lower level supervisors is such that all Defendants who are or were members of the police department had actual or constructive knowledge and were therefore on notice about the problems of race and gender discrimination as a well as unlawful retaliation in the police department. The need for corrective action and training to address and deter and prevent discrimination and retaliation was or should have been obvious to all Police Department Defendants because, in addition to internal investigations, senior police leadership are routinely named as defendants in civil rights lawsuits filed by police officers. Several defendants in this lawsuit have been defendants in previous lawsuits for the same causes of action, and some have been disciplined for discriminating against subordinate employees by the Police Department.

164. Race and gender discrimination and unlawful retaliation in the Philadelphia Police Department are sufficiently pervasive to be recognized as a custom in the Department because they, as indicated by the number of lawsuits spanning many years, occur with

a frequency that both have become a permanent and well settled practice in the Police Department.

165. Based on the foregoing, the City of Philadelphia and Police Department supervisors named in this Complaint had actual knowledge of past discrimination and have failed to implement easily available measures to correct the problem . ( e.g., classes, briefings at roll call, periodic training for all personnel, leadership development training, and other training designed to identify problems before they fester and adversely affect the   workplace. This failure amounts to condoning indifference or acquiescence to a  known risk of  future harm of  discrimination and continued  violations of employee rights. Defendants have no effective training plan in place to  correct the problems of workplace discrimination and retaliation..

166. The aforementioned failure to train amounts to deliberate indifference to an obvious need for such training. All police officer Defendants were deliberately indifferent because they have followed a course of action (i.e. failure to address repeated discrimination and retaliation) without regard for the obvious consequence of their action; (i.e. repeated  episodes of discrimination and retaliation). Defendant's failure to act has resulted in the discrimination and retaliation directed against Plaintiffs as described in this Complaint as well as other similarly situated persons who are or were members of the Philadelphia Police Department. Thus defendants named in this Count were moving forces in the harm suffered by plaintiffs commensurate with their professional responsibilities and span of control. This training inadequacy has fostered a custom that will allow discrimination and retaliation to persist in the Philadelphia Police Department.  A Department wide anti-discrimination training

program is urgently needed.

167. Plaintiffs have suffered significant and irreparable harm as a result of Defendants

    failure to train and supervise subordinates to not to discriminate or

    unlawfully retaliate against fellow police officers.


## X- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## SAUNDRA RUSSELL v FEINMEN AND SINGLETON

168. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein

    verbatim.

169. Defendants Feinman, and Singleton, acting under color of law commensurate with

    their positions as supervisors in the Philadelphia Police Department, acted with reckless,

    callous disregard and invidious intent when they harassed, discriminated against and

    created a hostile working environment for Russell as set forth in the preceding

    paragraphs of this Complaint.

170 To reiterate, Feinman verbally abused and humiliated Russell in front of peers and

    subordinates, falsely accused her of misconduct, undermined her authority as a supervisor,

    made demeaning ethnic and sexist jokes about Russell with her peers and subordinates

    and refused to discipline Russell's subordinate officers who committed serous infractions

    when n an 'on duty status. Singleton, made unwanted sexual advances and comments,

    undermined Russell's authority as a supervisor and made material false representations

    during Russell's Heart and Lung hearing.

171. By reason of the Defendants' conduct, Russell has suffered emotional distress with

    accompanying physical manifestations.

## XI - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## KEITH SADOWSKI AND WILLIAM CAMPBELL FEINMAN
## and HORNE

172. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein vebatim.

173. Defendants Feinman, and Horne, acting under color of law commensurate with their positions as supervisors in the Philadelphia Police Department, acted with reckless and callous disregard invidious intent when they harassed, discriminated against and created a hostile working environment for Russell as more set forth in the preceding paragraphs of this Complaint.

174. To reiterate, Feinman retaliated against Sadowski and Campbell for testifying truthfully regarding vile and inappropriate comments made by Officer Dial, by failing to investigate the 'Rat Note' left on Campbell's, locker, refused Sadowski and Campbell access to medical treatment when they had chest pains, prevented Sadowski from contacting EAP, frightened Sadowski's wife, joked about terminating Sadowski and Campbell after they told the truth in the Dial investigation, cause both to be excessively sick checked, and fostered an atmosphere wherein fellow officers would not come to Sadowski, and Campbell's aid when they requested assistance when in dangerous confrontations while on 'street'.

175. Plaintiff Sadowski believes and avers that Defendant Horne continues to retaliate and harass him through Sgt.McKenna, Sgt. Lanier and others at his present duty assignment as set forth in preceding paragraphs of this Complaint.

176. By reason of the Defendants' conduct, Sadowski and Campbell have suffered emotional distress with accompanying physical manifestations.

# X- DAMAGES
## SAUNDRA RUSSELL, KEITH  SADOWSKI
### AND WILLIAM CAMPBELL

77. Plaintiffs incorporate all of the preceding paragraphs as if set forth at length herein.

178. As a direct and proximate result of the above-described intentional discrimination, retaliation, constitutional violations, failure to train and failure to supervise or willful blindness of Defendants, Plaintiffs have and will continue to suffer irreparable damages including; physical injury, illness, anxiety, humiliation, emotional distress, physical manifestations of  emotional distress, and devastating financial losses. Plaintiff Russell has no medical insurance, suffers from a debilitating illness and is presently faced with a life threatening condition that requires surgery.


**WHEREFORE**:   Plaintiffs seek judgment against Defendants jointly and severally as follows:

a. That the Court and Jury enter a declaratory judgment and find that the Defendant's conduct violated of Plaintiffs' rights pursuant to Title VII,  U.S.C. sections 1981, 1983 and 2000e *et.seq*., The 1st  and 14th Amendments to the United States Constitution, The Constitution of the Commonwealth of Pennsylvania. The Pennsylvania Human Relations Act and Pennsylvania Common Law, as well as Philadelphia Police Department Directives.

b. That the Court and jury find the Defendants' conduct so egregious, willful, intentional, outrageous, abusive and accompanied by a wanton and willful disregard for the foreseeable harm it caused that punitive damages are warranted;

c. That the Court and jury award such front pay, back pay compensatory, declaratory and actual damages as are allowable by law;

d. That the Court award such attorney fees, costs and expenses, pre and post judgment interest and delay damages as are allowable by law;

e. Other and further relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED

BY:

/S/HERBERT MCDUFFY, JR.,
HERBERT MCDUFFY, JR.ESQUIRE

ATTORNEY FOR PLAINTIFFS
HERBERT MCDUFFY, JR., ESQUIRE
200 CAMPBELL DRIVE,SUITE 103E
WILLINGORO, NEW JERSEY 08046
856-505- 8706 (OFFICE)
610-453-4015 ( CELL)
866-610-4503 ( FAX)
hmcduffy@aol.com