**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAUNDRA S. RUSSELL, | : | |
| WILLIAM CAMPBELL, AND | : | |
| KEITH SADOWKSI, | : | |
|       PLAINTIFFS | : | CIVIL ACTION |
| | : | |
|    v. | : | NO.  13-cv-3151 |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| CHARLES S. RAMSEY, | : | |
| AARON HORNE, CARROLL MADDEN,: | | |
| CHARLES GREEN, | : | |
| EDWARD SPANGLER, | : | |
| JACK FEINMAN, JAMES KELLY, | : | |
| KEVIN BETHEL, LAVERNE VANN, | : | |
| MELVIN SINGLETON, | : | |
| THOMAS HYERS, | : | |
| WILLIAM BROADBENT, AND | : | |
| WILLIAM BLACKBURN, | : | |
|       DEFENDANTS | : | |
| | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2015, upon consideration of Defendants Charles

S. Ramsey, Aaron Horne, Carroll Madden, Charles Green, Edward Spangler, Jack Feinman,

James Kelly, Kevin Bethel, Laverne Vann, Melvin Singleton, Thomas Hyers, William

Broadbent, William Blackburn, and the City of Philadelphia's Motion for Summary Judgment,

and any response thereto, it is hereby **ORDERED** that the defendant's Motion is **GRANTED**,

and judgment is entered in favor of the defendants and against plaintiffs on all counts of the

complaint**.**

                               **BY THE COURT:**

                               _____

                               **RESTREPO, J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| SAUNDRA S. RUSSELL, | : | |
| WILLIAM CAMPBELL, AND | : | |
| KEITH SADOWKSI, | : | |
| PLAINTIFFS, | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  13-cv-3151 |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| CHARLES S. RAMSEY, | : | |
| AARON HORNE, CARROLL MADDEN,: | | |
| CHARLES GREEN, | : | |
| EDWARD SPANGLER, | : | |
| JACK FEINMAN, JAMES KELLY, | : | |
| KEVIN BETHEL, LAVERNE VANN, | : | |
| MELVIN SINGLETON, | : | |
| THOMAS HYERS, | : | |
| WILLIAM BROADBENT, AND | : | |
| WILLIAM BLACKBURN, | : | |
| DEFENDANTS. | : | |
| | : | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants Charles S. Ramsey, Aaron Horne, Carroll Madden, Charles Green, Edward Spangler, Jack Feinman, James Kelly, Kevin Bethel, Laverne Vann, Melvin Singleton, Thomas Hyers, William Broadbent, William Blackburn, and the City of Philadelphia respectfully move this Court under Federal Rule of Civil Procedure 56(c) for an order granting judgment in their favor and against plaintiff on all counts of the complaint.  In making this motion, and pursuant to Local Rule 7.1(c), the defendants incorporate by reference the attached memorandum of law and affidavits as though they were fully set forth here.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
SHELLEY R. SMITH, City Solicitor
JANE ISTVAN, Chair, Litigation Group
NICOLE S. MORRIS, Chief Deputy City Solicitor

/s/ Duncan M. Lloyd
DUNCAN M. LLOYD, ESQ.
Assistant City Solicitor
Labor and Employment Unit


Date:  September 3, 2015

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| SAUNDRA S. RUSSELL, | : | |
| WILLIAM CAMPBELL, AND | : | |
| KEITH SADOWKSI, | : | |
|         PLAINTIFFS, | : | |
| | : | |
| | : | |
| | : | CIVIL ACTION |
| | : | |
|    v. | : | NO.  13-cv-3151 |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| CHARLES S. RAMSEY, | : | |
| AARON HORNE, CARROLL MADDEN,: | | |
| CHARLES GREEN, | : | |
| EDWARD SPANGLER, | : | |
| JACK FEINMAN, JAMES KELLY, | : | |
| KEVIN BETHEL, LAVERNE VANN, | : | |
| MELVIN SINGLETON, | : | |
| THOMAS HYERS, | : | |
| WILLIAM BROADBENT, AND | : | |
| WILLIAM BLACKBURN, | : | |
|         DEFENDANTS. | : | |
| | : | |
| | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

In this matter, plaintiffs' claims under Title VII, 42 U.S.C. §§ 2000e *et seq.*, the

Fourteenth Amendment to the Constitution of the United States of America, the Pennsylvania

Human Relations Act, 43 P.S. §§ 951-963, and the Pennsylvania Constitution, Art. I, §§ 1, 26,

and 28, are fatally flawed.  Procedurally, Plaintiff Russell is barred from proceeding on any

federal claims because they are time barred with respect to her 2009 charge.  Even if, however,

Plaintiff Russell had exhausted her claims, judgment must be entered in favor of the defendants

because Plaintiff Russell has not established that she was discriminated against on the basis of

her sex or race or that she suffered intentional infliction of emotional distress.  Plaintiffs Russell, Sadowski, and Campbell have all failed to establish that they suffered a hostile work environment, or that anyone took any retaliatory actions against them.  In short, each of plaintiffs' claims is wholly without merit, and judgment should be entered in favor of the defendants.

## I.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c).  The moving party bears the initial burden of illustrating for the court the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159-61 (1970).  The moving party can satisfy this burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323-25.  To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *see also Lawrence v. National Westminster Bank*, 98 F.3d 61, 65 (3d Cir. 1996).

Once the moving party has made a proper summary judgment motion, the burden switches to the nonmoving party.  The nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  As our Court of Appeals has observed, "the mere existence of some evidence in support of the non-moving party will not

be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue." *Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1308 (3d Cir. 1995); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (stating that if the evidence is merely colorable or is not significantly probative, summary judgment may be granted).  Further, the Plaintiff must identify evidence of record sufficient to establish every element essential to the claim.  *Petrucelli,* 46 F.3d at 1308.

Although the Court must resolve all doubts and consider the evidence in the light most favorable to the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n.12 (3d Cir. 1990).  The non-moving party cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment.  *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Celotex, supra,* 477 U.S. at 324).  The non-moving party has the burden of producing evidence to establish each element of his claim.  *Celotex*, 477 U.S. at 322-23.  "[W]hen the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party," the moving party is entitled to summary judgment in its favor.  *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 129 (3d Cir. 1998) (citing *Matsushita, supra,* 475 U.S. at 586).

## II.    STATEMENT OF STIPULATED FACTS

1)      William Campbell was appointed to the position of Philadelphia Police Officer on July 15, 1996.  He worked in the 25th District from 1996 through 2000.  He was then employed in the Narcotics Strike Force from 2007 through 2007.  He is presently a Police Officer assigned to the 7th District.  Campbell deposition, p. D500, Joint Appendix ("J.A.") Exhibit 21.

2)      Keith Sadowski was appointed to the position of Philadelphia Police Officer on December 15, 1997.  Effective December 18, 2002, Sadowski was assigned to the Narcotics Strike Force.  In November 2006, Sadowski put in a request to be transferred to the Forensic Science Unit.  That request was granted effective July 17, 2007, and he remains employed in the Forensic Science Unit.  Sadowski deposition, D691-92, J.A. Exhibit 24.

3)      Saundra Russell was appointed as a Philadelphia Police Officer on April 5, 1999, promoted to Sergeant on March 8, 2004.  Prior to 2004, she worked in the 25th District.  Russell served in the 23rd District from March 2004 - February 2005, the Narcotics Strike Force between February 2005 and February 2007, and City Wide Vice from February 2007 - November 2007.  Russell deposition, p. D530, J.A. Exhibit 22.

4)      Russell was promoted to Lieutenant on November 2, 2007 and assigned to the 19th District from November 2007 until July 9, 2009, when she was separated from her employment.  Russell deposition, p. D547, J.A. Exhibit 22; Letter, J.A. Exhibit 16.

5)      Individually named Defendants Charles Ramsey, Kevin Bethel, William Blackburn, Aaron Horne, William Broadbent, James Kelly, Melvin Singleton, Thomas Hyers, Jack Feinman, Edward Spangler, Laverne Vann, Charles Green, and Carol Madden were all employed by the Philadelphia Police Department during the relevant time.  Defendants' Answer and Affirmative Defenses, ¶¶17-29, Docket Document #12.

6)      On May 14, 2005, Police Officer Eric Dial called Sgt. Russell a "cunt."  Russell requested that disciplinary action be taken against him.  Dial was charged with insubordination.  On May 31, 2007, at a Police Board Inquiry hearing, he was found not guilty of insubordination.  PBI Hearing #06-0510, J.A. Exhibit 9.

7)      Philadelphia EEO Complaint #2004-018 involving Russell was initiated by the
Department in December 2004 and found, in 2006, that charges both brought by Russell and
brought against Russell were either unsubstantiated or inconclusive as a result of the allegations
being uncorroborated by named witnesses.  EEO Case #2004-018, J.A. Exhibit 5.

8)      Russell alleged to have had a panic attack on the job on September 27, 2006.  By letter
dated December 12, 2006, the Department denied her claim that this alleged injury was
connected to her service as an officer.  Letter from Capt. Ryan, J.A. Exhibit 7.

9)      Campbell and Sadowski allege that the protected activity that was allegedly violated by
Defendants stems from an interview that they gave on November 16, 2006 related to a
disciplinary investigation that was being conducted by the Commanding Officers of the
Narcotics Strike Force, Capt. James Kelly and Lt. Haag, pertaining to the Eric Dial/Saundra
Russell incident on May 14, 2005.  Campbell Deposition, p. D504-05, J.A. Exhibit 21; Sadowski
Deposition, p. D697-703, J.A. Exhibit 24.

10)     On January 22, 2007, Sadowski left a note on Campbell's locker, yet when they both
returned to work on their next scheduled day on January 27, 2007, someone had altered the note
and written "Rat" on the note under P/O's Sadowski's name.  It was never ascertained who wrote
"Rat" on this note after forensic analysis by the Department.  Campbell Deposition, p. D508-10,
J.A. Exhibit 21; Sadowski Deposition, p. D726-28, J.A. Exhibit 24.

11)     Russell was the subject of an internal case #2006-034 involving her employment within
the Narcotics Strike Force and her inability to get along with her colleagues.  The last
memorandum for case #2006-034 was filed in March 2007, by Capt. Kelly who at that time
suggested that Russell be reassigned to a different platoon upon her return from sick status.
Non-EEO Case #2006-034, J.A. Exhibit 8.

12)     Russell filed her first charge of discrimination with the EEOC on March 13, 2007, and an amended EEOC charge on February 23, 2009.  The discrete incident of Officer Dial using foul language in regards to Russell occurred more than 300 days prior to Russell's initial EEOC filing.  J.A. Exhibits 11 and 14.

13)     Campbell filed a charge of discrimination with the EEOC on March 13, 2007.

14)     Sadowski filed a charge of discrimination with the EEOC on March 13, 2007.

15)     Plaintiff Sadowski was the subject of an internal investigation regarding an incident with Defendant Feinman on February 22, 2007.  Feinman was internally cleared of any wrongdoing while Sadowski was found guilty of not following a direct order by Lt. Feinman pursuant to IAD Report #07-1027, dated September 7, 2007.  IAD Report # 07-1027, J.A. Exhibit 10.

16)     While at the 19th District, on or about June 18, 2008, Russell suffered a contusion to the head and right side of her face.  Russell stated this injury occurred on duty when she walked into a 2" x 4" block of wood.  Russell did not inform the Department of her injury until September 4, 2008.  Russell's application for worker's compensation benefits was denied on October 1, 2008.  The stated reason for the denial of Russell's benefits was that Russell's stated complaints were not causally related to the work related injury she reported occurring on June 18, 2008.  Russell was similarly denied Heart and Lung benefits pertaining to this incident.  Russell did not return to work after June 18, 2008.  She was separated from City employment on July 6, 2009 when all of her sick and vacation time expired.  Russell Deposition, p. D550-51; D553-54, J.A. Exhibit 22; Letter, J.A. Exhibit 16.

17)     Capt. Singleton and Capt. Kelly (both have since been promoted to Inspector) do not have authority to grant or deny Heart and Lung Benefits.  As is customary, this is done by an independent third party administrator.  Singleton Deposition, p. D630, J.A. Exhibit 23.

9

18)     In three individual determinations in 2009, Philadelphia's District EEOC found that the Department violated the Title VII rights of Plaintiffs Campbell, Sadowski, and Russell.  J.A. Exhibits 12, 13, and 17.

19)     In 2008 and 2009, Russell was the subject of IAD report #08-1077 in which IAD sustained insubordination charges brought against her for deleting computer files after she learned she was being removed from her administrative position within the 19th District.  IAD Report # 08-1077, J.A. Exhibit 18.

## III.     ARGUMENT

The City is entitled to judgment in its favor for Plaintiff Russell's discrimination, hostile work environment, sexual harassment, due process, intentional infliction of emotional distress, and retaliation claims under Title VII, the Fourteenth Amendment of the Constitution of the United States of America, the Pennsylvania Constitution, and the PHRA.  Procedurally, Plaintiff Russell is barred from proceeding on many federal claims because they are time barred with respect to her 2007 charge.  Even if, however, Plaintiff Russell had exhausted her claims, judgment must be entered in favor of the defendants because Plaintiff Russell has not established that she was discriminated against on the basis of her sex or race, that she suffered intentional infliction of emotional distress, or that she was retaliated against in any way.  Moreover, Plaintiffs Russell, Sadowski, and Campbell have each failed to establish that they were discriminated against, suffered a hostile work environment, or that anyone took any retaliatory actions against them.  In short, each of plaintiffs' claims is wholly without merit, and judgment must be entered in favor of the defendants.

### A.  Many of Plaintiff's Russell's Title VII Claims are Time-Barred

Many of Plaintiff Russell's Title VII claims of race and gender discrimination and retaliation are barred, in whole or in part, by the applicable statute of limitations.  Specifically,

Plaintiff Russell's hostile work environment, disparate treatment based on her race and gender,

retaliation, sexual harassment, and hostile work environment claims arising under Title VII for

alleged actions taken in Pennsylvania must be filed within 300 days of the occurrence of the

alleged discriminatory act.  *Seredinski v. Clifton Precision Products, Co.*, 776 F.2d 56, 61 (3d

Cir. 1985); Plaintiffs' Compl. p. 26-33.  Plaintiff Russell's first charge of Title VII-based

discrimination was filed on March 13, 2007 with the EEOC.  Therefore any allegations of

discriminatory acts that occurred more than 300 days before the date of filing of this charge

(approximately May 13, 2006) are barred.  As of May 13, 2006, Plaintiff Russell worked for the

Narcotics Strike Force where she remained until February 2007.  (She later was transferred to

City Wide Vice in February 2007 and remained there until she was transferred to the 19th District

in November 2007.)   Thus, though Plaintiff Russell alleges that she was discriminated against

"[f]rom February of 2005 to July 2009," she is barred from now raising any action that occurred

between February 2005 and mid-May 2006, a period that includes the Eric Dial incident in May

2005.

**B. Plaintiffs' Title VII Retaliation Claims Fail Because Plaintiffs were Not Engaged in Title VII Protected Activity and Cannot Establish a Causal Connection Between and Alleged Protected Activity and an Adverse Employment Action**

Plaintiffs' retaliation claims set forth in counts 2, 4, and 8 in their Complaint must be

dismissed because plaintiffs cannot establish a causal connection between any alleged protected

activity and an adverse employment action.  To establish a *prima facie* case for retaliation,

plaintiff must show that (1) he engaged in an activity protected by Title VII[1]; (2) the City took an

adverse employment action against him; and (3) there is a causal connection between his

---

[1] Plaintiffs' PHRA claims are analyzed under the same standard that applies to Title VII claims.  See Kelly v. Drexel Univ., 94 F.3d 102, 104-05 (3d Cir. 1996) (PHRA claims analyzed under Title VII framework).

participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006).  Plaintiff must show that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).  If the plaintiff establishes a *prima facie* case for retaliation, then the burden shifts to the City to establish a legitimate, non-retaliatory reason for its conduct.  *Moore*, 461 F.3d at 342.  The burden then shifts back to the plaintiff to show that the city's "proffered explanation was false, and that the retaliation was the real reason for the adverse employment action."  *Id.* (citation omitted).

An employee engages in protected activity when he opposes discrimination made unlawful by Title VII.  *Moore*, 461 F.3d at 341.  When opposing the employer's activity, the employee must "hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII."  *Id.*  The employee's "opposition" must not be equivocal.  *Id.*  The employee "must have stood in opposition to [the employer's activity] – not just objectively reported its existence or attempted to serve as an intermediary."  *Id.* at 350.

In order to state a *prima facie* case of retaliation in violation of Title VII a plaintiff must also establish that he or she suffered a materially adverse act.  An action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations marks omitted).

**Plaintiff Russell**

**1.  *Plaintiff Russell Must Demonstrate that She Engaged in Activity Protected By Title VII***

For the purposes of this Motion, defendants concede that Plaintiff's March 2007 EEOC filing constitutes protected activity. Therefore, she establishes the first prong of the test. However, as discussed below, she has not established the remaining two prongs necessary to defeat summary judgment on her retaliation claim.

### 2. *Plaintiff Russell Did Not Suffer an Adverse Employment Action*

In order for Plaintiff Russell to succeed on her Title VII Retaliation claim, she must prove that the City took an adverse employment action against her. Plaintiff Russell claims that she was retaliated as follows: 1) she was denied Heart and Lung benefits; 2) officers who allegedly called her names and were insubordinate were not disciplined; 3) officers did not provide her with back up while on duty; 4) Capt. Singleton's behavior towards her was "retaliatory." *See* Plaintiffs' Complaint, counts 2 and 8, and Exhibit 22, p. D537-39; D546; D553-54.

Plaintiff Russell's claim that officers called her names depends on false and baseless accusations, supposed second-hand information, innuendo, and gossip. These allegations do not sufficiently demonstrate that Plaintiff Russell suffered such harm as to implicate Title VII. While a Plaintiff need not prove the merits of a discrimination claim in order to state a claim for retaliation, the failure to produce evidence in support of even a colorable claim of discrimination, fails to satisfy the "reasonable belief" requirement. *See Miller v. Yellow Freight Systems, Inc.* 758 F. Supp. 1074, 1079-1080 (W.D. Pa. 1991); *accord Kania v. Archdiocese of Phila.*, 14 F. Supp. 2d 730, 737 (E.D. Pa. 1998). Plaintiff Russell has provided insufficient evidence to support these allegations of retaliation. Moreover, during her ten years of service with the City, Plaintiff was promoted to the rank of lieutenant and suffered no adverse employment actions at any time that support any of her claims. *See Yarnall vs. Philadelphia School Dist.*, 57 F.Supp.3d 410, 433-34 (E.D. Pa. 2014) (outlining requirements of adverse employment actions in Title VII retaliation context); *Deans vs. Kennedy House, Inc.*, 998 F.Supp.2d 393, 416-17 (E.D. Pa. 2014)

(defining limits on what constitutes an adverse employment action in Title VII retaliation cases); *Rosati vs. Colello*, 2015 WL 1475505 (E.D. Pa. 2015) (finding that police officer's district transfer, internal counseling forms, and performance reviews did not rise to adverse employment actions). In this matter, Plaintiff Russell's claims simply do not meet the standard set forth in both *Yarnall*, *Deans* and *Rosati* and, therefore, must fail.

Plaintiff Russell's allegation that Captain Singleton subjected her to inappropriate conduct is patently false, and she has no evidence, other than her own self-serving statement, to support her claim, which is insufficient to defeat summary judgment. *See Williams*, *supra*, 891 F.2d at 460 (a non-moving party cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment). Plaintiff Russell's allegation that the Captain solicited civilian complaints against her is false and not based on any evidence. Captain Singleton investigated Plaintiff Russell's conduct following a complaint initiated by a civilian. Such investigation is required by his duties as Commanding Officer of the 19th District. Captain Singleton's investigation of Plaintiff Russell's deficient and unprofessional work performance does not rise to the level of retaliatory conduct and is a required part of his job. Finally, Plaintiff Russell's suggestion that her Heart and Lung Benefits were denied as retaliation for her protected conduct is not supported by the evidence. Neither the City nor Capt. Singleton makes decisions regarding eligibility for Heart and Lung Benefits, it is in fact done by a third-party administrator. *See* Exhibit 22, p. D550-51; D553-54; Exhibit 16; Exhibit 23, p. D630. Additionally, Plaintiff Russell's appeal was heard by an independent hearing examiner. (See Exhibits 16 and 17).

In sum, Plaintiff Russell has presented no evidence that she either experienced an adverse employment action or that any of her retaliation claims are based on any competent evidence.

To the contrary, Plaintiff Russell was continuously promoted, rising to the rank of lieutenant in 2007, and at no point experienced a reduction in pay or title.  As such, her Title VII retaliation claim must fail.

### 3. *Even if Plaintiff Could Demonstrate that She Suffered an Adverse Employment Action, She Has Failed to Establish a Causal Connection Between that Activity and her Protected Activity.*

Even if the court finds that an adverse employment action was taken against Plaintiff Russell, Russell Title VII retaliation claim fails because she can't prove any causal connection that they were taken due to the filing of her EEOC charge.  The Third Circuit considers "a broad array of evidence" in determining whether a sufficient causal link exists to survive a motion for summary judgment.  *LeBoon vs. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007).  However, although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment.  *Id*.  In this matter, Plaintiff Russell was never fired nor ever received a pay cut during her tenure as a Philadelphia police officer.  Furthermore, Russell's June 2008 separation from City employment is not causally connected to either of her EEOC filings.  Because this falls short of the *LeBoon* standard, her claim must fail.

### Plaintiffs Sadowski & Campbell

Plaintiffs have not raised any material facts to suggest that either suffered retaliation.

### 1. *Plaintiffs Campbell's and Sadowski's Title VII Retaliation Claims Must Fail Because Their Conversations with Feinman, Kelly, and/or Horne Do Not Amount to Protected Activity*

Plaintiffs conversations with Defendants Feinman, Kelly, and/or Horne were not protected activity under Title VII or the PHRA because plaintiffs did not oppose unlawful discrimination during these conversations.

Plaintiffs allege that their protected activity consisted of an interview that they gave on November 16, 2006 related to a disciplinary investigation conducted by the Commanding Officer of the Narcotics Strike Force. The investigation concerned whether or not Police Officer Eric Dial used derogatory and demeaning language towards Plaintiff Russell. Cpt. James Kelly conducted the interview, which was recorded by Lt. Joseph Haag. The purpose of the interview was to determine what, if any, information Plaintiffs had regarding that incident. Both Plaintiffs allege that after this meeting, they were subjected to a hostile work environment, retaliation, and First Amendment retaliation. These conversations were objective and investigative in nature only and neither Plaintiff opposed any kind of allegedly discriminatory activity. Under *Moore*, these meetings simply do not constitute Title VII retaliation and, therefore, these claims must be dismissed.

### 2. *Even If Plaintiffs Conversations With Feinman, Kelly, And/Or Horne Are Protected Activity, They Did Not Suffer Any Adverse Employment Action*

Neither Campbell nor Sadowski was disciplined or demoted or ever received a reduction in pay at any relevant time period. Quite the contrary, both remain employed as police officers. Similar to the analysis for Plaintiff Russell in Sections B.1 and B.2, neither Campbell nor Sadowski have proffered any credible evidence that either has suffered any adverse employment action as a result of the conduct of any named defendant and, as such, and similar to Plaintiff Russell, their claims must fail.

### C. Plaintiffs Sadowski's and Campbell's First Amendment Retaliation Claims Should Be Dismissed Because they are Legally Insufficient

Plaintiffs' First Amendment retaliation claims should be dismissed for two reasons. First,

Plaintiffs were not speaking as private citizens on a matter of public concern during their participation in the Dial/Russell investigation. Secondly, they do not put forth any credible evidence that their participation in this investigation or what they said therein was at all related to any alleged retaliatory, adverse action by any Defendant.

To assert a viable First Amendment retaliation claim, a public employee must allege facts to show that the speech at issue is protected by the First Amendment and that the speech was a substantial or motivating factor in what is alleged to be the public employer's retaliatory, adverse employment action. *Dougherty v. School District of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014). As the Third Circuit recently reiterated, "[p]ublic employees do not renounce their First Amendment rights upon employment; however, 'the government's countervailing interest in controlling the operation of its workplaces' limits the First Amendment's ordinarily broad protections." *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015) (citations omitted). Accordingly, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti v. Ceballos*, 547 U.S. 410, 419, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).

As a threshold matter, this Court must determine, as a matter of law, whether Plaintiff's underlying speech was protected by the First Amendment. *Azzaro v. Cnty. of Allegheny*, 110 F.3d 968, 975 (3d Cir.1997). A public employee's speech is protected by the First Amendment when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill,* 455 F.3d at 241 (quoting *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951).

Where a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, a district court is generally not the appropriate forum in which to review the public employer's personnel decision.  See *Swartzwelder v. McNeilly*, 297 F.3d 228, 235 (3d Cir. 2002).

To determine whether Plaintiff was speaking as a private citizen rather than as a public employee, this Court must find that she made her underlying statements "pursuant to" her job duties. *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951; *Gorum*, 561 F.3d at 185.  The "controlling factor" is whether the statements were among the things the employee "was employed to do." *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951. Stated differently, "the First Amendment does not shield the consequences of 'expressions employees make pursuant to their professional duties.'" *Gorum*, 561 F.3d at 185 (quoting *Garcetti*, 547 U.S. at 426, 126 S.Ct. 1951).  "[T]he responsibility of a district court in evaluating whether a public employee's speech was made as a private citizen is to ask whether the speech at issue was 'outside the scope of his ordinary job responsibilities.'"  *Flora*, 776 F.3d at 179.

Whether Plaintiff was speaking on a matter of public concern depends on whether her statement's "content, form, and context establish that the speech involves a matter of political, social, or other concern to the community."  *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008); see also *Baldassare v. State of New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). "[M]erely personal grievances" cannot constitute public speech.  *Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 829 (3d Cir. 1994). If the speech is a matter of public concern, "[t]he plaintiff must [also] 'demonstrate his/her interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees' "

in order to trigger the First Amendment's protection. *Brennan v. Norton*, 350 F.3d 399, 413 (3d Cir.2003) (quoting *Baldassare*, 250 F.3d at 195).

In this matter, Plaintiffs Sadowksi and Campbell were simply answering internal questions about their understanding of what Eric Dial said about Saundra Russell, if anything, pursuant to their conversations with Capt. Kelly and Lt. Haag as they investigated Plaintiff Russell's accusations that Dial had called her a "fucking bitch" and a "cunt."  Even if Dial had said these things about Russell, it is implausible that Plaintiffs Campbell and Sadowski's conversations with Capt. Kelly pursuant to his investigation of that matter arise to a public concern. *See Berkery vs. Wissahickon School Bd.*, 2015 WL 1443275 at *8 (E.D. Pa. 2015) (outlining differences between speech of private and public concern in the context of the First Amendment and arguing that determination hinges on whether the speech at issue was outside the scope of ordinary job responsibilities).  Moreover, neither Sadowski nor Campbell articulate any adverse employment action taken by the department as a result of their participation in the Russell/Dial incident.  Because both simply answered questions about what Officer Dial said about Plaintiff Russell and nothing more, this simply does not rise to the standard in *Brennan* or *Berkery*.  As such, Plaintiffs First Amendment retaliation claims must be dismissed.

### D. Plaintiffs Russell's Discrimination and Hostile Work Environment Claims under Title VII and the PHRA and Must Fail Because She Did Not Experience an Adverse Employment Action

As set forth in Sections B.1 and B.2 above, Plaintiff Russell's Title VII and PHRA claims fail because she cannot establish that she experienced an adverse employment action under circumstances that give rise to racial discrimination.  Likewise, her claims of discrimination and hostile work environment also must fail because she cannot demonstrate that she suffered any adverse employment action.

19

Plaintiff also has the burden of demonstrating a *prima facie* case of disparate treatment race discrimination in which she must show that: (1) she is a member of a protected class, (2) she was qualified for the position, and (3) she was subject to an adverse employment action, (4) under circumstances that give rise to an inference of discrimination. *See, e.g., Sarullo v. United States Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003). Plaintiff fails to meet his burden because she he has not suffered an adverse employment action. To the contrary, Plaintiff Russell was continuously promoted, rising to the rank of lieutenant in 2007, and at no point experienced a reduction in pay or title. Similarly, as set forth in Sections B.2 and B.3 above, Plaintiffs Campbell and Sadowski's PHRA claims must fail because at no time did they experience an adverse employment action. In fact, Officers Campbell and Sadowski are still employed by the Department and have not experienced a demotion or reduction in pay at any relevant time.

### E.  Plaintiffs' <u>Monell</u> Claims Must be Dismissed Because They are Legally Insufficient

Each Plaintiff brings a failure to train and custom claim against the City of Philadelphia and various individual defendants under *Monell v. Department of Social Services of New York City*, 436 U.S. 658 (1978). However, Plaintiffs' claims include no *factual* allegations regarding the policies or customs of the City. Instead, Plaintiffs attempt to state a *Monell* claim by merely setting forth a series of conclusory and general statements. Moreover, Plaintiffs completely fail to allege conduct by a municipal decisionmaker in their complaint.

In adjudicating *Monell* claims, "courts have recognized a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." *Mulholland v. County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and quotations omitted). A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy, or edict," while a custom occurs when practices are "so permanent

and well-settled as to virtually constitute law." *See Id.* (citations and quotations omitted).   In

either case, "a plaintiff must show that an official who has the power to make policy is

responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled

custom." *Id.*   In essence, a plaintiff is required to demonstrate that "the entity itself, through its

policies or practices, must be sufficiently culpable before [the courts] impose § 1983 liability

upon it." *Jackson v. City of Philadelphia*, 2012 WL 2135506, at *12 (E.D. Pa. June 13, 2012).

Further, the plaintiff bears the burden of providing evidence that the identified "policy or custom

was the proximate cause of the injuries suffered." *Watson v. Abington Twp.*, 478 F.3d 144, 155

(3d Cir. 2007). "If…the policy or custom does not facially violate federal law, causation can be

established only by demonstrat[ing] that the municipal action was taken with 'deliberate

indifference' as to its known or obvious consequences.  A showing of simple or even heightened

negligence will not suffice." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

Here, Plaintiffs fail to adequately allege a *Monell* claim because none adduces any

specific evidence that the City of Philadelphia has any custom or policy which was the proximate

cause of any of their claims.   Plaintiffs also fail to identify a municipal policymaker in their

complaint.  Finally, Plaintiffs cannot state a failure-to-train claim because their claims fail to

identify specific instances of prior police misconduct caused by allegedly inadequate training.  In

sum, Plaintiffs' *Monell* claims are legally insufficient and, thus, must fail.

### F.   Plaintiffs Russell, Campbell, and Sadowski's Intentional Infliction of Emotional Distress Must be Dismissed Because they are Legally Insufficient

Plaintiffs claim that individual Defendants are liable for intentionally inflicting emotional

distress upon them.  Plaintiff Russell makes this claim against Defendants Feinman and

Singleton and Plaintiffs Campbell and Sadowski make this claim against Defendants Feinman

and Horne.  For the reasons discussed below, these claims fail as a matter of law.

1.  ***Plaintiffs' Intentional Infliction of Emotional Distress Claim Against the Individual Defendants Fails Because Plaintiff has Failed to Produce Expert Medical Evidence of Actual Distress***

Under Pennsylvania law, for Plaintiffs to recover on their claim of intentional infliction of emotional distress, each must prove the existence of the alleged emotional distress by "expert medical confirmation that the plaintiff actually suffered the claimed distress." *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 197 (1987).

In *Kazatsky*, the Pennsylvania Supreme Court held:

> It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's "outrageousness" without expert medical confirmation that the plaintiff actually suffered the claimed distress. Moreover, the requirement of some objective proof of severe emotional distress will not present an unsurmountable [sic] obstacle to recovery. Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries. We therefore conclude that if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence. In this case no such evidence was presented and the record further reflects that neither Mr. nor Mrs. Kazatsky sought medical assistance.

*Id.* at 197-98.

Plaintiffs have adduced no expert medical evidence supporting his claim that any of the three have suffered from emotional distress. Therefore, under Pennsylvania law, none can recover on this claim, and summary judgment must be granted in favor of Defendants.

2.  ***Plaintiffs' Intentional Infliction of Emotional Distress Claim Against the Individual Defendants Fail Because Plaintiffs have Failed to Adduce Evidence that their Actions were Outrageous***

"The gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor." *Corbett v. Morgenstern*, 934 F. Supp. 680, 684 (E.D. Pa. 1996) (quoting *Abadie v. Riddle Memorial Hosp.*, 589 A.2d 1143, 1145–46 (Pa. Super. Ct.

1991)).  The act must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Johnson v. Caparelli*, 625 A.2d 668, 672 (Pa. 1993)).

None of the defendants' (Singleton, Horne, and Feinman)  actions alleged by plaintiffs are "so outrageous in character…as to go beyond all possible bounds of decency."  See Corbett, 934 F. Supp. at 684.  The plaintiffs have not put forth any credible evidence to breach this threshold and, therefore, summary judgment must be granted in favor of defendants on plaintiffs' intentional infliction of emotional distress claims.

### G.  Plaintiff Russell's Disparate Treatment Racial and Gender Discrimination Claims under § 1981 Must Fail Because She Does not Prove Discriminatory Intent by any Defendant

Plaintiff Russell's disparate treatment racial and gender discrimination claims must fail because she cannot establish that any intent on the part of any Defendant to discriminate against Plaintiff because of her race.  Plaintiff has the burden of demonstrating a *prima facie* case of disparate treatment race and gender discrimination.  To establish a *prima facie* case, plaintiff must show that: (1) that she belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts.  *Ellis vs. Budget Maintenance, Inc.*, 25 F.Supp.3d 749, 753 (E.D. Pa. 2014).  Plaintiff fails to meet his burden.

Plaintiff Russell makes a variety of allegations regarding how she was supervised and that members of the Police Department have talked about her, called her names, and micro-managed her work.  (Exhibit 22, p. D537-39; D546.)  Yet, Plaintiff has failed to show how these allegations, even if proven, would constitute the intent to discriminate on the basis of her race or sex by any named Defendant.  Moreover, supervisors are charged with monitoring, managing, evaluating, and critiquing the work of their subordinates.  Captain Kelly, Lt. Green, and Captain

Singleton, among other named Defendants to this charge, merely acted within their capacities as Plaintiff Russell's supervisors.  Additionally, Plaintiff relies on gossip and hearsay in her allegations that members of the Police Department talked about her and allegedly undermined her authority.  Even if proven, these allegations do not support a finding that any Defendant's actions or inactions occurred because of their intent to discriminate against Plaintiff Russell because of her race or gender.  Claimant alleges no facts to support a finding that any of her allegations are based on racial, sex-based, or general animus.

Finally, Plaintiff Russell's allegations that civilian complaints against her have been solicited by Captain Singleton are bald fabrications.  Captain Singleton's investigation of civilian complaints against Plaintiff Russell does not constitute any discriminatory action.  At the applicable time, he was obligated as Commanding Officer of the 19th District to investigate such claims fully and to report his findings to Internal Affairs so the Police Department may take action if necessary.  Plaintiff cannot establish that this investigation was discriminatory.

In sum, Plaintiff's supports her claim of discrimination with unsubstantiated and baseless allegations.  Based on the foregoing, Plaintiff has failed to state a cause of action for discrimination.

### H. Plaintiff Russell's Title VII Sexual Harassment-Hostile Work Environment Claims Are Insufficient as a Matter of Law and Must Be Dismissed

A hostile work environment exists only "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Waite v. Blair, Inc.,* 937 F. Supp. 460, 468 (W.D. Pa. 1995) (quotations omitted). To bring an actionable claim for sexual harassment because of an intimidating and offensive work environment, a plaintiff must establish "by the totality of the circumstances, the existence of a hostile or abusive working environment which is

severe enough to affect the psychological stability of a minority employee." *Andrews v. Philadelphia,* 895 F.2d 1469, 1482 (3d Cir. 1990) *(quoting Vance v. Southern Bell Tel. and Tel. Co.,* 863 F.2d 1503, 1510 (11th Cir.1989)) (emphasis in original). In order to bring a successful claim for a sexually hostile work environment under Title VII: (1) the employees suffered intentional discrimination because of their sex (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Andrews,* 895 F.2d at 1482. These factors include both a subjective and objective standard. *Id.* at 1483.

Conduct must be "extreme" to change the terms and conditions of employment, *Farragher v. City of Boca Raton,* 524 U.S. 775, 778 (1998), and the Court should look to the totality of the circumstances, including the frequency and severity of the conduct; whether the conduct is physically threatening, humiliating, or merely an offensive utterance; and whether the conduct unreasonably interferes with the victim's work performance. *Williams v. Perry,* 907 F. Supp. 838, 846 (M.D. Pa.), *aff'd,* 72 F.3d 125 (3d Cir. 1995). None of the alleged acts identified by plaintiff can create, as a matter of law, a hostile work environment.

As the Third Circuit has long held, "hostile environment harassment claims must demonstrate a continuous period of harassment, and two comments do not create an atmosphere." *Drinkwater v. Union Carbide Corp.,* 904 F.3d 853, 863 (3d Cir. 1990). When epithets such as "Brown Sugar" and "nigger" fail to create a hostile work environment, asking Russell what kind of man she liked and whether she was married do not create such an environment. *See Harley v. McCoach,* 928 F. Supp. 533, 538 (E.D. Pa. 1996); *see also, e.g., Bonora v. UGI Utils., Inc.,* No. 99-5539, 2000 U.S. Dist. Lexis 15172, at *13-16 (E.D. Pa. Oct. 18, 2000) (10 incidents over two years not sufficiently pervasive); *Johnson v. Souderton Area*

*Sch. Dist.,* No. 95-7171, 1997 U.S. Dist. Lexis 4354 (E.D. Pa. Apr. 1,1997) (nine alleged

incidents over three years not pervasive or regular); *Rosati v. Colello,* 2015 WL 1475505, Civil

Action No. 14-2402 (E.D. Pa. April 2, 2015) (three comments over four months about plaintiff's

status as a mother not a continuous period of harassment or serious enough to create a hostile

work environment). Thus, Plaintiff Russell's hostile work environment claim must fail.

**I.   Plaintiff Russell's Due Process Claim Pursuant To 42 U.S.C. § 1983 Fails and Must Be Dismissed**

Plaintiff's due process claim is limited to her allegation that she was denied Heart &

Lung benefits.  A successful due process claim requires that a public employee be "entitled to the

notice of the charges against him, an explanation of the employer's evidence, and an opportunity

to present his side of the story." *McDaniels v. Flick*, 59 F.3d 446, 454 (3d Cir.1995).  The

deprivation of an interest protected by the Due Process Clause "is not in itself unconstitutional;

what is unconstitutional is the deprivation of such an interest without due process of law."

*Zinermon v. Burch*, 494 U.S. 113, 125 (U.S. 1990).  It is only when a plaintiff is afforded an

inadequate remedy, or no remedy at all, that she is entitled to pursue a claim premised on the

Due Process Clause.  *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savings Bank*, 527

U.S. 627, 643 (U.S. 1999).  *See Hayburn vs. City of Phila.*, 2012 WL 3238344 (E.D. Pa., Aug. 7,

2012) (holding that no due process claim remedy existed for plaintiff who was denied Heart &

Lung benefits after she was provided a hearing); *See also* Exhibit 22, pp. D553-54.  Moreover,

"[t]o establish a substantive due process claim, a plaintiff must prove the particular interest at

issue is protected by the substantive due process clause and the government's deprivation of that

protected interest shocks the conscience." *Id.*, (*citing United Artists Theatre Circuit, Inc. v. Twp.

of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir.2003)).

In this case, Plaintiff Russell was given the opportunity to testify at her Heart and Lung hearing. *See* Exhibit 22, p. D553-54. The arbitrator at that hearing, not any named Defendant, denied her claim. Plaintiff has not asserted that she was not provided with a notice of her charges or an explanation of her employer's evidence concerning the charges. Furthermore, she was given an opportunity to tell her side of the story at her Heart and Lung hearings in front of an impartial third party. As such, her pre-deprivation and post-deprivation due process claims must fail.

**IV.     CONCLUSION**

The City is entitled to judgment in its favor because Plaintiff Russell has not established that she was discriminated against on the basis of her sex or race or that she suffered intentional infliction of emotional distress, and Plaintiffs Russell, Sadowski, and Campbell have all failed to establish that they suffered a hostile work environment or that anyone took any retaliatory actions against them. In short, each of plaintiffs' claims is wholly without merit, and judgment should be entered in favor of the defendants.


                                  Respectfully submitted,

                                  Respectfully submitted,

                                  CITY OF PHILADELPHIA LAW DEPARTMENT
                                  SHELLEY R. SMITH, City Solicitor
                                  JANE ISTVAN, Chair, Litigation Group
                                  NICOLE S. MORRIS, Chief Deputy City Solicitor

                                  /s/ Duncan M. Lloyd
                                  DUNCAN M. LLOYD, ESQ.
                                  Assistant City Solicitor
                                  Labor and Employment Unit



Date:  September 2, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2015, Defendants' Motion for Summary Judgment was electronically filed, and is available for viewing and downloading via the Court's ECF system to:

Matthew Weisberg, Esq.
7 South Morton Avenue
Morton, PA 19070
*Attorney for Plaintiffs*

DATED: September 3, 2015          ____/s/ Duncan M. Lloyd_____
                                 Duncan M. Lloyd
                                 Assistant City Solicitor