# COMPLAINT
# OF

## Officer Matthew Funk #6926
## And
## Officer Christopher Stever #1407

## E.E.O. #2004-018

## Equal Employment Opportunity Unit

REVIEWED AND APPROVED BY

Lieutenant Frances Neiley #306, E.E.O. UNIT _Frances Neiley_

Date _1-5-06_

# MEMORANDUM

**TO** : **Police Commissioner**

**FROM** : **Lieutenant Frances Neiley #306, Commanding Officer E.E.O. Unit**

**SUBJECT: <u>E.E.O. CASE # 2004-018, COMPLAINT OF P/O CHRISTOPHER
STEVER #1407, PR# 215656, W/M AND P/O MATTHEW FUNK
#6926, PR# 239934, W/M, 23RD DISTRICT, 5 – SQUAD</u>**

The allegations of disparate treatment filed against Sergeant Saundra Russell #516, PR#234934, B/F while assigned to the 23rd District are not substantiated.

Sergeant Saundra Russell's actions were not in violation of the Philadelphia Police Department's Equal Employment Opportunity Policy.

The allegations of inappropriate comments filed against Sergeant Saundra Russell #516, PR#234934, B/F while assigned to the 23rd District are inconclusive.

Lieutenant Frances Neiley    #306
Commanding Officer
Equal Employment Opportunity Unit

D012



**CITY OF PHILADELPHIA**

*Certified Mail*

*January 4, 2006*

Sergeant Saundra Russell
727 Hagner Street
Philadelphia, Pa. 19128

RE: EEO CASE #2004-018- Disparate treatment and inappropriate comments.

Dear Sergeant Russell,

On Monday, December 6, 2004, the Equal Employment Opportunity Unit began an investigation into a complaint of Disparate Treatment and Inappropriate Comments made by Police Officer Matthew Funk and Police Officer Christopher Stever against you.

The investigation into this matter conducted by the Equal Employment Opportunity Unit (EEO) revealed that the allegations of disparate treatment made against you are not substantiated.

The investigations into the matter of inappropriate comments made against you are inconclusive.

This investigation did not indicate any violation of departmental policy regarding Equal Employment Opportunity Regulations or Departmental Policy.

Sincerely,

*Charlotte Council*

Charlotte Council
Deputy Commissioner
Internal Affairs Bureau

Cc: Commanding Office, 23rd District
    Commanding Officer, EEO Unit

D013



**CITY OF PHILADELPHIA**

*Certified Mail*

*January 4, 2006*

*Officer Matthew Funk*
*7422 Palmetto Street*
*Philadelphia, Pa. 19111*

*RE: EEO CASE #2004-018 Disparate treatment and inappropriate comments.*

*On Monday, December 6, 2004, the Equal Employment Opportunity Unit began an investigation into a complaint of Disparate Treatment and Inappropriate Comments made by you Officer Matthew Funk and your co-worker Officer Christopher Stever against Sergeant Saundra Russell while assigned to 23rd District.*

*The investigation into this matter conducted by the Equal Employment Opportunity Unit (EEO) revealed that the allegations of disparate treatment that you made against Sergeant Saundra Russell are not substantiated.*

*The investigation into the matter of inappropriate comments made against Sergeant Saundra Russell is inconclusive.*

*This investigation did not indicate any violation of department policy regarding Equal Employment Opportunity Regulations or Department Policy.*

*Sincerely,*

*Charlotte Council*
*Deputy Commissioner*
*Internal Affairs Bureau*

*Cc: Commanding Officer, 23rd District*
*Commanding Officer, EEO Unit*

D014



# CITY OF PHILADELPHIA

*Certified Mail*

*January 4, 2006*

*Officer Christopher Stever*
*616 Tyson Avenue, 1st Floor*
*Philadelphia, Pa. 19111*

*RE: EEO CASE #2004-018 Disparate treatment and inappropriate comments.*

*On Monday, December 6, 2004, the Equal Employment Opportunity Unit began an investigation into a complaint of Disparate Treatment and Inappropriate Comments made by you Officer Christopher Stever and your co-worker Officer Matthew Funk against Sergeant Saundra Russell while assigned to 23rd District.*

*The investigation into this matter conducted by the Equal Employment Opportunity Unit (EEO) revealed that the allegations of disparate treatment that you made against Sergeant Saundra Russell are not substantiated.*

*The investigation into the matter of inappropriate comments made against Sergeant Saundra Russell is inconclusive.*

*This investigation did not indicate any violation of department policy regarding Equal Employment Opportunity Regulations or Department Policy.*

*Sincerely,*

*Charlotte Council*
*Deputy Commissioner*
*Internal Affairs Bureau*

*Cc: Commanding Officer, 23rd District*
*Commanding Officer, EEO Unit*

D015

# E.E.O.

# CASE # 2004-018

D016

# INDEX

A. MEMORANDUM TO THE POLICE COMMISSIONER

B. Equal Employment Opportunity Forms

    E.E.O. Intake Form

C. Interviews

    Complainant

| | | | |
|---|---|---|---|
| P/O Christopher Stever | 1407 | 215656 | W/M |
| P/O Matthew Funk | 6926 | 239934 | W/M |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    Witnesses

| | | | |
|---|---|---|---|
| P/O Renard Bournett | 3958 | 212245 | B/M |
| P/O Mary Luce-Caterino | 4271 | 228698 | W/F |
| P/O Michael Coleman | 1592 | 209629 | B/M |
| P/O Sharrod Davis | 5745 | 248077 | B/M |
| P/O William Forbes | 4106 | 248527 | B/M |
| P/O Stephen Gantz | 7003 | 228537 | W/M |
| P/O Anthony Jackson | 6952 | 239947 | B/M |
| P/O William Jones | 2042 | 213219 | B/W |
| P/O Donna Tygh | 1321 | 225025 | W/F |
| Sergeant Tracy Thomas | 381 | 222956 | B/M |

    Alleged Discriminating Person (A.D.P.)

| | | | |
|---|---|---|---|
| Sergeant Saundra Russell | 516 | 234934 | B/F |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

D. Documents.

Memorandum Dated: 04/06/04  Subject: Officers Appearing In Court

Memorandum Dated: 05/18/04 Subject: Attending Court In Plainclothes Attached: Directive13-3, E. Professional Conduct and Appearance During Court Appearances

Memorandum Dated: 05/27/04 Subject: Failure To Appear For Court

D.A.R. Dated: 10/06/04  Wednesday, Funk, Matthew PR# 239947
D.A.R. Dated: 10/06/04  Wednesday, Stever, Christopher  PR# 215656

D017

Court Notice Dated: 10/06/04, PR# 239934, D.C.#04-23-012419-Funk, M.
Court Notice Dated: 10/06/04, PR# 215656, D.C.#04-23-012419- Stever, C
**Stamped PLAINCLOTHES**
Court Notice Dated: 10/06/04, PR# 215656, D.C.#04-23-012419- Stever, C
Stamped PLAINCLOTHES
Court Notice **COURT ATTENDANCE, Dist. 2300  23rd District  10/06/04

75-158 Patrol Log Dated: 10/06/04, 23rd District

Memorandum Dated: 10/07/04 Subject: Formal Disciplinary Action

Statement of P/O Christopher Stever #1407 Dated: 11/04/04
Statement of P/O Matthew Funk #6926  Dated:11/05/04
Statement of P/O Ida Keyes #2079 Dated: 11/10/04

Memorandum Dated: 11/15/04 Subject: Request for Discipline Action
75-18, Statement of Charges Filed and Action Taken, P/O C. Stever #1407
75-18, Statement of Charges Filed and Action Taken, P/O M. Funk #6926

Memorandums Dated: 11/12/04 Subject: Squad Reassignment
Dated: 12/17/04 Subject: Reassignment

# MEMORANDUM

**TO**        : **Police Commissioner**

**FROM**     : **Police Officer Aleta Powell #2837, E.E.O. Unit**

**SUBJECT** : <u>**E.E.O. CASE # 2004-018, COMPLAINT OF P/O MATTHEW FUNK #6926, & CHRISTOPHER STEVER #1407, E.E.O. CASE# 2004-018**</u>

## ALLEGATION

On Monday, December 6, 2004, Officer Christopher Stever #1407, PR# 215656, W/M, and Officer Matthew Funk #6926, PR# 239934, W/M, both assigned to the 23rd District, 5-Squad filed a complaint with the EEO Unit located at 990 Spring Garden Street, Room #301.

The complainants stated that on Friday, November 26, 2004 at approximately 1 o'clock a.m. while working 5 Platoon in the 23rd District they both received (75-18) Disciplinary paperwork for attending court in plainclothes and for insubordination for going to court on a canceled court notice on October 6, 2004. Both officers stated there are other officers who attended court in plainclothes and did not receive any type of disciplinary action. Both officers stated that they received a memorandum from Sergeant Saundra Russell dated November 12, 2004 stating that as of January 3rd, 2005, they will be placed into 3 squad and a memorandum from Captain Sharon Seabourgh dated December 17th, 2004 that they would be assigned to 2-B as of Monday, January 3rd, 2005.

The complainants further stated that in mid-November 2004, they were told by P/O Donna Tygh, P/O Mary Luce-Caterino, and P/O Sharrod Davis that Sergeant Russell referred to them as the "White Boy Club" and that she was finally breaking them up.

A check of the personnel data file shows the supervisors named in the complaint are Sergeant Saundra Russell #516, PR#234934, B/F, appointment date 04/05/99, presently assigned to Narcotics Strike Force.

Captain Sharon Seaborough #66, PR #188851, B/F, appointment date 03/03/86 presently assigned Commanding Officer, 23rd District.

On Thursday, December 8, 2004, Officer Aleta Powell #2837 of the Equal Employment Opportunity Unit was assigned the investigation.

## INVESTIGATIVE ANALYSIS

**Allegation #1- Disparate treatment because of race.**

Officer Matthew Funk, and Officer Christopher Stever, alleged that Sergeant Saundra Russell, #516, PR# 234934, B/F treated them unfairly when they received (75-18) Disciplinary paperwork for attending court in plainclothes, also for insubordination for going to court on a cancelled court notice. Officer Funk and Officer Stever both allege other officers who are non-white that attended court in plainclothes were treated differently. Officer Funk stated he feels this is preferential treatment because he is white and all the other officers involved with wearing plainclothes to court are African American with the exception of Officer Stever and Officer Lebrice.

When interviewed Officer Matthew Funk and Officer Christopher Stever stated they did receive a memorandum dated 5/18/2004 To: 5 Platoon Officers, From: Sergeant Saundra S. Russell #516, Subject: Attending Court In Plainclothes, and they both did read it and they both understood the memorandum. Officer Funk stated that he believed there was a copy of Directive 13-3 attached and Officer Stever stated he did receive a copy of Directive 13-3. Officer Funk and Officer Stever stated they received information from their previous supervisor Sgt. Tracey Thomas #381, PR#222956, B/M that P/O Renard Bournett, P/O Michael Coleman, P/O William Forbes, and P/O William Jones, attended court in plainclothes and received no punishment or discipline. Both Officer Funk and Officer Stever stated they were never notified of the cancellation of their court notice for October 6, 2004.

Interviews of the four named officers revealed P/O Renard Bournett #3958, PR#212245, B/M, did wear plainclothes to court. P/O William Forbes #4106, PR#248527, W/M, P/O Michael Coleman #1592, PR#209629, B/M, and P/O William Jones #2042, PR#213219, B/M, all stated they have never worn plainclothes to court.

Sergeant Tracey Thomas #381, PR#222956, B/M, when interviewed stated he did tell Officer Funk and Officer Stever that Officer Renard Bournett attended court in plainclothes and received a foot beat for a week as a result.

Sergeant Saundra Russell when interviewed did explain she never had any discipline problems with Officer Funk in her work relationship with Officer Stever. When it came time to obey an order he would always resist, but once she explained the necessity of the order, then he was fine. Sgt. Russell pointed out when she was assigned to five squad she had to explain to another officer who was under the impression that because she wore plainclothes to work while being assigned to the burglary team she could also wear plainclothes to court. After she informed her, she had no problem with her wearing plainclothes again. Sgt. Russell stated after Captain Seaborough issued an order stating officers cannot wear plainclothes to court, while in court on May 18th, 2004, she observed Officer Funk and Officer Stever attending court in plainclothes thus prompting her issuance of her memorandum.

The investigation revealed on April 6th, 2004 Captain Sharon Seaborough #66 Commanding Officer, 23rd District submitted a memorandum to All Platoon Commanders in the 23rd District, Subject: OFFICERS APPEARING IN COURT. (*See Documents.) On May 18th, 2004 after observing several officers attending court in plainclothes on May 17th, 2004, Sgt. Russell submitted to her 5 Platoon officers a memorandum reminding them of attending court in plainclothes. Sgt. Russell also issued Directive 13-3 and informed her platoon "Any further violation of this directive will result in formal disciplinary action." On October 6, 2004, Officer Matthew Funk and Officer Christopher Stever did attend court wearing plainclothes, and Sgt. Russell did proceed with formal disciplinary action.

Officer Bournett stated he did attend court-wearing plainclothes and he received disciplinary action when he was placed on a foot beat for two weeks. This disciplinary action was reduced to a week when his supervisors talked with Captain Seaborough explaining that Officer Bournett was in 5 Squad for 6 years and he was not aware of the fact he could no longer wear plainclothes to court. P/O William Forbes stated he never wore plainclothes to court. However, sometime in November 2004 he was attending to personal business with family members. He saw Officer Funk and Officer Stever and he acknowledged them. He was in plainclothes that day but not in court, and he was not on duty. Sergeant Tracey Thomas did tell Officer Funk and Officer Stever about Officer Bournett attending court in plainclothes for as he stated "training purposes so they would know what would happen if they did not adhere to Directive 13." Sgt. Thomas further stated he did not recall telling Officer Funk and Officer Stever that Officer Mike Coleman and Officer William Jones were caught wearing plainclothes to court.

Checks of the DAR's for the year 2004 were negative for the above-mentioned officers attending court-wearing plainclothes. The only officer noted for wearing plainclothes to court was Officer Elizabeth Strange, during the months of March and April 2004.

Officer Funk and Officer Stever stated also in November, they each received a memorandum from Sgt. Saundra Russell stating as of 01/03/05 they would be assigned to 3 squad. In this memo there was no reason given as to why they were being transferred out of the squad. Officer Funk states, "To this date, we have no verbal reason from Captain Seaborough". Officer Stever stated that he asked Sgt. Russell why they were being assigned to 3 Squad and she stated she did not know, she would try to find out.

On February 14, 2005, the Police Board of Inquiry (P.B.I.) determined that: Officer Christopher Stever #1407, PR#215656, W/M was Not Guilty of insubordination, but he was Guilty of wearing plainclothes to court and he received three days suspension and transfer to 12th District, 2-C

On August 16, 2005, the Police Board of Inquiry (P.B.I.) determined that: Officer Matthew Funk # 6926, PR#239934, W/M was Not Guilty of insubordination, but he was Guilty of wearing plainclothes to court and he received three days suspension and transfer to 12th District 1-B

**Allegation #2 – Inappropriate Comments**

Officer Stever and Officer Funk allege in mid-November 2004, Sergeant Saundra Russell referred to P/O Christopher Stever, P/O Matthew Funk, and P/O Stephen Gantz as "White Boy Club" and that she is "finally breaking us up."

Officer Funk alleges Sergeant Saundra Russell stated "Funk, I could hump you all night long."

When interviewed Officer Funk and Officer Stever stated they were told by P/O Donna Tygh #1321, PR# 225025, W/F, P/O Mary Luce-Caterino #4271, PR#228698, W/F, and P/O Sharrod Davis 5745, PR#248077 B/M, that Sergeant Saundra Russell referred to them as the "White Boy Club" and that she was finally breaking them up.

Interviews of the three named officers revealed P/O Donna Tygh stated sometime in October 2004 she overheard Sergeant Russell talking on the telephone saying "I'm sick of their fucking little "White boys club." Officer Tygh also stated Sgt. Russell pulled up her pants legs in front of male prisoner and asked, "Don't you think my legs are sexy," this was done on two different occasions. Officer Tygh further stated that Sgt. Russell made the following comments to two officers: The first comment was to Officer Anthony Jackson #6952, PR# 239947, B/M when she stated, "I didn't know it was that long" when Officer Jackson returned from the men's room. The second comment was made to Officer Matthew Funk when she said, "I would hump you all night long."

P/O Mary Luce-Caterino stated she did not hear Sgt. Russell refer to Officer Stever and Officer Funk as "White Boys Club". Officer Caterino did state Sgt. Russell pulled up her pants legs and said "Ain't my legs sexy" she stated this happened around November 2004. Officer Caterino stated she did not hear Sgt. Russell make any other comments of a sexual overtone to any officer.

Officer Sharrod Davis stated that he heard Sgt. Russell referring to officers as W.B.C.'s and his partner Anthony Jackson was there. Officer Anthony Jackson stated "No," denying that he heard Sgt. Russell referring to any group of officers as the "White Boy's Club" or W.B.C. Officer Jackson also denied that Sgt. Russell made a comment to him after he returned from the men's room.

Officer Funk alleges that Sergeant Saundra Russell said "Funk, I could hump you all night long." Officer Christopher Stever and Officer Donna Tygh heard this. Both Officers Stever and Tygh when interviewed stated they overheard the comment.

When interviewed Sgt. Saundra Russell stated that she never referred to Officer Funk, Officer Stever, or Officer Gantz as "White Boy's Club" or "W.B.C.'s". Sgt. Russell stated she does not like the term boys herself and would not call anybody else boys. Sgt. Russell denied pulling her pants legs up in front of prisoners and saying "Don't you think my legs are sexy" or "Ain't my legs sexy." She gave an account of the cell room's location for processing prisoners in accordance with the operations room location, and

she stated "I don't think that is sexy to show a prisoner my legs." Sgt. Russell, when asked about the alleged comment made to Officer Anthony Jackson stated, "No, Anthony Jackson, is in his twenties. I'm thirty-six years old. I think it was inappropriate." When asked about the alleged comment made to Officer Matthew Funk Sgt. Russell stated, "No. It is ridiculous. I don't speak to men like that. I am a lady and I carry myself as such. My officers have never seen me out of uniform because I will be addressed as Sergeant Russell."

The investigation revealed that witnesses corroborated they overheard Sgt. Russell making comments of a sexual nature at different times. Officer Donna Tygh stated Sgt. Russell made comments such as, "I'm sick of their fucking little white boys club." Officer Mary Luce-Caterino stated she did not hear Sgt. Russell refer to Officer Stever and Officer Funk in that manner. She stated that Sgt. Russell would say, "Where are my boy's?" The same way she would say to her and her partner, "Where are my girls?" Officer Sharrod Davis stated he heard Sgt. Russell said, "I'm getting tired of their W.B.C. asses" and he stated his partner Officer Anthony Jackson was there when she made the statement. Officer Jackson could not corroborate that this statement was made. Sgt. Russell was questioned regarding the term "W.B.C." Sgt. Russell in genuine honesty thought this was a wrestling terminology. Officer Tygh did state she heard Sgt. Russell making this comment sometime in October and further stated she did not tell Officer Stever about this comment until maybe a week or two after it was allegedly made. Officer Mary Luce-Caterino stated Officer Sharrod Davis told her about the comment, she did not hear Sgt. Russell make this comment.

Officer Donna Tygh stated Sgt. Russell pulled up her pants legs in front of male prisoners and asked, "Don't you think my legs are sexy." Officer Mary Luce-Caterino stated Sgt. Russell pulled up her pants legs in front of 5 prisoners and said, "Ain't my legs sexy". Officer Luce-Caterino stated this happened in November 2004. When questioned about the alleged comment "Don't you think my legs are sexy" and pulling her pants legs up in front of prisoners, Sgt. Russell brought to the attention of the EEO Unit that it was October, she is wearing long johns now, and she does not stop wearing her long johns until spring of the year.

Officer Donna Tygh and Officer Christopher Stever stated they overheard Sgt. Russell make the comment to Officer Funk "I would hump you all night long." Officer Tygh and Officer Stever stated this incident happened inside the district in the hallway and it was said to Officer Funk last year. Officer Stever also stated Officer Luce-Caterino, and Officer Gantz heard the comment. Officer Luce-Caterino stated, "No, My partner told me she heard it." Officer Stephen Gantz #7003,PR#228537, W/M stated he heard the comment. When asked about the alleged comments made to Officer Funk, Sgt. Russell denied that she made these comments.

Officer Donna Tygh was the only one to hear Sgt. Russell make the comment "I didn't know it was that long," when Officer Jackson returned from the men's room. Officer Jackson did not hear Sgt. Russell make this comment. Sgt. Russell stated she did not make the comment.

## CONCLUSION

**Allegation #1- Disparate treatment because of race.**

Officer Matthew Funk and Officer Christopher Stever stated they were treated unfairly because they were the only officers to receive Disciplinary action (75-18) for attending court in plainclothes. Both officers contend other officers who are non-white who are in violation of the same act are not punished or disciplined. Sgt. Saundra Russell, who supervised 5 Platoon, submitted to all officers in 5 Platoon a written memorandum stating formal disciplinary action would be taken for any further violation of Directive 13. Officer Bournett, at the time of his infraction, was not assigned to Sgt. Russell. His immediate supervisor was Sgt. Tracy Thomas #381. Sgt. Russell's actions against Officer Funk and Officer Stever did not violate any EEO guidelines, and was consistent in keeping with managerial policies.

**The allegation of disparate treatment because of race made by Officer Matthew Funk and Officer Christopher Stever is not substantiated.**

**Allegation #2 – Inappropriate Comments**

The allegation that Sgt. Saundra Russell referred to officers, as W.B.C.'s and White Boy Club is inconclusive. The officers who stated they heard the comment and the officers who were named as witnesses could not corroborate the comment.

The allegation that Sgt. Saundra Russell pulled up her pants legs and made a comment about her legs being sexy to prisoners cannot be proven or disproved. Officer Tygh and Officer Luce-Caterino both stated Sgt. Russell showed her legs to the prisoners. According to the two officers, this happened sometime in November 2004 and no one else witnessed this incident. However, when Sgt. Russell came in for her interview in October 2005, she was wearing long johns and stated that she does not come out of long johns until spring of the year. This allegation is inconclusive.

The allegation that Sgt. Russell stated to Officer Anthony Jackson "I didn't know it was that long" is inconclusive. Only Officer Tygh stated she heard this comment. Officer Jackson could not corroborate that Sgt. Russell made this comment.

The allegation that Sgt. Russell made the comment "Funk I could hump you all night long" is inconclusive. Officer Tygh, Officer Stever, and Officer Gantz all stated that they heard Sgt. Russell make this comment to Officer Funk. However, each officer gives a different account of who was or was not in the area. Each of the three officers are disgruntled with Sgt. Russell. They used the same verbalization for this comment but could not corroborate each other on the other allegations.

After reviewing this allegation in its totality, it is highly unlikely that the three officers who stated they heard Sgt. Russell make this comment to Officer Funk are being totally truthful. The one other officer who was named as being there to hear the comment stated her partner told her, but her partner did not name her as a witness.

**The allegation of inappropriate comments made against Sergeant Saundra Russell #516, PR#234934 is inconclusive.**



Submitted by: P/O Aleta Powell         #2837
Equal Employment Opportunity Unit


Reviewed by:
Sergeant Donald McLaughlin # 8652


Reviewed and Approved by:
Lieutenant Frances Neiley         #306
Commanding Officer
Equal Employment Opportunity Unit

# B

## Equal Employment Opportunity Forms

### E.E.O. Intake Form of:

P/O Matthew Funk     #6926, PR # 239934, W/M
Assigned to 23rd District
5-Platoon


P/O Christopher Stever   #1407, PR # 215656, W/M
Assigned to 23rd District
5-Platoon

Philadelphia Police Department
**Equal Employment Opportunity (EEO) Unit**

**Initial Intake Form**

EEO Case #: _04-018 AP_        Date of Report: _12-6-04_

                              _1 B_

Name of Complainant: _Matthew Funk_    Race: _M_ Sex: _W_ Badge #: _6926_ Payroll #: _239934_

District/Unit of Assignment: _23rd Dist. 5 sq._   Platoon: _5_   Phone #: _215 686-3230_
                                                                        _267934 2155 (cell)_

Name of Alleged Discriminating Party: _Cpt. Seabourgh / Sgt Russell_   Race: ___ Sex: ___ Badge #: ___

Payroll #: _____   District/Unit of Assignment: _C.O. 23rd Dist_   Platoon: _____

Date and Location of Last Occurrence: _____

Description of Complaint: _On 11-26-04 I received 18's for going to court in_
_plainclothes on 10-6-04. Also in Nov my partner & I ~~received~~ a memo_
_(P/O Chris Strdehlovf) received_
_from our Sgt, (Sgt. Russell) that we both would be going to the 3 sqd_
_(12a-8am) as of 1/3/04. On the memo there was no reason given_
_on why we were being transfered out of the squad. To this date_
_we have had no verbal reason from Cpt. Seabourgh_    additional pages attached ☒ yes ☐ no

Witnesses: _Sgt. Tracey Thomas, P/O Sharrod Davis, P/O Donna Tygh_
_P/O Mary Luce-Caterino_

_____

_____

Previous Action taken by Complainant: _none_

_____

_____

_____

Corrective Action Sought: _To be treated fairly. Working with this over my_
_head has my morale at a very low point & I don't enjoy my job_
_the way I used to._

_____

Signature of Complainant: _Matthew Funk_     Date & Time: _12-6-04   12:30p_

                                                            D027

Received By: _Sgt M Mallin 8835_             Date & Time: _12-6-04  12:06p_

or Sgt. Russell on why we were being put on lastout. At this time my partner Chris Steven has 11yrs in service & I have over 4yrs in service. I also served on 3 sgd. from 4/01 to 10/02. In the 23rd Dist in 1, 2, & 5 sgd there are at (lea) least a dozen, if not more, police officers who are junior to my partner & I who have never served on last out (12a-8am). Also included in my 75-18's was the offense cases insubordination for going to court, when it had been cancelled. My partner and I never received any official information or verbal information that the court had been cancelled. On the 75-18's I pleaded not guilty for the insubordination offense & guilty to wearing plain cloths to court. I have asked Sgt Russell more then a few times why we were being put on last out and she stated she did not know Sgt. Russell said she would try & find out from the Captain and to this date I have not been told verbally why I am going to last out.

In mid November my partner & I received information from our previous Supervisor (Sgt. Tracey Thomas) that on Nov 4 2004 P/O Renard Bournett had been caught going to court in plain clothes. P/O Bournett was put on a foot beat for 5-7 (approx) days and to this date no other form of punishment or discipline has been given. Information also given from Sgt Thomas was that P/O Mike Coleman & P/O William jones were also caught going to court in plain clothes earlier then my partner & I and P/O Bournett and to his memory he does not know of any punishment or discipline for these police officers. This is were my partner

D028

**Discription of Complaint** continued

EEO Case #:_____

and I started to feel there was some unfair & preferential treatment being shown certain officers. My partner & I are white, were P/O Bournett, P/O Jones & P/O Coleman are all black. Also in some time in July or Aug of 04 P/O Vincent Lebrice was caught in court w/ plain clothes he was told he is getting 75 18's for the offense and he also going to lastout w/ us 1-3-04. P/O LeBrice is also white.

In mid November we (my partner & I) were given information from officers in our squad (5) P/O Donna Tych, P/O Mary Luce/Caterino & P/O Sharrod Davis that Sgt. Russell had referred to myself, P/O Stever & P/O Steven Gantz as the "White boy club" and that she was finally breaking us up.

In early November my partner & I contacted the F.O.P. to discuss our situation about going to lastout. We spoke w/ F.O.P. vice president John McNesby & let him know of our situation, what we did & how we were receiving 75-18's and also were being put on 3 sqd. (12A-8am). He informed us that he spoke to Capt. Seabourgh. He stated to us that she told him we were going to ssd. because she needed the man power. Mr. McNesby then told us he spoke to the Cpt. another time & she stated to him that she would drop our 75-18's but still wanted us for lastout. Mr. McNesby told the captain that we would accept our 18's but we did not want to go to lastout (3 sqd.) She told Mr. McNesby she would get back to him. That night when my partner

D029

**Discription of Complaint** continued

EEO Case #:_____

and I showed up for duty we received a memo from Sgt Russell that we were officially going to lastout as of 1-3-04. We told this to Mr. McNesby and he later told us he spoke to the Captain again who was now stating to him, that my partner & I were going to lastout because she wanted experenced officers on lastout. ~~The I too Because the first the had ruders about the being~~ From the time we first heard rumers of us & P/O LeBrice going to lastout because of "inverse seniority" then hearing mr. Nesby telling us that we were going for manpower, then the Captein offering to pull the 75-18's but still keeps us on lastout and then finally stating to Mr. McNesby that she wants experenced oficers ~~be telling~~ it seems to me that this is coinon timea'l punishment for being out of uniform at court on 10-6-04. That along w/ the way this punishment is not being used w/ other officers who have done the same thing seems unfair. It seems that my race ~~for~~ is one of the reasons why there is a difference in the forms of punishment.

D030

EEO Case # : _04-213 NP_            _2-B_        Date of Report: _12-6-04_

Name of Complainant: _P/O CHRISTOPHER STEVER_  Race: _W_ Sex: _M_ Badge #: _1467_ Payroll #: _215651_

District/Unit of Assignment: _23RD_ _____ Platoon: _5_ Phone #: _Cell 267-253 8?_
                                                                    _w 685-3765_
Name of Alleged Discriminating Party: _Captain Sharon Stansbury_
                                       _Sgt. Simon Russell_ _____ Race: _B_ Sex: _F_ Badge#: _____

Payroll#: _____ District/Unit of Assignment: _23RD_ _____ Platoon: _5_

Date and Location of Last Occurrence: _11-26-04, 23RD Dist_

Description of Complaint: _On Friday 11-26-04 after I clean myself & P/o Fink were called_
_into MQ by Sgt Russell & given our denial for attend'g Ramadan Prayer's which_
_occured 10-26-04. Also for INSUBORDINATION for going to Court on a Cancelled Court Notice_
_which were were never notified of it's cancellation. In the Month of November we were_
_approached by Sgt Tracey Thomas who stated that P/o Renard Burnett, P/o William Fink_
_P/o William Coleman, were caught wearing Plain Clothes_  additional pages attached ☒ yes ☐ no

Witnesses: _Sgt. Tracey Thomas   P/o Deanna Tysh   P/o Mary Luce - Cafferero_
_P/o Sharron Davis._

Previous Action taken by Complainant: _None_

Corrective Action Sought: _To be treated fairly_ ▓▓▓▓▓▓▓▓▓
_and a Better Working_ ▓▓ _Environment_

Signature of Complainant: _[signature]_

                                                Date & Time: _12-6-04 12:15PM_
Received By: _Sgt O'Miller Sims_
                                                Date & Time: _12-6-04 12:15PM_

D031

At Court all these officers are Black P/o Elliott was caught on 11-4-04 and received a foot beat for one week, no 75'18's, no transfer or last out Myself & P/o Frank were given a memo stating that as of 1-3-05 we would be reassigned to 3B no reason was given by Sgt. Russell when asked she stated she didn't know and she would ask the Capt. Sgt. Russell said the Capt told her that she has her reasons why were being put on last out and that was the end of it info reviewed by P/o Vanna Tygh P/o Mary Lucet and P/o Shannon Davis stated that Sgt Russell referred to us and P/o Cruz — the "white boy club" and she was finally going to break us up. ~~~~~ P/o Vincent Laspice also a white officer informed us that he was caught at Court in plain clothes and he was receiving 75'15's and being transfered to last out as well. I notified the FOP and talked to V.President Ryan McNesby and told him what was going on and he ~~~~ said that she couldn't do this and he would talk to our Capt. After talking to the Capt several times Ryan McNesby told us the 1st time he asked the Capt why we were being put on last out was because of Manpower then after talking to her again she wanted to drop our 18's and still put us on last out McNesby told h that we would take the 18's but not to last out, she said she would think about it & got back to him. Apx one week later John McNesby talked to Capt Scanlan/Schorchli(?) when she told ~~~~~ stated that we were still getting 18's and still put on last out when ask why we were being put on last out she now said. Because she needs experienced officers on last out which there are plenty of officers with experience working the last out tour. When we first heard that we were going to last out we were informed it was because of inverse Seniority then it was changed to Manpower now experienced Offic I feel & I am being treated unfairly because of my race. I was also informed

## Discription of Complaint *continued*

EEO Case #:_____

By Officers working the Last out tour that when I come to late out they were told by Supervisors that I would not see the inside of a police car, meaning I would be walking a foot beat

# C

## INTERVIEWS

**Complainants:**

Police Officer Christopher Stever #1407, PR #215656, W/M
Police Officer Matthew Funk #6926, PR #239934, W/M

**Alleged Discriminating Person (ADP's)**

Sergeant Saundra Russell #516, PR# 234934, B/F
Captain Sharon Seaborough #66, PR# 188851, B/F

**Interview of Witnesses:**

Police Officer Renard Bournett #3958, PR# 212245, B/M
Police Officer Michael Coleman #1592, PR# 209629, B/M
Police Officer William Forbes #4106, PR# 248527, B/M
Police Officer Sharrod Davis #5745, PR# 248077, B/M
Police Officer William Jones # 2042, PR# 213219, B/M
Police Officer Donna Tygh #1321, PR# 225025, W/F
Police Officer Mary Luce-Caterino #4271, PR# 228698, W/F
Police Officer Stephen Gantz #7003, PR# 228537, W/M

Sergeant Tracy Thomas #381, PR# 222956, B/M

**DATE: February 3, 2005**

**TIME BEGINNING: 11:15a.m.**

**TIME ENDING: 2:36p.m.**

**LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL, #2837**

Officer Funk, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating your allegation of disparate treatment by Sergeant Saundra Russell #516, B/F, 23rd District, 5 Squad, and Captain Sharon Seabourgh #66, B/F, Commanding Officer, 23rd District. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

A. Yes.

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

A. Yes.

**Q. Do you have representation with you?**

A. No.

P/O Matthew Funk #6926

MF.

D035

**Q. Do you wish to proceed?**

A. Yes.

**Q. Are you tape recording this interview?**

A. No.

**Q. Please state your full name, badge # and unit of assignment.**

A. Officer Matthew Funk, #6926, 1-B.

**Q. Did you receive a memorandum Dated: 5/18/2004, To: 5 Platoon Officers, From: Sergeant Saundra S. Russell #516, Subject: Attending Court In Plainclothes?**

A. Yes, I did.

**Q. Did you read and understand the memorandum that Sergeant Russell gave to 5 Platoon Officers?**

A. Yes, I did.

**Q. Did you sign any paperwork stating you received the memorandum?**

A. Yes, I did.   * Officer Funk check through his paper work but does not have a copy of the signed memorandum on him.

**Q. Did you receive a copy of Directive 13-3 along with this memorandum?**

A. I believe there was a copy attached.

**Q. Did you read and understand in paragraph 2 of Sergeant Russell's memorandum the second line that states "Any further violation of this directive will result in formal disciplinary action"?**

A. Yes.

**Q. You stated that you were not notified that your court notice for October 26, 2004 was canceled.  What is the normal procedure for being notified that a court notice has been canceled?**

A.  As I understand it I am to receive a court notice stating that it is canceled and I am to sign it and give it to the ORS or supervisor.  Then once they receive it they have it file in the court notice box in the 5 squad room.

**Q. The court notice in question dated for October 6, 2004 you never received or signed a cancellation notice is this correct?**

A. No, I never received any information that my court notice for October 6, was canceled not verbally, and not written.

**Q. Approximately how many times were you told not to wear plainclothes to court?**

A. The memorandum I received in May was the only time that I recall. I don't recall receiving any memorandum for March. At that time, I believe I was working plainclothes anyways. The 75-18's referred to the March paperwork about plainclothes but I do not recall receiving that memo.

**Q. You stated on your Intake Form that P/O Renard Bournett, and several other officers were caught wearing Plain Clothes to court. What squad is Officer Bournett in?**

A. He's in 2 squad I'm not sure what group.

**Q. Who is Officer Bournetts supervisor?**

A. Sergeant Tracy Thomas.

**Q. Do you know if this was Officer Bournetts first time getting caught wearing plainclothes to court?**

A. I first learned that Officer Bournett got caught wearing plainclothes to court when I saw him on a foot beat and I asked why. I later found out that he did get caught wearing plainclothes to court, and later information received from my partner (Chris Stever), he was told by Sergeant Thomas that Officer Bournett was caught a second time.

**Q. Do you know if Officer Bournett received from his supervisor a memorandum in reference to attending court in plainclothes?**

A. No.

**Q. What squad is Officer William Jones in?**

A. 2-squad, but actually right now he is in 5-squad.

**Q. Do you know when Officer Jones was switch over to 5 squad?**

A. January 3rd 2005.

**Q. What is Officer Jones race?**

A. Black male.

**Q. Who is Officer Jones supervisor?**

A. Right now I believe Sergeant Russell.

**Q. Do you know who was Officer Jones supervisor at the time of the incident when he appeared in court wearing plainclothes?**

A. No, I just know he was in 2-squad.

**Q. Do you know if this was Officer Jones first time to appear in court wearing plainclothes?**

A. I'm not sure the information I received was information given to my partner by Sergeant Thomas.

**Q. Do you know if Officer Jones received from his supervisor a memorandum in reference to attending court in plainclothes?**

A. No.

**Q. What squad is Officer Michael Coleman in?**

A. 2-Squad.

**Q. Who is Officer Coleman's supervisor?**

A. I'm not sure.

**Q. Do you know if this was Officer Coleman's first time to appear in court wearing plainclothes?**

A. No, I don't know.

**Q. Do you know if Officer Coleman received from his supervisor a memorandum in reference to attending court in plainclothes?**

A. No, I don't know.

**Q. Do you know of any case that an African American Officer was treated any differently by Sergeant Russell for attending court in civilian attire?**

A. Not to my knowledge.

P/O Matthew Funk #6926

**Q. You stated as witnesses Sergeant Tracy Thomas, and several officers. Exactly what did Sergeant Thomas witness?**

A. To my knowledge the information received about Officer's Bournett, Coleman, and Jones was given to us through Sergeant Thomas. That he had information that those above officers had committed the same offense that we did and different punishments were given out. I'm not sure what he witnessed but this is what he told us. This was during the time we were about to received 75-18's and I was about to be placed on last out.

**Q. Who are the other officers and what exactly did they witness.**

A. Officers Donna Tygh, Sharrod Davis, and Donna Tygh's partner Mary Luce all witnessed Sergeant Russell saying she is going to break up the "White Boy club."

**Q. You stated that Officer Donna Tygh, Officer Mary Luce, and Officer Sharrod Davis stated that Sergeant Russell referred to you, Officer Stever, and Officer Gantz as the "White Boy Club". When did Officer's Tygh, Luce, and Davis tell you this?**

A. This was in November; sometime early or mid November, I'm not sure. When I found out about it Officer Donna Tygh approached the three of us and told us what was said. Sometime during that same time period, inside the building I think Officer Davis said something to my partner (Officer Chris Stever) about the same incident. Officer Luce was with her partner Officer Davis when she approached us. Officer Gantz is also a witness since he was there in the parking lot when Officers Luce and Tygh came out.

**Q. Who are the officers that informed you that when you come to last out they were told by supervisors that you would not see the inside of a Police Car?**

A. That was told to Officer Stever you would have to ask him about that I just know someone told him.

**Q. Who is the supervisor or supervisors that supposedly said this to the officers were you told that?**

A. That was Lieutenant Arch.

**Q. You named Captain Sharon Seaborough as an (ADP) alleged discriminating party. How do you feel Captain Seaborough discriminated against you?**

A. Once I received the information about Officers Bournett, Jones, and Coleman committing the same offense that my partner (Chris Stever), and I, and Officer Le Brice had committed, and my partner and I were receiving 75-18's and Officer Le Brice was told that he is getting 75-18's and the fact that the three of us Officer Lebrice, Stever and myself had all been placed on a list to go to last out. This list came out after we got caught. My partner has 12 years on the job, Officer LeBrice has 8 years on the job, I have 4 years on the job, and I have served on last out for approximately 16 to 17 months, which was just over two years ago. We were not notified at all. In my opinion, we were never told or asked and we were not supposed to find out until it was too late that we were being placed on last out. However, we found out and fought it through the FOP during the time that we were fighting being placed on last out the captain had to change her reasoning for placing us on last out because the first reason she gave was inversed seniority. She then had to come up with another reason because inversed seniority did not apply to us because there were other officers who never served on last out. Through information received from John McNesby, Vice President of the FOP he stated that in discussion with Captain Seaborough about our grievance that she had offered to drop our 75-18's but still wanted to put us on last out. He replied that we would take the 75-18's but we did not want to go on last out. Captain Seaborough then told him that she would get back to him. Mr. McNesby informed us of this conversation. My partner and I went to work that night, and we received an official memo from Sergeant Russell that we would be reporting to last out as of January 3rd 2005. I felt that receiving this official memo of squad reassignment showed that Captain Seaborough was hell bent on putting my partner and me on last out for the offense that we committed of wearing plainclothes to court. We were also told that our 75-18's were still coming. I feel that the persistent manner in which Captain Seaborough tried to put us on last out with the different reasons and with the conversation that she had with Mr. McNesby and with the information I received from Sergeant Thomas, I felt that I was getting harsher multiple punishments because of my race.

**Q. Is there anything you would like to add that would be pertinent to this investigation?**

A. Yes. I did not put this in my original statement for two reasons one being that I was told to stick to the main incident, and two because I was embarrassed to talk about it. Sergeant Russell since she has been my sergeant she has been known to talk to everyone about sexual innuendo for example, how she likes to look sexy when she goes to bed. Because of this I found myself just trying to get my things, get my orders and keep all my conversations short because I felt uncomfortable. Sergeant Russell would bring up different things, I would just try to leave the room. One incident that sticks in my mind that I wanted to bring up before but I was embarrassed about it is sometime in September when I was leaving like heading down to the locker room she said and I don't know what

her tone was as far as joking or not she said "Funk, I could hump you all night long". I just shrugged my shoulders, said "whatever Serge", and headed down to my locker. There was two people in the area that I'm sure heard it but I never talked to them about it at that time but it came up later in conversation with Donna Tygh. When she heard that I went to EEO with a compliant, she asked was it in reference to what Sergeant Russell had said. And with her bringing that up that is when my partner acknowledged he heard the comment also.

**Q. Did you report this to a supervisor or express to Sergeant Russell that you did not care for that type of conversation around you?**

A. No I never spoke to a supervisor about it, as I stated it was an embarrassing situation to me.

**Q. Has Sergeant Russell ever said anything else to you in this manner?**

A. To me directly no, after October 6, the relationship between us was not very good. Us meaning Officer Stever, her, and me.

**Q. Was this the only time?**

A. No, she has numerous times talked about things that I am not comfortable with out loud to anyone. Not directing the conversation at any one person just talking and having conversation with other people.


P/O Matthew Funk     #6926          2-3-05
P/O Matthew Funk            #6926           Date
23rd District


Interviewed by: P/O Aleta Powell     #2837        2-3-05
E.E.O. Unit                                      Date


Reviewed by: Sgt. Roxanne Maddrey   #8862         Date
E.E.O. Unit

DATE: February 11, 2005

TIME BEGINNING: 11:04a.m.`

TIME ENDING: 12:40p.m.

LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301

INTERVIEWED BY: P/O ALETA POWELL, #2837

Officer Stever, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating your allegation of disparate treatment by Sergeant Saundra Russell #516, B/F, 23rd District, 5 Squad, and Captain Sharon Seabourgh #66, B/F, Commanding Officer, 23rd District. You are being interviewed in reference to this allegation.

You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?

A. Yes.

Q. Do you understand that you have the right to have representation with you in the course of this interview?

A. Yes.

Q. Do you have representation with you?

A. No.

**Q. Do you wish to proceed?**

A. Yes.

**Q. Are you tape recording this interview?**

A. No.

**Q. Please state your full name, badge # and unit of assignment.**

A. P/O Christopher Stever, 1407, 23rd District.

**Q. Did you receive a memorandum Dated: 5/18/2004, To: 5 Platoon Officers, From: Sergeant Saundra S. Russell #516, Subject: Attending Court In Plainclothes?**

A. Yes.

**Q. Did you read and understand the memorandum that Sergeant Russell gave to 5 Platoon Officers?**

A. Yes.

**Q. Did you sign any paperwork stating you received the memorandum?**

A. I don't remember if I signed anything.

**Q. Did you receive a copy of Directive 13-3 along with this memorandum?**

A. Yes.

**Q. Did you read and understand in paragraph 2 of Sergeant Russell's memorandum the second line that states "Any further violation of this directive will result in formal disciplinary action"?**

A. Yes.

**Q. You stated that you were not notified that your court notice for October 6, 2004 was canceled. What is the normal procedure for being notified that a court notice has been canceled?**

A. You would receive a cancellation court notice. At which time you would sign a copy and the supervisor would sign the copy and the supervisor would sign the copy and give you back a copy. That's according to Directive 13.

P/O Christopher Stever #1407 *C.S.*

**Q. Was this the procedure follow as far as your court notice for October 26, 2004?**

A. No.

**Q. Briefly explain what was done differently?**

A. We never received our cancellation court notice.

**Q. Who are you referring to when you say we?**

A. My partner Officer Matthew Funk.

**Q. Approximately how many times were you told not to wear plainclothes to court?**

A. The one time, the memo as far as I remember.

**Q. You stated on your Intake Form that P/O Renard Bournett, and several other officers were caught wearing Plain Clothes to court. What squad is Officer Bournett in?**

A. 2 Squad.

**Q. Who is Officer Bournetts supervisor?**

A. I'm not sure if he's in 2-C or 2-A. I believe at the time it was Sergeant Tracy Thomas.

**Q. Do you know if this was Officer Bournetts first time to appear in court wearing plainclothes?**

A. No. He was caught prior to us and one time after we were. November 4th I believe was the actual day.

**Q. Do you know if Officer Bournett received from his supervisor a memorandum in reference to attending court in plainclothes?**

A. From my knowledge the district received a memorandum from Captain Seabourgh in reference to wear plainclothes to court in March 2004 at which time Officer Funk and I were working plainclothes.

**Q. What squad is Officer William Jones in?**

A Now he is in five squad. At the time, he was in two squad.

P/O Christopher Stever #1407 *C.S.*

D044

**Q.** Who at the time of the incident was Officer Jones supervisor?

**A.** I don't know exactly.

**Q.** Do you know if this was Officer Jones first time to appear in court wearing plainclothes?

**A.** I don't know.

**Q.** Do you know if Officer Jones received from his supervisor a memorandum in reference to attending court in plainclothes?

**A.** No, I don't.

**Q.** What squad is Officer Michael Coleman in?

**A.** 2 squad.

**Q.** Who is Officer Coleman's supervisor?

**A.** I don't know but I think Sergeant Tracy Thomas was all of their supervisors at the time.

**Q.** Do you know if this was Officer Coleman's first time to appear in court wearing plainclothes?

**A.** No, I do not.

**Q.** Do you know if Officer Coleman received from his supervisor a memorandum in reference to attending court in plainclothes?

**A.** No, I don't.

**Q.** Do you know of any case that an African American Officer was treated any differently by Sergeant Russell for attending court in civilian attire?

**A.** No.

**Q.** You stated on your Intake Form as witnesses Sergeant Tracey Thomas, and several officers. Exactly what did Sergeant Thomas witness?

**A.** Sergeant Thomas was the one that informed me that these officers were caught wearing plainclothes to court. And that the had just received foot beats. And the foot beats were from Captain Seaborough

P/O Christopher Stever #1407 *C.S.*

D045

. **You stated that Officer Donna Tygh, Officer Mary Luce, and Officer Sharrod Davis stated that Sergeant Russell referred to you, Officer Funk, and Officer Gantz as the "White Boy Club". When did Officer's Tygh, Luce, and Davis tell you this?**

A. Officer Mary Luce-Caterino, Officer Tygh told me at one time, then Officer Davis told me at another time.

**Q. Was this all on the same day?**

A. No.

**Q. Briefly explain what prompted Officer's Luce-Caterino and Tygh to tell you this?**

A. I suppose they told me this for Officer Funk's and my well-being. We had received our 75-18's. She stated I guess she got her wish she's breaking up the White Boy Club. I suppose they told us because the thought it was unfair.

**Q. Did you receive a memorandum from Sergeant Russell stating that you were placed on the Last Out tour of duty?**

A. Yes.

**Q. Can you provide the EEO Unit with a copy of this memorandum?**

A. Yes.

*\*Officer Stever at this time presented the original memorandum to the EEO Unit.*

**Q. Who are the officers that informed you that when you come to last out they were told by supervisors that you would not see the inside of a Police Car?**

A. Officer Forbes, Officer Lincoln Miller

**Q. Who is the supervisor or supervisors that supposedly said this to the officers?**

A. Lieutenant Steve Arch. He also called me a bag of Shit. And right now he is my supervisor.

**Q. Why did Lieutenant Steve Arch call you a bag of Shit?**

A. Don't know. He also said this to other supervisors when I came to two squad I worked for him before in two squad. He was the administrative Lieutenant.

**Q. How do you know Lieutenant Arch made this statement about you?**

A. He said it a couple of time he said tit too Officer Forbes and Link while he was on last out. When I was assigned to two squad, he told Sergeant heart and Thomas he would use me as example to them. How he would use me he would go over his rules and regulation with the other supervisors one of his rules was vacation days, he said no more than two officers off at a time. For and example he would say if Officer Stever and two other officer wanted off if one was an bum i.e. Officer Stever they would not receive that day off. I was reassigned to 2-B, when he came to two squad he did not want me in 2-B because he said he did not want to look at me every day. I was changed to 2-C. I put in a memo to Captain Seabourgh to transfer me out of two squad into one squad because I don't think I can be treated fairly by him.

**Q. When did this happen?**

A. Right when I was assigned two squad it was actually my first day in two squad. It was around the 4th or 5th of January.

**Q. You named Captain Sharon Seaborough as an (ADP) alleged discriminating party. How do you feel Captain Seaborough discriminated against you?**

A. I feel she discriminated against me by giving my partner and me 75-18's for being in court in plainclothes one time. When other officers who are black received only foot beats for violating the same Directive. Officer Bournett who was caught twice and he did not receive 75-18's, also Officer Vince LaBrice who was in two squad was caught in plainclothes also prior to me and my partner He is an white officer) He was to receive 75-18's for violating the same thing showing up in court in plainclothes. I was told by Sergeant Russell the reason that me and my partner were receiving 75-18's was because Officer LaBrice was receiving 75-18's and the Captain had to be fair. They also want to put us on last out. Officer LaBrice is on last out.

**Q. Has Sergeant Russell ever said anything out of the ordinary to you such as making any sexual innuendos?**

A. Yes.

**Q. What exactly did Sergeant Russell say?**

A. She would always call me her pugy, which was always embarrassing. She told me that she had a full body cat suit that she wanted me to see her in. She showed me a picture of her in a bathing suit. She also stated that she could go all night long. She would also talk about her breast she would touch them and say she has nice titties.

P/O Christopher Stever #1407 *C.S.*

D047

**Q. When did this occur?**

A. This would happen during the course of the day in five squad.

**Q. Did you ever hear Sergeant Russell make a sexual comment to anyone else?**

A. Officer Funk.

**Q. What exactly did Sergeant Russell say?**

A. She told Officer Funk that she would hump him all night long.

**Q. Where did this take place?**

A. Inside the district in the hallway.

**Q. When did Sergeant Russell make this comment?**

A. I don't know the exact date.

**Q. Do you recall if it was this year or last year?**

A. Last year.

**Q. Was there anyone else who may over heard Sergeant Russell making this comment?**

A. Officer Gantz, Officer Tygh, and I believe Officer Catrino was there.

**Q. Did you report this to a supervisor?**

A. No.

**Q. Is there anything pertinent you wish to add to this interview?**

A. No.


You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview initial each page, and when you come to the last page please sign it at the line marked with your name.

After this investigation is complete, copies of your interview will be available.


P/O Christopher Stever #1407 *CS*

I have read the preceding statement consisting of ___ pages and it is true and correct to the best of my knowledge.

_____
P/O Christopher Stever          #1407
23rd District

_____
2-11-05
Date

_____
Interviewed by: P/O Aleta Powell    #2837
E.E.O. Unit

_____
2-11-05
Date

_____
Reviewed by: Sgt. Patrick O'Malley  #8835
E.E.O. Unit

_____
2-11-05
Date

TO      : P/O Christopher Stever #140 * 23rd District

FROM   : Sgt. Saundra S. Russell #16. 23rd District

SUBJECT : <u>SQUAD REASSIGNMENT</u>

1. On Monday. January 3, 2005 you will be assigned to 3B and will follow the appropriate schedule.

2. Your RDO's will be adjusted accordingly by your platoon supervisor

Saundra S. Russell
Sergeant
5 Platoon

516

## MEMORANDUM

TO      : P/O Christopher Stever, #1407, PR#215656, 23RD District

FROM    : Commanding Officer, 23rd District

SUBJECT : REASSIGNMENT

1.  Effective Monday, January 3, 2005 you will be reassigned to 2 B.


_____
P/O Christopher Stever #1407


_____
Sharon Seaborough      #66
Commanding Officer
23rd District


SS/rpb

**DATE: February 17, 2005**

**TIME BEGINNING: 11:10a.m.**

**TIME ENDING: 11:44a.m.**

**LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL, #2837**

Officer Bournett, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating allegations of disparate treatment in the 23rd District, 5 Squad. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

A. Yes.

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

A. Yes.

**Q. Do you have representation with you?**

A. No.

**Q. Do you wish to proceed?**

A. Yes.

**Q. Are you tape recording this interview?**

A. No.

**Q. Please state your full name, badge # and unit of assignment.**

A. Renard Bournett, #3958, currently assigned to the 23rd District.

**Q. What is your squad assignment, and who is your immediate supervisor?**

A. I am in 2-C; I work inside a couple of days the rest outside. When I 'm assigned inside to work Corporal Strickland is my supervisor and when I'm outside Sergeant Thomas is my supervisor.

**Q. In the past year have you reported to court wearing plainclothes?**

A. Yes. Plainclothes off duty.

**Q. Approximately how many times in the past year have you reported to court wearing plainclothes?**

A. Three or four times.

**Q. The three or four times you wore plainclothes were you in off duty status?**

A. They were all RDO court status.

**Q. It was brought to the attention of the EEO Unit that on 11-04-04 you were caught wearing plainclothes to court. Please explain why you were in plainclothes?**

A. It was my RDO and I had court again.

**Q. Prior to 11/04/04 did you receive a memorandum from your supervisor reminding all officers to wear the uniform of the day as stated in Philadelphia Police Directive 13-3 unless you are assigned to a plainclothes unit?**

A. No.

**Q. Do you recall when you receive this memorandum?**

A. N/A

P/O Renard Bournett #3958

D053

**Q. Approximately how many times have you attended court-wearing plainclothes after receiving the memorandum from your supervisor?**

A. N/A

**Q. Has your supervisor ever taken any disciplinary action against you for attending court in plainclothes?**

A. Yes. The 11/04/04 incident once that's when I found out that we could not go to court in plainclothes. I was in 5 squad for 6 years and we were allowed to wear plainclothes to court. When I went into 2 squad that is when I found out that we could not attend court in plainclothes and I was disciplined for that.

**Q. What form of disciplinary action did your supervisor take against you and when?**

A. I received a foot beat for a week.

**Q. Did Captain Seaborough take any disciplinary action against you?**

A. At first it was two weeks but a couple of supervisors went and talked with Captain Seabourgh and explained to her that I did not know about wearing plainclothes to court and Captain Seaborough changed it to one week.

**Q. Is there any question you feel you should have been asked and wasn't?**

A. Yes. Do I think Captain Seabourgh is racist?
   I don't think she is racist but she does takes care of the female officers.

You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview, initial each page, and when you come to the last page please sign and date it at the line marked with your name.

You may obtain a copy of this interview once the investigation is closed.

P/O Renard Bournett #3958                                              D054

You may obtain a copy of this interview once the investigation is closed.

I have read the preceding statement consisting of $\underline{4}$ pages and it is true and correct to the best of my knowledge.


P/O Renard Bournett #3958 _(signature)_                              2-17-05
P/O Renard Bournett          #3958                                   Date
23rd District


P/O Aleta Powell #2837 _(signature)_                                 2-17-05
Interviewed by:                                                      Date
P/O Aleta Powell             #2837
E.E.O. Unit


Sgt Patrick O'Malley 8835 _(signature)_                              2-17-05
Reviewed by:                                                         Date
Sergeant Patrick O'Malley    #8835
E.E.O. Unit

**DATE: March 7, 2005**

**TIME BEGINNING: 11:00 a.m.**

**TIME ENDING:** 12:07 p.m.

**LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL, #2837**

Officer Luce-Caterino, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating allegations of disparate treatment in the 23 District, 5 Squad. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

A. Yes.

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

A. Yes.

**Q. Do you have representation with you?**

A. No.

P/O Mary Luce-Caterino #4271

D056

**Q. Do you wish to proceed?**

A. Yes.

**Q. Are you tape recording this interview?**

A. No.

**Q. Please state your full name, badge # and unit of assignment.**

A. Mary Luce-Caterino, #4271, currently assigned to the 7th District.

**Q. Did you ever hear any supervisor referring to any group of officers as the "White Boy Club"?**

A. No. I heard the Boy's, but no reference to the White Boys Club.

**Q. Who is the supervisor that referred to officers as the Boys?**

A. Sergeant Saundra Russell.

**Q. Who are the officers that Sergeant Russell is referring to when she says "the Boys"?**

A. Christopher Stever and Matthew Funk.

**Q. When did you hear Sergeant Russell referring to the officers as the "The Boy's?**

A. All the time, they were her boys.

**Q. Exactly what did Sergeant Russell say in reference to the "The Boy's ?**

A. They were her boy's she would just say like "Where are my boys'" the same way she would say to me and my partner "Where are my girls".

**Q. Did you tell Officer Christopher Stever that Sergeant Russell was referring to them as the "White Boy's Club"?**

A. No, I didn't. Another officer told me that Sergeant Russell was referring to them as the White Boys' Club.

**Q. Did you tell Officer Matthew Funk that Sergeant Russell was referring to him as the "White boys Club?**

A. No, again another officer told me that she would refer to them as the W.B.C.'s, I asked what was that and I was told it is the White Boy's Club.

P/O Mary Luce-Caterino #4271

D057

**Q. Who is the officer that told you Sergeant Russell was referring to Officer's Stever and Funk as the W.B.C.'s?**

A. Officer Sharrod Davis.

**Q. Do you recall when Officer Davis told you this?**

A. It was last year.

**Q. Did you tell Officer Steven Gantz that Sergeant Russell made this statement about the "White Boy's Club?**

A. No.

**Q. Did you report to any supervisor that Sergeant Russell made this statement about Officers Stever, Funk, and Gantz?**

A. I never heard it come out of her mouth White Boy's Club. I heard her refer to them as The Boy's. I heard it from another officer the "White Boy's Club" not from Sergeant Russell.

**Q. Did you ever hear Sergeant Russell make any sexual comments to any officers?**

A. No, nothing sexually, once we brought a prisoner in and she pulled up her pants leg saying "ain't my leg sexy".

**Q. Approximately when did this occur Sergeant Russell pulling up her pants leg and making the statement ain't my leg sexy?**

A. We brought in five prisoner and we had them sitting in the hallway and she pulled up her pants leg and said "ain't my leg sexy" this was around November of 2004.

**Q. Were there any other witnesses to Sergeant Russell making this comment?**

A. My partner was standing there the five prisoners I know there were other people there but I don't recall who they were.

**Q. Who was your partner?**

A. Officer Donna Tygh.

**Q. Did you ever hear Sergeant Russell make any other comments of a sexual overtone to any officer?**

A. No.

P/O Mary Luce-Caterino #4271

**Q. Did you ever hear Sergeant Russell make a sexual comment to Officer Funk?**

A. No. My partner told me she heard it.

**Q. Did your partner repeat to you what Sergeant Russell allegedly said?**

A. She did, but I don't remember what she said I was not paying attention to what she said.

**Q. What exactly did she say to Officer Funk?**

A. N/A.

**Q. Did at any time you witness Sergeant Saundra Russell making the statement that she is going to break up the "White Boys' Club."**

A. No.

**Q. Were you with Officer Donna Tygh when she told Officers' Stever and Funk that Sergeant Russell was referring to them as the "White Boy's Club?**

A. Yes.

**Q. When did this take place?**

A. I don't know when it took place but it was after Davis told us.

**Q. You and Officer Tygh were told this information about the "White Boy's Club" by Officer Davis?**

A. Yes.

**Q. Is there anything pertinent you wish to add to this interview?**

A. No.

You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview, initial each page, and when you come to the last page please sign and date it at the line marked with your name.

You may obtain a copy of this interview once the investigation is closed.

*MLC*
P/O Mary Luce-Caterino #4271

I have read the preceding statement consisting of _5_ pages and it is true and correct to the best of my knowledge.


_Mary Luce - Caterino #4271_
Officer Mary Luce-Caterino      #4271
23rd District

_3.7 05_
Date


_P/O Aleta Powell # 3837_
Interviewed by:
P/O Aleta Powell      #2837
E.E.O. Unit

_3.7.05_
Date


_Sgt Patrick O'Malley 8835_
Reviewed by:
Sergeant Patrick O'Malley      #8835
E.E.O. Unit

_3.7.05_
Date

**DATE: February 16, 2005**

**TIME BEGINNING: 11:15a.m.**

**TIME ENDING: 11:27a.m.**

**LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL, #2837**

Officer Coleman, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating allegations of disparate treatment in the 23rd District, 5 Squad. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

A. Yes.

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

A. Yes, I do now.

**Q. Do you have representation with you?**

A. No.

**Q. Do you wish to proceed?**

P/O Michael Coleman #1592                    *MHC*                                    **D061**

A. Yes.

Q. Are you tape recording this interview?

A. No.

Q. Please state your full name, badge # and unit of assignment.

A. Michael A. Coleman #1592, 23 District, 2-B.

Q. What squad are you assigned to and who is your immediate supervisor?

A. 2-B, Sergeant Phyllis Hart.

Q. In the past year have you reported to court in plainclothes?

A. No.

Q. Approximately how many times in the past year have you reported to court in plainclothes?

A. N/A

Q. It was brought to the attention of the EEO Unit that on 11-04-04 you were caught wearing plainclothes to court. Please explain why you were in plainclothes?

A. I never wore plainclothes to court I think you have me confused with someone else.

Q. Did you receive prior to 11/04/04 a memorandum from your supervisor in reference to attending court in plainclothes?

A. No.

Q. Do you recall when you receive this memorandum?

A. N/A

Q. Approximately how many times have you attended court in plainclothes after receiving the memorandum from your supervisor?

A. N/A

Q. Has your supervisor taken any discipline action against you for attending court in plainclothes?

A. N/A

**Q. What form of discipline action did your supervisor take against you and when?**

A. N/A

**Q. Did Captain Seaborough take any discipline action against you?**

A. N/A

**Q. Is there any question you feel you should have been asked and wasn't?**

A. No.


You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview, initial each page, and when you come to the last page please sign and date it at the line marked with your name.

You may obtain a copy of this interview once the investigation is closed.

I have read the preceding statement consisting of ⬠ pages and it is true and correct to the best of my knowledge.


_P/O Michael Cole — 1592_               _02-16-05_
P/O Michael Coleman     #1592           Date
23rd District

_P/O Aleta Powell #2837_           _2-16-05_
Interviewed by:                       Date
P/O Aleta Powell        #2837
E.E.O. Unit

_Patrick O'Malley 8835_            _2-16-05_
Reviewed by:                        Date
Sergeant Patrick O'Malley    #8835
E.E.O. Unit

**DATE: February 23, 2005**

**TIME BEGINNING: 11:00a.m.**

**TIME ENDING:**

**LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL, #2837**

Officer Davis, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating allegations of disparate treatment in the 23 District, 5 Squad. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

A. Yes.

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

A. Yes.

**Q. Do you have representation with you?**

A. No.

*S. D.*

P/O Sharrod Davis #5745

**D064**

**Q. Do you wish to proceed?**

A. Yes.

**Q. Are you tape recording this interview?**

A. No.

**Q. Please state your full name, badge # and unit of assignment.**

A. Sharrod Davis, #5745 assigned to the 23rd District, 5 squad.

**Q. Did you ever hear any supervisor referring to any group of officers as the "White Boy Club"?**

A. Yes.

**Q. Who are the officers that the supervisor is referring to?**

A. They just said WBC and then someone else said what does that mean and they said White Boys Club.

**Q. Who are they?**

A. In my opinion, it was said when Lieutenant Neill was back there and someone was referring to him.

**Q. Who is the supervisor that is referring to the officers in this manner?**

A. Sergeant Russell.

**Q. When did you hear Sergeant Russell referring to the officers as the "White Boy Club"?**

A. A couple of months ago.

**Q. Exactly what did Sergeant Russell say in reference to the "White Boy Club"?**

A. They had it when Lieutenant Neil was there they all worked together and when he left She said I'm getting tired of their W.B.C. Asses.

**Q. Who was Sergeant Russell talking with when she made this statement?**

A. I know I was there. My partner Anthony Jackson I don't know who else.

**Q. Did you tell Officer Christopher Stever that Sergeant Russell made this statement?**

A. Yes.

**Q. When did you tell Officer Stever this information?**

A. He was talking about everything that was going on and I just told him be careful with everything going on. She referred to them as being the WBC.

**Q. Did you tell Officer Matthew Funk that Sergeant Russell made this statement?**

A. Yeah, I believe I called Funk and told him to be careful.

**Q. Did you tell Officer Steven Gantz that Sergeant Russell made this statement?**

A. Yeah, we were all together and I told him this statement.

**Q. Did you tell all three officers at the same time or on separate occasions?**

A. When she said it I believe it was personal I didn't have Stever and Gantz number But there was a week when we all got together and I think we were doing a day together and we were sitting around talking and I said you guys have to be careful we were just sitting around talking.

**Q. When and where did you tell Officer Stever?**

A. We were in the 5 squad room.

**Q. Were there any witnesses?**

A. Donna Tygh was there I remember telling her that I don't like that, because my best friend is white.

**Q. When and where did you tell Officer Funk?**

A. I think Officer Stever and Funk were together. I think they only one not there was Gantz.

**Q. When and where did you tell Officer Gantz?**

A. I believe I told him when he came back. We were just talking, I believe we were in the 5 squad room.

P/O Sharrod Davis #5745

**Q. Did you report to any supervisor that Sergeant Russell made this statement about Officers Stever, Funk, and Gantz?**

A. Nope.

**Q. Is there anything pertinent you wish to add to this interview?**

A. No.

You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview, initial each page, and when you come to the last page please sign and date it at the line marked with your name.

You may obtain a copy of this interview once the investigation is closed.

I have read the preceding statement consisting of _4_ pages and it is true and correct to the best of my knowledge.


*P/O Sharrod Davis #5745*
Officer Sharrod Davis     #5745
23rd District

*2-23-05*
Date


*P/O Aleta Powell #2837*
Interviewed by:
P/O Aleta Powell     #2837
E.E.O. Unit

*2-23-05*
Date


*Sgt Patrick O'Malley #8835*
Reviewed by:
Sergeant Patrick O'Malley     #8835

*2-23-05*
Date

**DATE: February 17, 2005**

**TIME BEGINNING: 12:30p.m.**

**TIME ENDING:**

**LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL, #2837**

Officer Forbes, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating allegations of disparate treatment in the 23rd District, 5 Squad. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

A. yes.

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

A. Yes.

**Q. Do you have representation with you?**

A. No.

**Q.** It was brought to the attention of the EEO Unit that you were caught wearing plainclothes to court. Please explain why you were in plainclothes?

**A.** I never did. However, someone maybe referring to the incident above when I wore plainclothes to court but I was not on duty at that time.

**Q.** Did you receive prior to 11/04/04 a memorandum from your supervisor reminding all officers to wear the uniform of the day as stated in Philadelphia Police Directive 13-3 unless you are assigned to a plainclothes unit?

**A.** Not that I recall.

**Q.** Do you recall when you receive this memorandum?

**A.** N/A

**Q.** Approximately how many times have you attended court-wearing plainclothes after receiving the memorandum from your supervisor?

**A.** N/A

**Q.** Has your supervisor taken any disciplinary action against you for attending court in plainclothes?

**A.** N/A

**Q.** What form of disciplinary action did your supervisor take against you and when?

**A.** N/A

**Q.** Did Captain Seaborough take any disciplinary action against you?

**A.** N/A

**Q.** Were you assigned to 3 Squad earlier this year?

**A.** Yes, that was earlier this year from 1/22/04 to 1/3-05.

**Q.** Is there any question you feel you should have been asked and wasn't?

**A.** No.

You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

P/O William Forbes #4106

D069

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview, initial each page, and when you come to the last page please sign and date it at the line marked with your name.

You may obtain a copy of this interview once the investigation is closed.

I have read the preceding statement consisting of 4 pages and it is true and correct to the best of my knowledge.


P/O William Forbes          #4106                    2-17-05
23rd District                                        Date


Interviewed by:                                      2-17-05
P/O Aleta Powell          #2837                       Date
E.E.O. Unit


Reviewed by:
Sergeant Patrick O'Malley                            Date
E.E.O. Unit              #8835

**DATE: March 11, 2005**

**TIME BEGINNING: 1:04p.m.**

**TIME ENDING:**

**LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL, #2837**

Officer Gantz, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating allegations of disparate treatment in the 23 District, 5 Squad. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

A. Yes.

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

A. Yes.

**Q. Do you have representation with you?**

A. No.

P/O Stephen Gantz #7003          J.G.

D071

**Q. Do you wish to proceed?**

A. Yes.

**Q. Are you tape recording this interview?**

A. No.

**Q. Please state your full name, badge # and unit of assignment.**

A. Stephen Gantz, 7003, assigned to 23rd District.

**Q. Did you ever hear Sergeant Saundra Russell make any sexual comments towards any officer?**

A. One officer in particular that I was present for was Officer Matthew Funk.

**Q. When did this occur?**

A. I believe it was night work shift I don't recall the exact time.

**Q. Where did this take place?**

A. I was exiting the 5 squad room going toward the hallway that leads into the district.

**Q. Where was Sergeant Russell?**

A. She was right around that area leading into the hallway.

**Q. Were there any other witnesses to Sergeant Russell making this comment?**

A. I don't remember anyone else being in that immediate area.

**Q. Exactly what was the comment Sergeant Russell made?**

A. The comment was she called him by his last name saying "Funk, I would hump you all night long." I didn't hear what may have lead up to the comment.

**Q. Did you hear Officer Funk make any comment back to Sergeant Russell?**

A. No, there wasn't any return comment; I just heard that it kind of caught me off guard.

**Q. Did you ever hear any supervisor referring to any group of officers as the "White Boy Club"?**

A. Yes. I first heard that when officer Donna Tygh approached me, Chris and Matt out side the front of the district. She stated to us that Sergeant Russell called us the "White Boy Club" and she want to break us up, separate us.

**Q. Did you ever hear Sergeant Russell make this comment?**

A. No.

**Q. Were there any witnesses to Officer Donna Tygh telling you that Sergeant Russell referred to you, Officers Stever and Officer Funk as the "White Boys Club"?**

A. It was all of us and I believe her partner was there Mary Luce-Caterino.

**Q. Did you report to any supervisor that Sergeant Russell referred to you, Officer Stever, and Officer Funk in this manner?**

A. No. The reason I believe that the "White Boy Club" comment came was because me Chris and Matt were all friends and the administrative lieutenant were all friends he is also white. I thought it was possible there was some jealousy because she had just made Sergeant and felt that we were not giving her the proper respect.

**Q. Who is the Administrative Lieutenant that your are referring to?**

A. Lieutenant Gary Neil.

**Q. Is Lieutenant Neil still in the 23rd District?**

A. No.

**Q. While you've been assigned to 5 squad have you ever appeared in court in plain clothes when you should have been in uniform?**

A. Yes.

**Q. When did this occur?**

A. I believe it was around October or November Sergeant Russell put out a memo stating that she did not want us going to court in plainclothes and after that I did not do it again. Until I was in IOD status that was around October 25th 2004 and I came back December 14th 2004.

**Q. Doing the time you were in IOD status did you go to court in plainclothes?**

A. Yes.

S. G.

P/O Stephen Gantz #7003

D073

**Q. Did you ever appear in court in plainclothes when you should have been in uniform?**

A. No.

**Q. During the time that you were in IOD status and you appeared in court in Plainclothes did you receive a reprimand from Sergeant Russell about going to court in plainclothes?**

A. No. You are not allowed to wear a uniform when you are injured on duty.

**Q. Is there anything pertinent you wish to add to this interview?**

A. No.

You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview, initial each page, and when you come to the last page please sign and date it at the line marked with your name.

You may obtain a copy of this interview once the investigation is closed.

I have read the preceding statement consisting of ___ pages and it is true and correct to the best of my knowledge.

P/O Stephen Gantz    7003        03-11-05
Officer Stephen Gantz      #7003        Date
23rd District

P/O Aleta Powell # 2837        3-11-05
Interviewed by:                      Date
P/O Aleta Powell
E.E.O. Unit            #2837

Sgt Patrick O'Malley 8835       3-11-05
Reviewed by:                        Date
Sergeant Patrick O'Malley      #8835
E.E.O. Unit

D074

P/O Stephen Gantz #7003

**DATE: July 26, 2005**

**TIME BEGINNING:12:35p.m.**

**TIME ENDING: 1:00p.m.**

**LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL, #2837**

Officer Jackson, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating allegation of disparate treatment in the 23rd District, 5 Squad. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

**A. Yes.**

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

**A. Yes.**

**Q. Do you have representation with you?**

**A. No.**

P/O Anthony Jackson # 6952   *A. J.*                              D075

**Q. Do you wish to proceed?**

A. Yes.

**Q. Are you tape recording this interview?**

A. No.

**Q. Please state your full name, badge # and unit of assignment.**

A. P/O Anthony Jackson, #6952, assigned to the 23rd District.

**Q. While assigned to 23rd District were you assigned to 5 Squad?**

A. Yes.

**Q. Who was you immediate supervisor?**

A. Sergeant Russell.

**Q. Did you ever hear Sergeant Saundra Russell #516 referring to any group of officers as the "White Boy Club"?**

A. No.

**Q. Officer Jackson did you ever hear Sergeant Russell say, "She is going to break up the White Boy club"?**

A. No.

**Q. Who are the officers that Sergeant Russell's referring to?**

A. N/A

**Q. Who was present when Sergeant Russell made this statement?**

A. N/A

**Q. Approximately when did Sergeant Russell make this statement?**

A. N/A

**Q. Who did you tell that Sgt. Russell said that she was going to break up the White Boy club?**

A. N/A

P/O Anthony Jackson # 6952    *A.J.*

Q. Did you report this to any supervisor?

A. N/A

Q. Who did you report this to?

A. N/A

Q. Do you know if they took any action?

A. N/A

Q. After returning from the men's room did Sergeant Russell ever say to you "I didn't know it was that long"?

A. No.

Q. Do you recall when Sergeant Russell made this statement?

A. N/A

Q. What was your response to this statement?

A. N/A

Q. Did you tell anyone that Sergeant Russell made this type of comment to you? report this to?

A. N/A

Q. Who did you report this to?

A. N/A

Q. Do you know what action was taken if any?

A. N/A

Q. Is there any question that was not asked that you feel may be pertinent to this investigation?

A. No.

You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview initial each page, and when you come to the last page please sign it at the line marked with your name.

After this investigation is complete, copies of your interview will be available.

I have read the preceding statement consisting of 4 pages and it is true and correct to the best of my knowledge.

_Anthony Jackson_ #6952          #6952          07-26-05
P/O Anthony Jackson                                        Date
23rd District

_P/O Aleta Powell # 2837_                          07-26-05
Interviewed by: P/O Aleta Powell     #2837          Date
E.E.O. Unit

**DATE: June 16, 2005**

**TIME BEGINNING: 10:55a.m.**

**TIME ENDING: 11:10a.m.**

**LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL, #2837**

Officer Jones, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating allegations of disparate treatment in the 23rd District, 5 Squad. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

A. Yes.

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

A. Yes.

**Q. Do you have representation with you?**

A. No.

**Q. Do you wish to proceed?**

P/O William Jones #2042

D079

A. Yes.

Q. **Are you tape recording this interview?**

A. No.

Q. **Please state your full name, badge # and unit of assignment.**

A. Officer William Jones, # 2042, 23rd District.

Q. **What squad are you assigned to and who is your immediate supervisor?**

A. Right now I'm assigned to 5 Squad, Sergeant Guldner is my supervisor.

Q. **In the past year have you reported to court in plainclothes?**

A. No, I always wear my uniform.

Q. **Approximately how many times in the past year have you reported to court in plainclothes?**

A. N/A

Q. **Did you receive prior to 11/04/04 a memorandum from your supervisor in reference to attending court in plainclothes?**

A. Yes.

Q. **Do you recall when you receive this memorandum?**

A. I don't remember the exact date but I do remember receiving it.

Q. **Approximately how many times have you attended court in plainclothes after receiving the memorandum from your supervisor?**

A. None, I never attend in plainclothes.

Q. **Has your supervisor taken any discipline action against you for attending court in plainclothes?**

A. N/A

Q. **What form of discipline action did your supervisor take against you and when?**

A. N/A

P/O William Jones #2042

D080

**Q. Did Captain Seaborough take any discipline action against you?**

A. N/A

**Q. Have you heard any supervisor's referring to any white male officers as "The White Boy's Club"?**

A. No.

**Q. Is there any question you feel you should have been asked and wasn't?**

A. No.

You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview, initial each page, and when you come to the last page please sign and date it at the line marked with your name.

You may obtain a copy of this interview once the investigation is closed.

I have read the preceding statement consisting of ___ pages and it is true and correct to the best of my knowledge.


P/O William Jones          #2042                          6·16·05
23rd District                                             Date


Interviewed by:                                           6-16-05
P/O Aleta Powell          #2837                           Date
E.E.O. Unit


Reviewed by:                                              6·16·05
Sergeant Patrick O'Malley   #8835                        Date
E.E.O. Unit


P/O William Jones #2042                                   D081

**DATE:** February 23, 2005

**TIME BEGINNING:** 12:37p.m.

**TIME ENDING:** 1:50p.m

**LOCATION:** 990 SPRING GARDEN STREET, 3^(RD) FLOOR, ROOM #301

**INTERVIEWED BY:** P/O ALETA POWELL, #2837

Officer Tygh, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating allegations of disparate treatment in the 23 District, 5 Squad. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

A. Yes.

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

A. I didn't know but that is fine.

**Q. Do you have representation with you?**

A. No.

P/O Donna Tygh #1321

D082

**Q. Do you wish to proceed?**

A. Yes.

**Q. Are you tape recording this interview?**

A. No.

**Q. Please state your full name, badge # and unit of assignment.**

A. Officer Donna Tygh, # 1321, 23rd District.

**Q. Did you ever hear any supervisor referring to any group of officers as the "White Boy Club"?**

A. Yes, I did.

**Q. Who are the officers that the supervisor is referring to?**

A. Officer Christopher Stever, and Officer Matthew Funk.

**Q. Who is the supervisor that is referring to the officers in this manner?**

A. Sergeant Sandra Russell.

**Q. When did you hear Sergeant Russell referring to the officers as the "White Boy Club"?**

A. I don't know the specific date but it was sometime in October 2004. I know I was on limited duty inside.

**Q. Exactly what did Sergeant Russell say in reference to the "White Boy Club"?**

A. I could hear Sergeant Russell speaking, I could not see if she was talking on the telephone or to someone there was a door between us. She went into the office and I heard her voice saying I m' sick of their F___ing little White Boys Club. Then I her say Stever and Funk.

**Q. Who was Sergeant Russell talking with when she made this statement?**

A. I believe Sergeant Russell was on the phone.

P/O Donna Tygh #1321

**Q. Did you tell Officer Christopher Stever that Sergeant Russell made this statement?**

A. Yes.

**Q. Did you tell Officer Matthew Funk that Sergeant Russell made this statement?**

A. I don't remember specifically telling him his partner might have let him know.

**Q. Did you tell Officer Steven Gantz that Sergeant Russell made this statement?**

A. I don't remember.

**Q. When and where did you tell Officer Stever?**

A. Maybe a week or two after.

**Q. Were there any witnesses to Sergeant Russell making this statement?**

A. No, like I said she went into the other room and I was sitting right next to the door.

**Q. Did you report to any supervisor that Sergeant Russell made this statement about Officers Stever, Funk, and Gantz?**

A. Report it officially no but, I have told them about comments that's she has made. Supervisors have seen things that she has done but nothing is done about it.

**Q. What kind of comment are you referring to that Sergeant Russell has made?**

A. Well, she pulled her pants legs up in front of males that I had arrested and asked the prisoner "don't you think my legs are sexy." This was on 2 different occasions. My old partner Mary Luce saw this. And she said, "Not that you two girls are my slaves."

**Q. Did you ever hear Sergeant Russell make any sexual comments to any officer?**

A. Oh yes.

**Q. When did this occur?**

A. I believe it was in January 2005.

**Q. Where did this take place?**

A. In the 5 squad office.