**Q. Were there any other witnesses to Sergeant Russell making this comment?**

A.  Officer Jackson is whom she was referring to and he was there.  Sergeant Lamont Adams was in the room but I don't know if he heard.

**Q.  Exactly what was the comment Sergeant Russell made?**

A.  She ask me to see what was taking Officer Jackson so long in the men's room and when Officer Jackson came back into the room Sergeant Russell said to Officer Jackson "I didn't know it was that long" I don't know what his response was to this.

**Q.  Did you ever hear Sergeant Russell make any other comments of a sexual overtone to any other officer?**

A.  To Officer Funk.

**Q.  What exactly did she say to Officer Funk?**

A.  She said "I would hump you all night long."

**Q.  Do you recall when Sergeant Russell made this statement?**

A.  I remember where I was but I don't remember the date.

**Q.  Where were you?**

A.  I was exiting the building on the 23rd side and Sergeant Russell, Officer Funk, and I believe Stever was with him they were standing by the door.  That leads down to our locker rooms.

**Q.  Is this the only times you heard Sergeant Russell make sexual comment of this kind?**

A.  On January 23rd 2005 the night of the big snow storm she was in the 5 squad room talking with Officer Jackson ,Officer Davis and myself.  Sergeant Russell used so much vulgarity until I had to leave the room and she said are you leaving us I said yes I'm going out for a smoke.  She was using the **C**___ word, and the **P**___ word and she was referring to a Chris Rock show but I just got out of there.  She knew I was upset because she said are you leaving us.

**Q.  Is there anything pertinent you wish to add to this interview?**

A.  The most important part is her saying W.B.C. about Officer Stever and Officer Funk. The other thing is her lifting up her pants legs and saying "Do you think my legs are sexy." My one prisoner was nice and calm until she did that then he said why do I have to sit on the f---ing floor.  Then he took his being locked up less seriously.

P/O Donna Tygh #1321

D085

You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview, initial each page, and when you come to the last page please sign and date it at the line marked with your name.
You may obtain a copy of this interview once the investigation is closed.

I have read the preceding statement consisting of __5__ pages and it is true and correct to the best of my knowledge.

_P/o Donna Tygh_ #1321
Officer Donna Tygh
23rd District

_2-23-05_
Date

_P/O Aleta Powell_ #2837
Interviewed by:
P/O Aleta Powell          #2837
E.E.O. Unit

_2-23-05_
Date

_Sgt Patrick O'Malley_ #8835
Reviewed by:
Sergeant Patrick O'Malley       #8835
E.E.O. Unit

_2-23-05_
Date

**DATE: June 1, 2005**

**TIME BEGINNING: 11:05a.m.**

**TIME ENDING:** *11.55 a m*

**LOCATION: 990 SPRING GARDEN STREET, 3ʳᴰ FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL, #2837**

Sergeant Thomas, I am Officer Powell #2837 of the EEO Unit and I will be recording your interview directly on to the computer.

The Equal Employment Opportunity Unit is investigating allegations of disparate treatment in 23ʳᴰ District 5-Squad. You are being interviewed in reference to this allegation.

> You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

> You are reminded that making a false statement in response to an Official Department investigation, is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

A. Yes.

**Q. Do you understand that you have the right to have representation with you in the course of this interview?**

A. Yes, I do.

**Q. Do you have representation with you?**

A. No, I don't.

Sergeant Tracy Thomas #381

**Q. Do you wish to proceed?**

A. Yes.

**Q. Are you tape recording this interview?**

A. No.

**Q. Please state your full name, badge # and unit of assignment.**

A. Tracy Thomas, #381, Assigned 23rd District 2-Squad.

**Q. Do you recall being told by your Commanding Officer at any time last year to read Directive 13, "Court Notices and Subpoenas" at your roll calls pertaining to officers appearing in court in plainclothes?**

A. I recall reading that Directive but I do not recall the time frame.

**Q. Do you know of any officers who had a problem adhering to the dress code as described in Directive 13 pertaining to appearing in court in plainclothes?**

A. Yes, I do.

**Q. Could you please name the officers and the squad they are in?**

A. Officer Labrice, Officer Stever, Officer Funk, and Officer Bournett.

**Q. Are you any of the above mention Officer's immediate supervisor?**

A. At the time I was Officer Stever and Officer Funk and Officer Bournett's supervisor then I was transferred from 5 squad to 2 squad along with Officer's Stever, Funk and Bournett..

**Q. Did you tell Officer Christopher Stever #1407, W/M, and Officer Matthew Funk # 6926, W/M that on November 4th 2004 Officer Renard Bournett # 3958, B/M was caught appearing in court in plainclothes?**

A. I don't know the exact dates but I told them all. I had the captain's receipts.

**Q. How many times has Officer Bournett attended court in plainclothes to your knowledge?**

A. To my knowledge it was twice.

Sergeant Tracy Thomas #381

**Q. Did you tell Officer Stever and Officer Funk that Officer Bournett received a foot beat for one week for attending court in plainclothes?**

A. Yes, I did.

**Q. When you found out that Officer Bournett disobeyed the Commanding Officers direct order in reference to wearing plainclothes to court what action did you take?**

A. Actually I was ordered by my Captain Seaborough to put him on a foot beat.

**Q. Do you recall for how long Officer Bournett was placed on the foot beat?**

A. Approximately one week.

**Q. Did you initiate any formal disciplinary action against Officer Bournett for going to court in plainclothes after being reminded about Directive 13?**

A. No, I did not because the Captain ordered me to place him on a foot beat.

**Q. What was your reasoning for pointing out to Officer Stever and Officer Funk that Officer Bournett receive a Foot Beat for one week when he went to court in plainclothes?**

A. For training purposes so the would know what would happen if they did not adhere to Directive 13.

**Q. Did you tell Officer Funk that P/O Mike Coleman and P/O William Jones were caught going to court in plainclothes?**

A. I don't recall telling them that.

**Q. Did you tell Officer Stever that P/O Mike Coleman and P/O William Jones were caught going to court in plainclothes?**

A. No, I don't recall that.

**Q. Have you ever heard Sergeant Russell referring to any group of officers as the "White Boys Club"?**

A. No, I haven't.

**Q. Is there any question you feel you should have been asked and wasn't?**

A. No.

Sergeant Tracy Thomas #381

D089

You may obtain a copy of this interview once the investigation is closed.

You are reminded that this is an on going investigation. Therefore, you are instructed not to talk to anyone involved in this investigation, other than counsel, regarding what you were interviewed about here today.

Please read your interview to make certain that it is accurate. If there are, any mistakes correct them. After you have finished the interview, initial each page, and when you come to the last page please sign and date it at the line marked with your name.

I have read the preceding statement consisting of ____ pages and it is true and correct to the best of my knowledge.


Sergeant Tracy Thomas      #381
23rd District

Date    6/1/05


Interviewed by:
P/O Aleta Powell      #2837
E.E.O. Unit

Date    6-1-05


Reviewed by:
Sergeant Patrick O'Malley      #8835
E.E.O. Unit

Date

**STATEMENT OF: SERGEANT SAUNDRA RUSSELL #516, B/F, PR #234934**

**DATE AND TIME: Thursday, 10-20-05, 11:25 AM**

**LOCATION: 990 SPRING GARDEN STREET, 3RD FLOOR, ROOM #301**

**INTERVIEWED BY: P/O ALETA POWELL #2837**

**IN THE PRESENCE OF:**   Ronald Abel, Legal Counsel
                         Lieutenant Frances Neiley #306

Sergeant Russell, I am Officer Powell #2837 of the EEO Unit, and this is Lieutenant Neiley. She will be recording your interview directly on to the computer.

I am questioning you concerning allegations of disparate treatment and inappropriate comments brought against you in the 23rd District, 5-Squad.

Q. Are you represented by counsel?

A. Yes.

Q. Do you want to consult with an attorney?

A. I did.

Q. Were you given at least seventy-two hours notice of the time and place of this interview?

A. Yes.

You are reminded that failure to cooperate in a Department Investigation is punishable by ten (10) days suspension, to dismissal, under Section 1.11 of the Disciplinary Code.

You are reminded that making a false statement in response to an Official Department Investigation. Is punishable by ten (10) days suspension, to dismissal, under Section 1.12 of the Disciplinary Code.

**Q. Do you understand this?**

**A. Yes.**

Sergeant Saundra Russell #516

D091

Q. Are you willing to cooperate?

A. Yes.

Q. What is your present assignment?

A. Narcotics Strike Force.

Q. How long have you been assigned to this unit?

A. Eight months.

Q. What was your previous assignment?

A. Twenty Third District.

Q. Approximately how long were you assigned as the Five Squad supervisor in the 23rd District?

A. Approximately one year.

Q. Were Officer Matthew Funk #6926, W/M, and Officer Christopher Stever #1407, W/M assigned to Five Squad before you were assigned there?

A. Yes.

Q. Were Officer Matthew Funk and Officer Christopher Stever assigned to Five Squad by your request?

A. No.

Q. Describe your work relationship with Officer Matthew Funk before October 26, 2004 and after October 26, 2004?

A. Officer Funk was a great officer. I never had any discipline problems with Officer Funk. He was punctual and did everything I asked him to do. After October 26th, Officer Funk was upset because of discipline action that was taken against him for failure to wear his uniform to court.

Q. Describe your work relationship with Officer Christopher Stever before October 26th 2004 and after October 26, 2004?

A. My work relationship with Officer Stever was good. When it came to taking orders, he would initially resist taking the order from me and once I would explain to him the necessity of the order, then he was fine with it.

Sergeant Saundra Russell #516 

D092

After October 26th, he was totally disgruntled. I tried to talk to him several times to bring his spirits back up but he could not understand why he was being disciplined.

Q. On May 18th 2004 you submitted to the officers in Five Platoon a memorandum, Subject: Attending Court In Plainclothes. Were Officer Funk and Officer Stever the first officers to defy this memorandum since you reminded your squad May 18th 2004 not to attend court in plainclothes?

A. No.

Q. If not who are the other officers who defied this memorandum?

A. Officer Elizabeth Strange. She was working a Burglary Detail and she had been plainclothes when I was assigned to Five Squad. She was under the impression that because she worked a plainclothes detail that she was to report to court in plain clothes. But after I informed her, she never wore plainclothes again.

Q. What is the race of Officer Strange?

A. A white female.

Q. Between May 18th 2004 and October 26th 2004, had you any problems with Officer Matthew Funk in reference to his going to court in plainclothes?

A. No.

Q. Between May 18th 2004 and October 26th 2004, had you any problems with Officer Christopher Stever in reference to his going to court in plainclothes?

A. No. Prior to my memo, May 18, 2004. Captain Sharon Seaborough had issued a memo stating that the officers could not wear plainclothes to court. I had observed Officer Funk and Officer Stever attending court in their plainclothes. That's why I issued the memorandum on May 18, 2004.

Q. Were both Officer Funk and Officer Stever fully aware that they were not to attend court in plainclothes?

A. Correct.

Q. Did you refer to P/O Matthew Funk, P/O Christopher Stever and P/O Steven Gantz as the "White Boy Club"?

A. No.

Sergeant Saundra Russell #516 

D093

**Q. Did you ever refer to P/O Funk, Stever, and Gantz as "W.B.C.'s"?**

A. No.

**Q. Did you refer to P/O Funk, Stever, and Gantz as your "Boy's" for example: "Where are my boy's?"**

A. I only had two females that worked under me. I don't like the term boys myself. I am not going to call anybody else "boys."

**Q. Did you ever pull your pants legs up in front of two prisoners and say, "Don't you think my legs are sexy?"**

A. No. First of all, I was never near any prisoners, where the 23rd District cell room is. I would never have walk that way once my officers arrested them. The Operations Room is approximately 20-30' from where the prisoners are processed. I don't think that that is sexy to show a prisoner my legs.

**Q. Did you ever pull your pants legs up in front of five prisoners and say "Ain't my legs sexy?"**

A. No, if I didn't pull it up in front of two, I am not going to pull it up in front of five.

**Q. While on duty did you ever make either of the aforementioned comments or similar comments about your legs?**

A. No.

**Q. Why do you think the officers would make this allegation about your legs?**

A. Prior to my assignment to Five Platoon, Officer Donna Tygh and Officer Mary Luce were permanent 7:00 PM to 3:00 AM tour of duty. Deputy Commissioner Fox changed all Five Platoon's schedules, and they would have had to work day work also. Officer Luce had a daycare in her home and day work was not good for her. She told me this. I went to Captain Seaborough to see if I could help out Officer Luce. The best we could do was to change her schedule to 6:00 PM to 2:00 AM. When I couldn't accommodate her any longer by keeping her on 6 to 2, she became angry as well as her partner.

**Q. Did you state to Officer Anthony Jackson, after he returned from the men's Room, "I didn't know it was that long"? Please explain.**

A. No. Anthony Jackson is in his twenties. I'm thirty-six years old. I think it was inappropriate. My son is eighteen years old.

Sergeant Saundra Russell #516 

D094

**Q. Did you ever say to Officer Matthew Funk "Funk, I could hump you all night long"?**

A. No. It is ridiculous. I don't speak to men like that. I am a lady and I carry myself as such. My officers have never seen me out of uniform because I will be addressed as Sergeant Russell.

**Q. Is there anything else that you want to add or any information that you haven't told me because I did not ask that question specifically?**

A. Yes. In reference to the racism, when I was assigned to Five Squad I only had four white officers assigned to my Platoon. When I left, I had two black officers assigned to my Platoon. Every officer that I brought to Five Squad to work with me was white. I came from the 25th District, where there were white officers, black officers and Hispanic officers. There wasn't discrimination in the 25th District. You worked with whatever nationality to get the job done. I picked people to work for me based on their experience and how well they applied the job, not race. Also, this may be irrelevant, but both of my grandmothers are Caucasian. In reference to discipline for Officer Stever, on my first day as the Five Platoon Sergeant, I was given a memo from Captain Seaborough, in reference to Officer Stever and Officer Funk abandoning their post a week prior to my arrival. Officer Stever and Officer Funk were to be disciplined on that occasion and I went to the Captain and asked her if I could just give them a counseling memo because I believed that everybody should start with a clean slate. Myself and the Captain could have disciplined both Officer Stever and Officer Funk but we didn't.

**Q. What actions of Officers Stever and Funk precipitated this request by Captain Seaborough to initiate discipline against them?**

A. Officers Stever and Funk were assigned to a Safe Streets Beat. They came into the district approximately two and a half hours prior to their reporting-off time and turned their radios in without notifying the Operations Room Supervisor or the Street Supervisor that they were going home. Sergeant Herder called for them on the air three times with no response. He wrote a memo to the Captain for disciplinary action to be taken against those officers because he was responsible for them- he was the street sergeant.

**Q. Do you still have a copy of the memo you received from Captain Seaborough?**

A. I don't know. Lieutenant Gary (can't recall last name) took them off of the Burglary Detail and assigned them ( Officers Stever and Funk) to uniform. The Captain kept them in Five Squad. She could have put them out then.

**This is an ongoing investigation and is not to be discussed with anyone other than your legal counsel.**

Sergeant Saundra Russell #516

D095

Q. Do you understand this?

A. Yes.

Q. If during the course of this investigation it is determined that you have discussed this investigation, you may be subjected to disciplinary action. Do you understand this?

A. Yes.

At this time, I would like you to read your interview and if there are any mistakes, please correct them. Sign each page after you have read them all and when you come to the last page, please sign it at the line marked with your name. Read this interview completely and make sure it is accurate.

You will be given a copy of your interview upon request when this investigation is completed.

INTERVIEW COMPLETED: 12:20 PM

I HAVE READ THE PRECEDING STATEMENT CONSISTING OF ( 6 ) PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

NAME: _Saundra J Russell_

UNIT: _Narcotics Strike Force_

DATE & TIME: _10/20/05_

WITNESS :

_Ronald F. Abel, Esq._

Durkin & Abel, P.C.
Ronald F. Abel, Esquire

1760 MARKET STREET
SUITE 602
PHILADELPHIA, PA 19103
(215) 569-9090 • OFFICE
(215) 569-9595 • FAX

147 UNION AVENUE
SUITE 2E
MIDDLESEX, NJ 08846
732-356-7810 • OFFICE
732-302-1397 • FAX

(215) 813-4148 (24 HOUR)

Sergeant Saundra Russell #516

D096

# D

# Documents

**Memorandum** Dated: 04/06/04  Subject: Officers Appearing In Court

**Memorandum** Dated: 05/18/04  Subject: Attending Court In Plainclothes Attached: Directive 13-3, E. Professional Conduct and Appearance During Court Appearances

**Memorandum** Dated: 05/27/04  Subject: Failure To Appear For Court

**D.A.R.** Dated: 10/06/04  Wednesday  Funk, Matthew PR# 239947
**D.A.R.** Dated: 10/06/04  Wednesday  Stever, Christopher PR# 215656

**Court Notice Dated:** 10/06/04, PR# 239934, D.C.#04-23-012419-Funk, M.
**Court Notice Dated:** 10/06/04, PR# 215656, D.C.#04-23-012419- Stever, C
**Court Notice Dated:** 10/06/04, PR# 239934, D.C.#04-23-012419-Funk, M.
      Stamped PLAINCLOTHES
**Court Notice Dated:** 10/06/04, PR# 215656, D.C.#04-23-012419- Stever, C
      Stamped PLAINCLOTHES
**Court Notice** **COURT ATTENDANCE, Dist. 2300  23rd District  10/06/04

**75-158 Patrol Log** Dated 10/06/04,  23rd District

**Memorandum** Dated: 10/07/04  Subject: Formal Disciplinary Action

**Statement of P/O Christopher Stever #1407 Dated: 11/04/04**
**Statement of P/O Matthew Funk #6926 Dated:11/05/04**
**Statement of P/O Ida Keyes #2079 Dated: 11/10/04**

**Memorandum Dated:** 11/15/04  Subject: Request for Discipline Action
75-18, Statement of Charges Filed and Action Taken, P/O C. Stever #1407
75-18, Statement of Charges Filed and Action Taken, P/O M. Funk #6926

**Memorandums** Dated 11/12/04 Subject: Squad Reassignment
      Dated 12/17/04 Subject: Reassignment

*MEMORANDUM*

TO : All Platoon Commanders

FROM : Commanding Officer, 23rd District

SUBJECT : <u>OFFICERS APPEARING IN COURT</u>

1. I have been getting an abundant amount of notifications from the Commanding Officer, Court Liaison Unit on officers appearing in court in plainclothes.

2. For the next week have directive 13 "Court Notices and Subpoenas" will be read to all roll calls.

3. Anymore violations of directive 13 will result in formal disciplinary actions against the officer.

Captain Sharon Seaborough# 66
Commanding Officer
23rd District

SS/lg

## *MEMORANDUM*

**TO** : 5 Platoon Officers

**FROM** : Sgt. Saundra S. Russell #516, PR# 234934

**SUBJECT :** <u>ATTENDING COURT IN PLAINCLOTHES</u>

1. There were several officers observed in plainclothes while attending court on 05-17-04. In March 2004, the 23rd District Commanding Officer issued a memorandum in reference to officers not wearing the uniform of the day who were not assigned to a plainclothes unit.

2. Directive 13-3 is being issued with this memorandum. Any further violation of this directive will result in formal disciplinary action.

Saundra S. Russell
23rd District          516
5 Platoon

E. Professional Conduct and Appearance During Court Appearances

1. Personnel will appear and conduct themselves in such a manner as to maintain the dignity of the Police Department. No offensive clothing, jewelry, footwear, etc., will be tolerated.

2. Personnel will dress in the uniform of the day, regardless of tour of duty, including scheduled days off.

3. Personnel in plainclothes and/or investigative positions, in sick/injured status, or in suspended status, will dress in neat and conservative civilian or business attire. Non-uniformed personnel will display their Police Department identification card on their outermost garment, chest high, when entering any court facility and while in the court room. Attire such as jeans, dungarees, sweatpants or sweatshirts, sneakers, T-shirts, short pants, etc., will not be permitted when appearing for court.

   EXCEPTION: Officers whose identity must be protected due to highly sensitive assignment, i.e., narcotics, vice, etc., will be required to display identification cards only when called upon to testify while inside a courtroom.

*4   NOTE: Plainclothes and/or investigative positions are defined as:

   Detective Bureau personnel
   Civil Affairs personnel
   Internal Affairs Bureau personnel
   Authorized undercover Narcotics Bureau personnel

F. When an employee is attending court for any duty-related reason, i.e., divisional hearing, criminal trial, juvenile hearing, deposition, etc., and is being compensated by the Police Department for that appearance, the employee will remain in the Court *7 building until the conclusion of the case(s). Employees will not go home or leave the Court building to conduct personal business without the express authorization of a Court Attendance Section supervisor. In addition, the assigned ADA for any case(s) at which the employee is appearing will be notified by the employee of the absence prior to the employee's departure. Leaving the Court building is limited to personal/family emergencies only.

*1  G. When an employee is in any criminal or civil litigation, the employee will immediately submit to their commanding officer a memorandum which will explain the matter, detailing the employee's involvement, and also include opposing party information, attorney information, and docket/case numbers. The commanding officer will maintain this information in a district/unit tickler file and immediately forward a copy to the Chief Inspector, Internal Affairs Bureau.

TO          : Commanding Officer, 23rd District

FROM      : P/O Christopher Stever#1407, 5 Platoon

SUBJECT : <u>**FAILURE TO APPEAR FOR COURT**</u>

1. On 4/8/03, At 8:30 AM. I was scheduled for a court hearing at the 23rd District. My tour of duty for this day was 8:30am. To 4:30pm. I was in NETS training at the Police Academy and and had notified the courtroom and coordinator of my mandatory training.

2. In the future I will check that The O.R.S. updates the D.A.R. and adheres to Directive #13.

*court has priority over training )*

*Resubmit*

*6/023*

P/O Christopher Stever#1407
23rd District
5 Platoon

D101

DIST-UNIT: 2300
23RD DISTRICT

| NAME/PAYROLL/PLAT | A B S | HRS | A B S | HRS | A B S | HRS | A S N | TIME ON | TIME OFF | C / O | TOTL HRS | M L | DET UNIT | UNIT ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PARKER BEY RAVE 229827 50 | | | | | | | 5 | 0900 | 1700 | | | | | |
| BARNETT KEISHA 231079 50 | | | | | | | 5 | 0730 | 1530 | O | 05.0 | M | | 23SC1 |
| BENGOCHEA CARME 233234 50 | | | | | | | .5 | 0700 | 1500 | | | | | |
| RUSSELL SAUNDRA 234934 50 | V | 3.0 | | | | | 5 | 0800 | 1600 | | | | | 23D |
| EWALD JOSEPH 238499 50 | | | | | | | 5 | 1800 | 0200 | | | | | 23S1 |
| MCGLONE TAMARA 238515 50 | | | | | | | 5 | 0800 | 1600 | | | | | 23SC1 |
| *FUNK MATTHEW 239934 50 | | | | | | | 5 | 0800 | 1600 | | | | | 23S1 |
| JACKSON ANTHONY 239947 50 | | | | | | | 5 | 0800 | 1600 | | | | | 23T2 |
| GONGLIK MATTHEW 246301 50 | | | | | | | 1 | 1800 | 0200 | O | 02.0 | | | 23S1 |
| DAVIS SHARROD 248077 50 | V | 4.0 | | | | | 5 | 0800 | 1600 | | | | | 23T3 |
| MCCOWAN AUDRA 250998 50 | X | | | | | | | | | | | | | |

LAST PAGE
PF          5=FULL-SCRN     7=BWD 8=FWD     10=PREV 11=MENU 12=EXIT

D102

DIST-UNIT: 2300
23RD DISTRICT

| NAME/PAYROLL/PLAT | | A B S | HRS | A B S | HRS | A B S | HRS | A S N | TIME ON | TIME OFF | C / O | TOTL HRS | M L | DET UNIT | UNIT ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SEABOROUGH SHAR | 188851 | 50 | | | | | | 5 | 0900 | 1700 | C | 02.0 | | | |
| BRYANT RONALD S | 196800 | 50 | | | | | | 5 | 0800 | 1600 | | | | | |
| ANDERSON ROBERT | 208648 | 50 | | | | | | 5 | 0800 | 1600 | | | | | 23FB6 |
| ROBINSON PAULA | 212287 | 50 | | | | | | 5 | 0700 | 1500 | | | | | |
| *STEVER CHRISTOP | 215656 | 50 | | | | | | 5 | 0800 | 1600 | | | | | 23T1 |
| BELTON CAROLYN | 215984 | 50 | | | | | | 5 | 1400 | 2200 | | | | | NCT2 |
| WITHERSPOON CON | 217246 | 50 | | | | | | 5 | 0700 | 1500 | | | | | |
| STEAD PAUL | 219651 | 50 | | | | | | T | 0800 | 1600 | | | | | |
| TYGH DONNA | 225025 | 50 | S | 8.0 | | | | E | 0700 | 1500 | | | | | 4912 |
| SNEAD KAREN | 225149 | 50 | DO | | | | | 5 | 0700 | 1500 | | | | | |
| MANGUM JOYCETTA | 225164 | 50 | | | | | | | | | | | | | |
| GARDNER SHEILA | 226985 | 50 | V | 8.0 | | | | 5 | 1400 | 2200 | | | | | NCT2 |
| ROCKS MICHAEL | 227780 | 50 | | | | | | 5 | 0800 | 1600 | | | | | 23T2 |
| GANTZ STEPHEN | 228537 | 50 | | | | | | 5 | 1800 | 0200 | | | | | 23T4 |
| LUCE CATERINO M | 228698 | 50 | | | | | | | | | | | | | |

MORE PAGES
PF          5=FULL-SCRN      7=BWD  8=FWD      10=PREV 11=MENU 12=EXIT

D103

- COURT ATTENDANCE -                     - TESTIMONY TIME - YES . NO .
IN 0000 OUT 0000 TOTAL TIME ....    IN .... OUT .... TOTAL TIME ....

- COURT INFORMATION -                 - COURT DATE TOUR -
NAME FUNK MATTHEW        BADGE 6926  UNIT 2300  PLT 50
DATE 10-06-04  TIME 0900  COURT ROOM 03 0806 CRIMINAL JUSTICE CENTER
REMARKS

DEFENDANT MEADE                CHARGE K/I
ARREST DATE          D.A. MORRIS        6866318  D.A. PAYROLL 176037
SENT BY POMEROY JOANNE   DATE SENT 08-16-04  TIME SENT 1146

JUDGE ................... D.A. ............... D.A. PAYROLL ......
DISPOSITION ................... DISP EVIDENCE ....
COURT ROOM IN .... OUT ....   D.A. SIGNATURE ........................

NOTIFIED BY .............. OFFICER SIGNATURE ........................

CANCELLED BY BARNES TARA     DATE 10-01-04 TIME 1435  PF10 = PREVIOUS SCREEN
                                                      PF11 = MENU   PF12 = EXIT

D104

POLICE DEPARTMENT
D.C.NUM 04-23-012419

- COURT ATTENDANCE -
IN 0000 OUT 0000 TOTAL TIME ....

- TESTIMONY TIME - YES . NO .
IN .... OUT .... TOTAL TIME ....

- COURT INFORMATION -                           - COURT DATE TOUR -
NAME STEVER CHRISTOP     BADGE 1407   UNIT 2300   PLT 50
DATE 10-06-04   TIME 0900   COURT ROOM 03 0806 CRIMINAL JUSTICE CENTER
REMARKS

DEFENDANT MEADE                 CHARGE K/I
ARREST DATE           D.A. MORRIS            6866318   D.A. PAYROLL 176037
SENT BY POMEROY JOANNE   DATE SENT 08-16-04   TIME SENT 1146

JUDGE .................... D.A. ............... D.A. PAYROLL ......
DISPOSITION ................................ DISP EVIDENCE ....
COURT ROOM IN .... OUT ....     D.A. SIGNATURE ........................

NOTIFIED BY .............. OFFICER SIGNATURE .......................

CANCELLED BY BARNES TARA     DATE 10-01-04 TIME 1435   PF10 = PREVIOUS SCREEN
                                                       PF11 = MENU   PF12 = EXIT

D105

** COURT NOTICE **        POLICE DEPARTMENT        ** COURT NOTICE **
PAYROLL 215656            D.C.NUM 04-23-012419        DATE 10-06-04

- COURT ATTENDANCE -                    - TESTIMONY TIME - YES - NO -
IN .... OUT .... TOTAL TIME ....        IN .... OUT .... TOTAL TIME ....

- COURT INFORMATION -                  - COURT DATE TOUR -
NAME STEVER CHRISTOP        BADGE 1407   UNIT 2300   PLT 50
DATE 10-06-04   TIME 0900   COURT ROOM 03 0806 CRIMINAL JUSTICE CENTER
REMARKS

DEFENDANT MEADE                  CHARGE K/I
ARREST DATE            D.A. MORRIS        6866318  D.A. PAYROLL 176037
SENT BY POMEROY JOANNE   DATE SENT 08-16-04  TIME SENT 1146

JUDGE ...................  D.A. ...............  D.A. PAYROLL ......
DISPOSITION ...........................  DISP EVIDENCE ....
COURT ROOM IN .... OUT ....   D.A. SIGNATURE ............

NOTIFIED BY ............    OFFICER SIGNATURE ............

          ** IF OFFICER IS UNAVAILABLE FOR COURT REFER TO DIRECTIVE 13 **


** COURT NOTICE **        POLICE DEPARTMENT        ** COURT NOTICE **
PAYROLL 239934            D.C.NUM 04-23-012419        DATE 10-06-04

- COURT ATTENDANCE -                    - TESTIMONY TIME - YES - NO -
IN .... OUT .... TOTAL TIME ....        IN .... OUT .... TOTAL TIME ....

- COURT INFORMATION -                  - COURT DATE TOUR -
NAME FUNK MATTHEW           BADGE 6926   UNIT 2300   PLT 50
DATE 10-06-04   TIME 0900   COURT ROOM 03 0806 CRIMINAL JUSTICE CENTER
REMARKS

DEFENDANT MEADE                  CHARGE K/I
ARREST DATE            D.A. MORRIS        6866318  D.A. PAYROLL 176037
SENT BY POMEROY JOANNE   DATE SENT 08-16-04  TIME SENT 1146

JUDGE ...................  D.A. ...............  D.A. PAYROLL ......
DISPOSITION ...........................  DISP EVIDENCE ....
COURT ROOM IN .... OUT ....   D.A. SIGNATURE ............

NOTIFIED BY ............    OFFICER SIGNATURE ............

          ** IF OFFICER IS UNAVAILABLE FOR COURT REFER TO DIRECTIVE 13 **

D106

DIST 2300 23RD DISTRICT                DATE 10-06-04

| NAME | PAYROLL | PLT | D.C.NUMBER | CRT-RM-START | | | IN | OUT | EXC |
|------|---------|-----|------------|-----|-----|-----|-----|-----|-----|
| FUNK MATTHEW | 239934 | 50 | 04-23-012419 | 03 | 0806 | 0900 | 0000 | 0000 | C |
| GANTZ STEPHEN | 228537 | 50 | 04-23-029305 | 03 | 0606 | 0900 | 0843 | 1125 | . |
| JACKSON ANTHONY | 239947 | 50 | 04-23-029305 | 03 | 0606 | 0900 | 0915 | 1125 | L |
| MCDONNELL JONAT | 237905 | 50 | 04-23-030492 | 03 | 0806 | 0900 | 0000 | 0000 | U |
| ROCKS MICHAEL | 227780 | 50 | 99-23-022604 | 03 | 0405 | 0830 | 0000 | 0000 | S |
| STEVER CHRISTOP | 215656 | 50 | 04-23-012419 | 03 | 0806 | 0900 | 0000 | 0000 | C |
| ADAMS LAMONTE | 186850 | 70 | 04-23-005934 | 03 | 0505 | 0930 | 0759 | 1111 | . |
| BARNETT LAURA | 192393 | 70 | 04-23-005934 | 03 | 0505 | 0930 | 0814 | 1115 | . |
| DIETZ CHRISTOPH | 223601 | 70 | 04-23-005934 | 03 | 0505 | 0930 | 0802 | 1111 | . |
| HARRIS STAYCEE | 225761 | 70 | 04-23-005934 | 03 | 0505 | 0930 | 0844 | 1111 | . |
| ............... | ...... | .. | ............. | .. | .... | .... | .... | .... | . |
| ............... | ...... | .. | ............. | .. | .... | .... | .... | .... | . |
| ............... | ...... | .. | ............. | .. | .... | .... | .... | .... | . |
| ............... | ...... | .. | ............. | .. | .... | .... | .... | .... | . |
| ............... | ...... | .. | ............. | | | | | | |

LAST PAGE
TO VIEW ENTIRE COURT NOTICE - ENTER X AFTER EXCUSE - DEPRESS ENTER KEY
PF7 = PREVIOUS PAGE    PF8 = NEXT PAGE    PF11 = MENU    PF12 = EXIT

| Date | District | Platoon | Sector(s) | Flashlight # |
|---|---|---|---|---|
| 0-6-04 | 23 | 5 | Dist | |

Hour: 8a - 4p

Vehicle No. 233 AS 23T1
Mileage - Start: 5560  Mileage - Finish: 5669  Well(3)

Equipment Check: ☑ Oil ☑ Trans Fluid ☑ Tires ☐ Fire Extinguisher
MDT Working: ☐ Yes ☐ No

List Missing/Defective Equipment: prev. change located

**LOCATION AND NATURE OF COMPLAINT OR SERVICE RENDERED**
(Below include complainant and business names, vehicle information, ticket # issued, etc.)

| Time Received | Time Completed | R/D | Type | Location | Nature of Incident/Activity/Service Rendered | UNF |
|---|---|---|---|---|---|---|
| 8:00 AM | 12:30 PM | | 75-48 / AA-45 / 75-48A / Other | CJC | prev. change ct. Rm 806 | ☐ |
| 1:00 PM | 1:25 PM | M | 75-48 / AA-45 / 75-48A / Other | HQ | Egir/Pw | ☐ |
| 1:45 PM | 2:15 PM | R/D | 75-48 / AA-45 / 75-48A / Other | Cent Det. | Dist Assignment / Pw | ☐ |
| 2:42 PM | 2:54 PM | R/D | 75-48 / AA-45 / 75-48A / Other | 15'/1600 Shikss | Area off | ☐ |
| 3:21 PM | 3:32 PM | R/D/S | 75-48 / AA-45 / 75-48A / Other | 1800 Master | Area off | ☐ |
| 4:00 PM | | R/D | 75-48 / AA-45 / 75-48A / Other | 100 | Report off | ☐ |
| | | | 75-48 / AA-45 / 75-48A / Other | | | ☐ |
| | | R/D | 75-48 / AA-45 / 75-48A / Other | | | ☐ |
| | | R/D | 75-48 / AA-45 / 75-48A / Other | | | ☐ |

D108

75-158 (Rev. 3/011)

TO : Commanding Officer, 23rd District

FROM : Sgt. Saundra S. Russell #516, 23rd District

SUBJECT: **FORMAL DISCIPLINARY ACTION**

1. On 10-06-04 P/O Stever #11407 and P/O Funk #6926 had a cancellation for Court Room #806 in the Criminal Justice Center. The officers were notified of this cancellation by Sgt. Russell #516 on 10-01-04 and again on 10-02-04. The officers stated to Sgt. Russell that they were not aware of the cancellation and reported on time to City Hall Court Attendance.

2. At approximately 11:45 am Sgt. Russell could not locate the officers and started an investigation as to their whereabouts. Sgt. Russell called City Hall Court attendance and spoke with Cpl. Petsis#8136. Cpl. Petsis tried to locate the officers checking the court notices that are turned in to Court Attendance personnel by every officer before reporting to their respective courtroom. The officers' notices were not with the uniformed section. They were stamped "PLAINCLOTHES".

3. Sgt. Russell tried to locate the officers via telephone with negative results. P/O Stever contacted Sgt. Russell at approximately 12:15 pm and stated that he and P/O Funk had just left court minutes ago and that they were having lunch. Sgt. Russell instructed both officers to return to the 23rd District.

4. P/O Funk and P/O Stever were observed by Sgt. Russell entering the 23rd District wearing the uniform of the day. Both of the officers stated that that they attended court in plainclothes. P/O Funk and P/O Stever stated to Sgt. Russell that the reason they attend court in plainclothes is because they do not want to be assigned to foot beats.

5. On 05-18-04 all officers assigned to the 23rd District 5 Squad were issued a highlighted copy of Directive 13 and a memorandum pertaining to court attire. It stated in summary that all officers assigned under my supervision are to report to court in the uniform of the day.

6. I request that these officers are formally disciplined for failure to comply with Directive13 and also to my issued memorandum dated 05-18-04.

Saundra S. Russell
Sergeant 516
23rd Police District

D109

STATEMENT OF: Police Officer Christopher Stever # 1407

DATE AND TIME: 11/04/04 pm 3:31pm

PLACE: 23rd Police District

CONCERNING: Formal Disciplinary Action

IN PRESENCE OF:

QUESTIONED BY: Sergeant Saundra S. Russell #516

RECORDED BY: Sergeant Saundra S. Russell #516

**You are reminded that failure to cooperate in a departmental administrative investigation is punishable by ten (10) days suspension to dismissal under Section 1:11 of the Disciplinary Code.**

**You are also reminded that making a false statement in response to an official departmental investigation is punishable by ten (10) days suspension to dismissal under Section 1:12 of the Disciplinary Code.**

**Q. Do you understand?**

A. YES

**Q. Do you understand that you have a right to have counsel present?**

A. YES

**Q. Do you wish to be interviewed without counsel present?**

A. YES

Q: What time did you report to court at City Hall on 10-06-04?

A: 8:00 I don't know the exact time we punched in.

Q: Were you in plainclothes when you checked into court?

A; YES

Q: Where did you go immediately after leaving City Hall Court Attendance?

A: To the Court Room.

D110

Q: Was the Court Room Liaison in the courtroom when you entered?

A: YES

Q: Did you give the Court Liaison a copy of your court notice?

A: YES

Q: Was the defendant on your notice on the liaison's file?

A: NO

Q: What did you do after you realized that your defendant wasn't on the liaison's file?

A: I went to talk to the DA.

Q: What did the DA tell you?

A: That she couldn't find the file, but it might be and add on.

Q: What did you do at that point?

A: By that time the judge came out and we waited for the list to be called.

Q: Did the DA tell you wait for the list to be called?

A: I never asked the DA should I wait for the list to be called.

Q: Why did you wait then?

A: To see if the case was in the room.

Q: Did you ever go back to the liaison to have her check on the case?
A: No I went back to the DA after the list was called and then she went to the Court Crier
   to get it pulled up on the computer.

C. S.

Q: Why didn't you go to the Court Crier yourself to see if your case was an add on?
A: Because the judge came on the Bench.

Q: Did you ever receive notification from Sgt. Russell or any supervisor in the district that your court case was cancelled?
A: NO

Q: Did you partner tell you at any time before that date that your court case was cancelled?
A: NO

Q: Where did you go after you were notified that your case was not in ready status in Court Room 806?
A: We punched out.

Q. After you punched out of court were did you go?
A: Lunch

Q: Where was lunch?
A: Reading Terminal.

Q: When did you find out that Sgt. Russell was trying to locate you?
A: When my wife called.

Q: What time did you report on to duty at the 23rd District?
A: A little after 1:00 PM, I don't recall what time it was.

Q: When you reported on to the district what were you wearing?
A: My uniform

Q: When did you change into you uniform?
A: When I got back to the District.

Q: Where you given a memorandum by Sgt Russell in reference to officers wearing plainclothes to court?
A: YES

C.S.

D112

Q: Do you have anything else to add reference to this interview ?
A: NO

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF 4 PAGES AND IT IS
TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

NAME _____

DATE AND TIME ___11-4-04 - 4:09pm___

STATEMENT OF: Police Officer Matthew Funk# 6926
DATE AND TIME: 11/0/04 pm 2:44pm

PLACE: 23rd Police District

CONCERNING: Formal Disciplinary Action

IN PRESENCE OF:

QUESTIONED BY: Sergeant Saundra S. Russell #516
RECORDED BY: Sergeant Saundra S. Russell #516

**You are reminded that failure to cooperate in a departmental administrative investigation is punishable by ten (10) days suspension to dismissal under Section 1:11 of the Disciplinary Code.**

**You are also reminded that making a false statement in response to an official departmental investigation is punishable by ten (10) days suspension to dismissal under Section 1:12 of the Disciplinary Code.**

**Q. Do you understand?**

A. YES

**Q. Do you understand that you have a right to have counsel present?**

A. YES

**Q. Do you wish to be interviewed without counsel present?**

A. YES

Q: What time did you report to court at City Hall on 10-06-04?

A: About 8:00 or 8:02, roughly, something like that.

Q: Were you in plainclothes when you checked into court?

A; YES

Q: Where did you go immediately after leaving City Hall Court Attendance?

A: CJC, Room 806

Q: Was the Court Room Liaison in the courtroom when you entered?

A: YES

Q: Did you give the Court Liaison a copy of your court notice?

A: YES

Q: Was the defendant on your notice on the liaison's file?

A: The defendant was not on her list.

Q: What did you do after you realized that your defendant wasn't on the liaison's file?

A: She told us to check with the DA's

Q: When you say us whom are you referring to?

A: My partner Chris Stever and I.

Q: What did the DA tell you?

A: When we started talking to her, she looked at the list and basically the judge took the stand.

Q: Do you recall who the Judge was on that day in Room 806?

A: No

Q: Did anyone tell you to wait for the court list to be called or did you decide to wait on your own?

A: We decided to wait on our own.

Q: On 10-06-04 in the 23rd District Courtroom you told Sgt. Russell that the Court Liaison told you to wait for the court list to be called because your defendant wasn't on her list, now you're saying that you decided to wait on your own?

A: Like I said she said talk to the DA's, like I said it sounds the same to me.

Q: Did you ever go back to the liaison to have her check on the case?

A: After the list was called we went to the DA that we spoke to the first time she looked through the list he wasn't on it so she then directed us to the Court Crier. The gentleman seated across from the court liaison.

Q: Why didn't you go to the Court Crier yourself when the court liaison stated that the case wasn't on her file?

A: Every time that I've had a case that wasn't on the liaison's list I've always went to the DA. I've never went to the Court Crier for any information

Q: Did you stay in the courtroom the entire time you where in CJC.

A: I can't recall, I mean I might have stepped in the hallway.

Q: So you don't remember whether you stayed in the courtroom for the majority of your time there?

A: The majority of the time yes, but I might have stepped out in the hallway.

Q: Do you recall whether the court liaison had a computer on her desk?

A: I don't think so, I know she had a list.

Q: Who notified you that your case was not a ready case on that day?

A: When we spoke to the court crier he started looking into his computer. After we gave him the information, our guys name, basically the DC number he told us that case wasn't going that day, and basically it had another date.

Q: What did you do after you found out your case was not being tried?

A: We had the DA sign our court notice and we proceeded to the court attendance to clock out.

Q: What time did you clock out?

A: Roughly 11:30AM

Q: Where did you go after you clocked out of court?

A: After clocking out of court we decided to grab some lunch.

Q: Where did you go for lunch?

A: Reading Terminal

Q: How did you find out that Sgt. Russell was trying to locate you?

A: At the time when we were eating lunch Chris got word from his wife that you were looking for him. You had called his house.

Q: So when Sgt. Russell talked to P/O Stever at 12:15pm you two had been at lunch since Approx 11:30am?

A: I guess I wasn't really keeping track of time.

Q: What time did you report on to the 23rd District after court?

A: I got back to the district about 1:00PM. I mean we reported on duty about 1 o'clock.

Q: What were you wearing when you came to the district?

A: I was still wearing what I had on in court, plainclothes.

Q: When Sgt. Russell saw you and P/O Stever enter the building you were both in uniform where were you coming from?

A: I guess we went out to the yard, maybe we were looking for you. I don't know.

Q: Did you ever receive notification from Sgt. Russell or any supervisor in the district that your court case was cancelled?

A: NO

Q: On 10-01-04 during a meeting in the 5 squad room do you recall Sgt. Russell telling you that your court case on 10-06-04 was cancelled.

A: I was never told my court was cancelled.

Q: On 10-06-04 you told Sgt. Russell that you were good at checking on all of your court time. Why didn't you check on this case?

A: I had a court notice for it. If I have a court notice I go to court.

Q: So you don't check the court roster that is posted in the district daily?

A: Not really

Q: Where you given a memorandum by Sgt Russell in reference to officers wearing plainclothes to court?

A: YES

Q: Why did you wear your plain clothes to court?

A: Bad judgment.

Q: Is it true that you stated to Sgt Russell that you don't like to wear your uniform to Court because you hate to get a court beat?

A: I don't recall, the reason why I didn't wear my uniform is bad judgment.

MF

Q: So you don't have any reason for not wearing your uniform?

A: Like I told you I exercised bad judgment.


Q: Do you have anything else to add to this interview?

A: NO


I HAVE READ THE FOREGOING STATEMENT CONSISTING OF 6 PAGES AND IT IS
TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.


NAME _Tnottt Jul_

DATE AND TIME_ 11-5-04   3:41 pm_

MF

STATEMENT OF:    Police Officer Ida Keyes #2079
DATE AND TIME:   11/10/04 pm 1:48pm

PLACE:            23rd Police District

CONCERNING:     Formal Disciplinary Action

IN PRESENCE OF:

QUESTIONED BY:   Sergeant Saundra S. Russell #516
RECORDED BY:     Sergeant Saundra S. Russell #516

**You are reminded that failure to cooperate in a departmental administrative investigation is punishable by ten (10) days suspension to dismissal under Section 1:11 of the Disciplinary Code.**

**You are also reminded that making a false statement in response to an official departmental investigation is punishable by ten (10) days suspension to dismissal under Section 1:12 of the Disciplinary Code.**

**Q. Do you understand?**

A. YES

**Q. Do you understand that you have a right to have counsel present?**

A. YES

**Q. Do you wish to be interviewed without counsel present?**

A. YES

Q: Are you currently assigned to the Court Liaison Unit of the Philadelphia Police Department.

A: YES

Q: Where you working in CJC Room 806 on 10-06-04?

A; YES

Q: On 10-06-04 did courtroom 806 have an operating computer in the courtroom?

A: YES

D120

Q: Where you able to access the KTNQ system from that computer?

A: YES

Q: Do you recall a P/O Stever or P/O Funk inside the courtroom on the day in question?

A: I don't remember their names, but more than likely they were in the room.

Q: Do you ever recall telling any officers to wait inside the courtroom until the court list is called?

A: NO

Q: If an officer's case is not listed on your file where do you direct them?

A: I would direct them to the DA, or the Crier if the DA doesn't have it.

Q: If the judge enters the courtroom can an officer still find out about his or her case while court is in session?

A: YES, like if it is continued or a bench warrant.

Q: Could P/O Stever and P/O Funk seek information from the court crier on their own?

A: YES

Q: What is the process that officers take when they enter the courtroom to check in?

A: They give the liaison the subpoena we look up the defendant's name on the Defendant's sheet. We locate their name and number and we write the number on Top of their subpoena then we look for the number on our court sheet. Then we check Or highlight the officers' name.

Q: Sgt. Russell spoke with you on 10-06-04 and asked you if their was a P/O Funk and or P/O Stever in the courtroom at approx 10:30 AM. You stated that they were not in the room? How did you check for those officers?

A: I went to pull up the court sheet and I didn't have them on the sheet.

Q: When you relayed that information to Sgt. Russell and she told you they wouldn't be on your sheet because their case was cancelled. You put Sgt. Russell on hold to look for them. How did you do that?

A: I went to the next room to pull up the court sheet to double check and bought it back.

Q: Did you physically look for these officers in the courtroom?

A: YES, I checked the room and I went out into the hallway and the side room and called their names there was no response.

Q: Do you have anything else to add to this interview?

A: NO

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF 3 PAGES AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

NAME _Ida Keyes_

DATE AND TIME _11-10-04_ 2'7p

D122

POLICE
CITY OF PHILADELPHIA
DATE: 11/15/04

TO : **Commanding Officer, Police Board Of Inquiry**

FROM : Commanding Officer, 23rd District

SUBJECT: <u>**REQUEST FOR DISCIPLINE ACTION AGAINST P/O CHRISTOPHER STEVER #1407**</u>

1. I am submitting the attached investigation so that formal disciplinary charges be taken against P/O Christopher Stever #1407, PR#215656, 23rd District.

   On Friday 10-06-04, P/O Stever punched into court after he was told twice by his supervisor, Sgt Russell that his court notice had been cancelled. Sgt. Russell called the courtroom attempting to find this officer and his partner P/O Matthew Funk #6926, PR#239934. Court officer P/O Ida Keyes stated that she looked for these officers in and outside the courtroom with negative results. She also stated that these officers had not checked in with her. While Sgt. Russell was conducting this investigation she also discovered that both of these officers went to court in plainclothes disregarding Directive 13.

   This is also conduct unbecoming of an officer.

2. Please call my office if you need further information.

Captain Sharon Seaborough   #66
Commanding Officer
23rd District

D123

| STATEMENT OF CHARGES FILED AND ACTION TAKEN | CITY OF PHILADELPHIA POLICE DEPARTMENT | PH CASE NO 04-0564 |
|---|---|---|
| | | DATE 11-17-04 |

**TO: POLICE COMMISSIONER**

| FILED AGAINST P/O Christopher Stever #1407 | PLATOON & GROUP ASSIGNMENT 50 | DISTRICT OR UNIT 23rd District |
|---|---|---|
| DATE OF APPOINTMENT 07-06-93 | PAYROLL NUMBER 215656 | DATES OF VACATION, MIL LEAVE, ETC. |

CO REQ

**CHARGES**

**ARTICLE III** : INSUBORDINATION

**SECTION 3.01** : Refusal to obey proper orders from superior officer.

**SPECIFICATION #1** : In that on 08-16-04, a court notice was sent to Officer Stever for an appearance on Wednesday, 10-06-04 in Court Room #806 of the Criminal Justice Center. On 10-01-04, a cancellation notice was transmitted to cancel Officer Stever for the 10-06-04 appearance. Sergeant Saundra Russell #516 notified Officer Stever of this cancellation on 10-01-04 and again on 10-02-04. Despite being notified twice by Sergeant Russell that his court appearance for that date was cancelled, Officer Stever reported to City Hall Court Attendance for court in room #806 of the Criminal Justice Center. Officer Stever violated the above section of the PPD Disciplinary Code by disregarding the orders from Sergeant Russell to not attend court on 10-06-04.

**ARTICLE V** : DISOBEDIENCE OF ORDERS

**SECTION 5.48** : Failure to carry required equipment, not in full prescribed uniform, and failure to present a neat appearance in prescribed uniform in accordance with Policy and Directives.

**SPECIFICATION #1** : In that on Wednesday, 10-06-04, Officer Stever reported to City Hall Court Attendance in plainclothes to attend court. Officer Stever was in violation of the above section of the PPD Disciplinary Code and PPD Directive 13, Court Notices and Subpoenas, Section I-E-3, which states, "Personnel will dress in the uniform of the day, regardless of tour of duty, including scheduled days off." Officer Stever received memoranda from Captain Seaborough in March, 2004, as well as from Sergeant Saundra Russell in May, 2004, outlining adherence to wearing of the uniform of the day for court appearances.

**WITNESS** : Captain Sharon Seaborough #66    23rd District
Sgt. Saundra Russell #516    23rd District

*"Transfer may be part of the formal disciplinary process."*

| APPROVED BY C/O CHARGING UNIT Capt. C. Flacco #8 | (Date) 11-17-04 | PRESENTED BY DISTRICT/UNIT COMMANDER (Signature & Date) _Sgt Russell #516_ 11-25-04 |
|---|---|---|
| RECEIVED BY (Signature of Accused) | (Date) 11-26-04 | |
| ☐ I Plead Guilty and Waive a Hearing (Signature & Date) | | ☑ I Plead Not Guilty and Request a Hearing (Signature & Date) 11-26-04 |

75-18 (Rev. 3/2004)

D124

# RECEIPT OF CHARGES AND ACKNOWLEDGMENT OF RIGHT TO COUNCEL

I, P/O CHRISTOPHER STEVER, BADGE #1407, A MEMBER OF THE PHILADELPHIA POLICE DEPARTMENT, HERBY ACKNOWLEDGE THAT I HAVE RECEIVED A COPY OF THE CHARGES AGAINST ME, THE SAME TO BE HEARD BY THE POLICE BOARD INQUIRY. I FURTHER ACKNOWLEGE THAT THE CHARGES HAVE BEEN PERSONALLY DELIVERED TO ME BY SGT. SAUNDRA S. RUSSELL #516, ON THE 25TH DAY OF NOVEMBER 2004.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN ADVISED BY SERGEANT SAUNDRA S. RUSSELL #516 OF MY RIGHT TO COUNSEL OF MY OWN CHOOSING TO BE PRESENT AT THE TIME OF THE HEARING AND THAT IN THE EVENT I DO NOT HAVE SUCH COUNSEL WITH ME AT THE TIME OF THE HEARING, SUCH FAILURE TO HAVE COUNSEL WILL NOT BE A GROUND FOR CONTINUANCE AND THE FAILURE TO HAVE COUNSEL WILL BE DEEMED A WAIVER OF MY RIGHT TO COUNSEL'S PRESENCE AT THE TIME OF THE POLICE BOARD OF INQUIRY HEARING.

_____
Name & Badge #

_____
Date

D125

**TO: POLICE COMMISSIONER**

| FILED AGAINST P/O Matthew Funk #6926 | PLATOON & GROUP ASSIGNMENT 50 | DISTRICT OR UNIT 23rd District |
| --- | --- | --- |
| DATE OF APPOINTMENT 08-21-00 | PAYROLL NUMBER 239934 | DATES OF VACATION, MIL. LEAVE, ETC. |

CO REQ

**CHARGES**

**ARTICLE III** : **INSUBORDINATION**

**SECTION 3.01** : **Refusal to obey proper orders from superior officer.**

**SPECIFICATION #1** : In that on 08-16-04, a court notice was sent to Officer Funk for an appearance on Wednesday, 10-06-04 in Court Room #806 of the Criminal Justice Center. On 10-01-04, a cancellation notice was transmitted to cancel Officer Funk for the 10-06-04 appearance. Sergeant Saundra Russell #516 notified Officer Funk of this cancellation on 10-01-04 and again on 10-02-04. Despite being notified twice by Sergeant Russell that his court appearance for that date was cancelled, Officer Funk reported to City Hall Court Attendance for court in room #806 of the Criminal Justice Center. Officer Funk violated the above section of the PPD Disciplinary Code by disregarding the orders from Sergeant Russell to not attend court on 10-06-04.

**ARTICLE V** : **DISOBEDIENCE OF ORDERS**

**SECTION 5.48** : **Failure to carry required equipment, not in full prescribed uniform, and failure to present a neat appearance in prescribed uniform in accordance with Policy and Directives.**

**SPECIFICATION #1** : In that on Wednesday, 10-06-04, Officer Funk reported to City Hall Court Attendance in plainclothes to attend court. Officer Funk was in violation of the above section of the Disciplinary Code and Directive 13, Court Notices and Subpoenas, Section I-E-3, which states, "Personnel will dress in the uniform of the day, regardless of tour of duty, including scheduled days off." Officer Funk received memoranda from Captain Seaborough in March, 2004, as well as from Sergeant Saundra Russell in May, 2004, outlining adherence to wearing of the uniform of the day for court appearances. P/O Funk stated to Sergeant Russell that he attends court in plainclothes because he does not want to be assigned to foot beats.

**WITNESS** : Captain Sharon Seaborough #66 / Sgt. Saundra Russell #516 23rd District

*"Transfer may be part of the formal disciplinary process."*

| APPROVED BY C/O CHARGING UNIT Capt. C. Flacco #8 | (Date) 11-17-04 | PRESENTED BY DISTRICT/UNIT COMMANDER (Signature & Date) Sgt. Russell #516 11-28-04 |
| --- | --- | --- |
| RECEIVED BY (Signature of Accused) | (Date) 6926 | |
| ☐ I Plead Guilty and Waive a Hearing (Signature & Date) | | ☐ I Plead Not Guilty and Request a Hearing (Signature & Date) |

75-18 (Rev. 3/2004)

# RECEIPT OF CHARGES AND ACKNOWLEDGMENT Or RIGHT TO COUNCEL

I, P/O MATTHEW FUNK, BADGE #6926, A MEMBER OF THE PHILADELPHIA POLICE DEPARTMENT, HERBY ACKNOWLEDGE THAT I HAVE RECEIVED A COPY OF THE CHARGES AGAINST ME, THE SAME TO BE HEARD BY THE POLICE BOARD INQUIRY. I FURTHER ACKNOWLEGE THAT THE CHARGES HAVE BEEN PERSONALLY DELIVERED TO ME BY SGT. SAUNDRA S. RUSSELL #516, ON THE 25TH DAY OF NOVEMBER 2004.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN ADVISED BY SERGEANT SAUNDRA S. RUSSELL #516 OF MY RIGHT TO COUNSEL OF MY OWN CHOOSING TO BE PRESENT AT THE TIME OF THE HEARING AND THAT IN THE EVENT I DO NOT HAVE SUCH COUNSEL WITH ME AT THE TIME OF THE HEARING, SUCH FAILURE TO HAVE COUNSEL WILL NOT BE A GROUND FOR CONTINUANCE AND THE FAILURE TO HAVE COUNSEL WILL BE DEEMED A WAIVER OF MY RIGHT TO COUNSEL'S PRESENCE AT THE TIME OF THE POLICE BOARD OF INQUIRY HEARING.

_____
Name & Badge #

11/24/04
_____
Date

D127

# MEMORANDUM

TO : P O Christopher Stever #1407, 23rd District

FROM : Sgt. Saundra S. Russell #516, 23rd District

SUBJECT : SQUAD REASSIGNMENT

1. On Monday, January 3, 2005 you will be assigned to 3B and will follow the appropriate schedule.

2. Your RDO's will be adjusted accordingly by your platoon supervisor

Saundra S. Russell
Sergeant
5 Platoon

516

D128

32-S-1 (Rev. 3/59) RESPONSE TO THIS MEMORANDUM MAY BE MADE HEREON IN LONGHAND

*MEMORANDUM*

TO     : P/O Christopher Stever, #1407, PR#215656, 23RD District

FROM   : Commanding Officer, 23RD District

SUBJECT : <u>REASSIGNMENT</u>

1. Effective Monday, January 3, 2005 you will be reassigned to 2 B.

_____
P/O Christopher Stever #1407

_____
Sharon Seaborough    #66
Commanding Officer
23RD District

SS/rpb