## INTERNAL INVESTIGATION I.A.D. # 07-1027

LIEUTENANT DONALD SCOTT #186, I.A.D.

09-07-07

**REVIEWED AND APPROVED BY:**

C.O., I.A.D. _J. Bates_

DATE: _9-7-07_

C.I., I.I.B. _William Colombo_

DATE: _8-10-07_

**INDEX IAD# 07-1027**

A.     Memorandum to Police Commissioner


B.     White Paper

C.     Interviews:

       P/O Keith Sadowski # 3937, PR# 230729, Narcotics Strike Force 2-D
       Lt. Joel Fitzgerald # 478, PR# 212264, Narcotics Strike Force, 5 Platoon
       Lt. James Smith # 170, PR# 207333, Narcotics Strike Force, 5 Platoon
       Cpl. Vincent Nowakowski # 8178, Narcotics Strike Force, 5 Platoon
       P/O Kevin Cuddahy #2369, PR# 228875, Narcotics Strike Force, 5 Platoon
       Sgt. Laverne Vann # 8522, PR# 222792, Narcotics Strike Force, 2-D
       Lieutenant Joseph Haag # 178, PR# 162264, Narcotics Strike Force, 5 Platoon
       P/O Kathleen Gorman # 5239, PR# 224024, Narcotics Strike Force, 5 Platoon
       P/O Tracy Brooks # 4122, PR# 221364, Employees Assistance Program (EAP)
       Lieutenant Jack Feinman # 110, PR# 195049, Narcotics Strike Force, 2-D

D.     Documents
       Memo to C.O. NSF 2-23-07, "On Duty Injury Occurrence" submitted by P/O
       Sadowski # 3937. Details of Incident on 2-22-07 with Lt. Feinman.
       3-01-07, memo to C.O. NSF, from P/O Sadowski, amending 1st memo
       Request for Internal submitted by C/I William Blackburn 2-27-07.
       E-Mail forwarded to C/I Blackburn by Capt. Castro 2-27-07
       "Work/School Excuse Slip" Frankford Hospital, 2-22-07, Keith Sadowski
       DAR computer Printout PR# 230729, 2-22-07 to 07-13-07
       General Computer Message # 9213, Full Duty P/O Sadowski #3937
       General Computer Message # 2883, Transfer P/O Sadowski to Forensic Security
       E-mails sent by Capt. Trush to Capt. Kelly regards to investigative actions.
       Request by Lt. Feinman for Formal Disciplinary Action against P/O Sadowski.

**TO:**     Police Commissioner

**FROM:**   Commanding Officer, Internal Affairs Division

**SUBJECT: INTERNAL INVESTIGATION IAD # 07-1027**

## ALLEGATION

On 3-1-07, Internal Affairs received information that was forwarded by Chief Inspector William Blackburn, Narcotics Bureau, requesting an Internal Investigation into the allegations of physical contact on the part of Lt. Jack Feinman # 110, NSF, by P/O Keith Sadowski # 3937, also assigned to NSF. P/O Sadowski claimed that on 2-22-07, Lt. Feinman thrust his chest against his chest, while blocking the doorway of the locker room inside NSF headquarters.

P/O Sadowski claims that Lt. Feinman would not let him leave the building and use his sick time to go to EAP. P/O Sadowski claims he became short of breath, and experienced chest pains just prior to the alleged physical contact and the symptoms intensified after the physical contact by Lt. Feinman. P/O Sadowski was transported to Frankford Torresdale Hospital by Fire Rescue, where he was treated for anxiety induced hypertension.

As a result of this information Internal Affairs control number 07-1027 was issued, and Lieutenant Donald Scott # 186 was assigned on 3-2-07.

## INVESTIGATIVE ANALYSIS

**P/O Keith Sadowski # 3937, PR# 230729, previously assigned to Narcotics Strike Force 2-D, transferred to Forensics Security Unit on 7-17-07.**

P/O Sadowski # 3937 was interviewed by the assigned inside Internal Affairs on 3-22-07. In Summary he related the following:

P/O Sadowski stated that he and his partner, P/O William Campbell # 2600, were interviewed on 11-16-06, by Captain Kelly, who was investigating an incident involving Sgt. Saundra Russell # 516, and P/O Eric Dial # 6130. P/O Sadowski said that since giving the interview he has been harassed by unknown person(s) in the unit.

P/O Sadowski stated that shortly after his interview, officers from his unit, who would normally talk to him, would now avoid him. P/O Sadowski stated that he began to feel ostracized by his co-workers following his interview with Captain Kelly.

P/O Sadowski stated that on 1-27-07, he left a note on P/O Campbell's locker informing him to call home. P/O Sadowski stated that P/O Campbell left the note on his locker during their days off, and after returning to work he discovered that someone had written on the note, the words "Rat".

P/O Sadowski stated that he and P/O Campbell informed Sgt. Russell of the incident, and she, along with the officers, went to speak to Lt. Feinman about the matter. P/O Sadowski stated that his partner at some point went to Captain Kelly to speak to him about the note found on his locker, and it was their understanding that Capt. Kelly was going to investigate the matter.

P/O Sadowski stated that after three days passed, he went spoke to Sgt. Chester O'Neill at Internal Affairs regarding the note left on his partner's locker. P/O Sadowski stated that he was advised by Sgt. O'Neill and Captain Strain to give Capt Kelly an opportunity to address the matter, since he was already alerted to the matter. P/O Sadowski stated that he did so, and said that he later learned Captain Kelly had sent the note to the Forensics Unit for processing.

***P/O Sadowski stated that during the most recent incident on 2-22-07***, he was assigned to NSF headquarters to catch up on his delinquent reports. P/O Sadowski stated that while inside the building, he overheard part of a conversation between Lt. Feinman, Lt. Smith, Cpl. Nowakowski, and P/O Cuddahy.

P/O Sadowski claimed that he overheard Lt. Smith say, ***"A year later they have an interview? Remember rule 1.11 and 1.12 when they testify they should be dismissed immediately"***. P/O Sadowski alleged that Lt. Smith went on to say, ***"The silent majority is going to win this one. I wonder what they are getting"***.

P/O Sadowski said that all of the individuals present during the conversation were laughing and he said that immediately after hearing this, he immediately started ***to sweat, shake, could not catch his breath, and his heart began pounding in his chest***.

P/O Sadowski stated that he got up and made a telephone call, and then went to speak to Lt. Feinman. P/O Sadowski claims that he told Lt. Feinman ***he was sick and stressed, and that he needed to go speak to someone at EAP. P/O Sadowski said that he told Lt. Feinman that he had heard the conversation, and what Lt. Smith had said, and that he heard him laughing, and he told Lt. Feinman that he could not take it any more, that he did not do anything wrong, and he felt that he was being harassed.***

P/O Sadowski acknowledged that when he first approached Lt. Feinman, he didn't tell him that he felt that he might be having a ***heart attack***, and didn't tell him he wanted to seek medical attention. P/O Sadowski said that he told Lt. Feinman he was sick, stressed, felt that he was being harassed, and he wanted to speak to someone from EAP.

P/O Sadowski claimed that Lt. Feinman told him that he was not going anywhere, and he was going to stay here, and talk to him about the matter. P/O Sadowski said that Lt. Feinman kept asking him who he was speaking with on the telephone, and he told him if he left he would be carried AWOL. P/O Sadowski stated that he told Lt. Feinman that he was advised to go to EAP.

P/O Sadowski stated that he went to the locker room and while he was attempting to leave, to go to EAP, Lt. Feinman blocked the door to the exit of the locker room. P/O Sadowski claimed Lt. Feinman would not let him pass. P/O Sadowski stated that as he tried to pass, Lt. Feinman struck him with his chest, causing him to stumble backwards a few steps. P/O Sadowski stated that the symptoms he was feeling were intensified.

P/O Sadowski stated that he went out a back door of headquarters and walked to the parking lot. P/O Sadowski said that he telephoned EAP and was speaking to P/O Brooks when Lt. Feinman and Lt. Haag came outside and began to ask him who he was talking to and telling him to get off the phone.

P/O Sadowski said that while he was speaking to P/O Brooks he told him he was having problems breathing and his chest was pounding. P/O Sadowski said P/O Brooks told him he should seek immediate medical attention. P/O Sadowski said that he told Lt. Feinman and Lt. Haag he was having chest pains, and they called Fire Rescue. P/O Sadowski said that he was transported to Frankford Hospital, where he was *diagnosed with stress induced anxiety.*

P/O Sadowski concluded by saying that he didn't believe Captain Kelly was able to conduct a fair and impartial investigation, and that was the reason he came to Internal Affairs to speak to Sgt. O'Neill after the note had been found on his partner's locker.

**Lt. Joel Fitzgerald # 478, PR# 212264, NSF, 2-B**

Lt. Fitzgerald was interviewed by the assigned on 3-29-07, inside Internal Affairs. In summary he related the following:

Lt. Fitzgerald stated that after the 2-22-07 incident involving Lt. Feinman and P/O Sadowski, he recalled a remark made by P/O Sadowski, in which he said that *"if a supervisor ever came close to hitting me I'd hit the floor and sue him".* Lt. Fitzgerald stated that he told Captain Kelly about this remark when it was made sometime in November of 2006. Lt. Fitzgerald stated that after learning of the incident between Lt. Feinman and P/O Sadowski, he reminded Captain Kelly of P/O Sadowski' previous remark.

**Lt. James Smith # 170, PR# 207333, NSF, 5 Platoon.**

Lt. Smith # 170 was interviewed on 4-6-07, inside Internal Affairs and in summary he related the following:

Lt. Smith stated that Lt. Feinman was not engaged in conversation with him, Cpl. Nowakowski, and P/O Cuddahy inside NSF headquarters on 2-22-07, as P/O Sadowski claimed in his memo.

Lt. Smith stated that the conversation consisted of P/O Cuddahy asking him if he knew P/O Bachmeyer, who was scheduled to appear as a witness at a PBI hearing, was on vacation. Lt Smith stated the upcoming PBI hearing was related to a matter involving Sgt. Russell and P/O Dial, in which P/O Sadowski and P/O Campbell had given statements to Captain Kelly.

Lt. Smith stated that he was informed by P/O Cuddahy that P/O Bachmeyer was on vacation, the day of the scheduled PBI, and P/O Cuddahy asked him if he thought P/O Dial would be able to get a continuance because he was unavailable. Lt. Smith said he told P/O Cuddahy that he didn't know, but thought he might be able to.

Lt. Smith said their conversation was brief, and he stated the only people present during the conversation were P/O Cuddahy and Cpl. Nowakowski, who was on the telephone. Lt. Smith stated that Lt. Feinman was not in the room during their conversation.

### Cpl. Vincent Nowakowski # 8178, PR# 228607, NSF, 5 Platoon.

Cpl. Nowakowski # 8178 was interviewed on 4-6-07, inside Internal Affairs and in summary he related the following:

Cpl. Nowakowski stated that on 2-22-07, he was inside his office on the telephone, taking a drug complaint, when Lt. Smith was in conversation with P/O Cuddahy. Cpl. Nowakowski stated that afterwards he learned of the incident between Lt. Feinman and P/O Sadowski, when P/O Sadowski was claiming he had overheard Lt. Feinman, along with him, Lt. Smith and P/O Cuddahy, talking about the Sgt. Russell and P/O Dial PBI.

Cpl. Nowakowski stated that he never heard any remarks by P/O Cuddahy or Lt. Smith that "they should be dismissed immediately", nor did he hear any mention of 1.11 or 1.12 of the Disciplinary code by either of the officers.

Cpl. Nowakowski stated that he was not present for any conversations between P/O Sadowski and Lt. Feinman that day, and he was not present in the locker room when P/O Sadowski claims he was bumped by Lt. Feinman.

### P/O Kevin Cuddahy # 2369, PR# 222875, NSF, 5 Platoon

P/O Cuddahy # 2369 was interviewed by the assigned, inside Internal Affairs, on 4-6-07, and in summary he related the following:

P/O Cuddahy stated that he had a conversation on 2-22-07, with Lt. Smith inside the Corporal's Office, where told Lt. Smith that P/O Bachmeyer was not going to be available for an upcoming PBI hearing because he was on vacation. P/O Cuddahy stated that Lt. Feinman was not present during the conversation, but Cpl. Nowakowski was inside his office talking on the telephone. P/O Cuddahy stated that they discussed whether P/O Dial would be able to get a continuance because P/O Bachmeyer was on vacation.

P/O Cuddahy stated that Lt. Feinman was not present for the conversation, and he wasn't nearby when they spoke. P/O Cuddahy stated that he was not aware of any harassment of P/O Sadowski or P/O Campbell as a result of their statements given in the Sgt Russell/P/O Dial matter.

### Sgt. Laverne Vann # 8522, PR# 222792, NSF. 2-D

Sgt. Vann # 8522, was interviewed inside Internal Affairs by the assigned on 4-11-07. In summary she related the following:

Sgt. Vann stated that after P/O Sadowski was taken to the hospital on 2-22-07, she went to Frankford Torresdale hospital to check on his condition, and to fill out the appropriate departmental paperwork.

Sgt. Vann stated that upon arriving at the hospital she was shown to an area inside the Emergency Room where P/O Sadowski was being treated. Sgt. Vann stated that when she arrived she saw P/O Campbell, and two other males, one of whom she believed was P/O Sadowski' brother.

Sgt. Vann stated that as she approached the area she could hear laughing between the males. Sgt. Vann stated that as she approached, P/O Sadowski' brother asked if he could speak to her outside the room. Sgt. Vann said that P/O Sadowski' brother told her that they thought she was Sgt Russell, and then he told her that his brother, Keith, does not want to speak to anyone from the Strike Force.

Sgt. Vann stated that she was informed by hospital personnel that P/O Sadowski was not going to be admitted, and he was in good condition. After learning this information she left the hospital.

Sgt. Vann added that she spoke to P/O Sadowski earlier in the day, and he had asked her if he could leave work early that day. Sgt. Vann stated that P/O Sadowski asked if he could complete some 75/49's and then take the rest of the day off. Sgt. Vann stated that she informed P/O Sadowski that he could work on his delinquent reports and then he could utilize whatever time (holiday/vacation) that he wished.

Sgt. Vann stated that it was not uncommon for P/O Sadowski to be delinquent with his reports, and she added that other officers who also were delinquent reports would, at times, be required to remain in headquarters to catch up on their work.

### Lieutenant Joseph Haag # 178, PR# 162264, NSF, 5 platoon

Lt. Haag # 178 was interviewed on 4-17-07, inside Internal Affairs and in summary he related the following:

Lt. Haag stated that he was working on 2-22-07, when sometime around 10 AM, Lieutenant Feinman approached him and asked if he could see him. Lt. Haag stated that they walked to the rear of the building, and he asked Lt. Feinman what he wanted. Lt Haag said he told him to standby with him, while he spoke to one of his officers.

Lt. Haag stated that he followed Lt. Feinman to the rear of the building and outside, where he saw P/O Sadowski, who was talking on his cell phone. Lt. Haag stated that Lt. Feinman told him he wanted to speak to P/O Sadowski, and he asked him to standby with him. Lt. Haag stated that P/O Sadowski was in the parking lot, about twenty to thirty yards away from them, and they stood for about 30 seconds to a minute without P/O Sadowski acknowledging them.

Lt. Haag said that Lt. Feinman finally said to P/O Sadowski that he needed to speak to him, and told him to tell whoever he was speaking to that he would call them back. Lt. Haag stated that Lt. Feinman said this two or three times before P/O Sadowski walked towards them and told them, *"I am having chest pains"*.

Lt. Haag stated that he immediately called 911 and asked police radio for fire rescue. Lt. Haag stated that he informed Fire Rescue that one of their officers was having chest pains, and they instructed him to have the officer sit down and not move.

Lt. Haag stated that he asked P/O Sadowski to sit down, but he told him he could not sit still. Lt. Haag stated that shortly thereafter, Fire Rescue arrived and they transported P/O Sadowski to the hospital.

Lt. Haag said that he didn't witness any of the physical contact between Lt. Feinman and P/O Sadowski. Lt. Haag added that he was not aware of anything occurring between the two until Lt. Feinman asked him to standby. Lt. Haag stated that Lt. Feinman did not yell while he was there, and he heard Lt. Feinman ask P/O Sadowski to hang up the telephone approximately three times.

Lt. Haag stated that he was not aware of any harassment against P/O Sadowski and P/O Campbell because of their statements given in the Sgt. Russell and P/O Dial matter; however, he did say that he was aware that one of the officers complained that someone placed a note with the word "Rat" on one of their lockers. Lt. Haag said Captain Kelly had the note sent to forensics for fingerprint and handwriting analysis.

**P/O Kathleen Gorman # 5239, PR# 224024, NSF, 5 Platoon**

P/O Gorman was interviewed inside Internal Affairs on 4-17-07, and in summary she related the following:

P/O Gorman stated that on 2-22-07, she was engaged in conversation with Lt. Feinman, inside his office, sometime around 9:05 AM. P/O Gorman stated they discussed work related matters.

P/O Gorman stated she learned P/O Sadowski was claiming that sometime around 9:30 AM, Lt. Feinman had been engaged in conversation with the other officers in the Corporal's office, and he allegedly talked about P/O Sadowski giving a statement in the Sgt. Russell/P/O Dial matter. P/O Gorman stated that sometime around 10:00 AM she observed Corporal Nowakowski, Lt. Smith, and P/O Cuddahy in the Corporal's office. P/O Gorman stated that she had talked with Lt. Feinman in his office from approximately 9:05 AM until sometime around 9:50 AM.

P/O Gorman added that she has been detailed to the Captain's Office for approximately three years, and she said that she was aware that P/O Sadowski and P/O Campbell had claimed that someone had placed a note with the word "rat" on one of their lockers.

**P/O Tracy Brooks 4122, PR# 221364, Employees Assistance Program, (EAP), 5 Platoon**

P/O Brooks # 4122 was interviewed by the assigned on 4-17-07, inside Internal Affairs. In summary he related the following:

P/O Brooks stated that he received a telephone call from P/O Keith Sadowski on 2-22-07, sometime around 10:30 AM. P/O Brooks stated that P/O Sadowski told him his supervisors would not allow him to leave the locker room, and then told him they would not allow him to come to EAP. P/O Brooks stated that P/O Sadowski told him his supervisors were going to carry him AWOL if he left to go to EAP.

*P/O Brooks stated that at some point during the conversation he spoke to Captain Collier # 71 about the situation, and he was informed by him that it was up to the discretion of the officer's supervisors to permit the officer to go to EAP once the officer was at work.*

P/O Brooks stated that P/O Sadowski, initially, never mentioned he was having chest pains, but he sounded, to him, "under duress". P/O Brooks stated that later during their conversation, P/O Sadowski complained of chest pains, and he advised him go to the hospital, first, before coming to EAP. P/O Brooks also said that during their conversation, he heard P/O Sadowski tell someone on the other end he was having chest pains. P/O Brooks said the other party said they would call rescue.

P/O Brooks stated that he overheard a person on the other end asking P/O Sadowski, *"Who are you talking to?"*, and this person sounded angry. P/O Brooks stated that he didn't hear anyone on the other end of the line curse or use any profanities.

**Lt. Jack Feinman # 110, PR# 195049, Narcotics Strike Force, 2-D**

Lt. Feinman # 110 was interviewed by the assigned on 5-21-07, inside Internal Affairs, and in summary he related the following:

Lt. Feinman stated that he was working on 2-22-07, when P/O Sadowski came into his office and told him he had heard his conversation about his testimony at a PBI. Lt. Feinman stated that he had no idea what he was talking about and he told P/O Sadowski so. Lt. Feinman said P/O Sadowski told him he was *feeling stressed* and wanted to go to EAP.

Lt. Feinman stated that he asked P/O Sadowski to come into his office so he could speak to him about the situation, but the officer never moved from the doorway of his office. Lt. Feinman said P/O Sadowski told him that he was going to EAP; that he had already spoken to someone from there about the matter.

Lt. Feinman stated that he asked P/O Sadowski to come into his office so he could speak to him, but he became agitated and said that he could not keep him from going to EAP. Lt. Feinman said that he told P/O Sadowski he was not keeping him from going to EAP, but he wanted him to come in and sit down and speak to him, but he walked away going to the locker room.

*Lt. Feinman stated that P/O Sadowski, when he first approached him, never told him he was sick and was having chest pains and difficulty breathing. Lt. Feinman said that P/O Sadowski told him he wanted to go to EAP because he was stressed.*

Lt. Feinman said that P/O Sadowski told him he overheard a conversation which he claimed he had taken part in, where he allegedly said P/O Sadowski should be fired for lying at the PBI.
Lt. Feinman denied having a conversation with Lt. Smith and the other officers P/O Sadowski had claimed in his memo, and he denied bumping into P/O Sadowski in the locker room, as he alleged.

Lt. Feinman stated that when he followed P/O Sadowski into the locker room he told him he was not keeping him from going to go to EAP, and he asked him who he had spoken to at EAP.
Lt. Feinman stated that P/O Sadowski began to stammer, and then he admitted that he had not actually spoken to anyone from EAP, but had spoken to someone who told him he could not refuse him from going to EAP.

Lt. Feinman stated that while P/O Sadowski was still at his locker, he asked him why he had lied to him, and without responding he began to walk towards the door of the locker room. Lt. Feinman stated that he got the impression that P/O Sadowski was either going to walk through him or past him at the doorway of the locker room; however, about a foot away he turned around and walked out the other door of the locker room.

Lt. Feinman stated that P/O Sadowski walked down the hallway to the rear of the building towards the exit, and he told him at that point if he left the building he would be carried AWOL.
Lt. Feinman stated he repeated it to P/O Sadowski again so it would be clear, but he walked out the back door of the unit and into the parking lot.

Lt. Feinman stated that he walked back to the Operations Room, where he saw Lt. Haag and asked him to accompany him. Lt. Feinman stated that when they got outside P/O Sadowski was on his cell phone, and he asked him who he was speaking to. Lt. Feinman stated that P/O Sadowski told him he was on the phone with EAP, and he stated that he asked P/O Sadowski for the phone so he could talk to the officer from EAP.

Lt. Feinman stated that P/O Sadowski walked away from him, saying they were putting the Captain on the phone. Lt. Feinman stated that he asked P/O Sadowski to let him speak to the Captain, but he continued to pace back and forth, and then began to rub his chest. Lt. Feinman said that
P/O Sadowski then said he was having chest pains, and Lt. Haag called 911, asking for Fire Rescue. *Lt. Feinman stated that at no time did he have any physical contact with P/O Sadowski while standing at the doorway of the locker room, and he said he was surprised to learn P/O Sadowski had made such an accusation.*

Lt. Feinman stated that he was aware of a previous incident in which P/O Sadowski and P/O Campbell had claimed someone left a note with the word "Rat" on one of their lockers. Lt. Feinman stated that the officers claimed Capt Kelly had not done anything about the matter; however, he stated that Capt. Kelly sent the note to the "Document Unit" for analysis and that he had in fact investigated the matter.

Lt. Feinman concluded by saying that during the time P/O Sadowski claimed he heard him in conversation with Lt. Smith and the other officers, he was in conversation with P/O Gorman inside his office. He stated that when P/O Sadowski came to the door of his office saying he had overheard a conversation involving him, he had no idea what he was speaking about.

* * * * * * * * * * * *

This investigation has not revealed any convincing evidence to support P/O Sadowski' allegation that he was bumped, or pushed, by Lt. Feinman inside the unit's locker on 2-22-07. There is no corroborative evidence to support such an allegation.

The chest pains P/O Sadowski suffered appear to have been caused by the "anxiety attack" he suffered. It should be noted that P/O Sadowski stated that he first felt these symptoms after hearing the conversation concerning his role in an upcoming PBI hearing. P/O Sadowski said that his chest pains began when he first overheard the conversation concerning the upcoming PBI, saying "his heart was pounding".

Lt. Feinman was within his rights to inquire of P/O Sadowski what was troubling him, and to ask him to sit down and speak to him, so he could evaluate the situation before allowing him to leave work to go to EAP. Lt. Feinman stated he was not refusing P/O Sadowski' request to go to EAP, but first wanted to find out what was upsetting P/O Sadowski.

This investigation has revealed P/O Sadowski disregarded a direct order from Lt. Feinman not to leave work, after P/O Sadowski approached him in his office and told him he wanted to go to EAP. It was only after being told by Lt. Feinman that he would be carried AWOL that P/O Sadowski claimed he was having chest pains. P/O Sadowski never told Lt. Feinman his "heart was pounding" when he first approached Lt. Feinman.

It is interesting to note that P/O Sadowski claims he was *"directed"* by Sgt. Vann to remain inside headquarters to catch up on delinquent reports, yet, when interviewed, Sgt. Vann noted that P/O Sadowski asked her if he could leave work early that day, and he asked her if he could remain inside to work on his delinquent reports, taking time off later in the day.

During P/O Sadowski's interview at Internal Affairs, he stated that he was diagnosed with *"stress induced anxiety"*, and he said he *did not suffer a heart attack*, and never told Captain Castro he had. It should be noted that Captain Castro, Commanding Officer of the Forensic Science Unit, indicated in an e-mail to Chief Inspector Blackburn that he was informed by P/O Sadowski a few days after this incident that P/O Sadowski had informed him he *suffered a heart attack* stemming from his encounter with Lt. Feinman.

It should be noted that P/O Sadowski willingly agreed to release his medical records to the assigned as part of this investigation. P/O Sadowski, however, did not provide his complete medical records but provided a copy of a "Work/School Excuse" slip from Frankford Hospital Emergency department dated 2-22-07. The slip listed his diagnosis as *Anxiety induced Hypertension, chest tightness, may regular activity when the treatment is complete and the symptoms have resolved.*

P/O Sadowski's allegation that Lt. Feinman was engaged in a conversation with Lt. Smith, Cpl. Nowakowski and P/O Cuddahy regarding his testimony in an upcoming PBI hearing involving P/O Dial is also unfounded. Lt. Smith, Cpl Nowakowski, and P/O Cuddahy all have stated in their interviews that Lt. Feinman was not involved in their conversation. In addition, P/O Gorman has stated that she and Lt. Feinman were involved in a conversation in his office around the time P/O Sadowski claimed he saw the Lieutenant engaged in conversation with the other officers.

**Lieutenant Donald Scott # 186**
**Internal Affairs Division**

REVIEWED AND APPROVED BY:

**Captain Shawn Trush # 139**
**Internal Affairs Division**

## CONCLUSION

The allegation by P/O Sadowski # 3937, that Lt. Feinman # 110 would not permit him to go to EAP, and then bumped into him, striking him in the chest, causing him to have chest pains, is *Unfounded*. There is no corroborative evidence to support this allegation.

The allegation by P/O Sadowski that Lt. Feinman was engaged in a conversation with other officers concerning an upcoming PBI, in which he had made a statement in, is also *Unfounded*. The officers alleged to have engaged in the conversation all have stated that Lt. Feinman was not present during the conversation.

*This investigation has revealed P/O Sadowski # 3937, disobeyed a direct order* from Lt. Feinman not to leave work without first speaking to him. P/O Sadowski was intent on going to EAP, and he told Lt. Feinman he could not refuse him from going. *P/O Sadowski was insubordinate and disobeyed Lt. Feinman's order* to come into his office and speak to him about his concerns, before being permitted to leave work. It was only after Lt. Feinman informed P/O Sadowski that he would be carried AWOL if he left the building that P/O Sadowski claimed to be suffering from chest pains and was subsequently transported to the hospital.

A copy of this report is to be forwarded to the Police Board of Inquiry for action and review. A copy is also to be forwarded to the Commanding Officer of the Narcotics Strike Force and the Commanding Officer of the Forensic Science Unit.

**Staff Inspector Jerrold Bates**
**Internal Affairs Division**

D158

## MEMORANDUM

**TO** : Chief Inspector, Internal Affairs Bureau

**FROM** : Chief Inspector, Narcotics Bureau

**SUBJECT** : <u>REQUEST FOR AN INTERNAL AFFAIRS INVESTIGATION</u>

1. On Monday, February 26, 2007, Captain Daniel Castro, contacted my office regarding a telephone conversation with Police Officer Keith Sadowski #3937. Captain Castro informed me that Police Officer Sadowski alleges that he was physically struck by Lieutenant Jack Feinman #110, both of whom are assigned to the Narcotics Strike Force.

2. As a result of this conversation with Captain Castro, I instructed him to prepare a memorandum outlining the particular exchange that took place between him and Officer Sadowski.

3. Moreover, I am forwarding to your office a copy of an e-mail I received on this date from Captain Castro. I am respectfully requesting an Internal Affairs investigation into the allegations of physical contact.

*W.C. Blackburn*
WILLIAM C. BLACKBURN
Chief Inspector
Narcotics Bureau

WCB/lt.
Attachment (1)

COMMANDING OFFICER
INTERNAL AFFAIRS DIVISION
TO *Capt. Trush*     *INT. INV.*

MAR 1 2007

☐ ACTION AND REPLY
☐ ACTION AND REPORT
☐ ACTION, NO REPORT
☐ INFORMATION & FILE
SUSPENSE DATE _____

82-S-1     (REV. 3/59)     RESPONSE TO THIS MEMORANDUM MAY BE MADE HEREON IN LONGHAND

D159

Police
CO_Forensic_Science/Police/
Phila
02/27/2007 03:19 PM

To   Police CI_Narc_Bureau/Police/Phila@Phila
cc
bcc
Subject  P/O Sadowski

Chief

Per our discussion, at about 3 PM on Monday, Feb. 27, 2007 I returned a phone call from P/O Keith Sadowski #3937, PR#230729 assigned to the Narcotics Strike Force under your command. P/O Sadowski worked under my command while assigned to the 39th District from 1999 to 2000; my relationship with P/O Sadowski is professional and he sought my advice on the following:

P/O Sadowski informed me that he was rushed to the hospital from Narcotic Headquarters by fire rescue last week. He indicated while on his cell phone and in the men's locker room he had a heart attack due to a physical altercation he had with his superior, Lt. Jack Feinman #110,    PR# 195049. Specifically P/O Sadowski stated Lt. Feinman struck him in the chest with his chest causing him to lose his breath. Allegedly Lt. Feinman blocked the exit to the locker room and insisted P/O Sadowski tell him whom he was speaking with on the telephone. According to P/O Sadowski this set of events was precipitated by an earlier discussion he overheard in which NSF supervisors, including Lt. Feinman, described him as a "rat". H   stated he is the subject of a chronic hostile work environment for his cooperation in an ongoing IAD investigation. I informed him of the following:

- seek the necessary medical attention and follow the appropriate notification procedures as required by the department
  notify his immediate supervisor of the incident
  document the incident and forward it through the chain of command
  request to meet with the CO NSF
  contact the assigned IAD investigator and inform the investigator of the circumstances
  his option to file a complaint with EEO within the department, state, or federal authority

Should you need further assistance please contact me.

Captain Daniel Castro

Commanding Officer

Forensic Science

Philadelphia Police Department

215-685-3120 Office

215-685-3116 Private line

215-906-0089 Cell

D160

**STATEMENT OF: P/O Keith Sadowski # 3937, PR# 230729**
**Narcotic Strike Force 2-D**

**DATE AND TIME:** 3-20-07 @ 5:30 PM

**PLACE:** Internal Affairs 7790 Dungan Rd

**CONCERNING:** I.A.D. #07-1027

**INTERVIEWED BY:** Lieutenant Donald Scott # 186, IAD.

**IN THE PRESENCE OF: Timothy Strange, Esquire**

Officer Sadowski, I am Lieutenant Donald Scott # 186 from Internal Affairs. I have been assigned to investigate your allegations that Lieutenant Jack Feinman # 110, prevented you from talking to EAP and leaving your headquarters by blocking your path in the locker room, and thrusting his chest into your chest causing you to ~~fall~~ *stumble* (KS) backwards. You were subsequently taken from your headquarters to Frankford Hospital with chest pains. This incident was alleged to have occurred on Thursday, 2-22-07 inside Narcotics Strike Force Headquarters. ✓

P/O Sadowski you are reminded, Officer, that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Section 1.11 of the Disciplinary Code.

Officer Sadowski you are also reminded, Officer, that making a false statement in response to an official Departmental investigation is punishable by 10 days suspension to dismissal under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?

A. Yes.

Q. Officer what is your current work status, and have you been off sick from work since this incident?

A. I am currently off sick, and I have been since this incident.

Q. Are you currently taking any medication that would prevent you from understanding my questions and making a statement in this matter?

A. No.

Q. Officer Sadowski I am showing you a copy of a memorandum dated 2-23-07, which was given to Captain Kelly on 3-1-07. The memo indicates that on February 22, 2007, *Lt. Feinman* directed you that you were assigned to headquarters to complete 75-49's. Subsequently an amended

*P/o Keith Sadowski #3937*

memorandum was given to Capt. Kelly, which indicated that *Sgt. Vann* directed you, that you were assigned to headquarters on February 22, 2207 to complete 75-49's.

On 2-22-07, what supervisor told you that you were assigned to Headquarters to complete 75-49's, and did you prepare and sign both of these memorandums that were given to Captain Kelly?

A. Sgt. Vann directed me to stay in and do 75-49's on 2-22-07, and I did prepare and sign both memorandums.

Q. Are you delinquent 75-49's, and is this the reason why you were told to remain at headquarters to complete your 75-49's?

A. Yes.

Q. Have there been times when other officers from your platoon/squad have been assigned to headquarters to complete or catch up on their delinquent reports?

A. Yes.

Q. How long have you been assigned to the Narcotics Strike Force?

A. Approximately four years.

Q. Officer Sadowski, you indicated in your memorandum that you overheard a conversation between Lt. Feinman, Lt. Smith, Cpl. Nowakowski and P/O Cuddahy. Exactly what did you hear and who said what?

A. I heard Lt. Smith say "1.11 and 1.12; they had their interview a year later after they testify they should be dismissed immediately". He also stated, "What are they getting, and that the silent majority is going to win this one". After that statement I heard Lt. Feinman laughing in the Corporal's room. I was sitting at the computer doing my 49's my heart started racing and I felt Nausea.

Q. Did you hear anything else said between these persons?

A. No.

Q. How did you know what these officers were speaking about, and how are you being harassed at work?

A. Me and my partner, we had been interviewed a year later over an incident involving P/O Eric Dial, and I believe that it was common knowledge that we had been interviewed a year late. — LATER (KS)

Immediately following our interviews that took place on 11-16-06, which took place between me Capt. Kelly and Lt. Haag, the following day officers that would normally speak to me and have conversations with me would just walk past me, and ignore me.

P/o Keith Sadowski #3937

D162

That not only occurred in headquarters but it also occurred down at the CJC. I just felt that I was being ostracized by my co-workers right after this interview took place.

Also on 1-22-07 I left a note on my partner's locker, P/O Campbell, for him to call home. I signed the note, Keith. When we returned to work on 1-27-07, P/O Campbell, who had left the note on the outside of his locker, saw the word "RAT" written across the center in large letters and also the word "Rat" right underneath my name in smaller letters.

We immediately placed the note into a plastic bag, and we took the situation to Sgt. Russell, and made her aware of the note. Me, P/O Campbell, Sgt. Russell and Lt. Feinman had a meeting to discuss the finding of this note.

Q. Officer you note in your memo that after hearing the conversation between Lt. Feinman and the other officers in your unit, you began to *sweat, shake, and you could not catch your breath. In addition, you indicated that your heart was pounding in your chest.* When you asked Lt. Feinman to leave was this to go off sick to seek medical treatment, or were you attempting to see someone at EAP?

A. I specifically told Lt. Feinman, that I was sick and stressed, and that I felt sick, and I needed to go speak to someone at EAP. I told him that I had heard the conversation, about what Lt. Smith had said, and that I heard him laughing, and I told him that I could not take it any more, that I did not do anything wrong, and I felt that I was being harassed.

Q. When you first spoke to Lt. Feinman, did you tell him that you believed you were having a heart attack, and that you needed to seek medical attention, or did you tell him that you had overheard his conversation and you wanted to speak to someone from EAP about your being harassed?

A. When I approached him in his office I did not say anything to him about a heart attack, I told him just what I have described to you in your previous question.

Q. Did Lt. Feinman order you to remain at headquarters and not leave, and did he tell you if you did leave, you would be carried AWOL?

A. Yes, numerous times. The first time, when I told him I had to go to EAP, I told him I needed to speak to someone from EAP. He told me you're not going anywhere you're going stay hear and talk to me about this. He kept asking me who I was talking to on the phone. I had told him that I was on the phone, and it had been suggested to me to go to EAP because of the way I was feeling, stressed over the way I was being harassed.

Q. Officer the person you spoke to on the telephone, was this someone from EAP who was advising you to come down to their office?

A. No.

P/O *Keith Sadowski* #3937

Q. The person you spoke to that day was it Captain Castro?

A. No, I spoke to Capt. Castro, a few days after I was released from the hospital.

Q. Officer at the time of this incident did feel that you disobeyed a direct order from Lt. Feinman not leave your post?

A. No, I would never disobey a direct order from a supervisor. I meant no disrespect to Lt. Feinman, but I truly believed and felt that I needed to speak to someone from EAP about the situation, and also I never left the area of Narcotics Strike Force. I was outside of the building. I was subsequently taken by Fire Rescue to Frankford Torresdale Hospital.

Q. You indicated that Lt. Feinman ordered you to tell him who you were speaking to on your cell phone. When you were speaking to Lt. Feinman, were you on your phone at the same time, and did he order you to tell him whom it was you were speaking to?

A. It was not so much an order, other than he was inquiring who I was on the phone with. This was when I first spoke to him about going to EAP, and before I went into the locker room. After the locker room incident, and this was while I was on my cell outside of the building, talking to EAP. He came outside of the building with Lt. Haag, and in an angry and aggressive loud manner, he told me to get off the phone, and he asked me who I was on the telephone with. Lt Haag was also saying the same to me.

Q. Did you call your Captain after this incident and tell him what had occurred between you and Lt. Feinman?

A. No.

Q. How did you notify your Captain about this matter?

A. By way of memo.

Q. Officer after you were taken to Frankford Hospital, what did they diagnose your condition as?

A. It was anxiety-induced hypertension.

Q. Did you inform Captain Castro that you had suffered a heart attack, due to a physical confrontation that you had with Lt. Feinman, and did you tell him that Lt. Feinman had struck you with his chest causing you to lose your breath?

A. No, I told Captain Castro that at the time of the incident I felt that I was having a heart attack, and that was why I informed Lt. Haag, who called a medic for me. I recall telling Capt Castro, about the incident, where Lt. Feinman had blocked the doorway and where he had struck me with his chest causing me to stumble backwards a few steps. The symptoms that I was experiencing prior to this incident, which I had notified Lt. Feinman about, intensified.

P/o Keith Sadowski #3937

D164

Q. Will you voluntarily sign a medical release form releasing your medical records from Frankford Hospital as part of this investigation?

A. Upon advice of counsel I will voluntarily provide you with my medical records from Frankford Torresdale Hospital relating to my treatment of 2-22-07, which I will obtain and make available for you to be used strictly as part of this investigation..

Q. Did Frankford Hospital find and signs of bruising or trauma from your being struck in the chest by Lt. Feinman's chest?

A. No, not that I am aware of.

Q. Officer how tall are you, and how much do you weigh?

A. 6'3", 275 lbs.

Q. Approximately, how tall is Lt. Feinman, and what is his approximate weight?

A. About 5'8", 5'9", about 230 lbs.

Q. Was there anyone present in the locker room when Lt. Feinman allegedly blocked your path at the door to the locker room, and when the physical confrontation between you and Lt. Feinman occurred?

A. No, not that I am aware of.

Q. You indicated that you told the truth and that you have been harassed for it. Is there another investigation, which you are referring to, and if so, will you explain to me your involvement in this investigation and the nature of the investigation?

A. There was an investigation conducted by Capt. Kelley, involving P/O Eric Dial and Sgt. Russell that happened in 2005. Myself and my partner P/O Campbell were interviewed in this investigation in November of 2006. During the interview I told the truth, and subsequent to the interview that is when the harassment that I have told about began.

Q. Officer after you left the locker room and went outside your headquarters, you indicated that Lt. Feinman and Lt. Haag came running outside the building, and lt. Feinman told you that if you left you would be carried AWOL. Was Lt. Haag present when this was said to you?

A. He told me I would be carried AWOL as he was blocking the doorway to the locker room, and this was after I told him I was sick and I wanted to speak to someone from EAP. Lt. Haag was not present until I went outside the building to the parking lot of the NSF headquarters.

P/O Keith Sadowski #3987

Q. You also noted that you were on the telephone with someone, about going to EAP. Who were you on the phone with, was it someone from EAP, and did this person tell you that the Commanding Officer at EAP said you could come down and that you could utilize sick time to do so.

A. I was on the phone with P/O Brooks from EAP after I went outside to the rear of the NSF headquarters. As I was speaking to him on the phone, he overheard Lt. Feinman and Lt. Haag asking who I was on the phone with, and them telling me to get off the phone. P/O Brooks said that he was going to speak to his Commanding Officer, but he was still on the phone with me, and he told me to inform Lt. Feinman that I was going to utilize my sick time to come down to EAP and speak to him about the situation.

Q. The person whom you were speaking to on the phone, while outside of the building. Did you tell this person that you could not breath, that you were sweating, and that your chest was pounding and you believed that you might be having a heart attack?

A. Yes, and P/O Brooks told me that I should seek medical attention, and that we could speak at a later date.

Q. Officer after the note that you referred to that was found with the word "Rat" on it, after meeting with Lt. Feinman and Sgt. Russell over this, what was done to address this issue?

A. At some point after meeting with Lt. Feinman and Sgt. Russell over the note, my partner had spoke to Capt. Kelly about it, and it was our understanding he was going to investigate it. Approximately three days had passed and I still had the note. The Captain had not received it from us. I spoke to Sgt. Chet O'Neill from Internal Affairs and briefed him on what was happening. My partner has spoke to the Captain on Monday about it, and I had not been aware that he had done so until after I spoken to Sgt. O'Neill about it.

Sgt. O'Neill spoke to his Captain, and he said his Captain advised us that we give our Captain an opportunity to address the situation, and if we were still not satisfied with the manner in which it was being investigated we could come back to Internal Affairs and file a formal complaint.

My partner and I decided to bring the note to Internal Affairs, and we informed Lt. Feinman that we were not abandoning our post, but that we were going to Internal Affairs about the note.

We notified radio to hold us out to Internal Affairs, and right after we got off the radio, Lt. Feinman called us over the radio and told us to call him inside headquarters. He told us to call this number that Captain Kelly wanted to speak to us. I called the number, and Captain Kelly stated that he was upset that we were going to Internal Affairs with this. This occurred I believe on the 30th of January 2007.

P/o Keith Sadowski #3937

Capt. Kelly stated that he was just in a meeting with Billy, P/O Campbell, for an hour over this, and now we are going to Internal Affairs over this. I told the Captain that I was not present for that meeting and I asked him if he wanted to speak to P/O Campbell about this. He said he did.

I gave the phone to P/O Campbell and after he spoke to P/O Campbell he told us to bring the note to his mother's house, and we personally dropped it off to him outside of his mother's house. I learned later that the note was sent to the Crime lab for fingerprinting, but as of this date, the Captain has not formally interviewed me or my partner about this matter.


Q. Is there anything you would like to add to this interview?

A. Yes, there are two incidents; a few days after I was treated at the hospital my partner had a conversation with the Captain in reference to the incident on 2-22-07. Captain Kelly stated to my partner that he spoke to Lt. Smith, and asked him if he was speaking about the PBI hearing in the office and Lt. Smith admitted to talking about the PBI hearing involving P/O Dial's PBI hearing. The second incident was on 3-10-07, my [partner was at work and he was called into Lt. Feinman's office, and Lt. Feinman made a statement to my partner, you tell Keith that I am not taking this sitting down, and that everything that was in that memo, was complete fabrication and lies.

Because of everything that has transpired since my interview on 11-16-06 concerning the incident with P/O Dial and Sgt. Russell, I do not have confidence that Captain Kelly will be able to conduct an impartial and thorough investigation into the note, and I have concerns that the investigation will not remain confidential if handled in house and by the Captain.


**STATEMENT CONCLUDED:**


**I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (7) PAGES AND IT IS TRUE AND ACCURATE.**

SIGNATURE: _Keith Sadowski_ #3937

DATE: _3-20-07_  TIME: _8:15 pm_

WITNESSES: _____

_____

_____

**STATEMENT OF:** Lt. Joel Fitzgerald # 478, PR# 212264, NSF 2-B

**DATE AND TIME:** 3-29-07 @ 10:15 PM

**PLACE:** Internal Affairs 7790 Dungan Rd

**CONCERNING:** IAD# 07-1027

**INTERVIEWED BY:** Lieutenant Donald Scott # 186, IAD.

**IN THE PRESENCE OF: Not represented by Counsel**

Lt. Fitzgerald, I am Lt. Donald Scott # 186, from Internal Affairs. I have been assigned to investigate the allegations made by P/O Keith Sadowski # 3937, NSF, that he has been harassed and claims that he was assaulted by Lt. Jack Feinman # 110, whom he claims blocked a doorway in the locker room, and thrust his chest into him causing him to be taken to the hospital with chest pains.

I have received information that you may have overheard remarks made by P/O Sadowski, in which he said that if a supervisor ever came close to hitting him he would fall onto the ground and then sue. I would like to ask you some questions concerning the information you may have.

Lieutenant Fitzgerald you are reminded, Officer, that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Section 1.11 of the Disciplinary Code.

Lieutenant Fitzgerald you are also reminded, Officer, that making a false statement in response to an official Departmental investigation is punishable by 10 days suspension to dismissal under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?

A. yes.

Q. Lieutenant Fitzgerald, have you ever had any conversation with P/O Keith Sadowski in which he said that he would file a suit if he was ever bumped or hit by a supervisor, and if so, will you provide me with the details of this conversation?

A. I was never involved directly in a conversation with him regarding that, however he was seated directly outside of my office and I overheard him say, " if a supervisor ever came close to hitting me I'd hit the floor and sue him". He was speaking with another officer, I am not sure who it was, but from my vantage point I could see P/O Sadowski, however I could not see the other officer he was talking with.

This occurred sometime in the first week of November 2006. As a result of this I spoke to the Captain concerning this, and I relayed to him just what I had told you.

Q. What would have prompted you to make this information available to the Captain?

A. We have had other incidents of contact between officers and Strike force supervisors related to allegations of physical contact, and I thought it best to bring this to his attention.

Q. After the incident between Lt. Feinman and P/O Sadowski, did you again speak to the Captain concerning the remarks that you overheard P/O Sadowski make in November of 2006?

A. I did, I spoke to him and asked him if he recalled me coming to him during the first week of November and telling him that P/O Sadowski had threatened to feign an injury and file a law suit, if a supervisor had came close to him.

Q. Were there any other witnesses to his remarks?

A. No, other than me and the other officer he was in conversation with. I was within earshot of his remarks, but I could not see who the other officer was he was in conversation with.

Q. How did you learn of the current incident involving P/O Sadowski and Lt. Feinman?

A. It was general knowledge; I learned later that day, after the incident, it was all over the unit. I don't recall who told me about, but everyone seemed to know about the incident.

Q. Do you know how the information concerning the comments made by P/O Sadowski; found its way to Internal Affairs?

A. I can assume that after my speaking to him, The captain he may have relayed that information to Internal affairs.

Q. Is there anything you would like to add to this interview?

A. No.


**STATEMENT CONCLUDED:**

**I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (2) PAGES AND IT IS TRUE AND ACCURATE.**

SIGNATURE: _Lt J. T____ #478_

DATE: _3/29/07_  TIME: _11:00pm_

WITNESSES: _____

**STATEMENT OF: Lt. James Smith # 170, PR# 207333, NSF 5 Plt.**

**DATE AND TIME: 04-06-07 @ 3:00 PM**

**PLACE:** Internal Affairs 7790 Dungan Rd

**CONCERNING:** IAD# 07-1027

**INTERVIEWED BY:** Lieutenant Donald Scott # 186, IAD.

**IN THE PRESENCE OF: Not represented by Counsel**

Lt. Smith, I am Lt. Donald Scott # 186, from Internal Affairs. I have been assigned to investigate the allegations made by P/O Keith Sadowski # 3937, NSF, that he has been harassed and his allegation that he was assaulted by Lt. Jack Feinman # 110, on 2-22-07, whom he claims blocked a doorway in the locker room, and thrust his chest into him causing him to be taken to the hospital with chest pains.

P/O Sadowski has indicated that just prior to this incident you, along with other members of the unit, were engaged in a conversation with Lt. Feinman concerning a previous investigation in which he gave a statement to Capt. Kelly.

I would like to ask you some questions concerning this matter.

Lieutenant Smith you are reminded, Officer, that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Section 1.11 of the Disciplinary Code.

Lieutenant Smith you are also reminded, Officer, that making a false statement in response to an official Departmental investigation is punishable by 10 days suspension to dismissal under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?

A. Yes.

Q. Lt. Smith were you engaged in a conversation with Lt. Feinman, Cpl. Nowakowski, and P/O Cuddahy, inside NSF headquarters on 2-22-07, and did you make remarks referring to P/O Sadowski and his statement given to Capt. Kelly, in the investigation he conducted involving P/O Dial and Sgt. Russell?

A. No.

Q. Did you make any remarks that after the officers testify, they should be dismissed immediately, and did you make mention of sections 1.11 and 1.12 of the Disciplinary Code?

A. No.

Q. Did you have any conversations with anyone that day about the P/O Dial and Sgt. Russell matter while inside the NSF headquarters, and if so, what was said concerning that?

A. I was in the ORS office, Cpl. Nowakowski's office, when P/O Cuddahy came into the room. P/O Cuddahy had asked me if I knew that P/O Bachmayer was not going to be able to make the PBI hearing, because he was on vacation.

I told P/O Cuddahy that I had just found out that morning, P/O Cuddahy then asked me if I thought they would allow P/O Eric Dial to get the PBI continued. I responded that I didn't know, but I would like to think so. P/O Cuddahy had also brought up dates when P/O Bachmayer would be on vacation. That was the end of the conversation. During the conversation Cpl. Nowakowski was on the phone taking a drug complaint, and there were no other officers in the room.

Q. At anytime during that conversation did you see P/O Sadowski in the building or within earshot of your conversation?

A. No.

Q. Was Lt. Feinman nearby or in the room?

A. No.

⑤ — Q. Did you witness any subsequent conversations between Lt. Feinman, and P/O Sadowski that day?

A. No.

⑥ — Q. Were you present when Lt Feinman and P/O Sadowski were in the locker room of the unit that day?

A. No.

Q. Are you aware of any harassment directed at P/O Sadowski or his partner P/O Campbell after they gave statements to Capt. Kelly, regarding the P/O Dial and Sgt. Russell investigation?

A. No.

⑧ — Q. Were you outside of the building when P/O Sadowski was transported by Fired Rescue to the hospital, and did you overhear any conversation between him and Lt. Feinman or Lt. Haag?

A. No.



D171

Q. Is there anything you would like to add to this interview?

A. Just that P/O Cuddahy was trying to keep me informed as to what was going on with the PBI, as I am both P/O Cuddahy's and P/O Dials' supervisor. I am not P/O Bachmayer's supervisor and I think P/O Cuddahy was just trying to keep me informed of what was going on with the hearing.

**STATEMENT CONCLUDED**:

**I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND ACCURATE.**

SIGNATURE: _James Smit_

DATE: _4-6-07_ TIME: _4:10 pm_

WITNESSES: _____

**STATEMENT OF: Cpl. Vincent Nowakowski # 8178, PR# 208607, NSF 5 Plt.**

**DATE AND TIME:** 04-06-07 @ 3:10 PM

**PLACE:** Internal Affairs 7790 Dungan Rd

**CONCERNING:** IAD# 07-1027

**INTERVIEWED BY:** Lieutenant Donald Scott # 186, IAD.

**IN THE PRESENCE OF: Not represented by Counsel**

Cpl. Nowakowski, I am Lt. Donald Scott # 186, from Internal Affairs. I have been assigned to investigate the allegations made by P/O Keith Sadowski # 3937, NSF, that he has been harassed and his allegation that he was assaulted by Lt. Jack Feinman # 110, on 2-22-07, whom he claims blocked a doorway in the locker room, and thrust his chest into him causing him to be taken to the hospital with chest pains.

P/O Sadowski has indicated that just prior to this incident you, along with other members of the unit, were engaged in a conversation with Lt. Feinman concerning a previous investigation in which he gave a statement to Capt. Kelly.

I would like to ask you some questions concerning this matter.

Lieutenant Fitzgerald you are reminded, Officer, that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Section 1.11 of the Disciplinary Code.

Lieutenant Fitzgerald you are also reminded, Officer, that making a false statement in response to an official Departmental investigation is punishable by 10 days suspension to dismissal under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?

A. Yes.

Q. Cpl. Nowakowski, were you engaged in a conversation with Lt. Feinman, Lt. Smith, and P/O Cuddahy, inside NSF headquarters on 2-22-07, and did you overhear remarks referring to P/O Sadowski and P/O Campbell regarding their statements given to Capt. Kelly, in the investigation he conducted involving P/O Dial and Sgt. Russell?

A. First Lt. Feinman was never inside the Corporals office as P/O Sadowski has claimed. At the time P/O Sadowski claims this occurred, Lt. Smith was speaking with P/O Cuddahy, and I was on the telephone with a taking a drug complaint. Lt. Feinman was not part of that conversation.

*Keith*
4-6-07

Q. Do you know what Lt. Smith and Cuddahy were speaking about?

A. No, I was on the telephone at the time. I learned after P/O Sadowski had been taken to the hospital and that he was claiming that he overheard Lt. Feinman, along with me, Lt. Smith and P/O Cuddhay speaking about the P/O Dial and Sgt. Russell matter.

Q. How did you learn of this?

A. I am not real sure I may have heard it from Lt. Feinman himself, or another supervisor, possibly Lt. Haag.

Q. While you were on the phone did you hear any remarks by P/O Cuddahy or Lt. Smith to the effect, that after the officers testify, they should be dismissed immediately, and did you hear any mention of sections 1.11 and 1.12 of the Disciplinary Code?

A. No.


Q. When you were on phone, where in the building was P/O Sadowski in relation to where your office is?

A. I don't know, I did not see him at that time. Earlier in the morning he was doing 75-49's, at the PARS machine which is located against the far wall in relation to my office. That is about 25 feet away from my office. As soon as you exit my office the computers are to the far left. If you were to hear anything from that distance, from inside my office, someone would have to be screaming or yelling.

Q. Have you ever heard any remarks from anyone assigned to the unit, that P/O Sadowski and P/O Russell are "rats" for having given their statements to the Captain relating to the P/O Dial and Sgt. Russell investigation, which Capt Kelly had conducted?

A. No.

Q. Did you witness any subsequent conversations between Lt. Feinman, and P/O Sadowski that day?

A. No.

Q. Were you present when Lt Feinman and P/O Sadowski were in the locker room of the unit that day?

A. No.

D174

Q. Are you aware of any harassment directed at P/O Sadowski or his partner P/O Campbell after they gave statements to Capt. Kelly, regarding the P/O Dial and Sgt. Russell investigation?

A. No.

Q. Were you outside of the building when P/O Sadowski was transported by Fired Rescue to the hospital, and did you overhear any conversation between him and Lt. Feinman or Lt. Haag?

A. I did not overhear any conversations I walked downstairs to the door, to see what had occurred. I think rescue may have already left. I did not hear any conversations.

Q. Is there anything you would like to add to this interview?

A. No.


**STATEMENT CONCLUDED:**

**I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (2) PAGES AND IT IS TRUE AND ACCURATE.**

SIGNATURE: _____

DATE: _4-6-07_ TIME: _3²⁹ PM_

WITNESSES: _____

**STATEMENT OF: P/O Kevin Cuddahy # 2369, PR# 222875, NSF 5 Plt.**

**DATE AND TIME:** 04-06-07 @ 5:45 PM

**PLACE:** Internal Affairs 7790 Dungan Rd

**CONCERNING:** IAD# 07-1027

**INTERVIEWED BY:** Lieutenant Donald Scott # 186, IAD.

**IN THE PRESENCE OF: Not represented by Counsel**

P/O Cuddahy, I am Lt. Donald Scott # 186, from Internal Affairs. I have been assigned to investigate the allegations made by P/O Keith Sadowski # 3937, NSF, that he has been harassed and his allegation that he was assaulted by Lt. Jack Feinman # 110, on 2-22-07, whom he claims blocked a doorway in the locker room, and thrust his chest into him causing him to be taken to the hospital with chest pains.

P/O Sadowski has indicated that just prior to this incident you, were engaged in a conversation with Lt. Smith, Cpl. Nowakowski, and Lt. Feinman concerning a previous investigation in which he gave a statement to Capt. Kelly.

I would like to ask you some questions concerning this matter.

P/O Cuddahy you are reminded, Officer, that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Section 1.11 of the Disciplinary Code.

You are also reminded, Officer, that making a false statement in response to an official Departmental investigation is punishable by 10 days suspension to dismissal under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?
A. Yes.

Q. Officer Cuddahy were you engaged in a conversation with Lt. Feinman, Cpl. Nowakowski, and Lt. Smith, inside NSF headquarters on 2-22-07, and did you make, or overhear, remarks referring to P/O Sadowski and his statement given to Capt. Kelly, in the investigation he conducted involving P/O Dial and Sgt. Russell?

A. No.

Q. Did you have any conversations related to that investigation, with anyone from the unit that day?

A. I had a conversation with lt. Smith, in reference to P/O Bachmayer being on vacation, the day of P/O Dial upcoming PBI.

Q. What was said during that conversation, and where were you and Lt. Smith when you spoke about it?

A. We were sitting in the Corporal's Office, but Corporal Nowakowski was on the telephone, he was not involved in the conversation. I told Lt. Smith that P/O Bachmayer was going to be on vacation the day of the hearing, because Lt. Smith is involved in the PBI, that he may be one of the witnesses. We discussed whether P/O Dial would be able to get the case continued to another date.

Q. Was Lt. Feinman part of the conversation, or was he anywhere near the conversation?

A. No, I had not seen him since their squad had broke from roll call. It was not until after P/O Sadowski was taken to the hospital that I saw him inside our headquarters.

Q. Did you witness any conversations that day between Lt. Feinman, and P/O Sadowski?

A. No.

Q. Were you present when Lt Feinman and P/O Sadowski were in the locker room of the unit that day?

A. No.

Q. Are you aware of any harassment directed at P/O Sadowski or his partner P/O Campbell after they gave statements to Capt. Kelly, regarding the P/O Dial and Sgt. Russell investigation?

A. No.

Q. Were you outside of the building when P/O Sadowski was transported by Fire Rescue to the hospital, and did you overhear any conversation between him and Lt. Feinman or Lt. Haag?

A. No, I was not outside when he was taken to the hospital, and I didn't hear any conversation between him, Lt. Feinman and Lt. Haag.

Q. Is there anything you would like to add to this interview?
A. No.

**STATEMENT CONCLUDED:**
**I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (2) PAGES AND IT IS TRUE AND ACCURATE.**

SIGNATURE: _Id Mul. 2263_

DATE: _4-6-09_   TIME: _6:00 pm_   WITNESSES: _2+ J C H #156_

**STATEMENT OF:** Sgt. Laverne Vann # 8522, PR# 202792, NSF 2-D

**DATE AND TIME:** 04-11-07 @ 12:40 PM

**PLACE:** Internal Affairs 7790 Dungan Rd

**CONCERNING:** IAD# 07-1027

**INTERVIEWED BY:** Lieutenant Donald Scott # 186, IAD.

**IN THE PRESENCE OF:** Timothy Strange, Esquire

Sgt. Vann, I am Lt. Donald Scott # 186, from Internal Affairs. I have been assigned to investigate the allegations made by P/O Keith Sadowski # 3937, NSF, that he has been harassed and claims that he was assaulted by Lt. Jack Feinman # 110, whom he claims blocked a doorway in the locker room, and thrust his chest into him causing him to be taken to the hospital with chest pains.

Sgt. Vann I have received information that you went to Frankford Hospital on the day of this incident, and you were asked by P/O Sadowski' brother to leave. I would like to ask you some questions concerning this.

Sgt. Vann you are reminded, Officer, that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Section 1.11 of the Disciplinary Code.

Sgt. Vann you are also reminded, Officer, that making a false statement in response to an official Departmental investigation is punishable by 10 days suspension to dismissal under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?

A. Yes.

Q. Sgt. Vann did you go to Frankford Hospital on 2-22-07 after P/O Sadowski was transported by Fire Rescue, and what was the nature of your visit?

A. I went to the hospital at the time, to check on the officer's condition, and also to fill out the appropriated departmental paperwork.

Q. After arriving at the hospital did you speak to P/O Keith Sadowski # 3937, and what if anything did he tell about the incident between him and Lt. Feinman?

A. I did not speak to P/O Keith Sadowski. I spoke to his brother who is also a police officer; however I don't recall his first name. When I arrived at the Emergency room, I approached the nurse, identified myself and asked if I could speak to P/O Sadowski. The nurse checked with the doctor, and then told me I could do so, and directed me back to the station in the ER where he was

being seen. As I approached I could hear laughing and joking inside the cubicle where P/O Sadowski was being seen. Inside the area was P/O Campbell, who was in a sick status at the time, and two other males one of whom I believe was P/O Sadowski' brother, also a police officer. As I approached the room, everyone was laughing, however as soon as I entered, and they saw me, they immediately stopped.

P/O Sadowski's brother asked if he could speak to me outside. I said yes, and we walked outside the cubicle. His brother said to me, that he thought I was Sgt. Russell, and then said that my brother does not want to speak to anybody from that Strike Force. I said OK, and with that he went back into the cubicle area where P/O Sadowski was being treated. I spoke to the nurse briefly before leaving, and I just asked the officer's condition and whether he was going to be admitted.

She spoke to the Doctor briefly and returned telling me that he was in good condition and was not going to be admitted.

Q. Were you present at NSF headquarters on 2-22-07, and did you witness any of the incident between Lt. Feinman and P/O Sadowski?

A. No, I was not. I had court that day I learned of it after returning from court.

Q. Are you aware of any harassment of P/O Sadowski and P/O Campbell by Lt. Feinman, or any other officers assigned to NSF?

A. No, I have no personal knowledge of that.

Q. Did you instruct P/O Sadowski that he was to remain inside headquarters on 2-22-07, to work on delinquent 75/49 reports he was due?
A. I recall speaking to him that morning and he had asked me if he could leave early that day. He asked could he just complete his 75/49's and if he could take time for the remainder of the tour. I told him to do his 75/49's and that when he was finished he could utilize whatever time he wished. It was not uncommon for him to be delinquent with his reports.

Q. Have other officers in the squad also been instructed to work on the 75/49's and have they been assigned to the unit to work on their delinquent reports?
A. Yes, usually if the officers are delinquent with their reports, and they are not scheduled for court we will assign them to the unit to work on their delinquent reports.

Q. Is there anything you would like to add to this interview?
A. No sir.

**STATEMENT CONCLUDED:**

**I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (2) PAGES AND IT IS TRUE AND ACCURATE.**
SIGNATURE: _Sgt. LaVerne Vann_ DATE: 04/11/07 TIME: 1:30p
WITNESSES: _2 S. Co. A #582_

**STATEMENT OF: Lt. Joseph Haag # 178, PR# 162064, NSF, 5 Plt.**

**DATE AND TIME: 04-13-07 @ 10:00 AM**

**PLACE:** Internal Affairs 7790 Dungan Rd

**CONCERNING:** IAD# 07-1027

**INTERVIEWED BY:** Lieutenant Donald Scott # 186, IAD.

**IN THE PRESENCE OF: Not represented by Counsel**

Lt. Haag, I am Lt. Donald Scott # 186, from Internal Affairs. I have been assigned to investigate the allegations made by P/O Keith Sadowski # 3937, NSF, that he has been harassed and claims that Lt. Jack Feinman # 110 assaulted him, whom he claims blocked a doorway in the locker room, and thrust his chest into him causing him to be taken to the hospital with chest pains.

P/O Sadowski has named you in his memorandum, as a possible witness, indicating that you were outside in the rear of the NSF headquarters, while he was speaking on the telephone with someone from EAP. I would like to ask you some questions concerning this.

Lt. Haag you are reminded, Officer, that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Section 1.11 of the Disciplinary Code.

Lt. Haag you are also reminded, Officer, that making a false statement in response to an official Departmental investigation is punishable by 10 days suspension to dismissal under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?
A. Yes

Q. Lt. Haag, will you tell me what you recall of this incident on 2-22-07, outside the rear of NSF headquarters between P/O Sadowski and Lt. Feinman?

A. Prior to my exiting the building sometime around 10AM or shortly thereafter, Lt. Feinman approached me and asked if he could see me. Lt. Feinman started walking towards the rear of the building, which is past our elevator and thru the gym. I asked Lt. Feinman what he wanted and he asked me to standby with him, saying that he had to talk to an officer. I followed him downstairs to the exit on the first floor, which leads to the rear of the Strike Force Parking lot. As we got outside I saw P/O Sadowski in uniform speaking on his cell phone. Lt. Feinman said that he wanted me to standby with him, that he had to talk to P/O Sadowski, and he wanted me with him.

We were standing on the lot, P/O Sadowski was about 20 to 30 yards away, and Lt. Feinman, and I stood there for about 30 seconds, without P/O Sadowski acknowledging our presence. Finally about after a minute, Lt. Feinman said Keith I have to speak to you. He said this two or three time, and he said, tell whoever you are speaking to that I have to speak to you and you'll have to call them back.

P/O Sadowski walked towards us, still on his cell phone, and he said " I am having chest pains". I immediately called on my cell, 911 and I identified myself, and informed Radio that one of my officers was having chest pains. I was transferred to Fire Radio, and I explained the same, that one of my officers was having chest pains, they asked me to describe the situation and I did.

The operator on the line told me to have the officer sit down and not move. I told P/O Sadowski to sit down and not move, asking him to go to the steps and sit. P/O Sadowski stated that he could not sit down that he could not sit still. Fire Radio then informed me that Fire Rescue was on the way.

As I was trying to get P/O Sadowski to sit down, he was still on the phone, however I didn't know who he was speaking with at the time. I then called inside our headquarters and asked Sgt. Leisner to have someone meet Fire Rescue at the front of the building to direct them to our location in the rear. I also informed Sgt. Leisner that P/O Sadowski was having chest pains. A short time later Fire board arrived and P/O Sadowski was subsequently taken to Frankford Torresdale by Fire Rescue.

Q. Did you hear Lt. Feinman yelling in an angry tone, to P/O Sadowski, asking him who he was speaking with on the telephone?

A. No, not when he was with me. He just said to Keith that he needed to speak to him, and he told him that he could call back the person later. He was not yelling while I was there.

Q. Did you ask P/O Sadowski who he was speaking with on the phone?

A. No I did not.

Q. Were you present inside NSF headquarters on 2-22-07, and did you witness any of the incident that allegedly occurred inside the unit between Lt. Feinman and P/O Sadowski?

A. No, I was not aware of anything between the two until Lt. Feinman saw me and asked me to standby with him while spoke to P/O Sadowski. But I was inside Headquarter's that morning

Q. Are you aware of any harassment of P/O Sadowski and P/O Campbell by Lt. Feinman, or any other officers assigned to NSF, as a result of their statements given to Capt. Kelly in an investigation related to Sgt. Russell and P/O Dial?

A. No. The only thing I am aware of is one of the officers complained that there was a note left on one of their lockers with the words "rat" on it, the Capt Kelly had the note sent to the crime lab for prints and hand ring analysis.

Lt. J. Honey 178  4-13-07

Q. Is there anything you would like to add to this interview?

A. No.

**STATEMENT CONCLUDED:**

**I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND ACCURATE.**

SIGNATURE: _Lt. Joseph Hoang 128_ DATE: _4-13-07_ TIME: _10 55 AM_

WITNESSES: _2T  J.P. A  #186_

**STATEMENT OF: P/O Kathleen Gorman # 5239, PR# 224024, NSF, 5 Plt.**

**DATE AND TIME: 04-17-07 @ 1:00 PM**

**PLACE:** Internal Affairs 7790 Dungan Rd

**CONCERNING:** IAD# 07-1027

**INTERVIEWED BY:** Lieutenant Donald Scott # 186, IAD.

**IN THE PRESENCE OF: Not represented by Counsel**

P/O Gorman, I am Lt. Donald Scott # 186, from Internal Affairs. I have been assigned to investigate the allegations made by P/O Keith Sadowski # 3937, NSF that he has been harassed, and his claims that Lt. Jack Feinman # 110 assaulted him, as he tried to exit the locker room at NSF headquarters on 2-22-07.

P/O Gorman, I understand that you were working inside NSF headquarters on the day in question and may have information pertinent to this investigation. I would like to ask you some questions concerning this matter.

P/O Gorman you are reminded, Officer, that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Section 1.11 of the Disciplinary Code.

P/O Gorman you are also reminded, Officer, that making a false statement in response to an official Departmental investigation is punishable by 10 days suspension to dismissal under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?
A. Yes

Q. Officer Gorman were you present inside Narcotics Strike Force Headquarters on 2-22-07, and did you witness any exchange of words between Lt. Feinman and P/O Sadowski?

A. I was present and I did not witness any exchange.

Q. Did you learn of an allegation made by P/O Sadowski that Lt. Feinman, Lt. Smith, Cpl. Nowakowski and P/O Cuddahy had been talking and laughing about P/O Sadowski regarding a statement he had given in an investigation that Capt Kelly had conducted associated to P/O Dial and Sgt. Russell matter?

A. Yes.

*Gorman 5239*

D183

Q. What did you hear about the allegations that P/O Sadowski was making against Lt. Feinman?

A. I understand that P/O Sadowski had stated that Lt. Feinman was involved in a conversation, with the other officers, inside the Corporal's Office sometime around 9:30 AM that day. Lt. Feinman was not inside the Corporal's Office at that time he and I were in Lt. Feinman's office speaking by ourselves. When I learned of this I went to Lt. Feinman and asked him if P/O Sadowski was making this allegation, and he said yes, and I said how can that be true when we were speaking in your office at that same time. On the day in question I had gone into Lt. Feinman's office sometime around 9:05 AM and we talked about work related matters until sometime around 9:50 AM.

Q. What is you assignment at NSF headquarters?

A. I am presently detailed to the Captain' office and I have been for the past three years.

Q. Did you observe Lt. Feinman, Lt. Smith, Corporal Nowakowski, and P/O Cuddahy engaged in a conversation inside the Corporal's office that morning?

A. No.

Q. Did you see any of those individuals in the Corporals' Office that morning?

A. I saw Cpl. Nowakowski, Lt. Smith, and P/O Cuddahy, it was later in the morning when I saw them, and I believe it was after 10 AM when I saw them in there.

Q. Are you aware of any ongoing harassment of P/O Sadowski and P/O Campbell because of the statements they made in the P/O Dial and Sgt. Russell investigation conducted by Capt. Kelly?

A. I am aware that they have claimed that they were harassed by someone who allegedly placed a note with the words "rat" on one of their lockers.

Q. Have you ever heard P/O Sadowski make any statements at work, about suing a supervisor or suing the Police Department?

A. No.

*Gorman 5239*

Q. Did hear P/O Sadowski claim that Lt. Feinman had assaulted him by bumping his chest into his, as he tried to exit the locker room?

A. I did hear that. I don't recall where, it may have been in general conversation after the incident. I work in the Captain's office and I may have overheard people speaking about it.

Q. Is there anything you would like to add to this interview?

A. No.

**STATEMENT CONCLUDED:**

**I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND ACCURATE.**

SIGNATURE: _P/O Horman 5239_ DATE: _4-17-07_ TIME: _1:30 Pm_

WITNESSES: _2 D.O.#_ _#186_

**STATEMENT OF: P/O Tracy Brooks # 4122, PR# 221364, EAP, 5 Plt.**

**DATE AND TIME: 04-17-07 @ 10:45 AM**

**PLACE:** Internal Affairs 7790 Dungan Rd

**CONCERNING:** IAD# 07-1027

**INTERVIEWED BY:** Lieutenant Donald Scott # 186, IAD.

**IN THE PRESENCE OF: Not represented by Counsel**

P/O Brooks, I am Lt. Donald Scott # 186, from Internal Affairs. I have been assigned to investigate the allegations made by P/O Keith Sadowski # 3937, NSF, that he has been harassed and his allegation that he was assaulted by Lt. Jack Feinman # 110, on 2-22-07, inside Narcotics Strike Force Headquarters. P/O Sadowski has indicated that you may have overheard persons in the background as he spoke to you on the telephone that day.

I would like to ask you some questions concerning this matter.

P/O Brooks, you are reminded, Officer, that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Section 1.11 of the Disciplinary Code.

P/O Brooks you are also reminded, Officer, that making a false statement in response to an official Departmental investigation is punishable by 10 days suspension to dismissal under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?

A. Yes.

Q. P/O Brooks did you receive a telephone call from P/O Keith Sadowski, NSF, on 2-22-07, sometime around 10:30 AM, and if so, did you hear any persons in the background while you were speaking to him?

A. I did speak to P/O Sadowski ~~on~~ morning sometime around 10:30 AM

Q. Did you speak in person with P/O Sadowski at that time, or by telephone?

A. By telephone.

Q. During the conversation that you had with him, did you overhear any other person's voices, and if so, what did you hear those individuals say?

 *Locker during the conversation?*

A. I did hear someone in the background, when he complained to that he was having chest pains, I heard someone say we will call rescue for you. He had told me that he was having chest pains, and I told him to go the hospital, and then he told someone he was having chest pains, and someone said that they would call rescue.

Q. Do you know who it was that he spoke to, or do you know who the person was that you heard in the background of the call?

A. No, but he did say that there was two Lieutenants, and a Corporal and he did give their names but I don't recall at that point.

Q. At anytime during the telephone conversation with P/O Sadowski, did you hear any one in the background speak to him in a hostile or angry manner, demanding that he get off the telephone?

A. Someone did say, " Who are you talking to". He stated that he was talking to a counselor from EAP.

*LT #186*

Q. The person that you heard ask P/O Sadowski who are you talking to", how would you describe their demeanor and tone?

A. He clearly sounded angry.

Q. Did P/O Sadowski tell you that his supervisors were refusing to allow him to go to EAP, and if so, what did you tell him in regard to this?

A. First he said that his supervisors were refusing to allow him to leave the locker room. At some point during the conversation he said that his supervisors would not allow him to leave to come to EAP, and they told him that if he left, he would be carried AWOL. At some point I spoke to my Captain about this, and he stated that it was up to the discretion of the supervisor, to allow him to come or not, once he is at work.

Q. Is it fair to say that when you first spoke to P/O Sadowski, that he did not mention, at first, that he was having chest pains and that he felt ill?

*To LT #186*

A. I don't recall him initially telling me that he had chest pains. It was clear me that he sounded under duress.

*LT #186*

Q. Do you know if P/O Sadowski was he still in the locker room, when he was talking to you?

A. I got the impression that he was still in the locker room, that he was not able to go anywhere.

Q. The persons that you heard in the background, while speaking with P/O Sadowski, did you hear them say that they would carry him AWOL if he left?

A. No I did not hear that, no.

D187

Q. Did you hear anyone curse at him during your conversation?

A. No, I can't recall.

Q. The only thing that you heard this other person say was, "Who are you talking to"? Is that correct?

A. Yes correct.

Q. Is there anything you would like to add to this interview?

A. No, other than the fact that he was clearly under duress. It sounded to me as if he was about to break down and cry.


**STATEMENT CONCLUDED:**

**I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES AND IT IS TRUE AND ACCURATE.**

SIGNATURE: _Tracy Searle_

DATE: _7/17/07_ TIME: _11:35 (1)_

WITNESSES: _27.9.07 #186_

**STATEMENT OF: Lt. Jack Feinman, # 110, PR# 195049, NSF, 2-D**

**DATE AND TIME: 05-21-07 @ 1:30 PM**

**PLACE:** Internal Affairs 7790 Dungan Rd

**CONCERNING:** IAD# 07-1027

**INTERVIEWED BY:** Lieutenant Donald Scott # 186, IAD.

**IN THE PRESENCE OF: Brian McLaughlin, Esquire**

Lt. Feinman, I am Lt. Donald Scott # 186, from Internal Affairs. I have been assigned to investigate the allegations made by P/O Keith Sadowski # 3937, NSF, that he was assaulted by you claiming that you blocked a doorway in the locker room, and thrust your chest into his resulting in his being taken to the hospital with chest pains.

P/O Sadowski has indicated that just prior to this incident you, along with Lt. Smith, Cpl. Nowakowski and P/O Cuddahy, were engaged in a conversation concerning a previous investigation in which P/O Sadowski gave a statement to Capt. Kelly. P/O Sadowski alleges that he overheard Lt. Smith say *"1.11 and 1.12, they had their interview a year later after they testify they should be dismissed immediately"*. P/O Sadowski claims that you were part of this conversation, and that afterwards he heard you laughing.

I would like to ask you some questions concerning this matter.

Lieutenant Feinman, you are reminded, Officer, that failure to cooperate in a Departmental administrative investigation is punishable by 10 days suspension to dismissal under Section 1.11 of the Disciplinary Code.

Lieutenant Feinman you are also reminded, Officer, that making a false statement in response to an official Departmental investigation is punishable by 10 days suspension to dismissal under Section 1.12 of the Disciplinary Code.

Q. Do you understand this?

A. Yes.


Q. Lt. Feinman were you engaged in a conversation with Lt. Smith, Cpl. Nowakowski, and P/O Cuddahy, inside NSF headquarters on 2-22-07, and did you overhear remarks made by Lt. Smith referring to P/O Sadowski, and his statement given to Capt. Kelly, in the investigation he conducted involving P/O Dial and Sgt. Russell?

A. No.

D189

Q. On 2-22-07, P/O Sadowski stated that he was told to remain in headquarters to work on delinquent reports. Is it unusual for your Sergeants to have their officer's work on their delinquent reports?

A. No it is not, and also at the time he had five delinquent 75/49's from 2007.

Q. Have other officers in the squad also been told to remain in headquarters to catch up on their delinquent reports?

A. Yes.

Q. On 2-22-07, did you make, or overhear any remarks, that after the officers testify, they should be dismissed immediately?

A. No I did not.

Q. Did you have any conversations with anyone that day about the P/O Dial and Sgt. Russell matter while inside the NSF headquarters, and if so, what was said concerning that?

A. I did not overhear any conversation or have any concerning that matter.

Q. Did P/O Sadowski speak to you (us#112) about that conversation he claimed he overheard that day?

A. When he first came into my office. He stopped in the doorway, I was on the phone. He asked to speak to me. I pointed at the phone and asked him to wait one minute. As soon I finished on the phone, I asked him what I could for him.

He stated that he had over heard a conversation that I had had regarding his testimony at a PBI. I had no idea of what he was talking about and I told him that. At which point he told me that he was feeling stressed and he needed to go to EAP.

I asked him to come into my office and sit down so I could discuss it with him. He never moved from the doorway, and he began to tell me that he had already spoken to EAP and that he was going down now.

Again I asked him to come into my office so I could discuss it with him, at which point he became agitated and told me that I could not refuse him from going, and he said that he had already talked to EAP and they had told him that I could not refuse him from going.

I told him that I was not refusing him from going but I did need him to come in and sit down, at which point he walked away.

D190

Q. When P/O Sadowski first approached you that day, did he tell you that he was having difficulty breathing and was having chest pains and he wanted to go off sick?

A. No he told me he wanted to go to EAP, because he was stressed.

Q. Did he ever tell what the conversation was that he claimed he had overheard, and he had claimed you were part of?

A. No, he just said that he had overheard a conversation that he said I was supposed to have had and that someone had said something to the effect that he should be fired for lying at a PBI. He also said that he heard me laughing. I didn't know what he was talking about and I asked him to come in and sit down so I could discuss the matter with him, and find out what he was talking about.

Q. Did you order P/O Sadowski, not to leave without first speaking to you, telling him he would be carried AWOL if he left?

A. Not at this point. I did ask him to come into the office to find out what he was talking about. He never moved from the door way and I had to ask him repeatedly to come into he office. He kept insisting that I could not keep him from going to EAP, because he had already spoken to them.

I tried to reassure him that I was not denying him, but that I needed more information from him, and that was why I wanted him to come in and sit down. He then walked way and went through the Operations Room and into the locker room, without responding to me when I asked him to come into my office.

I followed him into the locker room and when I first came in I saw that he was in front of his locker which is across from the entrance to the locker room. I stopped and I was leaning against one of the lockers trying to talk to him.

Again he insisted that I could not deny him from going to EAP because he said he had already talked to them and they claimed I could not deny him. I asked him who he had spoken to at EAP, and he began to stammer, and he said that he had not actually spoken to them at EAP, but he had spoken to someone else who had told him that I could not deny him from going.

I asked why he had lied to me, he did not respond and started to walk towards me. I got the impression that he was either going to walk through me or past me at the doorway. I continued to ask him why he had lied to me. He stopped about a foot away from me maybe less, turned and then walked towards the other exit in the locker room without responding.

He then walked into the hallway, and was walking towards the rear exit of the building. I went outside the exit that I was standing by and told him to come back to my office. He ignored me and did not respond. I then told him that if he walked out of the building at that point he would be AWOL. I then repeated it so that it would be clear to him. He continued to ignore me and walked out of the building.

I then walked back into the Operations Room, I saw Lt. Haag in the Operations Room and asked him to come with me. Lt Haag followed me and we both went outside. When we got outside P/O Sadowski was walking away and he now had a phone to his ear. I called to him and asked him o come back. He looked in the direction of myself and Lt. Haag and began to walk back towards us.

He still had the phone to his ear and was not speaking for about a minute. Finally I asked him to hang up the phone if he was not talking to anybody. At that point he began to speak into the phone and tell whoever it was he was talking to that he was stressed because his Lt. Feinman and he named me specifically was denying him from going to EAP.

I asked him who he was speaking to, and he told me he was speaking to an officer from EAP. I asked him for the phone so I could speak to the officer, he began to walk away. He then responded that they were putting the Captain on the phone. I asked for the phone so I could speak tot eh Captain. He did not respond other than to begin pacing and rubbing his chest.

He then claimed that he was having chest pains. Lt. Haag asked him if he was OK and he told him that he thought he was having a heart attack. At that point Lt. Haag used his cell phone to call 911 and Rescue.

After Lt. Haag had spoken to the Fire Dispatchers he told P/O Sadowski that he ~~/~~sit down and remain calm, and he let him know that Fire Rescue was on the way. We waited until fireboard arrived and then a rescue squad and he was taken to Frankford Torresdale Hospital.


Q. Are you aware of any harassment directed at P/O Sadowski or his partner, P/O Campbell, after they gave statements to Capt. Kelly regarding the P/O Dial and Sgt. Russell investigation?

A. They came to me on a Saturday I don't recall the exact date, with a posted notes, that P/O Sadowski had left for P/O Campbell on his locker. The note as left for about a week on P/O Campbell's locker, and supposedly someone had written the word "Rat" on the posted note.

I asked P/O Campbell to hold on to it until Monday so that it could be dropped off at the Document Examination Unit, so that it could be checked for latent prints and handwriting analysis. I am the former Commanding Officer of the Crime Scene. Document Examination was under my command and I was aware that there would be no one on hand on the weekend to receive the document so I told him to hold onto it until Monday.

On Monday myself P/O Sadowski and P/O Campbell were scheduled for the range. I came in early to headquarters and prepared a memorandum concerning the posted sticker found on their locker to make arrangements for it to be sent to the Document Examination Unit.

P/O Campbell to my knowledge did not bring the note in on Monday and did not speak to the Captain that day. On Tuesday after roll call at 6 PM, P/O Campbell asked me if I knew where the Captain was. I responded that I did not know. Sgt. Russell, P/O Campbell , and P/O Sadowski approached me while I was in my office and they stated that P/O Campbell and P/o Sadowski were going to go to Internal Affairs because nothing was being done with the note.

I informed them that they were wrong and I showed them the memo that I had prepared on my own time to ensure that the note was sent to the Document Exam unit. At that point I was unaware that he had spoken to the Captain earlier in the day. During the conversation with P/O Campbell he explained that he had spoken to the Captain earlier in the day and he was supposed to drop the note off to the Captain.

He and P/O Sadowski left to go to Internal Affairs, and I called the Captain on his cell phone to find out what was going on with the note since P/O Campbell had spoken to him. During that conversation with the captain I had learned that Campbell had come into the unit earlier in the day but had not brought the note into the Captain. My understanding is that the note was subsequently examined by the Document Unit, but I don't know what the outcome of that investigation was.

The officers dropped the note off to the Captain, after my phone call to the Captain he told me to have the officers contact him by phone. I learned that they dropped the note off and gave it to the Captain that night.

Q. Did you block the doorway to the locker room at NSF headquarters in an attempt to stop P/O Sadowski from leaving the building, and did you have any physical contact whatsoever with him?

A. I did not block the doorway of the locker room I was standing at the doorway leaning against the locker when P/O Sadowski suddenly walked towards me. He stopped short of me, and we never had any physical contact with him. I was shocked to later hear that he had claimed I had assaulted him.

Q. Did you follow P/O Sadowski into the locker room and insist that he tell you whom he was speaking with on his cell phone?

A. He was not on his cell phone until he was outside the building. I followed him into the locker room, to find out what was going on. He approached me and told me he wanted to go to EAP, telling me that he had spoken to someone from EAP, but he refused to come in and provide additional information. He refused a direct order from me to remain in the building. I also informed him that if he left without first speaking to me he would be carried AWOL. I made it clear to P/O Sadowski that I was not refusing him to go to EAP, but that I needed additional information, I was concerned about how he was going to get to EAP, and I wanted to assess his state of mind if he was going to leave on his own, and whether he needed someone to take him there. He would not come in and speak to me, and refused my order for him to remain in the building.

Q. Is there anything you would like to add to this interview?

A. Just in and around the time that P/O Sadowski claims that he overheard me speaking with the other officers I was in a conversation with P/O Gormely inside my office. When he came to the doorway of my office and began to tell me about the conversation he claimed I was in, I had no idea of what he was speaking about.

STATEMENT CONCLUDED:

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF ( 6 ) PAGES AND IT IS TRUE AND ACCURATE.

SIGNATURE: _____

DATE: _5-21-07_   TIME: _3:20 pm_

WITNESSES: _____



# Philadelphia Police Department
## Narcotics Division
5301 Tacony St.
F.A. Bldg. #110
Philadelphia PA 19137
215-685-1134
FAX 215-685-1131

# Fax

| | | | |
|---|---|---|---|
| **To:** Capt. Trusk IAD | | **From:** Inspector Aaron Horne | |
| **Fax:** 5-5055 | | **Date:** 3/2/07 | |
| **Phone:** | | **Pages:** 2 + cover | |
| **Re:** | | | |

•**Comments**

## CONFIDENTIAL AND PRIVILEGED

The information contained in this facsimile transmission is attorney privileged, confidential and intended for the use of the individual named above. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or unauthorized use of this communication is strictly prohibited. If you received this facsimile in error, please notify the sender at the above listed phone number.

**MEMORANDUM**

POLICE
CITY OF PHILADELPHIA

DATE: 2/23/07

*Memo given to C/O by Pro Campbell on 5-1-07 at 12:00pm*

TO  : Commanding Officer, Narcotics Strike Force

FROM  : P/O Keith Sadowski #3937, Narcotics Strike Force 2-D Platoon

SUBJECT : **ON DUTY INJURY OCCURRENCE**

1. On Thursday February 22, 2007 I was working the 8X4 pm tour of duty. At roll call I was directed by Lt. Feinman #110 that I was going to be assigned to Headquarters to complete 75-49's. At approximately 9:30 am I was inside of the Operations Room doing my paperwork on the computer I observed Lt. Feinman, Lt. Smith, Cpl. Nowakowski, and P/O Cuddahy inside of the Corporals' office adjacent to the Operations Room. I heard Lt. Smith state "A year later they have an interview?" "Remember rule 1.11 and 1.12 when they testify they should be dismissed immediately." Lt. Smith also stated "The silent majority is going to win this one. I wonder what they are getting." All of them were laughing periodically at different times during the conversation. When I heard this I immediately started to sweat, shake and I could not catch my breath; my heart was pounding in my chest. I got up and made a phone call. I didn't know what was happening to me. I went into Lt. Feinman's office and told him that I heard the conversation and heard him laughing. He responded by saying with a smirk on his face. "Ok you heard me laughing" I told him that it was not right that I am being harassed at work for telling the truth and I needed to go to EAP because I was sick and stressed and that I could not take it anymore and that I was told he cannot deny me. He told me I was not going to EAP and he asked me who I was talking to on the phone. I told him how sick I felt and that I needed to talk to someone. Lt. Feinman started to get upset and he stated that I was going to talk to him about the situation and that was it. I could not talk to him because he was a part of the problem. I started to get dizzy and I had to get away from him. When I turned around to open the door, Lt. Feinman told me that if I walked out of his office he was going to carry me AWOL. I left because my prior symptoms were worsening. I gathered my belongings from the Operations Room and went to my locker. Lt. Feinman followed me and started talking to me with a spiteful tone. He stated to me several times "You are going to tell me who you were talking to on the phone and you're not going anywhere." I kept telling Lt. Feinman that I needed to talk to someone at EAP and he continually stated that it would be him. I closed my locker and started to walk to the exit Lt. Feinman would not let me past him by walking backwards towards the door. He blocked the door with his legs spread apart and his arms stretched out. I said "Excuse me," He stated "You are not going anywhere, and I want to know who you were on the phone with?" I put my right foot forward to go around him and he blocked the door way with his left hip. I attempted to get past him on the other side and he thrust his chest forward and upward and hit me in my chest with his. I stumbled backward and then regained my footage. At that point I felt confined. I remembered that there was another doorway near the men's bathroom and I hurried to it. Lt. Feinman yelled "If you walk away from me I am carrying you AWOL and if you leave this building I am going to carry you AWOL." I walked briskly through the rear of the building towards the exit to go outside to get air because it was hard for me breathe. I was making a phone call as I exited the building.

*#00- 02 1027*

*LT Scott*

## ON DUTY INJURY OCCURRENCE CONTINUED...

2. While on the phone in the rear parking lot Lt. Haag and Lt. Feinman came running out of the building yelling at me to get off of the phone and asked me who was I on the phone with. I was asked by the EAP representative who was on the phone with me to tell him who was yelling at me and telling me to hang up the phone. I gave him that information while he was telling me that if I was denied by my Lieutenant to come to EAP that his Commanding officer stated that I could utilize sick time. I started to cry and I told Lt. Haag "It is not right how I am being harassed after my interview, I did not lie, I didn't do anything wrong. Lt. Haag put his hands up and stated I don't know what you are talking about; he then looked at Lt. Feinman. Lt. Feinman stared at me and smirked. My symptoms were worsening and I started to rub my chest. I told Lt. Haag that I thought that I was having a heart attack. He used his cell phone to call for medical assistance. When the Medic arrived, my condition was assessed and it was severe. I had to be transported to Frankford-Torresdale Emergency Room to receive treatment.

3. While receiving treatment Sgt. Vann came to hospital and my brother asked her to leave because I getting upset. No one else came to hospital to check on my condition or to give me a medical referral. Police Radio was contacted to check if the injury was reported. The injury was not reported until 2.26 pm to Police Radio and I was transported to the hospital at approximately 10:30 am.

4. This retaliation against me is unfair and I should not be harassed, confined, or assaulted at work.

Keith Sadowski *3937
Keith Sadowski
Police Officer                          3937
2-D Platoon

March 2, 2007
Captain James Kelly
Narcotics Strike Force

Dear Captain Kelly:
On March 01, 2007, I submitted a memorandum to your office in reference to an on duty
incident. This memorandum was submitted to your office in error. The attached
memorandum is correct and I sincerely apologize for any inconvenience this may have
caused.

Respectfully Yours,

Keith Sadowski

*hand delivered
to C/O NSF
By Sadowski's
Brother on
3-9-07 AT
10:5 AM
CAPT #15*

## MEMORANDUM

TO        : Commanding Officer, Narcotics Strike Force

FROM      : P/O Keith Sadowski #3937, Narctics Strike Force 2-D Platoon

SUBJECT : <u>ON DUTY INJURY OCCURRENCE</u>

1. On Thursday February 22, 2007 I was working the 8X4 pm tour of duty. At roll call I was directed by Sgt. Vann #8522 that I was going to be assigned to Headquarters to complete 75-49's. At approximately 9:30 am I was inside of the Operations Room doing my paperwork on the computer I observed Lt. Feinman, Lt. Smith, Cpl. Nowakowski, and P/O Cuddahy inside of the Corporals' office adjacent to the Operations Room. I heard Lt. Smith state "A year later they have an interview?" "Remember rule 1.11 and 1.12 when they testify they should be dismissed immediately." Lt. Smith also stated "The silent majority is going to win this one. I wonder what they are getting." All of them were laughing periodically at different times during the conversation. When I heard this I immediately started to sweat, shake and I could not catch my breath; my heart was pounding in my chest. I got up and made a phone call. I didn't know what was happening to me. I went into Lt. Feinman's office and told him that I heard the conversation and heard him laughing. He responded by saying with a smirk on his face. "Ok you heard me laughing" I told him that it was not right that I am being harassed at work for telling the truth and I needed to go to EAP because I was sick and stressed and that I could not take it anymore and that I was told he cannot deny me. He told me I was not going to EAP and he asked me who I was talking to on the phone. I told him how sick I felt and that I needed to talk to someone. Lt. Feinman started to get upset and he stated that I was going to talk to him about the situation and that was it. I could not talk to him because he was a part of the problem, I started to get dizzy and I had to get away from him. When I turned around to open the door; Lt. Feinman told me that if I walked out of his office he was going to carry me AWOL. I left because my prior symptoms were worsening. I gathered my belongings from the Operations Room and went to my locker. Lt. Feinman followed me and started talking to me with a spiteful tone. He stated to me several times" You are going to tell me who you were talking to on the phone and you're not going anywhere." I kept telling Lt. Feinman that I needed to talk to someone at EAP and he continually stated that it would be him. I closed my locker and started to walk to the exit Lt. Feinman would not let me past him by walking backwards towards the door. He blocked the door with his legs spread apart and his arms stretched out. I said "Excuse me." He stated "You are not going anywhere, and I want to know who you were on the phone with?? I put my right foot forward to go around him and he blocked the door way with his left hip. I attempted to get past him on the other side and he thrust his chest forward and upward and hit me in my chest with his. I stumbled backward and then regained my footage. At that point I felt confined. I remembered that there was another doorway near the men's bathroom and I hurried to it. Lt. Feinman yelled "If you walk away from me I am carrying you AWOL and if you leave this building I am going to carry you AWOL." I walked briskly through the rear of the building towards the exit to go outside to get air because it was hard for me breathe. I was making a phone call as I exited the building.

## ON DUTY INJURY OCCURRENCE CONTINUED...

2. While on the phone in the rear parking lot Lt. Haag and Lt. Feinman came running out of the building yelling at me to get off of the phone and asked me who was I on the phone with. I was asked by the EAP representative who was on the phone with me to tell him who was yelling at me and telling me to hang up the phone. I gave him that information while he was telling me that if I was denied by my Lieutenant to come to EAP that his Commanding officer stated that I could utilize sick time. I started to cry and I told Lt. Haag "It is not right how I am being harassed after my interview, I did not lie, I didn't do anything wrong. Lt. Haag put his hands up and stated I don't know what you are talking about; he then looked at Lt. Feinman. Lt. Feinman stared at me and smirked. My symptoms were worsening and I started to rub my chest. I told Lt. Haag that I thought that I was having a heart attack. He used his cell phone to call for medical assistance. When the Medic arrived, my condition was assessed and it was severe. I had to be transported to Frankford-Torresdale Emergency Room to receive treatment.

3. While receiving treatment Sgt. Vann came to hospital and my brother asked her to leave because I getting upset. No one else came to hospital to check on my condition or to give me a medical referral. Police Radio was contacted to check if the injury was reported. The injury was not reported until 2:26 pm to Police Radio and I was transported to the hospital at approximately 10:30 am.

4. This retaliation against me is unfair and I should not be harassed, confined, or assaulted at work.

*P/O Keith Sadowski* #3937

Keith Sadowski
Police Officer           3937
2-D Platoon

D200

## *MEMORANDUM*

TO     : Chief Inspector, Internal Affairs Bureau

FROM   : Chief Inspector, Narcotics Bureau

SUBJECT : REQUEST FOR AN INTERNAL AFFAIRS INVESTIGATION

1. On Monday, February 26, 2007, Captain Daniel Castro, contacted my office regarding a telephone conversation with Police Officer Keith Sadowski #3937. Captain Castro informed me that Police Officer Sadowski alleges that he was physically struck by Lieutenant Jack Feinman #110, both of whom are assigned to the Narcotics Strike Force.

2. As a result of this conversation with Captain Castro, I instructed him to prepare a memorandum outlining the particular exchange that took place between him and Officer Sadowski.

3. Moreover, I am forwarding to your office a copy of an e-mail I received on this date from Captain Castro. I am respectfully requesting an Internal Affairs investigation into the allegations of physical contact.

WILLIAM C. BLACKBURN
Chief Inspector
Narcotics Bureau

WCB/lt
Attachment (1)

Police
CO_Forensic_Sci nce/Police/
Phila
L
.02/27/2007 03:19 PM

To   Police Ci_Narc_Bureau/Police/Phila@Phila

cc

bcc

Subject  P/O Sadowski

Chief

Per our discussion, at about 3 PM on Monday, Feb. 27, 2007 I returned a phone call from P/O Keith
Sadowski #3937, PR#230729 assigned to the Narcotics Strike Force under your command. P/O Sadowski
worked under my command while assigned to the 39th District from 1999 to 2000; my relationship with
P/O Sadowski is professional and he sought my advice on the following:

P/O Sadowski informed me that he was rushed to the hospital from Narcotic Headquarters by fire rescue
last week. He indicated while on his cell phone and in the men's locker room he had a heart attack due to
a physical altercation he had with his superior, Lt. Jack Feinman #110,     PR# 195049. Specifically P/O
Sadowski stated Lt. Feinman struck him in the chest with his chest causing him to lose his breath.
Allegedly Lt. Feinman blocked the exit to the locker room and insisted P/O Sadowski tell him whom he
was speaking with on the telephone. According to P/O Sadowski this set of events was precipitated by an
earlier discussion he overheard in which NSF supervisors, including Lt. Feinman, described him as a "rat".
He stated he is the subject of a chronic hostile work environment for his cooperation in an ongoing IAD
investigation. I informed him of the following:

- seek the necessary medical attention and follow the appropriate notification procedures as required
  by the department
  notify his immediate supervisor of the incident
- document the incident and forward it through the chain of command
  request to meet with the CO NSF
- contact the assigned IAD investigator and inform the investigator of the circumstances
  his option to file a complaint with EEO within the department, state, or federal authority

Should you need further assistance please contact me.

Captain Daniel Castro

Commanding Officer

Forensic Science

Philadelphia Police Department

215-685-3120 Office

215-685-3116 Private line

215-906-0089 Cell

D202

**Frankf rd Hospitals Emergency Departm nt**
**Jeff rson H alth System Torresdale Campus**
Knights & Red Lion Roads, Philadelphia, PA 19114
Emergency Room Phone 215-612-4055

**Work/School Excuse**

Patient: Sadowski, Keith                                      2/22/2007 1403

May return to work/school: 5 Days

Restrictions: Diagnosis: Anxiety induced Hypertension, chest tightness. May resume regular activity when the
treatment is complete and the symptoms have resolved

Follow-up 1: Private Medical Doctor                          F/U MD Ph: _____
                                                            F/U MD Fax: _____

Follow-up 1 Date: Call for appointment

*Note to Employer / School Official:*

The patient named above was seen in our Emergency Department today. Recommended restrictions on activity and recommended
follow-up are listed above. At the time of the follow-up visit, the physician may decide that further restrictions are necessary

Signature: _____

D203



PHILADELPHIA POLICE DEPARTMENT
PAYROLL: 230729                    D.A.R.                NAME: SADOWSKI KEITH

```
                      |A |    |A |    |A |    |A|          |C|
                      |B |    |B |    |B |    |S|TIME|TIME|/|TOTL|M|DET |UNIT
DATE/DISTUNIT/PLATOON |S |HRS|S |HRS|S |HRS|N| ON |OFF |O| HRS|L|UNIT| ID
-----------------------------------------------------------------------------
02/22/07 7402 2D       S  4.0                 N 0800 1615
02/23/07 7402 2D       S  8.0
02/24/07 7402 2D       S  8.0
02/25/07 7402 2D       S  8.0
02/26/07 7402 2D       X
02/27/07 7402 2D       X
02/28/07 7402 2D       S  8.0
03/01/07 7402 2D       S  8.0
03/02/07 7402 2D       S  8.0
03/03/07 7402 2D       S  8.0
03/04/07 7402 2D       S  8.0
03/05/07 7402 2D       X
03/06/07 7402 2D       X
03/07/07 7402 2D       S  8.0
03/08/07 7402 2D       S  8.0
MORE PAGES
PF              5=FULL-SCRN    7=BWD 8=FWD    10=PREV 11=MENU 12=EXIT
```

D204

PHILADELPHIA POLICE DEPARTMENT
D.A.R.                        NAME: SADOWSKI KEITH

| DATE/DISTUNIT/PLATOON | A B S | HRS | A B S | HRS | A B S | HRS | A S N | TIME ON | TIME OFF | C / O | TOTL HRS | M L | DET UNIT | UNIT ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/09/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/10/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/11/07 7402 2D | X | | | | | | | | | | | | | |
| 03/12/07 7402 2D | X | | | | | | | | | | | | | |
| 03/13/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/14/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/15/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/16/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/17/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/18/07 7402 2D | X | | | | | | | | | | | | | |
| 03/19/07 7402 2D | X | | | | | | | | | O | 04.0 | | | |
| 03/20/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/21/07 7402 2D | S | 8.0 | | | | | | | | | O | 02.0 | | | |
| 03/22/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/23/07 7402 2D | S | 8.0 | | | | | | | | | | | | |

MORE PAGES
PF                        5=FULL-SCRN    7=BWD 8=FWD    10=PREV 11=MENU 12=EXIT

D205

| DATE/DIST | UNIT/PLATOON | A B S | HRS | A B S | HRS | A B S | HRS | A S N | TIME ON | TIME OFF | C / O | TOTL HRS | M L | DET UNIT | UNIT ID |
|-----------|--------------|-------|-----|-------|-----|-------|-----|-------|---------|----------|-------|----------|-----|----------|---------|
| 03/24/07 | 7402 2D | X | | | | | | | | | | | | | |
| 03/25/07 | 7402 2D | X | | | | | | | | | | | | | |
| 03/26/07 | 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/27/07 | 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/28/07 | 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/29/07 | 7402 2D | S | 8.0 | | | | | | | | | O | 02.0 | | | |
| 03/30/07 | 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 03/31/07 | 7402 2D | X | | | | | | | | | | | | | |
| 04/01/07 | 7402 2D | X | | | | | | | | | | | | | |
| 04/02/07 | 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 04/03/07 | 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 04/04/07 | 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 04/05/07 | 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 04/06/07 | 7402 2D | X | | | | | | | | | | | | | |
| 04/07/07 | 7402 2D | X | | | | | | | | | | | | | |

MORE PAGES

D206

PAYROLL: 230729                    D.A.R.                    NAME: SADOWSKI KEITH

| DATE/DISTUNIT/PLATOON | A B S | A HRS | A B S | A HRS | A B S | A S N | TIME ON | TIME OFF | C / O | TOTL HRS | M L | DET UNIT | UNIT ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/08/07 7402 2D | S | 8.0 | | | | | | | | | | | |
| 04/09/07 7402 2D | S | 8.0 | | | | | | | | | | | |
| 04/10/07 7402 2D | S | 8.0 | | | | | | | | | | | |
| 04/11/07 7402 2D | S | 8.0 | | | | | | | | | | | |
| 04/12/07 7402 2D | S | 8.0 | | | | | | | | | | | |
| 04/13/07 7402 2D | X | | | | | | | | O | 04.0 | | | |
| 04/14/07 7402 2D | X | | | | | | | | | | | | |
| 04/15/07 7402 2D | S | 8.0 | | | | | | | | | | | |
| 04/16/07 7402 2D | S | 8.0 | | | | | | | | | | | |
| 04/17/07 7402 2D | S | 8.0 | | | | | | | | O | 02.0 | | | |
| 04/18/07 7402 2D | S | 8.0 | | | | | | | | O | 02.0 | | | |
| 04/19/07 7402 2D | X | | | | | | | | | | | | |
| 04/20/07 7402 2D | X | | | | | | | | | | | | |
| 04/21/07 7402 2D | S | 8.0 | | | | | | | | | | | |
| 04/22/07 7402 2D | S | 8.0 | | | | | | | | | | | |

MORE PAGES
PF                    5=FULL-SCRN    7=BWD 8=FWD    10=PREV 11=MENU 12=EXIT

D207

PHILADELPHIA POLICE DEPARTMENT
D.A.R.

NAME: SADOWSKI KEITH

| DATE/DISTUNIT/PLATOON | A B S | HRS | A B S | HRS | A B S | HRS | A S N | TIME ON | TIME OFF | C / O | TOTL HRS | M L | DET UNIT | UNIT ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/23/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 04/24/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 04/25/07 7402 2D | S | 8.0 | | | | | | | | O | 02.5 | | | |
| 04/26/07 7402 2D | X | | | | | | | | | O | 04.0 | | | |
| 04/27/07 7402 2D | X | | | | | | | | | | | | | |
| 04/28/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 04/29/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 04/30/07 7402 2D | S | 8.0 | | | | | | | | O | 04.0 | | | |
| 05/01/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/02/07 7402 2D | X | | | | | | | | | O | 04.0 | | | |
| 05/03/07 7402 2D | X | | | | | | | | | | | | | |
| 05/04/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/05/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/06/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/07/07 7402 2D | S | 8.0 | | | | | | | | | | | | |

MORE PAGES
PF                    5=FULL-SCRN    7=BWD 8=FWD    10=PREV 11=MENU 12=EXIT

D208

PAYROLL: 230729                    D.A.R.                    NAME: SADOWSKI KEITH

| DATE/DISTUNIT/PLATOON | A B S | A HRS | A B S | A HRS | A B S | A HRS | A S N | TIME ON | TIME OFF | C / O | TOTL HRS | M L | DET UNIT | UNIT ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/08/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/09/07 7402 2D | X | | | | | | | | | O | 05.5 | | | |
| 05/10/07 7402 2D | X | | | | | | | | | | | | | |
| 05/11/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/12/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/13/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/14/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/15/07 7402 2D | X | | | | | | | | | | | | | |
| 05/16/07 7402 2D | X | | | | | | | | | O | 04.0 | | | |
| 05/17/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/18/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/19/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/20/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/21/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 05/22/07 7402 2D | X | | | | | | | | | | | | | |

MORE PAGES

D209

PAYROLL: 230729                      D.A.R.                   NAME: SADOWSKI KEITH

```
                      |A |   |A |   |A |   |A|       |C|
                      |B |   |B |   |B |   |S|TIME|TIME|/|TOTL|M|DET |UNIT
DATE/DISTUNIT/PLATOON |S |HRS|S |HRS|S |HRS|N| ON |OFF |O| HRS|L|UNIT| ID
-----------------------------------------------------------------------
05/23/07 7402 2D       X
05/24/07 7402 2D       S  8.0
05/25/07 7402 2D       S  8.0
05/26/07 7402 2D       S  8.0
05/27/07 7402 2D       S  8.0
05/28/07 7402 2D       X
05/29/07 7402 2D       X
05/30/07 7402 2D       S  8.0
05/31/07 7402 2D       S  8.0
06/01/07 7402 2D       S  8.0
06/02/07 7402 2D       S  8.0
06/03/07 7402 2D       S  8.0
06/04/07 7402 2D       X
06/05/07 7402 2D       X
06/06/07 7402 2D       S  8.0
MORE PAGES
PF                  5=FULL-SCRN    7=BWD 8=FWD    10=PREV 11=MENU 12=EXIT
```

D210

PAYROLL: 230729                    D.A.R.                    NAME: SADOWSKI KEITH

| DATE/DISTUNIT/PLATOON | A B S | A HRS | A B S | A HRS | A B S | A HRS | A S N | TIME ON | TIME OFF | C / O | TOTL HRS | M L | DET UNIT | UNIT ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/07/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 06/08/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 06/09/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 06/10/07 7402 2D | X | | | | | | | | | | | | | |
| 06/11/07 7402 2D | X | | | | | | | | | | | | | |
| 06/12/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 06/13/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 06/14/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 06/15/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 06/16/07 7402 2D | S | 8.0 | | | | | | | | | | | | |
| 06/17/07 7402 2D | X | | | | | | | | | | | | | |
| 06/18/07 7402 2D | X | | | | | | | | | | | | | |
| 06/19/07 7402 44 | S | 8.0 | | | | | | | | | | | | |
| 06/20/07 7402 44 | S | 8.0 | | | | | | | | | | | | |
| 06/21/07 7402 44 | S | 8.0 | | | | | | | | | | | | |

MORE PAGES

D211

PAYROLL: 230729                                NAME: SADOWSKI KEITH

| DATE/DIST | UNIT | PLATOON | A B S | HRS | A B S | HRS | A B S | HRS | A S N | TIME ON | TIME OFF | C / O | TOTL HRS | M L | DET UNIT | UNIT ID |
|-----------|------|---------|-------|-----|-------|-----|-------|-----|-------|---------|----------|-------|----------|-----|----------|---------|
| 06/22/07 | 7402 | 44 | S | 8.0 | | | | | | | | | | | | |
| 06/23/07 | 7402 | 44 | X | | | | | | | | | | | | | |
| 06/24/07 | 7402 | 44 | X | | | | | | | | | | | | | |
| 06/25/07 | 7402 | 44 | S | 8.0 | | | | | | | | | | | | |
| 06/26/07 | 7402 | 44 | S | 8.0 | | | | | | | | | | | | |
| 06/27/07 | 7402 | 44 | S | 8.0 | | | | | | | | | | | | |
| 06/28/07 | 7402 | 44 | S | 8.0 | | | | | | | | | | | | |
| 06/29/07 | 7402 | 44 | S | 8.0 | | | | | | | | | | | | |
| 06/30/07 | 7402 | 44 | X | | | | | | | | | | | | | |
| 07/01/07 | 7402 | 44 | X | | | | | | | | | | | | | |
| 07/02/07 | 7402 | 44 | S | 8.0 | | | | | | | | | | | | |
| 07/03/07 | 7402 | 44 | S | 8.0 | | | | | | | | | | | | |
| 07/04/07 | 7402 | 44 | S | 8.0 | | | | | | | | | | | | |
| 07/05/07 | 7402 | 44 | S | 8.0 | | | | | | | | | | | | |
| 07/06/07 | 7402 | 44 | X | | | | | | | | | | | | | |

MORE PAGES
PF                    5=FULL-SCRN    7=BWD 8=FWD    10=PREV 11=MENU 12=EXIT

D212

PAYROLL: 230729                                         NAME: SADOWSKI KEITH

| DATE/DISTUNIT/PLATOON | A B S | A HRS | A B S | A HRS | A B S | A HRS | A S N | TIME ON | TIME OFF | C / O | TOTL HRS | M L | DET UNIT | UNIT ID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/07/07 7402 44 | X | | | | | | | | | | | | | |
| 07/08/07 7402 44 | S | 8.0 | | | | | | | | | | | | |
| 07/09/07 7402 44 | V | 8.0 | | | | | | | | | | | | |
| 07/10/07 7402 44 | S | 8.0 | | | | | | | | | | | | |
| 07/11/07 7402 44 | V | 8.0 | | | | | | | | | | | | |
| 07/12/07 7402 44 | S | 8.0 | | | | | | | | | | | | |
| 07/13/07 7402 44 | X | | | | | | | | | | | | | |

LAST PAGE
PF                    5=FULL-SCRN    7=BWD 8=FWD    10=PREV 11=MENU 12=EXIT

D213

ATTENTION:  INJURIES ON-DUTY:
----------------------------

IN COMPLIANCE WITH DIRECTIVE #67, IT IS ESSENTIAL FOR APPROPRIATE AND TIMELY
MEDICAL TREATMENT.  SUPERVISORS AND EMPLOYEES ARE TO DIRECT ALL QUESTIONS
RELATIVE TO INJURIES ON DUTY TO THE SAFETY OFFICE AT 215-686-3289.  MONDAY THRU
FRIDAY FROM 8AM TO 5PM.

MEDICAL DISPENSARY RETURNS TO ACTIVE DUTY:
------------------------------------------
P/O KEITH SADOWSKI  #3937          N.S.F.        RETURNS      07-13-07
P/O STAN SHEPPARD   #1480          C.D.D.        RETURNS      07-12-07

COMPENSATION CLINIC RETURNS TO ACTIVE DUTY:
-------------------------------------------
P/O KEVIN CUDDAHY #2369            N.S.F.        RETURNS      07 11-07

| RANK/NAME/NO. | FROM | EFFECTIVE DATE | REASON | PR# |
| --- | --- | --- | --- | --- |
| P/O LATOYA CASEY #1382 | 19TH DIST. | 06-20-07 11:59PM (APPT 3-1-04) | PERSONAL L.O.A. (6-21-07 TO 9-20-07) | 250940 |

EMPLOYEE ASSISTANCE PROGRAM:
---------------------------

COPS HELPING COPS IS WHAT THE EMPLOYEE ASSISTANCE PROGRAM IS ALL ABOUT.  ALL
CALLS CONFIDENTIAL.  TO SCHEDULE AN APPOINTMENT OR FOR MORE INFORMATION CALL:

        215-685-9940      OR       215-685-9941

THE HOURS ARE 8AM-5PM, MONDAY-FRIDAY.  AFTER BUSINESS HOURS, LEAVE A MESSAGE ON
THE EAP TAPE LINE.  IN THE CASE OF AN EMERGENCY, TRANSPORT INDIVIDUAL TO
APPROPRIATE TREATMENT FACILITY, CALL POLICE RADIO AT 215-686-3128 AND ASK
POLICE RADIO TO PAGE THE COMMANDING OFFICER, E.A.P.


NOLTE #181974                        SYLVESTER M. JOHNSON
                                     POLICE COMMISSIONER


D214

ATTENTION:  INJURIES ON-DUTY:
-----------------------------
IN COMPLIANCE WITH DIRECTIVE #67, IT IS ESSENTIAL FOR APPROPRIATE AND TIMELY
MEDICAL TREATMENT.  SUPERVISORS AND EMPLOYEES ARE TO DIRECT ALL QUESTIONS
RELATIVE TO INJURIES ON DUTY TO THE SAFETY OFFICE AT 215-686-3289.  MONDAY
THRU FRIDAY FROM 8AM TO 5PM.

CORRECTION TO COMMISSIONER'S MESSAGE DATED 7-12-07, GENERAL #9208:  SEPARATION
OF P/O LATOYA CASEY PAYROLL NUMBER SHOULD READ 250941.

APPOINTMENTS:
-------------
SANDRA MELLON IS REINSTATED FROM FAMILY MEDICAL LEAVE OF ABSENCE TO POLICE
COMMUNICATIONS DISPATCHER EFFECTIVE 12:01AM 7-10-07 AND ASSIGNED TO POLICE
RADIO.   PAYROLL #230135.  SALARY: $38,211.  (FORMERLY:  POLICE COMMUNICATIONS
DISPATCHER/RADIO).

APPOINTMENTS:   (CONTINUED)
------------
ROBERT JACKSON IS RESTORED TO SCHOOL CROSSING GUARD FOLLOWING REJECTION DURING
PROBATION, EFFECTIVE 12:01AM 7-9-07 AND ASSIGNED TO THE 18TH DIST.  PR#171616.
SALARY:  $55.2753/DAILY.  (FORMERLY:  LABORER/WATER DEPARTMENT).

TRANSFERS:
----------
COMMANDING OFFICER IS TO PERSONALLY NOTIFY THE FOLLOWING EMPLOYEE THAT HE IS
TRANSFERRED EFFECTVIE 12:01AM 7-17-07:

| PR# | RANK/NAME/NO. | FROM: | TO: |
| ------ | ------------------------------ | --------------- | ------------------ |
| 230729 | P/O KEITH SADOWSKI #3937 | N.S.F. | FORENSICS SECURITY |

EMPLOYEE ASSISTANCE PROGRAM:
---------------------------
COPS HELPING COPS IS WHAT THE EMPLOYEE ASSISTANCE PROGRAM IS ALL ABOUT.  ALL
CALLS CONFIDENTIAL.  TO SCHEDULE AN APPOINTMENT OR FOR MORE INFORMATION CALL:

               215-685-9940        OR        215-685-9941

D215



Police
CO_Narc_Strike_Force/Polic
e/Phila

03/12/2007 03:33 PM

To  Police CO_10TEAM_IAD/Phila@Phila

cc

bcc

Subject  Re: Captain Kelly  IAD 07-1027

Captain Trush,

I also faxed the same memos that I sent to you earlier this aftrernoon to Lt. Neiley at EEO.  Additionally I spoke with Lt. Neiley by phone in reference to the allegations by P/O Sadowski and P/O Campbell.

Thank you for the update on P/O Sadowski's interview.

Captain Kelly
Pager #(215)  916-1998
Police CO_10TEAM_IAD/Phila

Police
CO_10TEAM_IAD/Phila
Sent by: Police
CO_10TEAM_IAD

03/12/2007 03:23 PM

To  Police CO_Narc_Strike_Force/Police/Phila@Phila

cc

Subject  Captain Kelly  IAD 07-1027

Captain Kelly,

Pursuant to our phone conversations the following actions have been taken:

Lt. Don Scott was assigned to investigate the Sadowski insubordination, and physical abuse allegations. IAD # 07-1027.

Lt. Nealy at EEO was contacted regarding the allegations of harassment by Officers Sadowski and Campbell.

Officer Sadowski is scheduled for a formal interview on 3-20-07.

I would recommend that Officers Sadowski and Campbell be provided with a copy of Directive 97, and instructed on the process for filing a complaint.

Thank you for your continued cooperation.

Captain Shawn Trush      Pager  916-2113

*Lt Scott*
*Keep this in the*
*Sodowski File*
*Thnks*

D216

Police
CO_10TEAM_IAD/Phila
Sent by: Police
CO_10TEAM_IAD

03/12/2007 02:23 PM

To   Police CO_Narc_Strike_Force/Police/Phila@Phila

cc

bcc

Subject   Captain Kelly   IAD 07-1027

Captain Kelly,

Pursuant to our phone conversations the following actions have been taken:

Lt. Don Scott was assigned to investigate the Sadowski insubordination, and physical abuse allegations. IAD # 07-1027.

Lt. Nealy at EEO was contacted regarding the allegations of harassment by Officers Sadowski and Campbell.

Officer Sadowski is scheduled for a formal interview on 3-20-07.

I would recommend that Officers Sadowski and Campbell be provided with a copy of Directive 97, and instructed on the process for filing a complaint.

Thank you for your continued cooperation.

Captain Shawn Trush          Pager   916-2113

Narcotics Strike Force
Philadelphia Police Department
5301 Tacony Street
Arsenal Business Center – Building #202
Philadelphia, PA 19137
Phone: (215) 685-1107
FAX: (215) 685-1140



**NARCOTICS STRIKE FORCE**

# Fax

| To: | *Capt Trush* | From: | C/o NSF |
|---|---|---|---|
| Fax: | | Pages: | 2 + cover |
| Phone: | 5-5055 | Date: | 9-7-07 |
| Re: | | CC: | |

● **Comments:**

# MEMORANDUM

TO : Commanding Officer, Narcotics Strike Force

FROM : Lt. Jack Feinman #110, Payroll #195049, Narcotics Strike Force

SUBJECT : <u>REQUEST FOR FORMAL DISCIPLINARY ACTION</u>

1. I respectfully request that formal disciplinary action be taken against Police Officer Keith Sadowski #3937, payroll #230729, for his actions on Thursday 2-22-07.

2. Following is a brief summary of the events that took place leading to this request: On Thursday 2-22-07 at approximately 10:00 a.m., P/O Sadowski came to my office doorway and informed me that he was going to E.A.P. I asked him to come into my office and sit down so that I could discuss this with him. He refused to enter my office and told me that he already spoke to E.A.P. and that he was going now. I told him to come into my office because I would need to contact E.A.P. and that I would need additional information before he would be able to go. He told me that "they" told him I couldn't refuse him and he walked away from me ignoring my order again for him to come into the office. Instead, he walked through the operation's room to the locker room. I followed him to the locker room and again asked him to come back to my office so that I could get additional information. He repeated that I could not refuse him from going because he spoke to E.A.P. and they said I could not. I asked him for the name of the person that he spoke to at E.A.P. and he admitted that he had not spoken to anyone at E.A.P., but that he spoke to "someone" who told him that I couldn't refuse him. I asked why he lied to me (in my office and again in the locker room) about speaking to E.A.P. and instead of answering he walked toward where I was standing in the entranceway as if to leave. I told him he wasn't leaving until I had his answer, at which point he stopped walking toward me, turned and walked toward the other exit from the locker room and into the hallway. He then walked toward the rear exit of the building. I went into the hallway and informed him that if he continued to walk away and if he didn't immediately come back he would be A.W.O.L. I said this to him twice as he walked away. While walking back to my office I observed Lt. Joseph Haag in the operation's room. I asked Lt. Haag to follow me and I went to the rear lot of NSF Headquarters to again try to speak to Officer Sadowski. When I went outside, he was walking away and had a cell phone to his ear. I called to him and asked him to come back. He then walked back toward me and kept the phone to his ear. After about a minute with the phone to his ear, he hadn't spoken and I wasn't sure if he was talking to anyone. I asked him to hang up the phone if he wasn't talking to anyone, but instead he began to pace and started talking. When I asked whom he was talking too, he said "Officer Brooks at E.A.P." I asked him to hand me the phone so that I could talk to Officer Brooks. He instead began to walk further away from me and stated that they were putting the Captain on the phone. I then asked for the phone again so that I could speak to the Captain. Instead, Officer Sadowski began to complain of chest pains and informed us that he thought he was having a heart attack. Lt. Haag called 9-1-1 from his cell phone and asked Officer Sadowski to sit down and stay calm until paramedics arrived. He refused to do so despite Lt. Haag's repeated requests. I remained outside with Officer Sadowski until he was transported to the hospital.

82-S-1 (REV. 3/59) RESPONSE TO THIS MEMORANDUM MAY BE MADE HEREON IN LONGHAND

3. Officer Sadowski showed a blatant disregard for his position as a police officer and my position as his superior officer throughout this incident. He refused to come into my office to provide additional information despite my repeated requests. He lied to me several times when he told me that he had already spoken to E.A.P. and later admitted such. He then abandoned his position and left during normal working hours after being informed that he would be considered A.W.O.L. if he did so.

Jack Reinman
Lieutenant #110
Narcotics Strike Force
D Platoon

```
*************** ****************************
*        PHILADELPHIA POLICE DEPARTMENT      *  *
*             POLICE BOARD OF INQUIRY        *
**.....DISCIPLINARY RECORD INFORMATION....**
```

| NAME | DATE | CASE # | CHARGE | DISP. | PENALTY |
|------|------|--------|--------|-------|---------|
| SADOWSKI,KEITH | 021201 | 01-0434 | 420 | GUILTY | 1 DAY |
| SADOWSKI,KEITH | 020399 | 99-0117 | 450 | GUILTY | 02 DAYS |

FIRST AND ONLY PAGE

PG/

D221