**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAUNDRA S. RUSSELL,** *et al.* | : | **CIVIL ACTION** |
| *Plaintiffs* | : | |
| | : | **NO. 13-3151** |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                         AUGUST 25, 2016

# MEMORANDUM OPINION

## INTRODUCTION

      This Court is confronted with a motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, by Defendants,[1] [ECF 38], the joint response in opposition filed by Saundra S. Russell ("Russell") and Keith Sadowski ("Sadowski") (collectively "Plaintiffs"),[2] [ECF 43], and Defendants' reply.   [ECF 44].   In their motion for summary judgment,[3] Defendants seek to dismiss Plaintiff Russell's claims of employment discrimination, hostile work environment, and retaliation brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e, *et seq.*; 42 U.S.C. §1981 ("§1981"); and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §951 *et seq.*, as well as her claims under 42

---

[1]      The following were named as Defendants in Plaintiffs' amended complaint:   the City of Philadelphia, Commissioner Charles S. Ramsey, Deputy Commissioner Kevin Bethel, Deputy Commissioner William Blackburn, Inspector Aaron Horne, Captain William Broadbent, Inspector James Kelly, Captain Melvin Singleton, Lieutenant Thomas Hyers, Lieutenant Jack Feinman, Lieutenant Edward Spangler, Lieutenant Laverne Vann, Lieutenant Charles Green, and Carol Madden.   [ECF 9].

[2]      Plaintiffs originally included William Campbell ("Campbell").   However, pursuant to the parties' stipulation, all claims brought by Plaintiff Campbell have been dismissed pursuant to Rule 41.   [*See* ECF 50].

[3]      On January 6, 2016, the exhibits referenced in the parties' summary judgment filings were electronically filed.   [*See* ECF 46, 47].

U.S.C. §1983 ("§1983") for violation of her due process rights, and her state law claim for intentional infliction of emotional distress.  On similar grounds, Defendants also seek dismissal of Plaintiff Sadowski's retaliation claims asserted under Title VII, §1983 and the PHRA, and his state law claim for intentional infliction of emotional distress.  The issues presented in the motion for summary judgment have been fully briefed by the parties and are ripe for disposition.  For the reasons stated herein, the motion for summary judgment is granted.

**BACKGROUND**

On November 5, 2013, Plaintiffs filed an amended complaint against Defendants averring claims for employment discrimination and retaliation.  [ECF 9].  Defendants filed an answer on December 30, 2013, and denied all of Plaintiffs' contentions.  [ECF 12].  Thereafter, discovery ensued and was completed.  On September 3, 2015, Defendants filed the instant motion for summary judgment, [ECF 38], which Plaintiffs have opposed.  [ECF 43].[4]  When determining the merits of the motion for summary judgment, this Court must consider all record evidence and relevant facts in this matter in the light most favorable to the non-moving parties, *i.e.*, Plaintiffs. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  These relevant facts are summarized as follows:[5]

---

[4]     This matter was initially assigned to the Honorable L. Felipe Restrepo and reassigned by Order dated January 19, 2016, to the undersigned.  [ECF 48].

[5]     Most of these facts are taken from the parties' respective statements of facts.  To the extent facts are disputed, such disputes are noted, and if material, pursuant to Rule 56, will be construed in Plaintiffs' favor.  Notably, in their motion, Defendants list a number of "Stipulated Facts," to which Plaintiffs provide no response.  In addition, Plaintiffs' amended complaint includes a number of facts that are nowhere addressed or supported in Plaintiffs' summary judgment filings.  As such, for the most part, they are not set forth herein, since Plaintiffs are required, at this stage, to support facts with record evidence. More importantly, and discussed later herein, Plaintiffs rely, in large part, on their own EEOC complaints and the subsequent EEOC determination letters as evidentiary support.  For the reasons discussed later, these documents are inadmissible and cannot be relied upon to create a genuine issue of disputed material fact.

On December 15, 1997, Plaintiff Keith Sadowski became a Philadelphia Police Officer.  On December 18, 2002, he was assigned to the Narcotics Strike Force, and in November 2006, Sadowski requested a transfer to the Forensic Science Unit.  His request was granted effective July 17, 2007, and he has remained employed in the Forensic Science Unit.  (Def.'s SOF ¶2).

Plaintiff Saundra Russell, an African American female, became a Philadelphia Police Officer on April 5, 1999, and was promoted to Sergeant on March 8, 2004.  Prior to 2004, she served in the 25th District.  Russell served in the 23rd District from March 2004 through February 2005, in the Narcotics Strike Force between February 2005 and February 2007, and in the City Wide Vice from February 2007 until November 2007.  Russell was promoted to Lieutenant on November 2, 2007, and assigned to the 19th District from November 2007 until July 9, 2009, when she was terminated from her employment.  (Def.'s SOF ¶¶3-4).

The individually named Defendants, *to wit*: Charles Ramsey, Kevin Bethel, William Blackburn, Aaron Horne, William Broadbent, James Kelly, Melvin Singleton, Thomas Hyers, Jack Feinman, Edward Spangler, Laverne Vann, Charles Green and Carol Madden, were all employed by the Philadelphia Police Department during the relevant time period.  (Def.'s SOF ¶5).

Relevant to this matter, on May 14, 2005, Police Officer Eric Dial called Plaintiff Russell a "fucking bitch" and "cunt." Russell requested that disciplinary action be taken against him, and Officer Dial was charged with but was found not guilty of insubordination following a Police Board Inquiry hearing.  (Def.'s SOF ¶6).

As part of that investigation, Captain Kelly interviewed Plaintiff Sadowski and William Campbell, who confirmed that Officer Dial had called Russell derogatory names.  Plaintiff Sadowski contends that after he gave his statement, he was subject to retaliation.  Specifically, Plaintiff Sadowski contends that he was "singled out" for sick checks outside the usual practices of the department; was denied access to medical care and access to the Employment Assistance Program (EAP); and was referred to as a "rat" on one occasion.  (Pl.'s SOF ¶¶12-14).[6]

---

[6]     As noted in the discussion section herein, Plaintiffs provide no admissible evidence to support many of the material facts underlying their claims, as is their burden under Rule 56.  Notwithstanding, these "facts" are outlined here for the purpose of providing a complete story and the context surrounding Plaintiffs' claims.

Plaintiff Russell claims that Captain Singleton discriminated against her by, *inter alia*: undermining her authority with subordinate officers; regularly berating her in a harsh demeaning tone via police radio broadcasts; not allowing her to discipline officers under her command for subordination; giving Russell his phone number unsolicited; asking Russell "what type of man did (she) like," whether she was married, and whether she preferred being "fixed;" personally investigating routine citizen complaints against Russell, which was not the normal practice within the department; blocking her attempt to get Heart and Lung[7] benefits; and providing false information at Russell's Heart and Lung hearing, which resulted in the denial of benefits. Plaintiff Russell also contends that various Defendants referred to and either encouraged or allowed peers and officers under her command to refer to Plaintiff Russell as "little girl," "bitch," "cunt," "black bitch," "Shanea Nea," "Shaneequa," and other derogatory terms. Further, Plaintiff Russell contends she was denied overtime opportunities and was "spot checked." (Pl.'s SOF ¶¶2-10).[8]

## LEGAL STANDARD

Rule 56 governs the summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[7] The formal name of the Heart and Lung Act is the Enforcement Officer Disability Benefits Law. 53 Pa. Stat. Ann. §637.

[8] *See supra* note 6. While Plaintiff Russell includes these allegations in her "statement of disputed material facts," she only refers to a limited subset of these allegations when responding to Defendants' arguments and arguing that she has met each of the elements of her claims.

(1986).  Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

Rule 56(c) provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Id*. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  *See* Rule 56(c)(1)(A-B).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  The nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings.  *Celotex*, 477 U.S. at 324.  Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id*.

**DISCUSSION**

Plaintiff Russell contends that she was subjected to employment discrimination, a hostile work environment, and retaliation in violation of Title VII, §1981, and the PHRA, as well as violations to her due process rights, and intentional infliction of emotional distress.  These claims are each addressed below.

### *Plaintiff Russell's Claims for Racial and Gender Employment Discrimination*

Plaintiff Russell asserts claims under Title VII, §1981, and the PHRA for disparate treatment based on her race and gender.  Plaintiff Russell contends that Defendants undertook various adverse employment actions that were unlawfully based on her race and gender.  Defendants move for summary judgment on Plaintiff Russell's employment discrimination claims.

Title VII and the PHRA prohibit employers from discriminating against employees on the basis of the employee's race and/or gender.  *See* 42 U.S.C. §2000e-2(a);[9] 43 Pa. Stat. Ann. §951 *et seq.*;[10] *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318 (3d Cir. 2000).  A claim under §1981[11] generally requires the same elements of proof as an employment discrimination claim under Title VII, but "is limited to issues of racial discrimination in the making and enforcing of contracts."  *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999); *see also*

---

[9]     Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. §2000e-2(a).

[10]     The PHRA provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . race . . . sex . . .of any individual . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract."  43 Pa. Stat. Ann. §955(a).

[11]     Section 1981 provides, in relevant part:  "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts."

*Anderson v. Wachovia Mortgage Corp.*, 621 F.3d 261, 267 (2010).  At the summary judgment stage, claims brought under Title VII, the PHRA, and §1981 are analyzed under the same general framework and the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 172 (3d Cir. 2014); *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 213 n. 2 (3d Cir. 2011); *Anderson*, 621 F.3d at 267-68.  Since the standard is the same, this Court will not undertake a separate analysis where Plaintiffs' claims rely on more than one of these statutes.

Under the *McDonnell Douglas* framework, a plaintiff must first make a *prima facie* case of discrimination by producing evidence to show that the plaintiff: (1) is a member of a protected class; (2) is qualified for the job which she sought to attain; (3) suffered an adverse employment action; and (4) that the action occurred under circumstances that could give rise to an inference of discrimination or that similarly situated persons who are not members of the plaintiff's protected class were treated more favorably.  *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 218 (3d Cir. 2014); *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *Warfield v. SEPTA*, 460 F. App'x 127, 129-30 (3d Cir. 2012).[12]

---

[12]      Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802.  If the defendant satisfies this phase, the burden shifts back to the plaintiff to prove that the legitimate reason(s) offered by the defendant are merely a pretext for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 804-05 (3d Cir. 1994).  To make a showing of pretext, the plaintiff must provide evidence "from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id*. at 764.  To meet this burden, the plaintiff must do more than show that the defendant's proffered reasons were wrong or mistaken. *Id*.  The plaintiff must "present evidence contradicting the core facts put forth by Defendant, the employer, as the legitimate reasons for its decision," *Kautz v. Met-Pro Corp*., 412 F.3d 463, 467 (3d Cir. 2005), and "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765.  To show that discrimination was more likely than not a cause of the employer's action, a plaintiff can point to evidence "that the employer has previously discriminated against [him], that the employer has discriminated against other

7

In their motion, Defendants argue that Plaintiff Russell's discrimination claims based on race and gender fail because she did not present evidence to demonstrate that she experienced an adverse employment action.  The Third Circuit has defined "an 'adverse employment action' as an action by an employer that is 'serious and tangible enough to alter'" either an employee's compensation, terms, conditions, or privileges of employment.  *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 445 (3d Cir. 2011) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).  Written reprimands and other disciplinary actions can constitute such adverse actions, but only if they "effect a material change in the terms or conditions of [the] employment."  *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001).  "Minor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions."  *Langley v. Merck & Co., Inc*., 186 F. App'x 258, 260 (3d Cir. 2006).  Unnecessary derogatory comments also do not rise to the level of adverse employment actions.  *Middleton v. Deblasis*, 844 F. Supp.2d 556, 566 (E.D. Pa. 2011).  Investigations, separate from any negative consequences that may result from them, also do not generally constitute adverse employment actions.  *Henry v. City of Allentown*, 2013 WL 6409307, at *7 (E.D. Pa. Dec. 9, 2013); *see also Boandl v. Geithner*, 752 F. Supp.2d 540, 564 (E.D. Pa. 2010) (finding that a referral for an investigation that resulted in no ramifications for the employee did not constitute an adverse employment action).  Further, Title VII "do[es] not provide relief for unpleasantness that may be encountered in the work place.  Rather [it] provide[s] a remedy only if discrimination seriously and tangibly altered the employee's ability

---

persons within the plaintiff's protected class or within another class, or that the employer has treated more favorably similarly situated persons not within the protected class."  *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998).  Where a plaintiff presents evidence of similarly situated non-class members to sustain her burden at the pretext stage, she must show with some specificity that the comparators were more favorably treated.  *Id.* at 646.

to perform the job or impacted the employee's job benefits." *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 219 (3d Cir. 2014) (citing *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)).

In response to Defendants' challenge as to the requisite adverse employment action, Plaintiff Russell identifies the following conduct as adverse employment actions:

> Russell was caused to lose her job and Heart & Lung benefits. Russell was also treated differently than others in the following ways (all adverse employment action): being "spot checked" in a manner not used for her male peers; having her authority over subordinates undermined; and being denied overtime opportunities.

(Pl.'s Opp'n at 13).  Notably, despite Plaintiff Russell's obligation to provide specific citations to record evidence to support her version of these purported material facts, she provides no cites but merely states the above examples as the adverse actions.  Rule 56 specifically requires a plaintiff who contends that a fact is genuinely disputed to support the assertion by:  "citing to *particular* parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1)(A) (emphasis added).  In addition, on summary judgment, a district court is not required to undertake an independent search of the record, but need only consider "cited materials."  *Id*. at 56(c)(3).  Here, Plaintiff Russell has undertaken very little, if any effort, to cite to "particular parts of materials in the record," to support her alleged adverse employment actions and, instead, merely references the alleged actions without specific citations.  This is improper and insufficient to meet her summary judgment burden.

Notwithstanding this critical failure to provide adequate record citations, the record cites Plaintiff Russell *does* provide elsewhere in her "statement of disputed material facts," pertaining

to the alleged adverse employment actions, are primarily to the EEOC's determination letter. This letter, however, is not admissible evidence on which Plaintiff Russell can rely to meet her evidentiary burdens.  As such, it cannot, and does not, suffice at the summary judgment stage.[13]

It is well-settled in this Circuit that EEOC determination letters are not *per se* admissible. *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1335 (3d Cir. 2002).  Consistent with the reasoning in *Coleman*, district courts herein have been reluctant to adopt or rely upon such findings, for a variety of reasons, including, in particular, their lack of citation to record evidence and general hearsay nature.  *See, e.g.*, *Rozier v. United Metal Fabricators, Inc.*, 2012 WL 170197, at *4 (W.D. Pa. Jan. 19, 2012) (finding EEOC determination letter to be too unreliable to consider for summary judgment purposes); *Hodge v. Superior Court of V.I.*, 2009 WL 3334594, at *2-3 (D. V.I. Oct. 14, 2009) (holding that EEOC determination letter was "no evidence at all" for purpose of summary judgment due to a lack of detailed factual findings or specific reference to a record); *Sarmiento v. Montclair State University*, 513 F. Supp.2d 72, 90-91 (D. N.J. 2007) (finding that EEOC determination letter was not competent evidence to be considered on summary judgment motion because it contained vague and insufficient conclusions concerning the types of violations found); *Brundage v. Int'l Ass'n of Bridge, Structural, and Ornamental Ironworkers, Local # 401*, 2007 WL 3119856, at *9 (E.D. Pa. Oct. 24, 2007) (holding that EEOC determination letter could not create disputed issue of material fact, in part, because it relied on hearsay statements and unattributed impressions); *Jackson v.*

---

[13]      Plaintiff Russell also cites to her EEOC Complaint, which, of course, like a complaint filed in civil litigation, merely provides Plaintiff Russell's own, self-serving allegations.  It is well-settled that a plaintiff cannot meet her summary judgment burden by relying upon the allegations contained in the complaint.  Rather, a plaintiff must "go beyond the pleadings" and point to evidence sufficient to show that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  Based upon this case law, Plaintiff Russell here cannot rely on the mere allegations in her EEOC complaint to meet her summary judgment burden.  Rather, she must go beyond the pleadings and point to evidence in the record which supports each essential element of her case.  *Id.*  Plaintiff Russell has failed to do so.

*Light of Life Ministries, Inc.*, 2006 WL 2974162, at *6 (W.D. Pa. Oct. 16, 2006) (finding that EEOC determination letter was not sufficient to overcome summary judgment motion); *Rizzo v. PPL Service Corp.*, 2005 WL 913091, at *11-12 (E.D. Pa. Apr. 19, 2005) (declining to consider EEOC determination letters on summary judgment).

A review of the EEOC determination letter relied upon by Plaintiff Russell raises many of the same concerns discussed in the aforementioned opinions.  This EEOC letter includes a brief restatement of Plaintiff Russell's allegations, and a summary of the agency's factual findings without direct attribution to a specific record source.  The letter also references the purported "testimony of numerous witnesses," but fails to identify either the witnesses or the source for any of these otherwise hearsay statements.  (*See* [ECF 47-22]).  These critical omissions lead this Court to conclude, as did the other courts in the cases noted above, that the EEOC determination letter cannot be relied upon for the purpose of meeting Plaintiff Russell's summary judgment burdens and, therefore, cannot create or infer the existence of a disputed issue of material fact.  Because Plaintiff Russell has failed to present any admissible evidence of an adverse employment action, her claims for racial and gender discrimination under Title VII, the PHRA and §1981 fail, as a matter of law, and are dismissed. [14]

### *Plaintiff Russell's Retaliation Claims*

As to Plaintiff Russell's claims for retaliation, these claims, like her other discrimination claims, are subject to the *McDonnell Douglas* burden-shifting analysis.  *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).  To establish a *prima fa*cie case of retaliation, "a plaintiff must

---

[14]   Even if Plaintiff Russell had produced some admissible evidence of the alleged adverse employment actions, some of the challenged actions do not constitute adverse employment actions.  For example, Plaintiff Russell's contention that she was "being spot checked" does not constitute an adverse employment action.  *Boandl v. Geithner*, 752 F. Supp.2d 540, 564 (E.D. Pa. 2010) (finding that a referral for an investigation that resulted in no ramifications for the employee did not constitute an adverse employment action).

tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'"   *Id.* at 340-41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).   An "adverse employment action" in the context of a retaliation claim is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."   *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.   If a plaintiff establishes a *prima facie* case of retaliation, the court must then turn to the subsequent steps in the *McDonnell Douglas* framework previously outlined.[15]   *Moore*, 461 F.3d at 342.

Defendants argue that Plaintiff Russell's retaliation claims must be dismissed because she has failed to support them with any admissible evidence of an adverse employment action. Plaintiff Russell's response relies upon the same inadmissible evidence, *i.e.*, her EEOC charge and the EEOC determination letter (discussed above), to support her retaliation claims.   For the same reasons discussed, this inadmissible evidence is insufficient for Plaintiff Russell to meet her summary judgment burden.   Accordingly, Plaintiff Russell's retaliation claim is dismissed.

### *Plaintiff Russell's Hostile Work Environment Claims*

Plaintiff Russell also asserts claims for hostile work environment premised on alleged unlawful conduct directed at her because of her race and gender/sex.   Specifically, Plaintiff Russell contends that she was subjected to a hostile work environment by way of various statements made to her or in her presence that were derogatory in nature with respect to her race and gender/sex.   Defendants seek dismissal of these claims on the basis that Plaintiff Russell has

---

[15]  *See supra* note 11.

failed to present evidence to show that the conduct was sufficiently severe, regular and/or pervasive.

An employee may establish a Title VII violation by proving that discrimination based on sex or race created a hostile or abusive work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). Title VII is violated if an employee is subjected to a workplace "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment . . . ." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (internal brackets and quotation marks omitted). The work environment must be objectively hostile or abusive; *to wit*; meaning that a reasonable person would find it to be hostile or abusive. *Id*.

To establish a *prima facie* hostile work environment claim, a plaintiff must show: (1) intentional discrimination because of her gender or race; (2) regular and pervasive discrimination; (3) a detrimental effect; (4) that the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) *respondeat superior* liability. *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). "The first four elements establish a hostile work environment and the fifth element determines employer liability." *Id*. (citing *Huston v. Procter & Gamble Paper Prods. Corp.*, 368 F.3d 100, 104 (3d Cir. 2009)). In determining whether these elements are established, courts must evaluate the record "as a whole," focusing "not on individual incidents, but on the overall scenario." *Cardenas*, 269 F.3d at 261 (quoting *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 149 (3d Cir. 1999)).

A plaintiff must show "'by the totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) (quoting

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)).  To determine whether the conduct was "regular and pervasive," a court must consider all the circumstances, including the frequency of the conduct, its severity, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance.  *Clark v. Cnty. Sch. Dist. v. Breeden*, 532 U.S. 267, 27-71 (2001); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *Mandel*, 706 F.3d at 168. Offhand comments and isolated incidents, unless extremely serious, do not rise to the level of discriminatory changes in the terms and conditions of employment.  *Id.* at 788; *see also Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 863 (3d Cir. 1990) (holding that two comments by a defendant were insufficient to support a hostile work environment claim). Rather, the conduct must be "so severe or pervasive as to constitute an objective change in the conditions of employment."  *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 262 (3d Cir. 2001) (citations omitted).  "[H]ostile environment claims must demonstrate a continuous period of harassment . . . ."  *Drinkwater*, 904 F.2d at 863; *see also*, *Andrews*, 895 F.2d at 1484 (noting that "[if] the discrimination were sporadic, it would be nearly impossible to sustain a jury verdict against a supervisor."); *Bonora v. UGI Utils., Inc*., 2000 WL 1539077, at *4 (E.D. Pa. Oct. 18, 2000) (10 incidents over two years not sufficiently pervasive); *Johnson v. Souderton Area Sch. Dist.*, 1997 WL 164264, at *6 (E.D. Pa. Apr. 1, 1997) (nine incidents over three years not pervasive or regular); *Rosati v. Colello*, 2015 WL 1475505, at *9 (E.D. Pa. Apr. 2, 2015) (three comments over four months not sufficient).

As such, "isolated incidents" of harassment do not qualify as "pervasive and regular." *Ocasio v. Lehigh Valley Family Health Ctr.*, 92 F. App'x 876, 880 (3d Cir. March 11, 2004). Nor does the "'mere utterance of an . . . epithet which engenders offensive feelings in an

employee.'"  *Lawrence v. F.C. Kerbeck & Sons*, 134 F. App'x 570, 572 (3d Cir. 2005); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.").

To support her hostile work environment claim based on sexual harassment, Plaintiff Russell points to the following comments made by Defendant Singleton, her supervisor; *to wit*: Singleton asked Russell whether she was married, "what type of man did (she) like," and whether she preferred being "fixed."  (Pl.'s Opp'n at 13-14).  While these statements are not to be condoned in the workplace, Plaintiff Russell has not sustained her burden of showing the required severity and pervasiveness to support a claim for hostile work environment.  *See Mandel*, 706 F.3d at 168.  At best, she has identified a few, sporadic comments which alone are insufficient to establish a hostile work environment.

To support her hostile work environment claim based on gender and race, Plaintiff Russell contends she was called "racial/gender derogatory terms by many people in the department." (Pl.'s Opp'n at 13).  As evidentiary support, however, Plaintiff Russell again relies primarily on the inadmissible EEOC determination letter and her own deposition testimony, in which she testified that Lieutenant Vann referred to her as a "bitch," and Officer Spicer called her a "black bitch."  This evidence alone, however, is insufficient to establish the severe, regular and pervasive prerequisite for a claim of hostile work environment.  Plaintiff Russell also points to (though provides little by way of admissible evidence to support) a few, sporadic offhand comments that are certainly offensive.  However, these sporadic events and incidents (even if substantiated with evidence) do not rise to the level of severe and pervasive discrimination, but

rather are in the nature of isolated incidents.  As such, Plaintiff Russell has not and cannot meet her burden of showing a *prima facie* case of a hostile work environment based on either her gender or race.  Because Plaintiff has failed to establish a *prima facie* claim for hostile work environment, Defendant's motion for summary judgment on this claim is granted.

### *Plaintiff Russell's Due Process (Procedural and Substantive) Claims*

Plaintiff Russell also claims that her procedural and substantive due process rights were violated by Defendants' denial of her application for Heart and Lung benefits.[16]  Defendants argue that Plaintiff Russell's due process claims should be dismissed because she was (1) provided all of the process due, and (2) she failed to present evidence of conduct by Defendants that shocks the conscience.  This Court agrees.

"[A] plaintiff . . . who seeks to establish a procedural due process claim must demonstrate that '(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) that the procedures available to him did not provide 'due process of law.'" *Biliski v. Red Clay Consolidated Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) (citations omitted); *Hill v. Borough*, 455 F.3d 225, 233-34 (3d Cir. 2006).  The mere deprivation of an interest protected by the due process clause "is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  In the public employment context, the due process clause requires that a public employee, such as Plaintiff Russell, be given "notice of the charges against [her], an explanation of the employer's evidence,

---

[16]     The Pennsylvania Heart and Lung Act (the "Act"), 53 Pa. Stat. Ann. §637-638, provides for full salary and fringe benefit compensation for police officers injured in the performance of their duties.  The compensation is only for persons who are temporarily incapacitated, and does not apply where a disability is total or permanent.  *See Camaione v. Borough of Latrobe*, 567 A.2d 638, 460 (Pa. 1989).

and an opportunity to present [her] side of the story." *McDaniels v. Flick*, 59 F.3d 446, 454 (3d Cir. 1995).

In order "[t]o establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). For conduct to meet the "shocks the conscience" standard, it must "encompass[] 'only the most egregious official conduct.'" *United Artists Theatre Circuit, Inc., v. Twp. of Warrington, Pa*., 316 F.3d 392, 400 (3d Cir. 2003) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Here, Defendants do not challenge that the first prong for Plaintiff Russell's procedural and substantive due process claims is met; *i.e.*: that Plaintiff Russell has a constitutionally-protected property interest in Heart and Lung benefits. Defendants argue, however, that Plaintiff Russell has been provided all of the process that she was due and that she cannot show conduct by Defendants that "shocks the conscience." Plaintiff Russell contends that she was deprived of her constitutionally recognized rights to a "fair Heart & Lung [Benefits] hearing," because "Captain Singleton subverted the Heart & Lung process when he made a false statement which caused the denial of Russell's Heart & Lung benefits." Like her other claims, however, Plaintiff Russell's procedural and substantive due process claims fail because she has not cited any admissible evidence to support them. Instead, Plaintiff Russell again relies *solely* on the inadmissible EEOC determination letter. For the same reasons discussed above, this she cannot do to overcome summary judgment.

Moreover, the undisputed evidence submitted by Defendants (and nowhere refuted by Plaintiff Russell's scanty evidence) establishes that Plaintiff Russell participated in a Heart and

Lung benefits hearing and pursued an appeal of the denial of benefits.  Notably, Plaintiff Russell does not assert nor does she present any evidence that she was not provided notice of the denial of her Heart and Lung benefits or an explanation of her employer's evidence.  To the contrary, the evidence shows that she participated in a hearing at which her employer's evidence was presented, and at which she was given an opportunity to testify.  *Cf.*, *Hayburn v. City of Philadelphia*, 2012 WL 3238344, at *4-5 (E.D. Pa. Aug. 7, 2012) (denying a plaintiff police officer's procedural due process claim premised on the denial of Heart and Lung benefits where she was provided notice, an explanation of her employer's evidence and an opportunity to tell her side of the story).  In addition, Plaintiff Russell has pointed to no admissible evidence of conduct by Defendants that "shocks the conscience."  Accordingly, Plaintiff Russell's due process claims fail as a matter of law.[17]

### *Plaintiff Sadowski's Retaliation Claims*

Plaintiff Sadowski asserts claims for retaliation under Title VII and 42 U.S.C. §1983. Specifically, he alleges that Defendants unlawfully retaliated against him for providing truthful statements in the course of a disciplinary investigation conducted by Captain Kelly regarding Officer Dial's alleged use of derogatory and demeaning language towards Plaintiff Russell.

As set forth above, to establish a *prima facie* case of retaliation under Title VII, a plaintiff must point to evidence that:  "(1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action."  *Nelson v. Upsala*

---

[17]      In support of her substantive due process claim, Plaintiff Russell incorrectly cites to *Hayburn*, 2012 WL 3238344 (E.D. Pa. Aug. 7, 2012), as holding that "[l]ying to the Heart & Lung panel 'shocks the conscience.'"  (Pl.'s Opposition at 15).    To the contrary, in *Hayburn*, the court held that an "allegation of a lie ***does not*** rise to the level of government action intended to interfere with constitutionally protected abortion rights, as in *Obstetrics*."  *Id*. at *6 (emphasis added).  Plaintiff Russell has provided no case law to the contrary.

*Coll.*, 51 F.3d 383, 386 (3d Cir. 1995).  Similarly, Plaintiff Sadowski's First Amendment based retaliation claim requires that Plaintiff Sadowski show, *inter alia*, an adverse employment action. *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014).  Defendants argue that Plaintiff Sadowski's retaliation claims must be dismissed because he failed to present sufficient evidence to show that he suffered an adverse employment action.  This Court agrees.

In response to Defendants' motion, Plaintiff Sadowski points to the following conduct as constituting the requisite adverse employment action:  "being singled out for sick checks – outside the usual practices of the department;" and "being denied access to medical care and access to EAP by Lieutenant Feinman."  Like Plaintiff Russell, Plaintiff Sadowski relies *solely* on the EEOC determination letter to respond to and meet his summary judgment burden as to his retaliation claims.  For the same reasons discussed above, this he cannot do.  As such, Plaintiff Sadowski has failed to meet his summary judgment burden and his retaliation claims are dismissed.

### Plaintiffs Russell and Sadowski's State Law Claims for Intentional Infliction of Emotional Distress

Plaintiff Russell and Plaintiff Sadowski both assert state law claims for intentional infliction of emotional distress.  Defendants argue that these claims should be dismissed because, *inter alia*, Plaintiffs have failed to produce the requisite medical evidence of the alleged injuries.  This Court agrees.[18]

---

[18]     The Third Circuit has opined that "in most cases, pendent state law claims should be dismissed without prejudice 'where the claim over which the district court has original jurisdiction is dismissed before trial.'" *Cindrich v. Fisher*, 341 F. App'x 780, 789 (3d Cir. 2009) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  A district court's exercise of supplemental jurisdiction, however, is discretionary.  *Id.* (citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 211 (3d Cir. 2003)).  Such exercise "should be based on considerations of 'judicial economy, convenience and fairness to the litigants.'" *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)).  Here, this Court

To establish a claim of intentional infliction of emotional distress under applicable Pennsylvania law, Plaintiffs must show that Defendants' conduct was:   (1) extreme and outrageous; (2) intentional or reckless; and (3) caused severe emotional distress.  *Wisniewski v. Johns Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987).  The Pennsylvania Supreme Court has enunciated an objective standard for intentional infliction of emotional distress, permitting recovery only "where a reasonable person normally constituted would be unable to adequately cope with the mental stress engendered by the circumstances of the event."  *Kazatsky v. King David Mem'l Park*, 527 A.2d 988, 993 (Pa. 1987).  Further, liability for intentional infliction of emotional distress is limited to those cases in which the conduct complained of is extreme and outrageous.  *Dawson v. Zayre Dep't Stores*, 499 A.2d 648, 469 (Pa. Super. Ct. 1985).  Extreme and outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997).  Generally, it is insufficient "that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."  *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).  Rather, "recovery for the tort of intentional infliction of emotional distress [has been] reserved by the courts for only the most clearly desperate and ultra-extreme conduct . . . ."  *Id.* at 754.  It is for the court to determine, in the first instance, whether the actor's conduct can

concludes that the interests of judicial economy, convenience, and fairness to the parties are best served by this Court's exercise of supplemental jurisdiction over Plaintiffs' state law claims.  These claims were included in Plaintiffs' complaint, voluntarily filed in this Court in June of 2013.  In addition, these claims have been subject to full discovery and fully litigated by the parties.  Accordingly, this Court will exercise supplemental jurisdiction over the state law claims.

reasonably be regarded as so extreme and outrageous as to permit recovery.  *Dawson*, 499 A.2d at 649.  "The requisite 'intention' which one must display for liability to be imposed is knowledge on the part of the actor that severe emotional distress is substantially certain to be produced by his conduct."  *Hoffman v. Memorial Osteopathic Hosp*., 492 A.2d 1382, 1386 (Pa. Super. Ct. 1985).

A claim of intentional infliction of emotional distress also requires "expert medical confirmation that the plaintiff actually suffered the claimed emotional distress."  *Kazatsky*, 527 A.2d at 995; *see also Bey v. City of Philadelphia*, 2007 WL 1575410, at *6 (E.D. Pa. May 24, 2007).  Here, apart from their own self-serving deposition testimony, neither Plaintiff has offered any medical evidence to sustain their claims of intentional infliction of emotional distress.  As such, Plaintiffs have not met their summary judgment burden on these claims.  *Cf., Shaffer v. Burger King Corp.*, 2001 WL 1167392, at *2 (E.D. Pa. Sept. 28, 2001) (dismissing intentional infliction of emotional distress claims on summary judgment because the plaintiff failed to present medical evidence of the injury); *Johnson v. Greyhound Lines*, 1998 WL 633699, at *2 (E.D. Pa. Aug. 24, 1998) (same).

**CONCLUSION**

As discussed above, Plaintiffs have largely failed to meet their summary judgment burden under Rule 56 by failing to "cite to particular parts of materials in the record" that create genuine disputes as to material facts regarding essential elements of their respective claims.  Therefore, for the foregoing reasons, Defendants' motion for summary judgment is granted, and Plaintiffs' claims are dismissed.  An Order consistent with this Memorandum Opinion separately follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.